AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| In re Extradition of | ) |
| | ) |
| JORGE ANTONIO PASILLAS JARAMILLO a/k/a's EL GEORGE A. PASILLAS; GEORGE ANTHONY PASILLAS; GEORGE EL GUERO"; & "EL GUERO" | ) Case No.   3:25-mj-71361 MAG |
| *Defendant(s)* | ) |

**FILED**

Nov 17 2025

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 7, 2012_____ in the country of _____Mexico_____ the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Articles 123, 126, 147, and 148, Section II, of the Criminal Code of the State of Baja California, Mexico. | Being a fugitive from Mexico, which has sought his extradition pursuant to the extradition treaty between the U.S. and Mexico for the Aggravated Homicide, in violation of Articles 123, 126, and 148, section II, of the Criminal Code of the State of Baja California. |

This criminal complaint is based on these facts:

See Attached Complaint

☑ Continued on the attached sheet.

Approved as to form  November 14, 2025
             AUSA _____~CCS~_____

Sworn to before me by telephone.

Date:  _____11/17/2025_____

City and state:  _____San Franisco, California_____

_____//s//_____
*Complainant's signature*

COLIN SAMPSON, Assistant U.S. Attorney
*Printed name and title*

_____
*Judge's signature*

U.S. MAGISTRATE JUDGE LAUREL BEELER
*Printed name and title*

**FILED**

Nov 17 2025

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In the Matter of the Extradition of | ) MISC. NO.   3:25-mj-71361 MAG |
| | ) |
| THE EXTRADITION OF | ) |
| | ) |
| JORGE ANTONIO PASILLAS JARAMILLO | ) |
| a/k/a JORGE PASILLAS JARAMILLO; | ) |
| a/k/a EL GEORGE A. PASILLAS; | ) |
| a/k/a GEORGE ANTHONY PASILLAS; | ) |
| a/k/a "GEORGE EL GUERO"; & | ) |
| a/k/a "EL GUERO" | ) |
| | ) |

**COMPLAINT**
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1.   In this matter, I represent the United States in fulfilling its treaty obligation to Mexico.

2.   There is an Extradition Treaty Between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, *as amended by* the Protocol to the Extradition Treaty Between the United States of America and the United Mexican States of May 4, 1978, U.S.-Mex., Nov. 13, 1997, S. TREATY DOC. NO. 105-46 (1998) (collectively referenced hereafter as the "Treaty").

3.   Pursuant to the Treaty, the Government of Mexico has submitted a formal request through diplomatic channels for the extradition of Jorge Antonio Pasillas Jaramillo (PASILLAS).

4.   According to the information provided by authorities in Mexico, PASILLAS is accused of the aggravated homicide of his friend since childhood (the "Victim"). Specifically, PASILLAS is charged with one count of Aggravated Homicide, in violation of Articles 123, 126, 147 and 148, section II, of the Criminal Code of the State of Baja California, Mexico.

### Facts of the Mexican Case

5.   The Warrant was issued, and the extradition request was made, based on the following facts:

#### Mexican Criminal Investigation

6.   On May 7, 2012, at approximately 2:00 a.m. in Tijuana, Baja California, PASILLAS allegedly stabbed his long-time friend (the "Victim") in the back, face, and hands.  The Victim immediately fled to nearby his mother's friend's residence (the "Residence"), where he succumbed to his injuries.  The local police were notified by radio and arrived at the Residence where they found the Victim dead, accompanied by his mother ("Victim's Mother").

7.   The Victim's Mother told investigators that, on May 7, 2012, she was in town visiting and staying at her friend's house (the Residence) when, at approximately 2:00 am, she heard her son shouting, "Mom, [Friend] (referring to the Victim's Mother's friend)…Help me. I'm dying." The Victim's Mother left the house and found her son, the Victim, sitting on the sidewalk in front of the house.  The Victim asked his mother to embrace him and call an ambulance.

8.   The Victim's Mother asked the Victim who injured him, and he responded, "It was George El Guero, El George, El George. He cut me up."

9.   The Victim's Mother then called an ambulance; however, by the time the paramedics arrived, he had already died.

#### The Victim's Mother's Interactions with Authorities

10.   The Victim's Mother told Authorities that:

- "El Guero" or "George," to whom her son was referring was PASILLAS.
- She had known PASILLAS since he was a child due to his long friendship with her son.

- She provided a physical description of PASILLAS; and
- Positively identified PASILLAS in two separate photo array identification procedures.

### The Victim's Roommate

11.  The Victim's Roommate (the "Roommate") also gave investigators his account of what happened the night of the Victim's alleged murder.  He states that:

- On May 6, 2012, the night before the Victim's death, at approximately 5:00 p.m., the Roommate was home at the apartment when the Victim and PASILLAS (known to him as "George" or "El Guero") arrived and began to use drugs.
- The Roommate, knowing that the Victim would become violent when using drugs, went into his bedroom at about 11:00 p.m., after smoking some marijuana, to rest and avoid any possible conflict.
- At approximately 2:00 a.m., the Roommate awoke when he heard PASILLAS and the Victim arguing.
- The Roommate left his bedroom and saw the Victim shoving PASILLAS towards the apartment entrance door.
- The Roommate asked what was happening, and the Victim told him not to get involved and to go back to his room and close the door.
- The Roommate returned to his room and heard a neighbor shout, "Stop arguing. If you can't handle that shit, stop taking drugs."
- Authorities arrived approximately 30 minutes later, and told the him that the Victim had died and asked him to accompany them to provide a deposition, which he did.
- The Roommate also provided investigators with a physical description and two photos of PASILLAS.  [The Victim's Mother later confirmed that the two photos were of PASILLAS]

### The Victim's Neighbor

12.  Investigators also interviewed the Victim's next-door neighbor (the "Neighbor").  The Neighbor told authorities that:

- The Victim was a drug addict, and was visited daily by his childhood friend whose nickname was "El George" or "El Guero."
- On May 6, 2012, the Neighbor saw the Victim and PASILLAS (he knew as "El George") inside the Victim's apartment.
- The Neighbor left to see his girlfriend and returned at 10:00 p.m., when he saw the Victim and PASILLAS in the hallway of the apartments.
- The Neighbor observed that they were under the influence of drugs, with an

aggressive attitude, so he immediately entered his own apartment.

- At 1:30 a.m., the Neighbor heard a loud argument and identified the voices as belonging to the Victim and PASILLAS.  He then heard "Leave me alone. That's enough."

- The Neighbor then heard a commotion that he attributed to the Victim and PASILLAS struggling and punching each other.

- Police arrived at 3:00 a.m. and informed the Neighbor that the Victim was dead and that they were searching for PASILLAS.

- He stated then told authorities about the commotion but had no knowledge of PASILLAS's location.

<u>The Victim's Autopsy</u>

13.  The death certificate and accompanying autopsy from May 7, 2012, show that the Victim's cause of death was secondary hypovolemic shock due to penetrating wounds to the neck, thorax, and abdomen, caused by a sharp, pointy object.

14.  According to a field criminalistics report, the Victim suffered a total of seven (7) stab wounds, including two (2) on his back and two defensive stab wounds to his hand and arm. The report also states that the Victim died on the sidewalk in front of his mother's house, and that he was mortally wounded at his own apartment, where police recovered a sharp, pointy knife-like weapon with a stainless-steel blade approximately 11 centimeters long, bent, and stained in blood.

15.  Experts concluded, based on blood samples from the knife, the Victim's apartment and outside of the Residence, that this was the murder weapon used to kill the Victim.

<u>PASILLAS'S Location and History of Appearances in the United States</u>

16.  PASILLA is presently in federal custody, in the Northern District of California.

17.  On or about January 3, 2025, the United States, in accordance with its obligations under the Treaty and pursuant to 18 U.S.C. §§ 3181 et seq., filed an extradition complaint in the Eastern District of California seeking a warrant for the arrest of PASILLAS. According to the extradition complaint, PASILLAS had been in custody since about August 2013 and was, at the time, incarcerated at Mule Creek State Prison following a conviction for assault with a semiautomatic firearm, with enhancements due to the infliction of grievous bodily injury while

1  using the firearm. The extradition complaint also stated that Pasillas Jaramillo would become

2  eligible for parole in or about 2025.

3      18.  On or about November 7, 2025, the US Attorney's Office for the Northern District

4  of California (NDCA), San Jose Branch learned that PASILLAS had completed (or would

5  shortly complete) his state sentence; was currently in custody at a holding facility in the NDCA,

6  perhaps because had had at one point been transferred from Mule Creek State Prison, which is in

7  the Eastern District of California, to a state prison in the NDCA; and would be transported to

8  federal court on or about November 10, 2025 so that he could make his appearance in this federal

9  matter.

10      19.  On November 10, 2025, PASILLAS appeared before the Honorable Susan Van

11  Kulen for an initial appearance in this matter.  NDCA filed a Memorandum in Support of

12  Detention on the same date.  *See* 5:25-mj-71332, Dkt. No. 2.

13      20.  On November 13, 2025, the Office of International Affairs (OIA), referred this

14  matter to the NDCA (San Francisco Branch) for Extradition.

15         The Extradition Request

16      21.  Thomas Heinemann, an attorney in the Office of the Legal Adviser of the U.S.

17  Department of State, has provided the U.S. Department of Justice with a declaration

18  authenticating a copy of the diplomatic note by which the request for extradition of PASILLAS

19  was made and a copy of the Treaty, stating that the offenses for which extradition is demanded

20  are provided for by the Treaty, and confirming that the documents supporting the request for

21  extradition are properly certified by the principal U.S. diplomatic or consular officer in Mexico,

22  in accordance with 18 U.S.C. § 3190, so that they may be received into evidence.

23      22.  The declaration from the U.S. Department of State with its attachments, including a

24  copy of the diplomatic note from Mexico, a copy of the Treaty, and the certified documents

25  submitted in support of the request (collectively "Government's Exhibit #1") are filed with this

26  Complaint and incorporated by reference herein.

27      WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed

28  person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the

1  United States and Mexico, so that the fugitive may be arrested and brought before this Court to

2  the end that the evidence of criminality may be heard and considered

3

4  DATED: November 14, 2025                    Respectfully submitted,

5                                              CRAIG H. MISSAKIAN
                                               United States Attorney
6

7

8                                              COLIN SAMPSON
                                               Assistant United States Attorney
9

10  Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim P 4.1 and

11  4(d) on this 17th day of November, 2025, at 12:55 p.m..

12

13

14                                             HONORABLE LAUREL BEELER
                                               United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

US COMPLAINT FOR EXTRADITION                    6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from New Zealand, a copy of the Treaty, and the certified documents submitted in support of the request, (marked collectively as Government's Exhibit #1)

## DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, declare and say as follows:

    1. I am an Attorney Adviser in the Office of the Legal Adviser for the Department of State, Washington, D.C. This office has responsibility for extradition requests, and I am charged with the extradition case of Jorge Antonio Pasillas Jaramillo. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

    2. The relevant and applicable treaty provisions in full force and effect between the United States and Mexico are found in the Extradition Treaty between the United States of America and the United Mexican States of May 4, 1978 (TIAS 9656), hereafter the "Treaty." A copy of the Treaty is attached to this declaration.

    3. In accordance with the provisions of the Treaty, the Embassy of Mexico has submitted Diplomatic Note number 06621, dated November 21, 2014, formally requesting the extradition of Jorge Antonio Pasillas Jaramillo, as supplemented by Diplomatic Note No. 03741, dated August 2, 2016, and Diplomatic Note 00095, dated January 10, 2024. Copies of these Diplomatic Notes are attached to this declaration.

    4. In accordance with Article 13(3) of the Treaty, the Government of the United States of America represents the interests of the Government of Mexico in proceedings in U.S. courts arising out of Mexico's extradition requests, and the Government of Mexico provides similar representation in its courts with respect to extradition requests made by the United States.

    5. The offense for which extradition is sought is covered under Article 2 of the Treaty.

6. The documents submitted by the Government of Mexico in support of its extradition request were certified on October 4, 2014, by Earl Anthony Wayne, Ambassador of the United States to Mexico at the United States Embassy in Mexico City, in accordance with Title 18, United States Code, Section 3190. Ambassador Wayne, at the time he certified the documents, was the principal consular officer of the United States in Mexico. Earlier supplemental documents submitted by the Government of Mexico in support of its extradition request were certified on July 6, 2016, by Roberta Jacobson, Ambassador of the United States to Mexico. Ambassador Jacobson, at the time she certified the documents, was the principal diplomatic officer of the United States in Mexico. Subsequent supplemental documents submitted by the government of Mexico in support of its extradition request were certified on December 20, 2023, by Daria L. Darnell, Minister Counselor for Consular Affairs at the United States Embassy in Mexico City, in accordance with Title 18, United States Code, Section 3190. Ms. Darnell, at the time she certified the documents, was the principal consular officer of the United States in Mexico.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Santa Fe, New Mexico on January 19th, 2024.

Tom Heinemann

Attachments:
1. Copy of Diplomatic Notes
2. Copy of Treaty

# UNOFFICIAL TRANSLATION

06621

Washington, D.C., November 21ˢᵗ, 2014

Mr. Secretary:

On behalf of my Government, I have the honor to refer to the Extradition Treaty signed between the United Mexican States and the United States of America, in order to request from Your Excellency's Government, on the basis of Article 2, and particularly Article 10 of the Extradition Treaty, the **FORMAL REQUEST FOR INTERNATIONAL EXTRADITION** of JORGE **ANTONIO PASILLAS JARAMILLO, a.k.a "JORGE PASILLAS JARAMILLO", a.k.a "EL GEORGE A. PASILLAS", a.k.a "GEORGE ANTHONY PASILLAS", a.k.a "GEORGE EL GÜERO", ak.a. "EL GÜERO",** who is wanted by Mexican authorities for his alleged perpetration of the crime of **AGGRAVATED HOMICIDE** *(HOMICIDIO CALIFICADO).*

It is known that **JORGE ANTONIO PASILLAS JARAMILLO** is currently incarcerated in the Orange County, California Jail, United States of America.

(ARREST WARRANT…)

To His Excellency
John Forbes Kerry
Secretary of State
Washington, D.C.

## ARREST WARRANT

On June 8, 20102, the Fourth Judge for Ciminal Matters in Tijuana, Baja California, issued an arrest warrant against **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO**, within criminal investigation number 279/2012,for his alleged perpetration of the crime of **AGGRAVATED HOMICIDE (*HOMICIDIO CALIFICADO*)**.    Said crime is covered under Article 123, in relation to Article 148, section II, and punishable under Article 126 of the Penal Code for Baja California State, in effect at the time the events took place.

The conduct attributed to the defendant, for which the arrest warrant was issued, is punishable under the laws of both countries with a maximum prison sentence of no less than one year, as established by Article 2, paragraph 1 and paragraph 4 of the Extradition Treaty between the United Mexican States and the United States of America, in relation to item 1 of the Treaty's Appendix.

## STATUTE OF LIMITATIONS

By means of a judicial resolution , dated October 31, 2013, the Fourth Judge for Criminal Matters in Tijuana, Baja California determined that the statute of limitations for said criminal act will expire on June 9, 2062.  Thus, the arrest warrant issued against **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO** is currently in effect and enforceable.

The elements constituting the crime, which led the Fourth Penal Judge in Tijuana, Baja California to issue the arrest warrant for **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO** (hereinafter **JORGE ANTONIO PASILLAS JARAMILLO**), are based on, among other things, the following:

## FACTS

On May 7, 2012, at about 2:00 a.m., inside the house located at *Tule* street, number 1325, apartment number 8, *Colonia Praderas de La Mesa*, Tijuana, Baja California, **JORGE ANTONIO PASILLAS JARAMILLO** stabbed Jorge Rangel Montes in his back, face and hands.  The victim fled the scene, heading to the house where his mother was, located at number 1314 of the same street, in order to save himself.  However, he died finally.

Afterwards, Municipal Police officers were alerted about what had happend by a radio dispatch from headquarters, so they went to *Tule* street, number 1314, *Colonia Praderas de La Mesa*, Tijuana, Baja California. There, they found the lifeless body of Jorge Rangel Montes laying on the sidewalk. At that location was the victim's mother, Edelmira Montes Hernández.

On May 9, 2012, Edelmira Montes Hernández stated before the Investigating Public Prosecutor for Homicides at the Office of the Attorney General of Baja California State that, at about 2:00 a.m., on May 7, 2012, she was at the house of her friend, Rosa Amelia, when she heard her son, Jorge Rangel Montes, shouting "Mom, Rocío (referring to her friend, Rosa Amelia), *Chino*. Help me. I'm dying." So, when she went outside, she noticed that her son was sitting on the sidewalk and he asked her to embrace him and for someone to get an ambulance. She asked him who had wounded him and he said "It was *George el güero, el George, El George*. He cut me up." (referring to the fact that he had wounded him using a knife). After having assaulted the victim, the defendant headed to the United States of America because he is a U.S. citizen.

Therefore, Edelmira Montes Hernández called 066 [TRANSLATOR'S NOTE: the Mexican equivalent of the USA's 911] and requested an ambulance. The paramedics treated the victim but soon they told her that her son had already died.

Edelmira Montes Hernández stated that the person to whom her son was referring before he died was **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO,** whom she has known ever since he was a child because he was her son's friend since childhood.

Additionally, Walter Ulises Rosales Heredia provided his statement before Investigating Public Prosecutor for Homicides at the Office of the Attorney General of Baja California State, indicating that, for about the previous month, he had been living with Jorge Rangel Montes.

The deponent stated that on Sunday, May 6, 2012, at about 5:00 p.m., he was at the home located at *Tule* street, number 1325, Apartment 8, at *Colonia Praderas de La Mesa*, Tijuana, Baja California, accompanied by Jorge Rangel Montes. A few minutes later, George (referring to **JORGE ANTONIO PASILLAS JARAMILLO**) arrived and they began to use drugs.

In view of the fact that Jorge Rangel Montes would become violent when he used drugs, the deponent decided to smoke a joint, and at about 11:00 p.m., he went to his bedroom to rest, in order to avoid any problems. At about 2:00 a.m., on May 7, 2012, he woke up when he heard shouting between Jorge Rangel Montes and *El Güero* (referring to **JORGE ANTONIO PASILLAS JARAMILLO**) who were arguing. When he came out of his room, he realized that Jorge was pushing *El Güero* (referring to **JORGE ANTONIO PASILLAS JARAMILLO**) towards the apartment entrance door. He asked them what was going on. Jorge replied that he should not get

involved and told him to go to his room and close the door. So, he decided to go back into his room. Later on, he heard a neighbor shout "Stop arguing. If you can't handle that shit, stop taking drugs". Afterwards, he added "anyway, it's your argument" and he heard, in the end, the door closing.

A half an hour later, the municipal police arrived at the house and informed him of Jorge Rangel Montes' death and they asked him to accompany them in order for him to provide his deposition.

Officers from the Office of the Public Prosecutor in Tijuana, Baja California talked to Omar Javier Franco Pérez, a neighbor of the victim, who lives at *Calle Tule*, number 1325, Apartment 7, *Fraccionamiento Praderas de La Mesa*, in that town. Omar Javier Franco Pérez stated that his neighbor in Apartment 8 was Jorge Rangel Montes, a drug addict. He knew that his childhood friend, whose nickname was *El George* or *El Güero*, visited him every day.

In his deposition, Omar Javier Franco Pérez stated that, on Sunday, May 6, 2012, he noticed that inside Jorge Rangel's were Walter and *El George* or *El Güero*. Moments later, he went out to see his girlfriend and when he returned around 10:00 p.m., he saw Jorge and *El George* or *El Güero* in the hallways of the apartments. They were under the influence of drugs, with an aggressive attitude. So, he immediately entered his house.

Also, Omar Javier Franco Pérez stated that, at about 1:30 a.m., on May 7, 2012, he heard a loud argument and identified the voices as those belonging to *El George* or *El Güero* and Jorge. Jorge was heard shouting, among other thinsgs "Leave me alone. That's enough." He heard them struggling and punching each other. Finally, at 3:00 a.m., Municipal Police officers arrived at his house, informing him that his neighbor, Jorge, had been killed and that they were searching for the alleged pepetrator, *George,* a.k.a. *El Güero*. Omar Javier Franco Pérez stated that he had only heard them punching each other but he was not aware of his whereabouts.

Officers from the Office of the Public Prosecutor of Baja California State included in their report, dated May 7, 2012, under official document number 349/HOM.DOL./12, the interview they conducted with Walter Ulises Rosales Heredia, a witness who gave them two photos of **JORGE ANTONIO PASILLAS JARAMILLO**. In that same report, they stated they had found the weapon with which Jorge Rangel Montes was mortally wounded.

In that regard, from the death certificate, dated May 7, 2012, regarding the autopsy performed by the medical expert José Luis Arguello Montiel, it is concluded that the cause of death of Jorge Rangel Montes was secondary hypovolemic shock due to penetrating wounds to the neck, thorax and abdomen produced by a sharp, pointy object.

From the field criminalistics report, it is concluded that the location where Jorge Rangel Montes died was on the sidewalk where the house on *Tule* street, number 1314, *Colonia Praderas de La Mesa*, Tijuana, Baja California is located. Considerin the *inditia* steaming from said location, it is inferred that the place where the events occurred is on the same street, at number 1325 (the victim's home), where the sharp, pointy weapon with which the injuries inflicted to Jorge Rangel Montes was found. From there, the victim was able to move to the first house mentioned.

Additionally, Edelmira Montes Hernández recognized **JORGE ANTONIO PASILLAS JARAMILLO** through a photo ID lineup.

In accordance with Article 10, paragraph 2, section e) of the Extradition Treaty between the United Mexican States and the United States of Amercia, the following are the general personal data available on the defendant:

### GENERAL PERSONAL DATA

| | |
|---|---|
| Name: | **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO**. |
| Date of Birth: | March 6, 1986 |
| Nationality: | U.S. national |
| Complexion: | white |
| Build: | robust |
| Eyes: | blue |
| Hair: | short, chestnut brown |
| Height: | about 1.80 meters tall |

The Government of Mexico is aware of the fact that **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. *JORGE PASILLAS JARAMILLO*, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO** is currently incarcerated at the Orange County, California Jail, United States of America, due to the fact that the accused is subject to criminal proceedings for the crime of homicied. He is identified as inmate number 2783021.

In compliance with Article 3; Article 10, paragraph 2) and paragraph 3), section a) and section b) of the Extradition Treaty signed between the United Mexican States and the United States of America, legalized and sworn copies of the following are attached herewith, along with English translations:

## EVIDENCE

I.  Sworn testimony provided by Erika Cabrera Becerra, Federal Public Prosecutor assigned to the General Directorate for International Proceedings at the Deputy Attorney General's Office for Legal and International Affairs at the Office of the Attorney General of Mexico, which is accompanied by the following evidence:

**EXHIBIT 1**   Arrest warrant, dated June 8, 2012, issued by the Fourth Judge for Criminal Matters in Tijuana, Baja California, within criminal investigation number 279/2012, against **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO**.

**EXHIBIT 2**   Resolution dated October 31, 2013, by which the Fourth Judge for Criminal Matters in Tijuana, Baja California determined that the date on which the statute of limitations will expire will be June 9, 2062. Thus the arrest warrant issue against **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO** is currently in effect and enforceable.

**EXHIBIT 3**   The  text of the legal provisions which define and punish the crime of aggravated homicide, as well as those which set the applicable sentence and the expiration of the statute of limitations regarding the crime, in effect at the time the events took place.

**EXHIBIT 4**   Photographs of **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO.**

**EXHIBIT 5**    A report with official document number TIN/519/2012, dated May 7, 2012, signed by officers from the Secretariat of Public Safety Óscar Martínez López and Héctor León Muñoz, in which they state that there was a radio dispatch from headquarters stemming from a report from the victim's mother and the discovery of the victim's body on the street.

**EXHIBIT 6**    A report with official document number 349/HOM.DOL./12, dated May 7, 2012, signed by officers from the Office of the Public Prosecutor of Baja California State, Oscar Rodríguez Andalón and Adriana E. Camacho Rocha, attesting to the discovery of the weapon with which Jorge Rangel Montes was wounded.

**EXHIBIT 7**    Relevant parts of a report with official document number 356/HOM.DOL./12, dated May 9, 2012, signed by officers from the Office of the Public Prosecutor of Baja California State, Oscar Rodríguez Andalón and Adriana E. Camacho Rocha, containing the deposition provided by Omar Javier Franco Pérez, a witness.

**EXHIBIT 8**    Deposition provided by witness Walter Ulises Rosales Heredia, dated May 7, 2012.

**EXHIBIT 9**    Deposition and identification proceedings by Edelmira Montes Hernández, a witness, dated May 9, 2012.

**EXHIBIT 10**    Death certificate, regarding the autopsy performed on the victim, Jorge Rangel Montes, dated May 7, 2012.

**EXHIBIT 11**    Field criminalistics report, dated May 7, 2012.

**EXHIBIT 12**    Identification proceedings with a photo line up by witness Edelmira Montes Hernández, dated November 4, 2013.

**EXHIBIT 13**    Identification proceedings with a photo line up by witness Edelmira Montes Hernández, dated June 2, 2014.

In compliance with Article 19 of the Extradition Treaty signed between the United Mexican States and the United States of America, the Mexican government requests the confiscation and surrender of all items, instruments, and objects of value, or any documents related to the crime, even if they were not used to carry out said crime, that were in the possession of **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO,** at the time of his arrest, or at a later date, which could be used as evidence within the criminal investigation being carried out against him.

Based on the above, I am enclosing in a duly legalized package, along with translations into English, the documents that indicate, apart from the crime attributed to the accused, the elements of said crime, the place, time and circumstances in which the crime was committed, and the information resulting from the criminal proceedings instituted by Mexican authorities to prove the crime and to determine the alleged culpability of **JORGE ANTONIO PASILLAS JARAMILLO.** The package, which also includes the arrest warrant for this person, is submitted to Your Excellency as the true information that it is.

In light of the above, Mister Secretary, and since this petition satisfies the conditions described in the Extradition Treaty currently in force between our two countries and, to the best of my knowledge, also satisfies the internal procedures of the Mexican State as well as the procedures established by the Extradition Treaty to process this **FORMAL REQUEST FOR INTERNATIONAL EXTRADITION,** I hereby request Your Excellency's kind mediation so as to secure from the competent U.S. authorities, including the judicial ones, the extradition of **JORGE ANTONIO PASILLAS JARAMILLO** from the United States to Mexico.

I thank you in advance for Your Excellency's valuable assistance concerning this matter. I avail myself of this opportunity to renew to Your Excellency the assurances of my highest and most distinguished consideration.

Eduardo Medina Mora
Ambassador

<div align="center">

**UNOFFICIAL TRANSLATION**

</div>

<div align="right">

03741

</div>

The Embassy of Mexico presents its compliments to the Department of State and makes reference to note number 06621, dated November 21st, 2014, containing the **FORMAL EXTRADITON REQUEST** of **JORGE ANTONIO PASILLAS JARAMILLO**, a.k.a **"JORGE PASILLAS JARAMILLO"**, a.k.a **"EL GEORGE A. PASILLAS"**, a.k.a **"GEORGE ANTHONY PASILLAS"**, a.k.a **"GEORGE EL GÜERO"**, alias **"EL GÜERO"**, who is wanted by Mexican authorities for his alleged perpetration of the crime of **AGGRAVATED HOMICIDE** *(HOMICIDIO CALIFICADO)*.

In this regard, the Embassy requests that the Department of State kindly act as the proper channel to convey to the Office of International Affairs at the Criminal Division of the Department of Justice, the following documents which have been duly certified and legalized and are attached herewith along with an English translation:

- Certified copy signed by the court clerk of the competent Court of the arrest warrant issued on June 8th, 2012 by the Fourth Judge for Criminal Matters of Tijuana, Baja California, within the criminal case number 279/2012.

- Legal provisions related to the crime allegedly committed by the accused and identification proceedings with a photo line-up carried out on June 2nd, 2014, by witness Edelmira Montes Hernandez.

The Embassy of Mexico avails itself of the opportunity to reiterate to the Department of State the assurances of its high and distinguished consideration.

<div align="right">

Washington, D.C., August 2nd, 2016

</div>

To the Department of State
Washington, D.C.

## UNOFFICIAL TRANSLATION

The Embassy of Mexico presents its compliments to the Department of State and refers to the **FORMAL EXTRADITION REQUEST** of **JORGE ANTONIO PASILLAS JARAMILLO** a.k.a. **"JORGE PASILLAS JARAMILLO"** a.k.a. **"EL GEORGE A. PASILLAS"** a.k.a. **"GEORGE ANTHONY PASILLAS"** a.k.a. **"GEORGE EL GÜERO"** a.k.a. **"EL GÜERO"**, who is wanted by Mexican authorities for his alleged perpetration of the crime of **AGGRAVATED HOMICIDE**, conveyed by means of Diplomatic Note No. 06621, dated November 21, 2014.

In this regard, the Embassy kindly requests the Department of State to transmit to the Office of International Affairs at the Criminal Division of the Department of Justice the attached information provided by the Office of the Attorney General in addition to that provided by means of Diplomatic Note No. 02316, dated May 21, 2019, consisting of the certified and legalized copies, along with their English translation, of the following documents:

- Sworn Affidavit by the Executive Assistant Prosecutor assigned to the General Division of International Proceedings of the Office of the Attorney General, dated December 11, 2023.

- Color photographs of the defendant.

The Embassy of Mexico avails itself of the opportunity to reiterate to the Department of State the assurances of its kind and distinguished consideration.

Washington, D.C., January 10, 2024.

To the Department of State
Washington, D.C.

**TREATIES AND OTHER INTERNATIONAL ACTS SERIES 9656**

# EXTRADITION

Treaty Between the
UNITED STATES OF AMERICA
and MEXICO

Signed at Mexico City May 4, 1978



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89–497, approved July 8, 1966 (80 Stat. 271; 1 U.S.C. 113)—

". . . the Treaties and Other International Acts Series issued under the authority of the Secretary of State shall be competent evidence . . . of the treaties, international agreements other than treaties, and proclamations by the President of such treaties and international agreements other than treaties, as the case may be, therein contained, in all the courts of law and equity and of maritime jurisdiction, and in all the tribunals and public offices of the United States, and of the several States, without any further proof or authentication thereof."

*For sale by the Superintendent of Documents, U.S. Government Printing Office, Washington, D.C. 20402. Subscription Price: $110; $27.50 additional for foreign mailing. Single copies vary in price. This issue $2.*

EXT_Pasillas Jaramillo_000014

# MEXICO

## Extradition

*Treaty signed at Mexico City May 4, 1978;*
*Ratification advised by the Senate of the United States of America*
  *November 30, 1979;*
*Ratified by the President of the United States of America Decem-*
  *ber 13, 1979;*
*Ratified by Mexico January 31, 1979;*
*Ratifications exchanged at Washington January 25, 1980;*
*Proclaimed by the President of the United States of America*
  *February 6, 1980;*
*Entered into force January 25, 1980.*

———————

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

CONSIDERING THAT:

The Extradition Treaty between the United States of America and the United Mexican States was signed at Mexico City on May 4, 1978, the text of which, in the English and Spanish languages, is hereto annexed;

The Senate of the United States of America by its resolution of November 30, 1979, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty;

The Treaty was ratified by the President of the United States of America on December 13, 1979, in pursuance of the advice and consent of the Senate, and was duly ratified on the part of the United Mexican States;

It is provided in Article 23 of the Treaty that the Treaty shall enter into force on the date of exchange of the instruments of ratification;

The instruments of ratification of the Treaty were exchanged at Washington on January 25, 1980; and accordingly the Treaty entered into force on that date;

Now, THEREFORE, I, Jimmy Carter, President of the United States of America, proclaim and make public the Treaty, to the end that it be observed and fulfilled with good faith on and after January 25,

EXT_Pasillas Jaramillo_000015

2

1980, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this sixth day of February in the year of our Lord one thousand nine hundred eighty and [SEAL] of the Independence of the United States of America the two hundred fourth.

JIMMY CARTER

By the President:
    CYRUS VANCE
        *Secretary of State*

TIAS 9656

3

## EXTRADITION TREATY BETWEEN
## THE UNITED STATES OF AMERICA AND
## THE UNITED MEXICAN STATES

The Government of the United States of America and the Government of the United Mexican States;

Desiring to cooperate more closely in the fight against crime and, to this end, to mutually render better assistance in matters of extradition;

Have agreed as follows:

### ARTICLE 1

#### Obligation to Extradite

1.- The Contracting Parties agree to mutually extradite, subject to the provisions of this Treaty, persons who the competent authorities of the requesting Party have charged with an offense or have found guilty of committing an offense, or are wanted by said authorities to complete a judicially pronounced penalty of deprivation of liberty for an offense committed within the territory of the requesting Party.

2.- For an offense committed outside the territory of the requesting Party, the requested Party shall grant extradition if:

        a) its laws would provide for the punishment of such an offense committed in similar circumstances, or

TIAS 9656

4

b)  the person sought is a national of the requesting Party, and that Party has jurisdiction under its own laws to try that person.

## ARTICLE 2

### Extraditable Offenses

1.- Extradition shall take place, subject to this Treaty, for wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year.

2.- If extradition is requested for the execution of a sentence, there shall be the additional requirement that the part of the sentence remaining to be served shall not be less than six months.

3.- Extradition shall also be granted for wilful acts which, although not being included in the Appendix, are punishable, in accordance with the federal laws of both Contracting Parties, by a deprivation of liberty the maximum of which shall not be less than one year.

4.- Subject to the conditions established in paragraphs 1, 2 and 3, extradition shall also be granted:

a)  For the attempt to commit an offense; conspiracy to commit an offense; or the participation in the execution of an offense; or

b)  When, for the purpose of granting jurisdiction to the Unit

TIAS 9656

5

ed States government, transportation of persons or prop erty, the use of the mail or other means of carrying out interstate or foreign commerce, is also an element of the offense.

## ARTICLE 3

### Evidence Required

Extradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party, either to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place or to prove that he is the person convicted by the courts of the requesting Party.

## ARTICLE 4

### Territorial Application

1.- For the purposes of this Treaty, the territory of a Contract ing Party shall include all the territory under the jurisdiction of that Con tracting Party, including airspace and territorial waters and vessels and aircraft registered in that Contracting Party if any such aircraft is in flight when the offense is committed.

2.- For the purposes of this Treaty, an aircraft shall be consid ered to be in flight at any time from the moment when all its external doors are closed following the embarkation until the moment when any such door is opened for disembarkation.

## ARTICLE 5

### Politicial and Military Offenses

1.- Extradition shall not be granted when the offense for which

TIAS 9656

6

it is requested is political or of a political character.

If any question arises as to the application of the foregoing para graph, the Executive authority of the requested Party shall decide.

2.- For the purpose of this Treaty, the following offenses shall not be considered to be offenses included in paragraph 1:

  a) The murder or other wilful crime against the life or physical integrity of a Head of State or Head of Govern ment or of his family, including attempts to commit such an offense.

  b) An offense which the Contracting Parties may have the obligation to prosecute by reason of a multilateral inter national agreement.

3.- Extradition shall not be granted when the offense for which extradition is requested is a purely military offense.

ARTICLE 6

Non bis in idem

Extradition shall not be granted when the person sought has been prosecuted or has been tried and convicted or acquitted by the requested Party for the offense for which extradition is requested.

ARTICLE 7

Lapse of Time

Extradition shall not be granted when the prosecution or the en-

TIAS 9656

7

forcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party.

## ARTICLE 8

### Capital Punishment

When the offense for which extradition is requested is punishable by death under the laws of the requesting Party and the laws of the requested Party do not permit such punishment for that offense, extradition may be refused unless the requesting Party furnishes such assurances as the requested Party considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed.

## ARTICLE 9

### Extradition of Nationals

1.- Neither Contracting Party shall be bound to deliver up its own nationals, but the executive authority of the requested Party shall, if not prevented by the laws of that Party, have the power to deliver them up if, in its discretion, it be deemed proper to do so.

2.- If extradition is not granted pursuant to paragraph 1 of this Article, the requested Party shall submit the case to its competent authorities for the purpose of prosecution, provided that Party has jurisdiction over the offense.

TIAS 9656,

EXT_Pasillas Jaramillo_000021

8

## ARTICLE 10

### Extradition Procedures and Required Documents

1.- The request for extradition shall be made through the diplomatic channel.

2.- The request for extradition shall contain the description of the offense for which extradition is requested and shall be accompanied by:

    a)  A statement of the facts of the case;

    b)  The text of the legal provisions describing the essential elements of the offense;

    c)  The text of the legal provisions describing the punishment for the offense;

    d)  The text of the legal provisions relating to the time limit on the prosecution or the execution of the punishment of the offense;

    e)  The facts and personal information of the person sought which will permit his identification and, where possible, information concerning his location.

3.- In addition, when the request for extradition relates to a person who has not yet been convicted, it shall be accompanied by:

    a)  A certified copy of the warrant of arrest issued by a judge or other judicial officer of the requesting Party;

TIAS 9656

9

b) Evidence which, in accordance with the laws of the re-
quested Party, would justify the apprehension and commit
ment for trial of the person sought if the offense had
been committed there.

4.- When the request for extradition relates to a convicted person,
it shall be accompanied by a certified copy of the judgment of conviction
imposed by a court of the requesting Party.

If the person was found guilty but not sentenced, the extradition
request shall be accompanied by a certification to that effect and a cer
tified copy of the warrant of arrest.

If such person has already been sentenced, the request for extra
dition shall be accompanied by a certification of the sentence imposed
and a statement indicating which part of the sentence has not been car-
ried out.

5.- All the documents that must be presented by the requesting
Party in accordance with the provisions of this Treaty shall be accom-
panied by a translation in the language of the requested Party.

6.- The documents which, according to this Article, shall accom
pany the request for extradition, shall be received in evidence when:

a) In the case of a request emanating from the United States,
they are authenticated by the official seal of the Depart-
ment of State and legalized by the manner prescribed by
the Mexican law;

TIAS 9656

10

b) In the case of a request emanating from the United Mexican States, they are certified by the principle diplomatic or consular officer of the United States in Mexico.

ARTICLE 11

Provisional Arrest

1.- In the case of urgency, either Contracting Party may request, through the diplomatic channel, the provisional arrest of an accused or convicted person. The application shall contain a description of the offense for which the extradition is requested, a description of the person sought and his whereabouts, an undertaking to formalize the request for extradition, and a declaration of the existence of a warrant of arrest issued by a competent judicial authority or a judgment of conviction issued against the person sought.

2.- On receipt of such a request, the requested Party shall take the necessary steps to secure the arrest of the person claimed.

3.- Provisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person claimed, the executive authority of the requested Party has not received the formal request for extradition and the documents mentioned in Article 10.

4.- The fact that the provisional arrest is terminated pursuant to paragraph 3 shall not prejudice the extradition of the person sought if the request for extradition and the necessary documents mentioned in Article 10 are delivered at a later date.

TIAS 9656

11

## ARTICLE 12

### Additional Evidence

If the Executive authority of the requested Party considers that the evidence furnished in support of the request for extradition is not sufficient in order to fulfill the requirements of this Treaty, that Party shall request the presentation of the necessary additional evidence.

## ARTICLE 13

### Procedure

1.- The request for extradition shall be processed in accordance with the legislation of the requested Party.

2.- The requested Party shall make all arrangements necessary for internal procedures arising out of the request for extradition.

3.- The competent legal authorities of the requested Party shall be authorized to employ all legal means within their power to obtain from the judicial authorities the decisions necessary for the resolution of the request for extradition.

## ARTICLE 14

### Decision and Surrender

1.- The requested Party shall promptly communicate to the requesting Party its decision on the request for extradition.

2.- In the case of complete or partial rejection of a request for extradition, the requested Party shall give the reasons on which it was based.

**TIAS 9656**

12

3.- If the extradition is granted, the surrender of the person sought shall take place within such time as may be prescribed by the laws of the requested Party. The competent authorities of the Contracting Parties shall agree on the date and place of the surrender of the person sought.

4.- If the competent authority has issued the warrant or order for the extradition of the person sought and he is not removed from the territory of the requested Party within the prescribed period, he shall be set at liberty and the requested Party may subsequently refuse to extradite him for the same offense.

ARTICLE 15

Delayed Surrender

The requested Party, after granting the extradition, may defer the surrender of the person sought when that person is being proceeded against or is serving a sentence in the territory of the requested Party for a different offense, until the conclusion of the proceeding or the full execution of the punishment that has been imposed.

ARTICLE 16

Requests for extradition made by Third States

The requested Party, in the case of receiving requests from the other Contracting Party and from one or more third States for the extradition of the same person, be it for the same offense or for different offenses, shall decide to which requesting State it shall grant the ex

13

tradition of that person.

### ARTICLE 17

#### Rule of Speciality

1.- A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted nor be extradited by that Party to a third State unless:

    a)  He has left the territory of the requesting Party after his extradition and has voluntarily returned to it;

    b)  He has not left the territory of the requesting Party within 60 days after being free to do so; or

    c)  The requested Party has given its consent to his detention, trial, punishment or extradition to a third State for an offense other than that for which the extradition was granted.

These stipulations shall not apply to offenses committed after the extradition.

2.- If, in the course of the procedure, the classification of the offense is changed for which the person requested was extradited, he shall be tried and sentenced on the condition that the offense, in its new legal form:

    a)  Is based on the same group of facts established in the request for extradition and in the documents presented in its support; and

**TIAS 9656**

14

b)  Is punishable with the same maximum sentence as the
crime for which he was extradited or with a lesser
sentence.

### ARTICLE 18

#### Summary Extradition

If the person sought informs the competent authorities of the requested Party that he agrees to be extradited, that Party may grant his extradition without further proceedings, and shall take all measures permitted under its laws to expedite the extradition. In such cases Article 17 shall not be applicable.

### ARTICLE 19

#### Surrender of Property

1.- To the extent permitted under the law of the requested Party and subject to the rights of third parties, which shall be duly respected, all articles, instruments, objects of value or documents relating to the offense, whether or not used for its execution, or which in any other manner may be material evidence for the prosecution, shall be surrendered upon the granting of the extradition even when extradition cannot be effected due to the death, disappearance, or escape of the accused.

2.- The requested Party may condition the surrender of articles upon a satisfactory assurance from the requesting Party that the articles will be returned to the requested Party as soon as possible.

TIAS 9656

EXT_Pasillas Jaramillo_000028

15

## ARTICLE 20

Transit

1.- The right to transport through the territory of one of the Contracting Parties a person who is not a national of that Contracting Party surrendered to the other Contracting Party by a third State shall be granted on presentation made through the diplomatic channel of a certified copy of the decision on extradition, provided that reasons of public order are not opposed to the transit.

2.- The authorities of the transit State shall be in charge of the custody of the extradited person while that person is in its territory.

3.- The Party to which the person has been extradited shall reimburse the State through whose territory such person is transported for any expenses incurred by the latter in connection with such transportation.

## ARTICLE 21

Expenses

The requested Party shall bear the expenses of the arrangements referred to in Article 13, with the exception that the expenses incurred for the translation of documents and, if applicable, for the transportation of the person ordered extradited shall be paid by the requesting Party.

## ARTICLE 22

Scope of Application

1.- This Treaty shall apply to offenses specified in Article 2 com

TIAS 9656

65-773 O - 80 - 3 : QL 3

16

mitted before and after this Treaty enters into force.

2.- Requests for extradition that are under process on the date of the entry into force of this Treaty, shall be resolved in accordance with the provisions of the Treaty of 22 February, 1899,[1] and the Additional Conventions on Extradition of 25 June 1902,[2] 23 December 1925,[3] and 16 August 1939.[4]

### ARTICLE 23

Ratification, Entry into Force, Denunciation

1.- This Treaty shall be subject to ratification; the exchange of instruments of ratification shall take place in Washington as soon as possible.

2.- This Treaty shall enter into force on the date of exchange of the instruments of ratification.

3.- On entry into force of this Treaty, the Treaty of Extradition of 22 February 1899 and the Additional Conventions on Extradition of 25 June 1902, 23 December 1925 and 16 August 1939 between the United States of America and the United Mexican States, shall cease to have effect without prejudice to the provisions of Article 22.

4.- Either Contracting Party may terminate this Treaty by giving notice to the other Party. The termination shall take effect six months after the receipt of such notice.

---

[1] TS 242 ; 31 Stat. 1818.
[2] TS 421 ; 9 Bevans 918.
[3] TS 741 ; 44 Stat. 2409.
[4] TS 967 ; 55 Stat. 1133.

TIAS 9656

17

Done in two originals, in the English and Spanish languages, both equally authentic, at Mexico City this fourth day of May, one thousand nine hundred seventy-eight.

[¹]

For the Government of the
United States of America

[²]

For the Government of the
United Mexican States

---

¹ Cyrus Vance.
² S. Roel.

**TIAS 9656**

18

APPENDIX

1. Murder or manslaughter; abortion.

2. Malicious wounding or injury.

3. Abandonment of minors or other dependents when there is danger of injury or death.

4. Kidnapping; child stealing; abduction; false imprisonment.

5. Rape; statutory rape; indecent assault; corruption of minors, including unlawful sexual acts with or upon children under the age of consent.

6. Procuration; promoting or facilitating prostitution.

7. Robbery; burglary; larceny.

8. Fraud.

9. Embezzlement.

10. An offense against the laws relating to counterfeiting and forgery.

11. Extortion.

12. Receiving or transporting any money, valuable securities, or other property knowing the same to have been unlawfully obtained.

13. Arson; malicious injury to property.

14. Offenses against the laws relating to the traffic in, possession, production, manufacture, importation or exportation of dangerous drugs and chemicals, including narcotic drugs, cannabis, psychotropic drugs, opium, cocaine, or their derivatives.

15. Offenses against the laws relating to the control of poisonous chemicals or substances injurious to health.

TIAS 9656

EXT_Pasillas Jaramillo_000032

19

16. Piracy.

17. Offenses against the safety of means of transportation includ
    ing any act that would endanger a person in a means of
    transportation.

18. An offense relating to unlawful seizure or exercise of control
    of trains, aircraft, vessels, or other means of transportation.

19. Offenses against the laws relating to prohibited weapons, and
    the control of firearms, ammunition, explosives, incendiary
    devices or nuclear materials.

20. An offense against the laws relating to international trade and
    transfers of funds or valuable metals.

21. An offense against the laws relating to the importation, expor
    tation, or international transit of goods, articles, or merchan
    dise, including historical or archeological items.

22. Violations of the customs laws.

23. Offenses against the laws relating to the control of companies,
    banking institutions, or other corporations.

24. Offenses against the laws relating to the sale of securities, in
    cluding stocks, bonds and instruments of credit.

25. Offenses against the laws relating to bankruptcy or rehabilita-
    tion of a corporation.

26. Offenses against the laws relating to prohibition of monopoly
    or unfair transactions.

27. Offenses against the laws relating to protection of industrial
    property or copyright.

28. Offenses against the laws relating to abuse of official authority.

**TIAS 9656**

EXT_Pasillas Jaramillo_000033

20

29. Bribery, including soliciting, offering and accepting bribes.

30. Perjury; false statments to any governmental authority. Sub ornation of perjury or false statements.

31. Offenses against the laws relating to obstruction of justice, including harboring criminals and suppressing evidence.

TIAS 9656

## UNOFFICIAL TRANSLATION

06621

Washington, D.C., November 21ˢᵗ, 2014

Mr. Secretary:

On behalf of my Government, I have the honor to refer to the Extradition Treaty signed between the United Mexican States and the United States of America, in order to request from Your Excellency's Government, on the basis of Article 2, and particularly Article 10 of the Extradition Treaty, the **FORMAL REQUEST FOR INTERNATIONAL EXTRADITION** of JORGE **ANTONIO PASILLAS JARAMILLO, a.k.a "JORGE PASILLAS JARAMILLO", a.k.a "EL GEORGE A. PASILLAS", a.k.a "GEORGE ANTHONY PASILLAS", a.k.a "GEORGE EL GÜERO", ak.a. "EL GÜERO"**, who is wanted by Mexican authorities for his alleged perpetration of the crime of **AGGRAVATED HOMICIDE *(HOMICIDIO CALIFICADO)*.**

It is known that **JORGE ANTONIO PASILLAS JARAMILLO** is currently incarcerated in the Orange County, California Jail, United States of America.

(ARREST WARRANT…)

To His Excellency
John Forbes Kerry
Secretary of State
Washington, D.C.

## ARREST WARRANT

On June 8, 20102, the Fourth Judge for Ciminal Matters in Tijuana, Baja California, issued an arrest warrant against **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO**, within criminal investigation number 279/2012,for his alleged perpetration of the crime of **AGGRAVATED HOMICIDE (*HOMICIDIO CALIFICADO*)**.  Said crime is covered under Article 123, in relation to Article 148, section II, and punishable under Article 126 of the Penal Code for Baja California State, in effect at the time the events took place.

The conduct attributed to the defendant, for which the arrest warrant was issued, is punishable under the laws of both countries with a maximum prison sentence of no less than one year, as established by Article 2, paragraph 1 and paragraph 4 of the Extradition Treaty between the United Mexican States and the United States of America, in relation to item 1 of the Treaty's Appendix.

## STATUTE OF LIMITATIONS

By means of a judicial resolution , dated October 31, 2013, the Fourth Judge for Criminal Matters in Tijuana, Baja California determined that the statute of limitations for said criminal act will expire on June 9, 2062.  Thus, the arrest warrant issued against **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO** is currently in effect and enforceable.

The elements constituting the crime, which led the Fourth Penal Judge in Tijuana, Baja California to issue the arrest warrant for **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO** (hereinafter **JORGE ANTONIO PASILLAS JARAMILLO**), are based on, among other things, the following:

## FACTS

On May 7, 2012, at about 2:00 a.m., inside the house located at *Tule* street, number 1325, apartment number 8, *Colonia Praderas de La Mesa*, Tijuana, Baja California, **JORGE ANTONIO PASILLAS JARAMILLO** stabbed Jorge Rangel Montes in his back, face and hands.  The victim fled the scene, heading to the house where his mother was, located at number 1314 of the same street, in order to save himself.  However, he died finally.

Afterwards, Municipal Police officers were alerted about what had happend by a radio dispatch from headquarters, so they went to *Tule* street, number 1314, *Colonia Praderas de La Mesa*, Tijuana, Baja California. There, they found the lifeless body of Jorge Rangel Montes laying on the sidewalk. At that location was the victim's mother, Edelmira Montes Hernández.

On May 9, 2012, Edelmira Montes Hernández stated before the Investigating Public Prosecutor for Homicides at the Office of the Attorney General of Baja California State that, at about 2:00 a.m., on May 7, 2012, she was at the house of her friend, Rosa Amelia, when she heard her son, Jorge Rangel Montes, shouting "Mom, Rocío (referring to her friend, Rosa Amelia), *Chino*. Help me. I'm dying." So, when she went outside, she noticed that her son was sitting on the sidewalk and he asked her to embrace him and for someone to get an ambulance. She asked him who had wounded him and he said "It was *George el güero, el George, El George*. He cut me up." (referring to the fact that he had wounded him using a knife). After having assaulted the victim, the defendant headed to the United States of America because he is a U.S. citizen.

Therefore, Edelmira Montes Hernández called 066 [TRANSLATOR'S NOTE: the Mexican equivalent of the USA's 911] and requested an ambulance. The paramedics treated the victim but soon they told her that her son had already died.

Edelmira Montes Hernández stated that the person to whom her son was referring before he died was **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO,** whom she has known ever since he was a child because he was her son's friend since childhood.

Additionally, Walter Ulises Rosales Heredia provided his statement before Investigating Public Prosecutor for Homicides at the Office of the Attorney General of Baja California State, indicating that, for about the previous month, he had been living with Jorge Rangel Montes.

The deponent stated that on Sunday, May 6, 2012, at about 5:00 p.m., he was at the home located at *Tule* street, number 1325, Apartment 8, at *Colonia Praderas de La Mesa*, Tijuana, Baja California, accompanied by Jorge Rangel Montes. A few minutes later, George (referring to **JORGE ANTONIO PASILLAS JARAMILLO**) arrived and they began to use drugs.

In view of the fact that Jorge Rangel Montes would become violent when he used drugs, the deponent decided to smoke a joint, and at about 11:00 p.m., he went to his bedroom to rest, in order to avoid any problems. At about 2:00 a.m., on May 7, 2012, he woke up when he heard shouting between Jorge Rangel Montes and *El Güero* (referring to **JORGE ANTONIO PASILLAS JARAMILLO**) who were arguing. When he came out of his room, he realized that Jorge was pushing *El Güero* (referring to **JORGE ANTONIO PASILLAS JARAMILLO**) towards the apartment entrance door. He asked them what was going on. Jorge replied that he should not get

involved and told him to go to his room and close the door. So, he decided to go back into his room. Later on, he heard a neighbor shout "Stop arguing. If you can't handle that shit, stop taking drugs". Afterwards, he added "anyway, it's your argument" and he heard, in the end, the door closing.

A half an hour later, the municipal police arrived at the house and informed him of Jorge Rangel Montes' death and they asked him to accompany them in order for him to provide his deposition.

Officers from the Office of the Public Prosecutor in Tijuana, Baja California talked to Omar Javier Franco Pérez, a neighbor of the victim, who lives at *Calle Tule*, number 1325, Apartment 7, *Fraccionamiento Praderas de La Mesa*, in that town. Omar Javier Franco Pérez stated that his neighbor in Apartment 8 was Jorge Rangel Montes, a drug addict. He knew that his childhood friend, whose nickname was *El George* or *El Güero*, visited him every day.

In his deposition, Omar Javier Franco Pérez stated that, on Sunday, May 6, 2012, he noticed that inside Jorge Rangel's were Walter and *El George* or *El Güero*. Moments later, he went out to see his girlfriend and when he returned around 10:00 p.m., he saw Jorge and *El George* or *El Güero* in the hallways of the apartments. They were under the influence of drugs, with an aggressive attitude. So, he immediately entered his house.

Also, Omar Javier Franco Pérez stated that, at about 1:30 a.m., on May 7, 2012, he heard a loud argument and identified the voices as those belonging to *El George* or *El Güero* and Jorge. Jorge was heard shouting, among other thinsgs "Leave me alone. That's enough." He heard them struggling and punching each other. Finally, at 3:00 a.m., Municipal Police officers arrived at his house, informing him that his neighbor, Jorge, had been killed and that they were searching for the alleged pepetrator, *George*, a.k.a. *El Güero*. Omar Javier Franco Pérez stated that he had only heard them punching each other but he was not aware of his whereabouts.

Officers from the Office of the Public Prosecutor of Baja California State included in their report, dated May 7, 2012, under official document number 349/HOM.DOL./12, the interview they conducted with Walter Ulises Rosales Heredia, a witness who gave them two photos of **JORGE ANTONIO PASILLAS JARAMILLO**. In that same report, they stated they had found the weapon with which Jorge Rangel Montes was mortally wounded.

In that regard, from the death certificate, dated May 7, 2012, regarding the autopsy performed by the medical expert José Luis Arguello Montiel, it is concluded that the cause of death of Jorge Rangel Montes was secondary hypovolemic shock due to penetrating wounds to the neck, thorax and abdomen produced by a sharp, pointy object.

From the field criminalistics report, it is concluded that the location where Jorge Rangel Montes died was on the sidewalk where the house on *Tule* street, number 1314, *Colonia Praderas de La Mesa*, Tijuana, Baja California is located. Considerin *the inditia* steaming from said location, it is inferred that the place where the events occurred is on the same street, at number 1325 (the victim's home), where the sharp, pointy weapon with which the injuries inflicted to Jorge Rangel Montes was found. From there, the victim was able to move to the first house mentioned.

Additionally, Edelmira Montes Hernández recognized **JORGE ANTONIO PASILLAS JARAMILLO** through a photo ID lineup.

In accordance with Article 10, paragraph 2, section e) of the Extradition Treaty between the United Mexican States and the United States of Amercia, the following are the general personal data available on the defendant:

## GENERAL PERSONAL DATA

| | |
|---|---|
| Name: | **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO.** |
| Date of Birth: | March 6, 1986 |
| Nationality: | U.S. national |
| Complexion: | white |
| Build: | robust |
| Eyes: | blue |
| Hair: | short, chestnut brown |
| Height: | about 1.80 meters tall |

The Government of Mexico is aware of the fact that **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. *JORGE PASILLAS JARAMILLO*, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO** is currently incarcerated at the Orange County, California Jail, United States of America, due to the fact that the accused is subject to criminal proceedings for the crime of homicied. He is identified as inmate number 2783021.

In compliance with Article 3; Article 10, paragraph 2) and paragraph 3), section a) and section b) of the Extradition Treaty signed between the United Mexican States and the United States of America, legalized and sworn copies of the following are attached herewith, along with English translations:

## EVIDENCE

I.  Sworn testimony provided by Erika Cabrera Becerra, Federal Public Prosecutor assigned to the General Directorate for International Proceedings at the Deputy Attorney General's Office for Legal and International Affairs at the Office of the Attorney General of Mexico, which is accompanied by the following evidence:

**EXHIBIT 1**    Arrest warrant, dated June 8, 2012, issued by the Fourth Judge for Criminal Matters in Tijuana, Baja California, within criminal investigation number 279/2012, against **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO**.

**EXHIBIT 2**    Resolution dated October 31, 2013, by which the Fourth Judge for Criminal Matters in Tijuana, Baja California determined that the date on which the statute of limitations will expire will be June 9, 2062. Thus the arrest warrant issue against **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO** is currently in effect and enforceable.

**EXHIBIT 3**    The  text of the legal provisions which define and punish the crime of aggravated homicide, as well as those which set the applicable sentence and the expiration of the statute of limitations regarding the crime, in effect at the time the events took place.

**EXHIBIT 4**    Photographs of **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO.**

**EXHIBIT 5**    A report with official document number TIN/519/2012, dated May 7, 2012, signed by officers from the Secretariat of Public Safety Óscar Martínez López and Héctor León Muñoz, in which they state that there was a radio dispatch from headquarters stemming from a report from the victim's mother and the discovery of the victim's body on the street.

**EXHIBIT 6**    A report with official document number 349/HOM.DOL./12, dated May 7, 2012, signed by officers from the Office of the Public Prosecutor of Baja California State, Oscar Rodríguez Andalón and Adriana E. Camacho Rocha, attesting to the discovery of the weapon with which Jorge Rangel Montes was wounded.

**EXHIBIT 7**    Relevant parts of a report with official document number 356/HOM.DOL./12, dated May 9, 2012, signed by officers from the Office of the Public Prosectuor of Baja California State, Oscar Rodríguez Andalón and Adriana E. Camacho Rocha, containing the deposition provided by Omar Javier Franco Pérez, a witness.

**EXHIBIT 8**    Deposition provided by witness Walter Ulises Rosales Heredia, dated May 7, 2012.

**EXHIBIT 9**    Deposition and identification proceedings by Edelmira Montes Hernández, a witness, dated May 9, 2012.

**EXHIBIT 10**    Death certificate, regarding the autopsy performed on the victim, Jorge Rangel Montes, dated May 7, 2012.

**EXHIBIT 11**    Field criminalistics report, dated May 7, 2012.

**EXHIBIT 12**    Identification proceedings with a photo line up by witness Edelmira Montes Hernández, dated November 4, 2013.

**EXHIBIT 13**    Identification proceedings with a photo line up by witness Edelmira Montes Hernández, dated June 2, 2014.

In compliance with Article 19 of the Extradition Treaty signed between the United Mexican States and the United States of America, the Mexican government requests the confiscation and surrender of all items, instruments, and objects of value, or any documents related to the crime, even if they were not used to carry out said crime, that were in the possession of **JORGE ANTONIO PASILLAS JARAMILLO, a.k.a. JORGE PASILLAS JARAMILLO, a.k.a. EL GEORGE A. PASILLAS, a.k.a. GEORGE ANTHONY PASILLAS, a.k.a. GEORGE EL GÜERO, a.k.a. EL GÜERO,** at the time of his arrest, or at a later date, which could be used as evidence within the criminal investigation being carried out against him.

Based on the above, I am enclosing in a duly legalized package, along with translations into English, the documents that indicate, apart from the crime attributed to the accused, the elements of said crime, the place, time and circumstances in which the crime was committed, and the information resulting from the criminal proceedings instituted by Mexican authorities to prove the crime and to determine the alleged culpability of **JORGE ANTONIO PASILLAS JARAMILLO.** The package, which also includes the arrest warrant for this person, is submitted to Your Excellency as the true information that it is.

In light of the above, Mister Secretary, and since this petition satisfies the conditions described in the Extradition Treaty currently in force between our two countries and, to the best of my knowledge, also satisfies the internal procedures of the Mexican State as well as the procedures established by the Extradition Treaty to process this **FORMAL REQUEST FOR INTERNATIONAL EXTRADITION,** I hereby request Your Excellency's kind mediation so as to secure from the competent U.S. authorities, including the judicial ones, the extradition of **JORGE ANTONIO PASILLAS JARAMILLO** from the United States to Mexico.

I thank you in advance for Your Excellency's valuable assistance concerning this matter. I avail myself of this opportunity to renew to Your Excellency the assurances of my highest and most distinguished consideration.

Eduardo Medina Mora
Ambassador

06621

Washington, D.C., a  21 de noviembre de 2014

Señor Secretario:

En nombre de mi Gobierno, tengo a honra referirme al Tratado de Extradición suscrito entre los Estados Unidos Mexicanos y los Estados Unidos de América, para presentar ante el Gobierno de Vuestra Excelencia, con base en el Artículo 2 y, en particular, con fundamento en el Artículo 10 del citado Tratado, la **SOLICITUD FORMAL DE EXTRADICIÓN INTERNACIONAL** de **JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "EL GEORGE A. PASILLAS", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE EL GÜERO", alias "EL GÜERO"**, a quien las autoridades mexicanas reclaman por ser probable responsable de la comisión del delito de **HOMICIDIO CALIFICADO**.

Se tiene conocimiento que el reclamado se encuentra recluido en la prisión del Condado de Orange, California, Estados Unidos de América.

(ORDEN DE APREHENSIÓN…)

Al Excelentísimo Señor
John Forbes Kerry
Secretario de Estado
Washington, D.C.



## ORDEN DE APREHENSIÓN

El 8 de junio de 2012, la Juez Cuarto Penal de Tijuana, Baja California libró orden de aprehensión en contra de **JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "EL GEORGE A. PASILLAS", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE EL GÜERO", alias "EL GÜERO"**, dentro de la causa penal número 279/2012, por su probable responsabilidad en la comisión del delito de **HOMICIDIO CALIFICADO**. Dicho ilícito se encuentra previsto por los artículos 123, en relación con el 148, fracción II, y sancionado por el diverso 126, todos del Código Penal para el Estado de Baja California, vigente en la época en que sucedieron los hechos.

La conducta que se atribuye al reclamado, por la que se libró la orden de aprehensión, es punible conforme a la legislación de ambos países con pena privativa de libertad cuyo máximo no es menor de un año, como lo establece el artículo 2, numeral 1 del Tratado de Extradición entre los Estados Unidos Mexicanos y los Estados Unidos de América, en relación con la cláusula 1 de su apéndice.

## PRESCRIPCIÓN

Mediante certificación judicial del 31 de octubre de 2013, la Juez Cuarto Penal de Tijuana, Baja California, determinó que la fecha en que operará la prescripción de la acción penal a favor del reclamado será el 9 de junio de 2062, por lo que la orden de aprehensión librada en contra de **JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "EL GEORGE A. PASILLAS", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE EL GÜERO", alias "EL GÜERO"**, se encuentra vigente y ejecutable.

Los elementos constitutivos del delito que motivaron a la Juez Cuarto Penal de Tijuana, Baja California, para librar el mandamiento judicial en contra de **JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "EL GEORGE A. PASILLAS", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE EL GÜERO", alias "EL GÜERO"** (en adelante **JORGE ANTONIO PASILLAS JARAMILLO**), tienen como base, entre otros, los siguientes:

## HECHOS

El 7 de mayo de 2012, aproximadamente a las 2:00 horas en el interior del domicilio ubicado en la calle Tule número 1325, departamento número 8, colonia Praderas de La Mesa, Tijuana, Baja California, **JORGE ANTONIO PASILLAS JARAMILLO** apuñaló en la espalda, rostro y manos a Jorge Rangel Montes, quien huyó del lugar rumbo a la casa donde estaba su madre, ubicada en el número 1314 de la misma calle, para intentar ponerse a salvo. Sin embargo, finalmente perdió la vida.



Posterioirmente, oficiales de la Policía Municipal fueron alertados de lo sucedido por la central de radio, por lo que se trasladaron a la calle Tule número 1314, colonia Praderas de La Mesa, en Tijuana, Baja California, encontrando tirado en la banqueta el cuerpo sin vida de Jorge Rangel Montes. En el lugar se encontraba Edelmira Montes Hernández, madre de la víctima.

Edelmira Montes Hernández declaró el 9 de mayo de 2012 ante el Agente del Ministerio Público Investigador de Delitos de Homicidios Dolosos de la Procuraduría General de Justicia de Baja California que, aproximadamente a las 2:00 horas del 7 de mayo de 2012 se encontraba en casa de su amiga Rosa Amelia, cuando escuchó gritos de su hijo Jorge Rangel Montes diciendo "mamá, Rocío (refiriéndose a su amiga Rosa Amelia), Chino ayúdenme, me estoy muriendo". Al salir se percató que su hijo se encontraba sentado en la banqueta y este le pidió que lo abrazara y que llamaran a una ambulancia. Entonces, la declarante le preguntó que quién lo había lesionado, a lo que la víctima respondió "fue el George el güero, el George, el George, me filereó" (refiriendo a que lo había lesionado con arma blanca). Después de agredir a la víctima, el reclamado se trasladó a Estados Unidos de América, ya que es ciudadano estadounidense.

En consecuencia, Edelmira Montes Hernández llamó al 066 y solicitó una ambulancia. Los paramédicos le brindaron atención a la víctima, pero de inmediato le informaron que su hijo ya había fallecido.

Edelmira Montes Hernández manifestó que la persona a la que se refirió su hijo antes de fallecer se llama **JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE A. PASILLAS", alias "EL GÜERO"**, a quien conoce desde que era niño, porque era amigo de su hijo desde la infancia.

Por otro lado, Walter Ulises Rosales Heredia manifestó ante el Agente del Ministerio Público Investigador de Delitos de Homicidios Dolosos de la Procuraduría General de Justicia de Baja California que, desde hacía aproximadamente un mes, vivía con Jorge Rangel Montes.

El deponente manifestó que el domingo 6 de mayo de 2012, aproximadamente a la 17:00 horas se encontraba en el domicilio ubicado en la calle de Tule 1325, interior 8 de la colonia Praderas de La Mesa, Tijuana, Baja California, en compañía de Jorge Rangel Montes. A los pocos minutos, George (refiréndose a **JORGE ANTONIO PASILLAS JARAMILLO**) llegó al citado lugar y comenzaron a drogarse.

En virtud de que Jorge Rangel Montes se tornaba violento cuando se drogaba, el declarante decidió fumarse un cigarro de marihuana y alrededor de las 23:00 horas se

retiró a descansar a su habitación para evitar problemas. Aproximadamente a las 2:00 horas del 7 de mayo de 2012, el declarante se despertó al escuchar los gritos de Jorge Rangel Montes y de "El Güero" (refiréndose a **JORGE ANTONIO PASILLAS JARAMILLO**) quienes discutían, por lo que al salir de su habitación se percató que Jorge aventaba a "El Güero" (refiréndose a **JORGE ANTONIO PASILLAS JARAMILLO**) hacia la puerta de acceso del departamento. Al preguntarles qué estaba sucediendo, Jorge le respondió que no se metiera y que se encerrara, por lo que decidió regresar a su habitación. Después, escuchó a un vecino que les gritaba que "dejaran de discutir, que si no podían controlar esa madre, que dejaran el vicio", después agregó "total, es su bronca", escuchando finalmente que cerraban una puerta.

Después de media hora, llegaron al inmueble policías municipales, quienes le informaron de la muerte de Jorge Rangel Montes y le pidieron que los acompañara para que rindiera su declaración.

Agentes de la policía ministerial de Tijuana, Baja California, entrevistaron a Omar Javier Franco Pérez, vecino de la víctima, quien habita en el departamento número 7 del número 1325 de la calle Tule, Fraccionamiento Praderas de La Mesa, en esa ciudad. Omar Javier Franco Pérez manifestó que su vecino del departamento 8 era Jorge Rangel Montes, quien era adicto a las drogas y que le consta que todos los días lo visitaba su amigo de la infancia apodado "el George o el Güero".

Omar Javier Franco Pérez refirió en su declaración que el domingo 6 de mayo de 2012 observó en el interior del departamento de Jorge Rangel a Walter y a "el George o el Güero", momentos después salió a visitar a su novia y a su regreso aproximadamente a las 22:00 horas, se encontró en el pasillo de los departamentos a Jorge y a "el George" o "el Güero" drogados y con actitud agresiva, por lo que de inmediato entró a su vivienda.

Asimismo, Omar Javier Franco Pérez manifestó que alrededor de la 1:30 horas del 7 de mayo de 2012 escuchó una fuerte discusión, identificando las voces de "el George o el Güero" y de Jorge. Éste último gritaba entre otras cosas "ya déjame, ya estuvo", escuchando que forcejeaban y que se golpeaban. Finalmente, a las 3:00 horas llegaron a su domicilio oficiales de la policía municipal, informándole que a su vecino Jorge lo habían matado y que buscaban al supuesto agresor "George, alias el Güero". Omar Javier Franco Pérez refirió que sólo escuchó que se pelearon a golpes, pero que desconocía su paradero.

Por otro lado, Agentes de la Policía Ministerial del Estado de Baja California hicieron constar en su informe del 7 de mayo de 2012 con oficio número 349/HOM.DOL./12, la entrevista con el declarante Walter Ulises Rosales Heredia, quien les proporcionó dos fotografías de **JORGE ANTONIO PASILLAS JARAMILLO**. En el



mismo informe se hizo constar el hallazgo del arma con la que Jorge Rangel Montes fue herido de muerte

Al respecto, del certificado de necropsia de fecha 7 de mayo de 2012, realizado por el perito médico legista José Luis Arguello Montiel, se desprende que la causa de la muerte de Jorge Rangel Montes fue choque hipovolémico secundario a heridas penetrantes en cuello, tórax y abdomen producidas por instrumento punzocortante.

Del dictamen en materia de criminalística de campo se desprende que donde cesó la vida de Jorge Rangel Montes fue en la banqueta del domicilio ubicado en la calle Tule número 1314, colonia Praderas de La Mesa, Tijuana, Baja California. Tomando en consideración los indicios distantes de dicho lugar, se infiere que el lugar donde sucedieron los hechos se encuentra ubicado en la misma calle, en el número 1325 (domicilio de la víctima), donde se encontró el arma punzocortante con la que fue lesionado Jorge Rangel Montes, quien después se desplazó al primer inmueble mencionado.

Por otro lado, Edelmira Montes Hernández, reconoció en rueda fotográfica a **JORGE ANTONIO PASILLAS JARAMILLO**.

De conformidad con el artículo 10, numeral 2, inciso e) del Tratado de Extradición entre los Estados Unidos Mexicanos y los Estados Unidos de América, se proporcionan los datos que se han logrado obtener del reclamado:

### MEDIA FILIACIÓN

| | |
|---|---|
| Nombre: | JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "EL GEORGE A. PASILLAS", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE EL GÜERO", alias "EL GÜERO". |
| Fecha de nacimiento: | 6 de marzo de 1986 |
| Nacionalidad: | estadounidense |
| Tez: | blanca |
| Complexión: | robusta |
| Ojos: | color azul |
| Cabello: | castaño y muy corto |
| Estatura: | 1.80 metros aproximadamente. |

El Gobierno de México tiene conocimiento que **JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "EL GEORGE A. PASILLAS", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE EL GÜERO", alias "EL GÜERO"** se encuentra recluido en la prisión del Condado de Orange, California, Estados Unidos de América, en virtud de que se le instruye proceso penal por el delito de homicidio, identificándolo con el número de interno 2783021.

De conformidad con los artículos 3 y 10, numerales 2 y 3, incisos a) y b) del Tratado de Extradición entre los Estados Unidos Mexicanos y los Estados Unidos de América, el gobierno de México ofrece y anexa en copias debidamente certificadas, legalizadas y juramentadas, con la correspondiente traducción al idioma inglés, las siguientes:

### PRUEBAS

I.    Declaración jurada de la licenciada Erika Cabrera Becerra, Agente del Ministerio Público de la Federación adscrita a la Dirección General de Procedimientos Internacionales de la Subprocuraduría Jurídica y de Asuntos Internacionales de la Procuraduría General de la República, a la cual se acompañan los medios de prueba que a continuación se detallan:

**PRUEBA 1.**    Orden de aprehensión dictada el 8 de junio de 2012, por la Juez Cuarto Penal de Tijuana, Baja California, dentro de la causa penal número 279/2012, en contra de **JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "EL GEORGE A. PASILLAS", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE EL GÜERO", alias "EL GÜERO"**.

**PRUEBA 2.**    Auto del 31 de octubre de 2013, por el cual la Juez Cuarto Penal de Tijuana, Baja California, determinó que la fecha en que operará la prescripción de la acción penal a favor del reclamado, será el 9 de junio de 2062, por lo que la orden de aprehensión librada en contra de **JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "EL GEORGE A. PASILLAS", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE EL GÜERO", alias "EL GÜERO"**, se encuentra vigente y ejecutable.

**PRUEBA 3.**    Texto de las disposiciones legales que tipifican y sancionan el delito de homicidio calificado, así como las que establecen la pena aplicable al mismo y lo relativo a la prescripción de la pretensión punitiva, vigentes en la época en que sucedieron los hechos.

**PRUEBA 4.**    Fotografías de **JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "EL GEORGE A. PASILLAS", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE EL GÜERO", alias "EL GÜERO"**.

**PRUEBA 5.**    Informe de oficio número TIN/519/2012 del 7 de mayo de 2012, firmado por los oficiales de la Secretaría de Seguridad Pública Óscar Martínez López y Héctor León Muñoz, en el que hacen

constar el llamado de la central de radio derivado del reporte de la madre de la víctima y el hallazgo de su cuerpo en la vía pública.

**PRUEBA 6.** Informe de oficio número 349/HOM.DOL./12 del 7 de mayo de 2012, firmado por los agentes de la policía ministerial del Estado de Baja California, Oscar Rodríguez Andalón y Adriana E. Camacho Rocha, donde se hace constar el hallazgo del arma con que fue herido Jorge Rangel Montes.

**PRUEBA 7.** Partes relevantes del informe con oficio número 356/HOM.DOL./12 del 9 de mayo de 2012, firmado por los agentes de la policía ministerial del Estado de Baja California, Oscar Rodríguez Andalón y Adriana E. Camacho Rocha, donde se hace constar la declaración del testigo Omar Javier Franco Pérez.

**PRUEBA 8.** Declaración ministerial a cargo del testigo Walter Ulises Rosales Heredia del 7 de mayo de 2012.

**PRUEBA 9.** Declaración y diligencia de identificación ministerial a cargo de la testigo Edelmira Montes Hernández del 9 de mayo de 2012.

**PRUEBA 10.** Certificado de necropsia del 7 de mayo de 2012, practicado al cuerpo de la víctima, Jorge Rangel Montes.

**PRUEBA 11.** Dictamen en criminalística de campo realizado el 7 de mayo de 2012.

**PRUEBA 12.** Diligencia de identificación con rueda fotográfica a cargo de la testigo Edelmira Montes Hernández del 4 de noviembre de 2013.

**PRUEBA 13.** Diligencia de identificación con rueda fotográfica a cargo de la testigo Edelmira Montes Hernández del 2 de junio de 2014.

Con fundamento en el artículo 19 del Tratado de Extradición entre los Estados Unidos Mexicanos y los Estados Unidos de América, el Gobierno de México reitera su solicitud de aseguramiento y entrega de los artículos, instrumentos, objetos de valor o documentos relacionados con los delitos, aun cuando no se hayan utilizado para su ejecución o que de cualquier manera puedan servir de prueba en el proceso instruido en su contra, que se hubiesen encontrado en posesión de **JORGE ANTONIO PASILLAS JARAMILLO, alias "JORGE PASILLAS JARAMILLO", alias "EL GEORGE A. PASILLAS", alias "GEORGE ANTHONY PASILLAS", alias "GEORGE**



EL GÜERO", alias "EL GÜERO" al momento de su detención o que sean detectados posteriormente.

Por lo anterior, en un volumen debidamente legalizado, acompañados de su traducción al inglés, me permito adjuntar los documentos que indican los delitos que se imputan al reclamado, los elementos que los constituyen, el lugar, tiempo y circunstancias de ejecución, así como los datos que arrojan los procedimientos penales desahogados por las autoridades mexicanas para comprobar el cuerpo del delito y hacer probable la responsabilidad de **JORGE ANTONIO PASILLAS JARAMILLO**, incluyendo la resolución que ordena su aprehensión, mismos que presento como verídicos que son ante Vuestra Excelencia.

Por lo arriba señalado Señor Secretario, al encontrarse la petición que hago dentro de los supuestos descritos por el Tratado de Extradición vigente entre nuestros dos países, al tiempo que, en mi opinión, se satisfacen tanto los procedimientos internos del Estado mexicano como los requisitos del Tratado invocado para dar curso a esta **SOLICITUD FORMAL DE EXTRADICION INTERNACIONAL**, ruego a Vuestra Excelencia su amable intervención para obtener de las autoridades estadounidenses competentes, incluso de las judiciales, la extradición de los Estados Unidos de América a México de **JORGE ANTONIO PASILLAS JARAMILLO.**

Al agradecer a Vuestra Excelencia anticipadamente su valiosa cooperación en la extradición de **JORGE ANTONIO PASILLAS JARAMILLO**, hago propicia la ocasión para renovarle las seguridades de mi más alta y distinguida consideración.

Eduardo Medina Mora
Embajador



U.S. Department of State

## CERTIFICATE TO BE ATTACHED TO DOCUMENTARY
## EVIDENCE ACCOMPANYING REQUISITIONS IN
## THE UNITED STATES FOR EXTRADITION
## AMERICAN FOREIGN SERVICE

Mexico, D.F., Mexico, October 8th, 2014.
Place and Date (mm-dd-yyyy)

I, _____ Earl Anthony Wayne _____ , _____ Ambassador _____
Name                                                                Title

the United States of America at     México, D.F. México

hereby certify that the annexed papers, being     supporting documents

proposed to be used upon an application for the extradition from the United States of America

Jorge Antonio Pasillas Jaramillo, aka "Jorge Pasillas Jaramillo", aka "El George A. Pasillas", aka "George Anthony

Pasillas", aka "George el Guero", aka "El guero"

charged with the crime of     aggravated homicide

alleged to have been committed in     The United Mexican States

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of     The United Mexican States

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

this _____ 8th. _____ day of     October 2014.
Month and Year

Signature

Earl Anthony Wayne, Ambassador
Type Name and Title of Certifying Officer
of the United States of America.

DS-36
04-2014

UNITED MEXICAN STATES )
FEDERAL DISTRICT )
CITY OF MEXICO ) SS:
EMBASSY OF THE UNITED STATES )
OF AMERICA )

Amanda Lugo
Vice Consul

Before me, _____, Consul of
the United States of America at Mexico, D. F., Mexico, duly commissioned and qualified,
personally appeared _Daniel Harrison Holcombe_____
who, being duly sworn deposes and says as follows:

1. My name is _Daniel Harrison Holcombe_____
   and I reside at_Mexico City Distrito Federal_____

2. I have been familiar with the English and _Spanish____
   languages for the past _20_ years, I made the annexed translation from
   _Spanish_ to English. The said translation is to the best of my
   knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

Subscribed and sworn to before me this day _OCT 0 8 2014___.

Amanda Lugo
Consul of the United States
of America

FORMA C G- I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

# EXHIBITS LIST

I.       Sworn Affidavit from Erika Cabrera Becerra, Agent of the Federal Public Prosecutor, assigned to the General Division of International Proceedings of the Office of the Assistant Attorney General for Legal and International Affairs of the Office of the Attorney General of the Republic, to which the following evidentiary means are attached:

**EXHIBIT 1.**    Arrest warrant issued on June 8th, 2012, by the Fourth Criminal Court Judge form Tijuana Baja California, within criminal case number 279/2012, against **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO.**

**EXHIBIT 2.**    Record dated October 31st, 2013 through which the Fourth Criminal Court Judge form Tijuana Baja California determined the computation of the date on which the statute of limitations term of the criminal action would run in favor of the person sought, which will be June 9th, 2062, thus the arrest warrant against **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO** is in force and executable to achieve his apprehension.

**EXHIBIT 3.**    Text of the articles of law that describe and punish the crime of aggravated homicide, the punishment for said crime, the texts that establish the statute of limitations term of the right to punish, in force at the time the crime was perpetrated.

**EXHIBIT 4.**    Photographs of **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO.**

13

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**EXHIBIT 5.**   Police report number TIN/519/2012 dated May 7th, 2012 signed by officers of the Ministry of Law Enforcement, Oscar Martinez Lopez and Hector Léon Muñoz, on which they corroborate the radio dispatch from central headquarters of the report of the mother of the victim and the finding of the corpse.

**EXHIBIT 6.**   Report number 349/HOM.DOL./12 dated May 7th, 2012, singed by the Agents of the Ministerial Police of the State of Baja California, Oscar Rodriguez Andalon and Adriana E. Camacho Rocha, that recorded the discovery of the weapon with which Jorge Rangel Montes was injured.

**EXHIBIT 7.**   Relevant parts of report number 356/HOM.DOL./12 dated May 9th, 2012, singed by the Agents of the Ministerial Police of the State of Baja California, Oscar Rodriguez Andalon and Adriana E. Camacho Rocha, that recorded the rendering of the witness statement from Omar Javier Franco Perez.

**EXHIBIT 8.**   Ministerial Statement from witness Walter Ulises Rosales Heredia, dated May 7th, 2012.

**EXHIBIT 9.**   Ministerial statement and identification proceeding carried out by witness Edelmira Montes Hernandez on May 9th, 2012.

**EXHIBIT 10.**   Necropsy certificate carried out on the corpse of Jorge Rangel Montes on May 7th, 2012.

**EXHIBIT 11.**   Field Criminalistics expert report carried out on May 7th, 2012.

**EXHIBIT 12.**   Identification proceeding through photo array carried out by witness Edelmira Montes Hernandez on November 4th, 2013.

**EXHIBIT 13.**   Identification proceeding through photo array carried out by witness Edelmira Montes Hernandez on June 2nd, 2013.

14



PROCURADURÍA GENERAL
DE LA
REPUBLICA



FORMA CG-IA



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

| | |
|---|---|
| **UNITED MEXICAN STATES** | **CRIMINAL CASE: 279/2012.** |
| **VS** | **FOURTH CRIMINAL COURT OF TIJUANA, BAJA CALIFORNIA.** |
| **JORGE ANTONIO PASILLAS JARAMILLO (AKA) "JORGE PASILLAS JARAMILLO" (AKA) "EL GEORGE A. PASILLAS" (AKA) "GEORGE ANTHONY PASILLAS" (AKA) "GEORGE EL GÜERO" (AKA) "EL GÜERO"** | **SWORN AFFIDAVIT IN SUPPORT OF FORMAL EXTRADITION REQUEST.** |

The undersigned, **Erika Cabrera Becerra**, under oath to tell the truth, states as follows:

That I am a citizen of the United Mexican States, working in Mexico City, Federal District, with a degree in Law, graduated from Centro de Estudios Universitarios and a professional license to practice Law registered in the archives of the General Division of Professions of the Ministry of Public Education, of legal age, with 10 years of professional experience, domiciled in Mexico City, Federal District.

That I have been working as a Federal Public Prosecutor, at present assigned to the General Division of International Proceedings of the Office of the Attorney General of the Republic.

Since I am legal professional in Law and perform the duties previously indicated, I am knowledgeable of Federal Criminal Law and Federal Criminal Proceedings in Mexico.

At present among my duties I have been entrusted to process and follow up the international extradition proceedings filed by the Mexican Government. Therefore, I am broadly knowledgeable about international criminal matters and, in the performance of my duty and under oath to tell the truth, I state that within this General Division there is found the international extradition file of **JORGE ANTONIO PASILLAS JARAMILLO (AKA) "JORGE PASILLAS JARAMILLO" (AKA) "EL GEORGE A. PASILLAS" (AKA) "GEORGE ANTHONY PASILLAS" (AKA) "GEORGE EL GÜERO" (AKA) "EL GÜERO"** (to be designated **JORGE ANTONIO PASILLAS JARAMILLO** in the rest of this document).

1

FORMA C G- I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

## CRIMINAL PROCEDURE IN THE MEXICAN LAW

## (STATE OF BAJA CALIFORNIA)

In Baja California, Mexico the investigation of a crime begins at the stage of preliminary investigation, which started at the time that the Public Prosecutor acknowledges, through an accusation (in the cases of crimes prosecutable *ex officio*[1]) or through a complaint[2] (crimes prosecuted at the request of the offended party or by their legal representative), that a crime has been committed or a conduct punished as a crime by the criminal law is intended to be committed.

The Public Prosecutor initiates the preliminary investigation and carries out all the proceedings legally required to find any inferences, means, instruments or any other type of elements that may be evidentiary elements to complete the ministerial investigation and the criminal action (accusation in the USA).

If the preliminary investigation shows that the *corpus delicti* and the probable responsibility have been proven in compliance to the provisions of articles 257 and 258 of the Code of Criminal Procedures for the State of Baja California, as well as having fulfilled the procedural requirements (when these are prerequisites), the Public Prosecutor shall exercise criminal action (accusation[3]) before the Criminal Courts, requesting an arrest or summons warrant, whichever applicable, of the probable responsible party(ies), in compliance to the provisions of Chapter III of TitleTwo in Book One of the Criminal Code foe the State of Baja California

If the accusation[4] is filed with no detainee (as it occurs in this case), in compliance to the Code of Criminal Procedures for the State of Baja California, the Court shall record the filing

---

[1] These are those crimes in which the Public Prosecutor may initiate their investigation simply by obtaining knowledge, by any means, of their commission.
[2] These are those crimes that require a prior request by the person affected by their commission asking for the intervention of the investigative authority for the prosecution of such crimes.  Examples: fraud, embezzlement, criminal damages, etc.
[3] The *consignacion* or filing of charges is the a synonym for the exercise of the criminal action (accusation) and consists of a series of activities carried out by the Public Prosecutor before a judicial body, so that the latter subsequently states the law in regards to an act deemed to be criminal. The filing of charges sets in motion all procedural activity, it creates a special legal situation for the person probably responsible for a crime and binds the jurisdictional body to execute specific acts.
[4] Idem.

2



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

of charges[5] within the next 10 days, in the record of filing and in a separate decision, will rule over the request from the public prosecutor, granting or denying the arrest or court summons warrant.

In compliance to the Code of Criminal Procedures for the State of Baja California, in force at the time of perpetration of the acts under investigation, the Public Prosecutor is bound to carry out "*ex officio*" the investigation of crimes of which the public prosecutor is knowledgeable of or that are notified, except when these are crimes prosecuted at the request of the offended party. The prosecutorial investigation is divided into pretrial and trial, the first encompasses the record of filing of charges that decides the legal situation of the accused within the 48 hour constitutional term, or within the extension of this term of 72 hours, from the time the accused was brought before the Court, the Public Prosecutor will carry out all the necessary proceedings that allow the elucidation of the facts, their classification in compliance to the applicable description of the crime and the probable responsibility[6] of the person accused for the commission of the criminal conduct and the *corpus delicti*[7].

Grounded in the forgoing, on June 8th, 2012, the Fourth Criminal Judge at Tijuana, Baja California, within criminal case number 279/2012, granted an arrest warrant against **JORGE ANTONIO PASILLAS JARAMILLO (AKA) "JORGE PASILLAS JARAMILLO" (AKA) "EL GEORGE A. PASILLAS" (AKA) "GEORGE ANTHONY PASILLAS" (AKA) "GEORGE EL GÜERO" (AKA) "EL GÜERO"** for his probable responsibility in the perpetration of the crime of **AGGRAVATED HOMICIDE**, crime foreseen by articles 123, related with 148, section II,

---

[5] Record of filing: First decision issued by the Judge after receiving the Public Prosecutor's accusation, under which the file is integrated and a number is assigned thereto.
[6] The probable responsibility exists when the records that have been collected presumptively prove that the accused perpetrated the criminal conduct or that they participated in its commission.
[7] In the legislation of the State of Baja California the *corpus delicti* is comprised of the elements that configure the description of the crime, and the evidentiary means allowed by law. Likewise the group of objective or external elements which constitute the materiality of the conduct described as offenses by the Law. Said objective or external elements are: I) The act or failure to act, perpetrated intentionally; II) The damage or the danger to the legally protected right III) That the damage or the danger to the legally protected right, be attributable to said act or failure to act perpetrated intentionally; IV) The intentional or criminally negligent perpetration of the act or failure to act; V) The material object and its characteristics; VI) The Special means of perpetration; VII) Circumstances of place, time and opportunity; VIII) The quality or number of the perpetrators or victims; IX) The special subjective elements of the perpetrator, besides form intention, and X) Other specific circumstances that the description of the crime foresees.

3

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA and punished by article 126, all from the Criminal Code for the State of Baja California, in force at the time the crime was perpet

rated.

## GENERAL INFORMATION AND PROCEDURAL HISTORY

I know of criminal case 279/2012 filed against **JORGE ANTONIO PASILLAS JARAMILLO (AKA) "JORGE PASILLAS JARAMILLO" (AKA) "EL GEORGE A. PASILLAS" (AKA) "GEORGE ANTHONY PASILLAS" (AKA) "GEORGE EL GÜERO" (AKA) "EL GÜERO"**, before the Fourth Criminal Judge at Tijuana, Baja California for the crime of aggravated homicide. Given that the undersigned reviewed and analyzed all the documents integrating the criminal case and the proceedings carried out by the investigative agent of the Public Prosecutor assigned to the Office of the General Prosecutor for the State of Baja California which are the source of the aforementioned criminal case and the arrest warrant.

On May 7th, 2012, at approximately 2:00 hours inside the domicile located at Tule street number 1325, apartment 8, Praderas de La Mesa Neighborhood, at Tijuana, Baja California, **JORGE ANTONIO PASILLAS JARAMILLO (AKA) "JORGE PASILLAS JARAMILLO" (AKA) "EL GEORGE A. PASILLAS" (AKA) "GEORGE ANTHONY PASILLAS" (AKA) "GEORGE EL GÜERO" (AKA) "EL GÜERO",** stabbed the back, face and hands of Jorge Rangel Montes, and who fled the scene towards the house where his mother was at number 1314 of the same street, so he could save himself, but eventually died.

Said act constitutes the crime of **AGGRAVATED HOMICIDE** in compliance to the provisions of the aforementioned articles.

The Agent of the Public Prosecutor from the Office of the Attorney General for the State of Baja California, exercised criminal action against **JORGE ANTONIO PASILLAS JARAMILLO (AKA) "JORGE PASILLAS JARAMILLO" (AKA) "EL GEORGE A. PASILLAS" (AKA) "GEORGE ANTHONY PASILLAS" (AKA) "GEORGE EL GÜERO" (AKA) "EL GÜERO",** for his probable responsibility in the perpetration of the crime of **AGGRAVATED HOMICIDE.**

4

FORMA C G. 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

After having reviewed and analyzed the accusation and the evidence provided to support hereof, on June 8th, 2012, the Fourth Criminal Judge at Tijuana, Baja California issued an arrest warrant against **JORGE ANTONIO PASILLAS JARAMILLO (AKA) "JORGE PASILLAS JARAMILLO" (AKA) "EL GEORGE A. PASILLAS" (AKA) "GEORGE ANTHONY PASILLAS" (AKA) "GEORGE EL GÜERO" (AKA) "EL GÜERO",** within criminal case 279/2012, for his probable responsibility in the commission of the crime of **AGGRAVATED HOMICIDE,** crime foreseen by articles 123, related to 148, section II, and punished by article 126, all from the Criminal Code for the State of Baja California, in force at the time the crime was perpetrated. **(Exhibit 1)**

## STATUE OF LIMITATIONS

On October 31, 2013, the Fourth Criminal Judge at Tijuana, Baja California issued a judicial decision in which it was established that considering the June 8th, 2012 date when the arrest warrant was granted against the accused **JORGE ANTONIO PASILLAS JARAMILLO (AKA) "JORGE PASILLAS JARAMILLO" (AKA) "EL GEORGE A. PASILLAS" (AKA) "GEORGE ANTHONY PASILLAS" (AKA) "GEORGE EL GÜERO" (AKA) "EL GÜERO",** for his probable responsibility in the commission of the crime of **AGGRAVATED HOMICIDE,** crime punished by article 126 of the Criminal Code for the State of Baja California with an imprisonment penalty ranging from 20 to 50 years and in compliance to the provisions of article 114 bis of the same law,  the calculation of the statute of limitations of the criminal action runs out on **June 9th, 2062** in favor of **JORGE ANTONIO PASILLAS JARAMILLO (AKA) "JORGE PASILLAS JARAMILLO" (AKA) "EL GEORGE A. PASILLAS" (AKA) "GEORGE ANTHONY PASILLAS" (AKA) "GEORGE EL GÜERO" (AKA) "EL GÜERO".** **(Exhibit 2)**

## LEGAL PROVISIONS

The true and exact text of article 123, 148, sections II and 126 all of them from the Criminal Code for the State of Baja California in force at the moment in which the crime was committed. **(Exhibit 3)**

5

FORMA C G - 1 A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

## RELEVANT FACTS

On May 7th, 2012, at approximately 2:00 hours inside the domicile located at Tule street number 1325, apartment 8, Praderas de La Mesa Neighborhood, at Tijuana, Baja California, **JORGE ANTONIO PASILLAS JARAMILLO** stabbed the back, face and hands of Jorge Rangel Montes, and who fled the scene towards the house where his mother was at number 1314 of the same street, so he could save himself, but eventually died.

The event was notified to Municipal Police Officers by radio dispatch, thus they headed to at Tule street number 1325, apartment 8, Praderas de La Mesa Neighborhood, at Tijuana, Baja California, where they found, laying on the sidewalk the corpse of Jorge Rangel Montes. At the location they found Edelmira Montes Hernandez, mother of the victim. **(EXHIBITS 5)**

Edelmira Montes Hernandez stated, on May 9th, 2012 before the Investigative Public Prosecutor for the Investigation Of Intentional Homicides of the Office of the Attorney General for the State of Baja California, that at approximately 2:00 Hours of May 7th, 2012 she was at her friend Rosa Amelia´s house, when she heard the screams of her son Jorge Rangel Montes saying "Mama, Rocio (referring to her friend Rosa Amelia) Chino help me I am dying", and therefore she immediately went out and saw that her son was seated on the sidewalk and he her to hold him and call an ambulance, so Edelmira Montes Hernandez asked him who had hurt him, and he answered "it was George el Güero, el George, El george, he stabbed me (meaning he had been injured with a stabbing weapon).

Thus, Edelmira Montes Hernandez dialed 066 and requested and ambulance, paramedics attended to the patient, but informed her that her son had died.

Edelmira Montes Hernandez stated that the person which her son named before dying is **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO**, and who she knows since he was a childhood friend of her son. **(EXHIBIT 9)**

6

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Walter Ulises Rosales Heredia stated before the Agent of the Public Prosecutor for the Investigation of Intentional Homicides of the Office of the Attorney General for the State of Baja California, that he had lived as a roommate of Jorge Rangel Montes for about a month.

Walter Ulises Rosales Heredia stated that on Sunday May 6th, 2012 around 17:00 hours when he was at the domicile located at Tule street number 1325, apartment 8, Praderas de La Mesa Neighborhood, at Tijuana, Baja California along with Jorge Rangel Montes, a few minutes later George (referring to **JORGE ANTONIO PASILLAS JARAMILLO**) arrived and they started to using drugs.

Since Jorge Rangel Montes turned violent when he used drugs the deponent decided to smoke a marihuana cigarette and at around 23:00 hours decides to got to his room and rest to avoid any problems. Around 2:00 hours of May 7th, 2012, he woke up because he heard the screams of Jorge Rangel Montes and "El Güero" (referring to **JORGE ANTONIO PASILLAS JARAMILLO)** who were arguing, he came out of his room and saw Jorge throwing "El Güero" (referring to **JORGE ANTONIO PASILLAS JARAMILLO)**, towards the main door of the apartment, and when he asked what was going on, Jorge told him not to get involved and to go back to his room and to lock himself in, he decided to return to his room and later he heard a neighbor shout "stop arguing, if you can´t handle that shit, quit that vice", and he also heard the neighbor shout, "besides, it´s your problem". He then heard a door being shut.

Half an hour later municipal police officer arrived, and informed him that Jorge Rangel Montes had died, and asked him to accompany them so he could render statement. **(EXHIBIT 8)**

Agents of the Ministerial Police of the State of Baja California recorded on their May 7th, 2012 report number 349/HOM.DOL/12, the interview with the deponent Walter Ulises Rosales Heredia at his domicile, who provided two photographs of **JORGE ANTONIO PASILLAS.** That same report recorded the discovery of the weapon, with which Jorge Rangel Montes was mortally wounded, at the same location. **(EXHIBIT 6)**

7

FORMA C G- I A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

Agents of the Ministerial Police of Tijuana, Baja California, rendered a report dated May 9th, 2012, on which they interviewed Omar Javier Franco Perez, neighbor of the victim, who lives at apartment number 7 of Tule street number 1325, Praderas de La Mesa Housing Development, of this City. Omar Javier Franco Perez stated that his neighbor of apartment 8 was Jorge Rangel Montes, who was a drug addict and he can verify that every day his childhood friend nicknamed "El George or El Güero" visited him.

Omar Javier Franco Perez stated in the interview with the police officers that on Sunday May 6th, 2012 he observed inside the apartment Jorge Rangel Montes and "El George or El Güero", moments later, he went to visit his girlfriend and upon his return at approximately 22:00 hours, he found, in the hallway of the apartments, Jorge and "El George or El Güero" on drugs and on an aggressive mood, so he immediately entered his apartment.

Omar Javier Franco Perez added that at approximately 1:30 hours of May 7th, 2012 heard a loud argument, he identified the voices as those of "El George or El Güero"  and that of Jorge, the latter shouted in-between other things "leave me alone, quit it". He heard they were fighting and hitting each other. Finally, at 3:00 hours municipal police officers arrived at his domicile notifying him that his neighbor Jorge had been killed and that they were looking for the alleged attacker "George (aka) El Güero", Omar Javier Franco Perez stated that he only heard the fight, and that he was unaware where he might have fled. **(EXHIBIT 7)**

On this matter, the necropsy certificate dated May 7th, 2012 carried out by forensic medical expert Jose Luis Arguello Montiel, shows that the cause of death of Jorge Rangel Montes was hypovolemic shock, as a secondary result of penetrating wounds to the neck, thorax, and abdomen due to injuries with a stabbing instrument. **(EXHIBIT 10)**

The field criminalistics expert report shows that the crime scene where Jorge Rangel Montes died was a sidewalk located at Tule street number 1325, apartment 8, Praderas de La Mesa Neighborhood, at Tijuana, Baja California and considering the trace evidence found there, it is inferred that it is the same location where the crime was committed, that is to say, the same street number 1325 (domicile of the victim), where the stabbing weapon was found,

8

FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA and with which Jorge Rangel Montes was injured, who walked towards the first location mentioned. **(EXHIBIT 11)**

Edelmira Montes Hernandez recognized **JORGE ANTONIO PASILLAS JARAMILLO** in an identification proceeding by photo array. **(EXHIBIT 12 and 13)**

## IDENTIFICATION

**JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** is an US citizen, with birth date March 6th, 1986, white skinned, heavy built, blue eyes, very short brown hair, height 1.80 meters approximately.

A photograph of **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO** is attached hereto, **(EXHIBIT 4)** as well as the photo array proceedings which were identified as **EXHIBIT 12 and 13**.

## CONCLUSION

From the collection of evidence that the Agent of the Public Prosecutor obtained during the investigation of the facts that accuse **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** provided sufficient cause so that the Judge issued an arrest warrant against him.

The probable participation of **JORGE ANTONIO PASILLAS JARAMILLO** in the crime of aggravated homicide perpetrated to the detriment of Jorge Rangel Montes was fully proven with the ministerial statements of Edelmira Montes Hernandez and Omar Javier Franco Perez, dated May 9th, 2012, as well as that of Walter Ulises Rosales Heredia, dated May 7th, 2012, witnesses to the facts, respectively, since they were convincing and agreed when describing the facts they witnessed on May 7th, 2012 at approximately 2:00 hours inside the domicile located at Tule street number 1325, apartment 8, Praderas de La Mesa

9

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Neighborhood, at Tijuana, Baja California, where **JORGE ANTONIO PASILLAS JARAMILLO** stabbed the back, face and hands of Jorge Rangel Montes, and who fled the scene towards the house where his mother was at number 1314 of the same street, so he could save himself, but eventually died; at the same time the attacker fled the location and has not been seen since.

By virtue of the events that transpired in the aforementioned location, Municipal Police Officers found, laying on the sidewalk, the corpse of Jorge Rangel Montes, location where they met Edelmira Montes Hernandez, mother of the victim.

Through the investigations carried out by Ministerial Police Officers for the State of Baja California, they were able to obtain from Walter Ulises Rosales Heredia two photographs of **JORGE ANTONIO PASILLAS JARAMILLO** and locate the weapon with which Jorge Rangel Montes was killed in the crime scene.

The necropsy certificate dated May 7th, 2012 shows that the cause of death of Jorge Rangel Montes was hypovolemic shock, as a secondary result of penetrating wounds to the neck, thorax, and abdomen due to injuries with a stabbing instrument.

Since **JORGE ANTONIO PASILLAS JARAMILLO**, was the only person who was with Jorge Rangel Montes the day of the crime, which is corroborated by the statement of Walter Ulises Rosales Heredia; added to the fact that **JORGE ANTONIO PASILLAS JARAMILLO** fled from the crime scene and has not been seen since, until he was located in the territory of the United States of America, the circumstantial evidence is strengthened and corroborated with the collection of evidence admitted by the Fourth Criminal Judge of Tijuana, Baja California, presume the probable responsibility of the person sought.

On the other hand, the field criminalistics expert report shows that the place where Jorge Rangel Montes, and where he died and that corresponds to the entrance of the domicile located at Tule street number 1325, apartment 8, Praderas de La Mesa Neighborhood, at Tijuana, Baja California, and the crime scene is located in the same street at number 1325 (domicile of the victim), where the stabbing weapon, with which Jorge Rangel Montes was injured, was found, the victim later walked to the latter domicile. This is

10

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

proven by the traces of dynamic blood dripping that were found between both domiciles, taking into consideration the location where Jorge Rangel Montes corpse was found.

The criminalistics expert opinion is also conclusive and matched the necropsy certificate upon showing that Jorge Rangel Montes death was produced by an external agent (stabbing instrument), that correspond to the knife that was found at the crime scene.

Also, Edelmira Montes Hernandez identified **JORGE ANTONIO PASILLAS JARAMILLO,** through a photo array proceedings, as the person that killed her son Jorge Rangel Montes, and who on the same date the crime was perpetrated crossed into the United States of America, given that he is a citizen of that country.

With the corroboration of the collection of evidence shows the intention of **JORGE ANTONIO PASILLAS JARAMILLO** to deprive Jorge Rangel Montes of life, by virtue that he knew his actions were unlawfull, added to the statement of the mother of the victim, Edelmira Montes Hernandez, who on June 2th, 2014 before the Agent of the Public Prosecutor, where she stated that in the year 2010 her son Jorge Rangel Montes lived in the same domicile as **JORGE ANTONIO PASILLAS JARAMILLO** given that they were friends, but after this Jorge Rangel Montes moved to the domicile where the crime was perpetrated, because **JORGE ANTONIO PASILLAS JARAMILLO** was very stubborn at times.

Due to the forgoing the circumstances of time, place and manner of the execution of the unlawful, criminally described and punishable act carried out by **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO**, which fit the description of the crime of **AGGRAVATED HOMICIDE.**

This affidavit strengthens the formal extradition request that the Government of Mexico has sent in the matter of **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO**, we respectfully consider that the Court with jurisdiction will have sufficient evidence to decide that his

11

FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICAextradition to Mexican territory is warranted, so as to be prosecuted by the Fourth Criminal Court Judge of Tijuana, Baja California, for this probable responsibility in the perpetration of the crime of aggravated homicide, against Jorge Rangel Montes.

The forgoing for the relevant legal effects.


Mexico, Federal District, August 20th, 2014.

**NAME AND SIGNATURE**
**AGENT OF THE FEDERAL PUBLIC PROSECUTOR, ASSIGNED TO THE**
**GENERAL DIVISION OF INTERNATIONAL PROCEEDINGS**


**ERIKA CABRERA BECERRA**

12

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

[ILLEGIBLE
HOLOGRAM AND
COAT OF ARMS]

[SEAL: MINISTRY OF THE INTERIOR,
GOVERNMENT UNIT, UNITED
MEXICAN STATES, MEXICAN COAT
OF ARMS]

**15096**

**EFRAIN TERMINEL MUÑOZ,** ASSISTANT DIRECTOR FOR MONITORING DECISIONS, ASSISTING THE HEAD OF THE GOVERNMENT UNIT OF THE MINISTRY OF THE INTERIOR, PURSUANT TO THE PROVISIONS OF ARTICLE 10 SECTION I, AND 11 FINAL PARAGRAPH OF THE INTERNAL REGULATIONS OF THE MINISTRY OF THE INTERIOR, **CERTIFIES:** THAT LIC. ERIKA CABRERA BECERRA, WAS A PUBLIC PROSECUTOR OF THE FEDERATION ASSIGNED TO THE GENERAL DIVISION OF INTERNATIONAL PROCEEDINGS OF THE OFFICE OF THE ASSISTANT ATTORNEY GENERAL FOR LEGAL AND INTERNATIONAL AFFAIRS OF THE OFFICE ATTORNEY GENERAL OF THE REPUBLIC ON AUGUST 20, 2014, AND THAT THE SIGNATURE APPEARING ON THE PRESENT DOCUMENT IS HIS OWN.

MEXICO CITY, FEDERAL DISTRICT, AUGUST 29, 2014.
REGISTRY **No. 14841**
TAX PAID $0.00
TAX EXEMPT

[an illegible signature]

SIGNATURE

This ministry does not assume any liability
as for the contents of this document.

MADE/IAE/ETM

[SEAL:
UNITED MEXICAN STATES.
(Mexican Coat of Arms)
MINISTRY OF FOREIGN
AFFAIRS
CONSULAR SERVICE
AUTHENTICATIONS]

CODE: **UYNLYYDXG**

[SEAL:
UNITED MEXICAN STATES.
(Mexican Coat of Arms)
MINISTRY OF FOREIGN AFFAIRS,
CUAUHTEMOC DELEGATION]

F 8
FOLIO No. **553112**

## THE MINISTRY OF FOREIGN AFFAIRS CERTIFIES:

that _**EFRAIN TERMINEL MUÑOZ WAS ASSITANT DIRECTOR**_
_**FOR MONITORING DECISIONS, ASSITING THE HEAD OF THE**_
_**GOVERNMENT UNIT OF THE MINISTRY OF THE INTERIOR, ON**_

**AUGUST 29, 2014**

and that the preceding signature is his own.

_**Mexico, Federal District**_, on _**SEPTEMBER 03**_ of 20_**14**_.

**BY RESOLUTION OF THE MINISTER**

THE DELEGATE OF THE
MINISTRY OF FOREIGN AFFAIRS

[an illegible signature]

MYRNA GRANADOS HERNANDEZ

THIS MINISTRY DOES NOT ASSUME ANY LIABILITY AS FOR
THE CONTENTS OF THE DOCUMENT BEING AUTHENTICATED



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

# EXHIBIT 1

FORMA C G-1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**REPORT:** that on June 8, 2012, the court clerk realized that the Judge with the **Request for an Arrest Warrant**, that bids of the **Criminal Investigations Agent of the Public Prosecutor, Head of the Organic Unit for Intentional Homicides**, against JORGE ANTONIO PASILLAS JARAMILLO, (A.K.A.) JORGE PASILLAS JARAMILLO, (A.K.A.) EL JORGE A. PASILLAS, (A.K.A.) JORGE ANTHONY PASILLAS, (A.K.A.) JORGE EL GÜERO, (A.K.A.) JORGE EL GÜERO, as the probable responsible in the commission of the crime of **AGGRAVATED HOMICIDE.**- Be it attested. ---

**Record:** In Tijuana, Baja California, on June 8, 2012. ---

HAVING SEEN the report, the **Criminal Investigations Agent of the Public Prosecutor, Head of the Organic Unit for Intentional Homicides,** may exercise criminal action against **JORGE ANTONIO PASILLAS JARAMILLO, (A.K.A.) JORGE PASILLAS JARAMILLO, (A.K.A.) EL JORGE A. PASILLAS, (A.K.A.) JORGE ANTHONY PASILLAS, (A.K.A.) JORGE EL GÜERO, (A.K.A.) JORGE EL GÜERO,** being considered the probable responsible in the commission of the crime of **AGGRAVATED HOMICIDE.** This crime is provided for by articles 123, as it relates to 126, 148 sections I and II and 149 of the current Criminal Code in force in said entity; as it relates to the request for an arrest warrant formulated by the Investigative Public Prosecutor. It is considered appropriate, since in this case the requirements necessary to this end, have been fulfilled as stipulated in the Constitutional article 16, and articles 109, and 267 section I of the Code of Criminal Procedures. Essentially, the Constitutional article 16 requires that in order to issue an arrest warrant, is should fulfill the following: a).- That it be issued by a judicial authority; b).- That it be preceded by an accusation, or complaint of an act which the law defines as criminal, penalized with an imprisonment penalty; c).- That there exist facts which establish that the crime was committed and that there exists a probability that the accused was the perpetrator or a participant in its commission. Also, as a requirement for all acts of Authority, the arrest warrant should be duly grounded in law and fact.- Now that the foregoing has been established, and now that an accusation exists relative to a criminal act punishable by Law with an imprisonment penalty, and which is supported by factual evidence which proves the evidentiary means making up the herein referred *corpus delicti,* and which makes probable the criminal responsibility of the accused, with reference to the commission of said crime, the following whereas statements are in accordance with such reasoning, as expressed hereinbelow:

--- W H E R E A S ---

**I.-** The crime of **AGGRAVATED HOMICIDE,** as provided for in articles 123, 126, and 148 sections II of the Criminal Code currently in force in the Entity, respectively; Article 123 of the Criminal Code, defines the crime of HOMICIDE in the following way:... "*whomever takes another's life*"; article 148 in its section II, stipulates: "*When the defendant is stronger due to the weapons he uses, by his grater skill on those weapons or by the persons who accompany him*"; not taking into consideration section I of article 248 of the Criminal Code,

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

which is invoked by the Public Prosecutor in their determination, by virtue of the fact that in keeping with the dynamics of the facts, which said supposition does not prove. Instead, the unfair advantage which exists between the perpetrator and the victim is precisely the weapon used, being for this reason superior. There is not found any proof determining that the perpetrator was superior to the victim in physical force. It is well settled law that the Public Prosecutor files criminal charges and it is the Trier of fact who determines for which crime, based upon what is established by article 10 of the State Code of Criminal Procedures. We shall not analyze the herein referred section, and the crime of AGGRAVATED HOMICIDE shall be analyzed under the precepts of article 123, as it relates with article 126, 148 section II of the Criminal Code related to the case. The elements of the *corpus delicti* **AGGRAVATED HOMICIDE** are: a).- The previous existence of human life; b).- The taking of this life, material element; c).- That it be superior due to the weapon used; d).- that the perpetrator of the crime does not run any risk of being killed or wounded by the victim, and that the perpetrator does not at in legitimate self defense.---

The *corpus delicti* of **AGGRAVATED HOMICIDE,** crime which is provided for in articles 123 and 126 in relation with article 148 section II, all of the Criminal Code, in the records is found to be legally proven. This is in terms of what is set forth by article 255 of the Criminal Procedure Law in force, with the evidentiary means which are analyzed as follows: ---

**A).-** With the proceeding of **TRANSPORTATION OF PERSONNEL AND MINISTERIAL ATTESTATION OF THE CORPSE**; carried out by the Criminal Investigations Agent of the Public Prosecutor, who attested that the **STATE MINISTERIAL POLICE DISPATCH CENTER FOR THE AGGRAVATED HOMICIDES** was informed by telephone of a dead person inside the domicile located at Calle Tule, Praderas de la Mesa, by which we, the acting personnel of the State Public Prosecutor, traveled and physically and legally convened at the indicated site, arriving at 03:27 hours to the domicile located at **CALLE TULE #1314, COLONIA PRADERAS DE LA MESA, DELEGACIÓN CERRO COLORADO, OF THIS CITY**, accompanied by the Agents of the State Public Prosecutor, assigned to the Investigative group of Aggravated Homicide, whose names are Juan Carlos Aaron Vazquez, and Jorge Omar Rios Montaño; as well as the Ministerial Agents of the Tijuana Zone's Nocturnal Guard CANCINO, VIRRUETA in charge of the Agent MEZA; Of the Criminalistics Experts assigned to the Division of Tiuana Zone Expert Services, NORMA ALICIA SANCHEZ RODRIGUEZ and REBECCA MATA; representing the State Laboratory assigned to Expert Services, MARIA CHIQUETE; Among those employed in the Forensic Medical Service is FRANCISCO RAMIREZ and ALVARO RUIZ; also found present in the area were the members of the Unit number P-495, under the command of Officer MARTINEZ, of the Ministry of Municipal Law Enforcement who were those that indicated the place in which WE ATTEST: To have at sight a street paved with hydraulic cement, and is

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

In front of the domicile marked as number 1314 on public property, over the sidewalk, we attest to have at sight the lifeless body of an individual of the Masculine sex who in life was named **JORGE RANGEL MONTES** of 43 years of age. The person identifying the body was named EDELMIRA MONTES HERNANDEZ, who stated that she was the mother of the now deceased. She also stated that the now deceased **JORGE RANGEL MONTES** arrive to her domicile, with a knife injury, and before he died, he said that Jorge "N" had caused the wound. Continuing with the proceeding, it is attested that there is had at sight the lifeless body of a person of the masculine sex who in life was named **JORGE RANGEL MONTES**, and which was found lying, in a supine position, with the cephalic region oriented toward the south cardinal point, while the lower-extremities were flexed at the knee toward the south cardinal point, and slightly drawn, with the upper left-extremity extended and drawn, while the upper-right extremity was slightly bent and drawn. The now deceased is seen dressed in blue jeans, grey sweater, and black socks. Proceeding to the examination of the corpse, there is observed a total absence of life, eye/medulla-reflexes, since the pupils don't respond to the stimulus of light/dark. There is a lack of spontaneous respiration, since there is not rhythmic corporal movement. When touching the body, no pulse is perceived, and the temperature is inferior to that of the surrounding environment, and with an obvious pallor of a corpse; all the signs indicative of a real, true, and recent death. Thus, the personnel of Expert Services took photographic records of the body, which was then followed by personnel of the Forensic Medical Service proceeding to collect the body. Then, the personnel of Expert Services proceeded to establish the evidence at the moment of the collection of the body, locating under the body of the deceased, and a red sweatshirt. As well, there are observed various blood stains on the vertical plane of the pedestrian door of the aforementioned domicile. There are also observed various bloodstains on a radio in the place where the body of the deceased was located. Proceeding to the examination of the deceased, the **PHYSICAL CHARACTERISTICS** observed are: 1.60 meters tall, brown-skinned, approximately 43 years old, of THIN build, with short dark-brown hair, oval face, brown eyes, wide forehead, thick eyebrows, concave nose, thick lips, large mouth, medium-sized ears, shaved moustache, and a goatee-type beard. No distinguishing features were identified. The following **CLOTHING** was being used: Blue Levi's pants, size 34x32; grey and green checkered underwear, brand JOKER; black socks; grey-colored t-shirt with the slogan ACCESS printed on the upper front, and similarly printed on the back, along with four holes cut in the cloth. There are also present the following **MARKS OF PHYSICAL VIOLENCE**: 1.- A wound from stabbing instrument located in the lower part of the right jaw, approximately 2x3 centimeters long; 2.- A wound from a stabbing instrument, in the lower right side of the neck, approximately 4.5x1 centimeters; 3.- A wound from a stabbing instrument located on the anterior surface of the distal third of the right arm, approximately 7x2.5 centimeters long; 4.- A wound from a stabbing instrument located on the inside of the thumb of the left hand one centimeter in diameter; 5.- Two wounds from stabbing instrument located in the right side of the back, approximately 5x2 centimeters and the other approximately 3x1 centimeters; 6.- A wound from a stabbing instrument located on the mid-

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

line of the posterior parietal region, approximately two centimeters long. In reference to **BELONGINGS**, it is attested: That the victim was not carrying any personal objects. At this point, the Personnel of the Forensic Medical Service are given the order to collect and transport the lifeless body to the installations of the Forensic Medical Services located at Boulevard Fundadores, Colonia Juarez, in this city, and they proceeded to admit the body of the deceased into the installations of the same with the purpose of practicing the necropsy according to Law. Therefore in continuation of this present proceeding, the Officials of the Ministry of Law Enforcement informed us that in the house number 1325 on the same street, and Colonia located several houses away, there appears to have been found the weapon with which the now deceased was wounded, an thus it is attested that there is observed constant dripping leading in the direction north-south, which ends at the lot numbered 1325, this being an approximate distance of 50 meters. On these premises there is found a residential house approximately 10 meters wide, of permanent construction. It has two floors, with a sign in front "FOR RENT 664-503-9747", with a black barred pedestrian gate, and before reaching the domicile there was found on the dirt path along sided the road, a set of keys with a key ring having the slogan "HUSKY". Inside the black barred pedestrian gate, at a distance of approximately 20 cm, it is attested that there is at sight a HOMEMADE SPIKE drenched in hematic liquid, as well as there being a trail of constant dripping on the floor which continues all the way to the second floor by way of the stairs, where there are located some apartments accessible by a hallway, here being where the trail of constant dripping ended. Continuing on with the proceeding, the state laboratory personnel took samples from the "homemade spike", as well as collecting samples of the trail of constant dripping as pertinent expert evidence. The HOMEMADE SPIKE MEASURED APPROXIMATELY 11 CENTIMETERS, and is the same which was packaged by personnel of Expert Services as pertinent evidence, and is an object which is being held in the installations of this Public Prosecutor, to be handed over to whomever it legally corresponds. – With the latter, the present proceeding is thus concluded. ---

B). – With the INFORMATION REPORT, number TIN/519/2012, dated May 7, 2012, rendered to their Superior by the Municipal Security Officers OSCAR MARTINEZ LOPEZ and HECTOR LEON MUÑOZ, in which they sated: That it being 02:10 hundred hours on this date we were carrying out security patrol on board unit 4957, when radio central instructed us to transport ourselves to the street denominated Tule number 1314, which is lateral with the street of Camichin in the colonia Praderas de La Mesa to respond to the report of a dead person, and for this reason we transported ourselves to said location: PREVENTIVE INTERVENTION: Once we were at the location we interviewed the woman named EDELMIRA MONTES HERNANDEZ, 71 years old, same person who stated to us that moments prior when she was inside her domicile, she heard when from outside on the public throughway her son named JORGE RANGEL MONTES, 43 years old, was shouting to her, and therefore she came closer and once she opened the door she saw that her son

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

was visibly hurt and with his clothes full of blood. Therefore, she requested a Red Cross ambulance and to said location there arrived unit BC-166 for which the paramedic Paredes was in charge, and this person told her that said person was lifeless due to what appeared to be various wounds with a stabbing instrument on different parts of their body. Likewise, there arrived at said location the ministerial agents Meza and Virueta, as well as Emigdio Gutierrez from Intentional Homicides, from Expert Services, the chemist Norma Rebeca Mata, from the Forensic Medical Service, Francisco Ramirez, so the higher authority was notified.

C).- The statement of the witness **WALTER ULISES ROSALES HEREDIA**, rendered before the Local Crime Investigation Public Prosecutor, on which he stated: That when he was 8 years old he went to live to Los Angeles California for 22 years and on the month of October 2010, he was deported for the crime of domestic violence. When he was deported he returned to live at his hometown in Michoacán, and on the month of June 2011, committed to return to the United States as an illegal immigrant, but thing got complicated so he has not been able to return to Los Angeles, and remained in this city with a friend called RAUL, who offered him to be his roommate at his hose and they could share the expenses. He met in that same neighborhood called *Praderas de la Mesa* a man named **JORGE RANGEL MONTES aka JORGE** and his brother **OCTAVIO RANGEL MONTES aka EL CONEJO**, with whom they shared the light bulb with which they smoked crystal and Marihuana. One of those times, the man named **JORGE RANGEL**, now deceased, told him to go to his house, that he was going to give him some stuff as gifts and when he got there he told him to stay and live with him and that they could share the expenses. After about a month of living there, the deponent stated that he was in fact a friend of the one nicknamed **CONEJO** and not a friend of **JORGE**, given that the deceased turned extremely violent when he got high on drugs along with a man named **GEORGE nicknamed el GÜERO**, when they got together at the home of the deceased, and they goy high on the shoot up drug known as CHIVA. So on Sunday, May 6th, 2012 around 17:00 hours when he was at the domicile along with the deceased, **GEORGE nicknamed el CONEJO,** who started to do drugs along with **JORGE** now deceased, so the deponent after smoking a marihuana cigarette around 23:00 hours decides to got to his room, given that **JORGE** was getting very violent and he wanted to avoid any problems with the deceased. Around 2:00 hours of May 7th, 2012, the deponent woke up because he heard someone screaming. **JORGE** and **GÜERO** were arguing, he saw **JORGE** throwing **GEORGE nicknamed el GÜERO**, towards the main door of the apartment, and when the deponent approached to ask what was going on, **JORGE** told him to get back to his room and to lock himself in, and he heard a neighbor shout STOP ARGUING, IF YOU CAN'T HANDLE THAT SHIT, QUIT THAT VICE, and he also heard the neighbor shout, BESIDES, IT'S YOUR PROBLEM. He heard a door being shut, and he heard nothing more so he went back to his room, and roughly half an hour later police officer arrived, they woke him up and told him **JORGE** was dead, they questioned him about this, if he knew anything about the death of **JORGE**. The deponent likewise states

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

that **GEORGE nicknamed el GÜERO**, has the following physical description, white skinned, heavy built, approximately 26 years old, crew cut brown hair, blue eyes, groomed mustache, height 1.80 meters, high forehead, medium lips, medium mouth, who if he saw again would without a doubt recognize. Being this all he has to state.

**D).-** With the statement of witness **EDELMIRA MONTES HERNANDEZ**, before the Agent of the Criminal Investigations Public Prosecutor in which she stated that she appears in this Office of the Public Prosecutor by her own free will  and that since approximately 35 years she has been living in the State of California, United States of America, and it has been approximately 8 years to date that her son **JORGE RANGEL MONTES** came to live in this city since he had been living in the neighboring country same as her, therefore each month she would come to this city to see her son **JORGE** and therefore she stayed in the home of her friend **ROSA AMELIA OROZCO SANCHEZ** which is located on **CALLE TULE NUMBER 1314 OF THE COLONIA PRADERA DE LA MESA, in this city of Tijuana, Baja California,** and her son **JORGE** lived in an apartment located close to the same street and colonia at number 1325, and it is such that on the 6th of the current month and year she was in this city in the home of her friend **AMELIA** and it being approximately  02:00 hundred hours of Monday, May 7 of the current year, she was laying down and at that moment she heard some shouts that were coming from the street and were from her son **JORGE** which said: **"MAMA, ROCIO (referring to my friend Rosa Amelia) CHINO HELP ME I AM DYING",** and therefore she immediately went out and saw that her son **JORGE RANGEL MONTES** was seated on the sidewalk and he said to her **MAMA, HOLD ME CALL AN AMBULANCE, TAKE ME,** and she asked him who had hurt him, and he answered **IT WAS GEORGE EL GÜERO, EL GEORGE, EL GEORGE,** he stabbed me, and therefore they immediately called for an ambulance so that medical would be provided to the person now deceased, and the ambulance arrived shortly thereafter and they give him medical attention. But the Red Cross paramedics told her that her son had passed away, also municipal police officers arrived, and minutes later the Public Prosecutor Office Personnel from The Forensic Medicine Service and took the lifeless body of her son, so she wishes to  state that the person who took the life of her son **JORGE RANGEL MONTES** and to which her son referred to as **GEORGE EL GÜERO,** is called **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** and who she knows since he was a child, and this in the State of California since **GEORGE EL GÜERO** is a United States citizen, and who answers to the following physical description, approximately 26 years old, white skinned, blue eyes, shaved head, strong build, same that almost always uses a mustache, but occasionally he shaves his mustache. In this proceeding, the acting personnel proceeds to put at sight of the witness two color photographs of a male person, same which were remitted **by Preliminary Report with number 349/HOM.DOL./12 dated May 7, 2012, signed by OSCAR RODRIGUEZ ANDALON and ADRIANA E. CAMACHO ROCHA,** the witness observes them in detail and

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

refers that the male person who appears in the photograph is the person she refers to as the person who took the life of her son, using it seems a blade or a stabbing instrument, this being **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO**, who at present looks exactly as he appears in the two photographs, since he has not changed physically. This same person after he took the life of her son **JORGE RANGEL MONTES** fled to an unknown destination, whom she wishes to add that she is aware he lived in the Praderas de la Mesa Neighborhood, same who after murdering her son fled to an unknown destination given that there is no information on him or his whereabouts. So she requests that the necessary investigations are carried out to locate **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO** and justice is served for his perpetration of the Homicide of her son named **JORGE RANGEL MONTES**. This being all the deponent has to state.

**E). -** With the statement of identification witness **ILDA RANGEL**, who before the Criminal Investigations Agent of the Public Prosecutor stated: That she had come from the installations of the Forensic Medical Service, location at which she fully recognized and without fear of making a mistake her **BROTHER** who during their lifetime answered to the name of **JORGE RANGEL MONTES**, who was 43 years old, date of birth December 12, 1970, marital status single, a native of Guadalajara, Jalisco, unemployed, domiciled at the street denominated Tule number 1314, colonia Praderas de La Mesa, level of schooling completed middle school, Catholic, and he had the following physical description: Approximately 1.60 in height, thin build, light olive skin, straight hair, from the front oval shaped face, brown colored eyes, wide forehead, thick eyebrows, pug nose, thick lips, big mouth, oval chin, medium size ears, shaved moustache, goatee, and that he did not have any distinguishing marks: he did not smoke, she does not know, she does not know, he did not suffer any illness and in relation to the manner in which her BROTHER died, she stated: "That today May 7, 2012 when it was approximately 02:00 hundred hours, mi sister named CLAUDIA RANGEL MONTES informed me that our mother had telephoned her to tell her that my brother **JORGE RANGEL MONTES** had been killed, and for that reason I travelled to this city of Tijuana, so as to go to the Forensic Medical Service to identify the body of my brother, and adding that I do not know who took my father's life or the reason why they did so, and therefore she is present in these offices to request the delivery of the body of her **BROTHER** who during his lifetime answered to the name of **JORGE RANGEL MONTES** so that she can make the corresponding funeral arrangements. And that this is all she has to state.

**F). –** With the statement of identification witness **TIENA RAE GUTIERREZ**, who before the Criminal Investigations Agent of the Public Prosecutor stated: That she had come from the installations of the Forensic Medical Service, location at which she fully recognized her

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**FATHER** who during their lifetime answered to the name of **JORGE RANGEL MONTES**, who was 43 years old, date of birth December 12, 1970, marital status single, a native of Guadalajara, Jalisco, unemployed, domiciled at the street denominated Tule number 1314, colonia Praderas de La Mesa, level of schooling completed middle school, Catholic, and he had the following physical description: Approximately 1.60 in height, thin build, light olive skin, straight hair, from the front oval shaped face, brown colored eyes, wide forehead, thick eyebrows, pug nose, thick lips, big mouth, oval chin, medium size ears, shaved moustache, goatee, and that he did not have any distinguishing marks: he did not smoke, she does not know, she does not know, he did not suffer any illness and in relation to the manner in which her BROTHER died, she stated: "That today May 7, 2012, my aunt named ARGELIA informed me that my father **JORGE RANGEL MONTES** had been killed, and for that reason I travelled to this city of Tijuana, so as to go to the Forensic Medical Service to identify the body of my father, and adding that I do not know who took my father's life or the reason why they did so, and therefore she is present in these offices to request the delivery of the body of her **FATHER** who during his lifetime answered to the name of **JORGE RANGEL MONTES** so that she can make the corresponding funeral arrangements. And that this is all she has to state.

G).- With the **CERTIFICATE OF NECROPSY and ITS MINISTERIAL ATTESTATION**; exhibited before the Criminal Investigations Agent of the Public Prosecutor, carried out by the **Medical Forensic Expert JOSE LUIS ARGUELLO MONTIEL**, on the date of May 7, 2011, on the one who was named JORGE RANGEL MONTES, and who after the present necropsy was determined that the immediate cause of death  was: **HYPOVOLEMIC SHOCK, AS A SECONDARY RESULT OF PENETRATING WOUNDS TO THE NECK, THORAX, AND ABDOMEN DUE TO INJURIES WITH A STABBING INSTRUMENT**; and is the same certificate of which the Criminal Investigations Agent of the Public Prosecutor attested.---

E).- With the **EXPERT OPINION   ON CHEMICAL TOXICITY and   THE MINISTERIAL ATTESTATION TO THE SAME**; number **LZT/1989/2012**, dated May 7, 2011, rendered by **PABLO GUILLERMO RODRIGUEZ  RUIZ** , assigned to the State Laboratory  of the Attorney General of the State, in which there is established the following **CONCLUSION**: "The sample in the plastic tube with a capacity of 6 milliliters, containing urine, labeled as 105/12/201 JORGE RANGEL MONTES, which was remitted under the chain of custody with folio number 107, and received the seventh of May of the current year, related to the Preliminary Investigation 105/12/201, resulted **POSITIVE** to the presence of metabolites of Methamphetamines, Amphetamines, and Opiates"; this experts opinion, of which the Criminal Investigations Agent of the Public Prosecutor attested.---

F).- With the **EXPERT OPINION  ON CHEMICAL BLOOD ALCOHOL LEVEL and THE  MINISTERIAL ATTESTATION TO THE SAME**; number LZT/1990/2012, dated May 7, 2011, rendered by **PABLO GUILLERMO RODRIGUEZ  RUIZ** , assigned to the State

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Laboratory of the Attorney General of the State, in which there is established the following **CONCLUSION**: "The sample in the plastic tube with a capacity of 6 milliliters, containing blood, labeled as 105/12/201 **JORGE RANGEL MONTES**, which was remitted under the chain of custody with folio number 107, and received the seventh of May of the current year, related to the **Preliminary Investigation AP/105/12/201, there was NO presence of alcohol identified**": this experts opinion, of which the Criminal Investigations Agent of the Public Prosecutor attested.---

G). – With the **EXPERT OPINION OF BLOOD COMPARISON AND MINISTERIAL ATTESTATION TO THE SAME:** number LZT/211)/2012, dated May 7, 2012, formulated by **MARIA DE LOS ANGELES RODRIGUEZ LOPEZ,** assigned to the State Laboratory of the State Office of the Attorney General, which establishes the following **CONCLUSION: FIRST:** "The red brown stains observed at the domicile located at the street denominated Tule number 1314, colonia Praderas de La Mesa, DO correspond to human blood: **SECOND:** The red brown stains observed at the domicile located at the street denominated Tule number 1314, colonia Praderas de La Mesa correspond to blood type "O"; **THIRD:** The blood type to which the sample remitted to the Forensic Medical Service belongs, identified with Preliminary Investigation number 105/12/201, correspond to **O Rh Positive** blood type"; expert opinion which is attested to by the Criminal Investigations Public Prosecutor.

H). – **WITH DIGITALIZED COPY OF TWO PHOTOGRAPHIC IMPRESSIONS AND MINISTERIAL ATTESTATION TO THE SAME:** where there may be observed the face of a person of the male sex with the following physical description: light skinned, strong build, dark short hair almost crew cut, short mustache, wide forehead, medium-sized lips, medium mouth, thick arched eyebrows, in the first picture the man can be seen wearing a black t-shirt and in his arms a baby with white clothing, and in the second picture he is wearing a blue t-shirt; same photographic impressions which were attested to by the Criminal Investigations Public Prosecutor.

I). – With **REPORT number 349/HOM.DOL./12** dated May 7, 2012, rendered to the Criminal Investigations Public Prosecutor by the Agents of the **State Ministerial Police OSCAR RODRIGUEZ ANDALON and ADRIANA E. CAMACHO ROCHA,** which in this portion is taken as fully reproduced, in keeping with the principle of procedural economy.

To the preceding evidentiary elements there is given the individual and joint evidentiary weight established for said purpose by articles 211, 215, 218, 221, 222 and 223 of the Code of Criminal Procedures, since the same result apt and effective at this time to legally evidence that on May 7, 2012, it being approximately 02:00 hundred hours the accused **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** being found at the domicile on the street denominated Tule number 1314, colonia Praderas de La Mesa, delegation Cerro Colorado, in this city, said accused person by unfair advantage took the life of the now deceased

FORMA C G-1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**JORGE RANGEL MONTES,** since he was carrying a knife-like weapon, causing with this weapon the injuries that ultimately caused his death, described in the certificate of necropsy as the determining cause of death: **HYPOVOLEMIC SHOCK, AS A SECONDARY RESULT OF PENETRATING WOUNDS TO THE NECK, THORAX, AND ABDOMEN DUE TO INJURIES WITH A STABBING INSTRUMENT**; formulated by the **Medical Forensic Expert JOSE LUIS ARGUELLO MONTIEL**; which was attested to by the Criminal Investigations Public Prosecutor, since the perpetrator did not run any risk of being killed or injured by the victim; thus materializing the elements which integrate the *corpus delicti* of **AGGRAVATED HOMICIDE.**

II. – **The Probable Responsibility** of the accused **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO** for the commission of the crime of **AGGRAVATED HOMICIDE**, crime provided for in article 123 in relation to 148, section II of the Criminal Code in force for the State, in his capacity as direct perpetrator, in conformity with the stipulations of article **16, section I** of the same previously invoked Legal Ordinance, and that in the record of the proceedings it has been made legally evident with all and every one of the evidentiary elements which serve as the basis for proving the *corpus delicti* under review. Amongst these stands out the statement made by the witness **EDELMIRA MONTES HERNANDEZ**, before the Agent of the Criminal Investigations Public Prosecutor in which she stated that she appears in this Office of the Public Prosecutor by her own free will and that since approximately 35 years she has been living in the State of California, United States of America, and it has been approximately 8 years to date that her son **JORGE RANGEL MONTES** came to live in this city since he had been living in the neighboring country same as her, therefore each month she would come to this city to see her son **JORGE** and therefore she stayed in the home of her friend **ROSA AMELIA OROZCO SANCHEZ** which is located on **CALLE TULE NUMBER 1314 OF THE COLONIA PRADERA DE LA MESA, in this city of Tijuana, Baja California,** and her son **JORGE** lived in an apartment located close to the same street and colonia at number 1325, and it is such that on the 6th of the current month and year she was in this city in the home of her friend **AMELIA** and it being approximately 02:00 hundred hours of Monday, May 7 of the current year, she was laying down and at that moment she heard some shouts that were coming from the street and were from her son **JORGE** which said: **"MAMA, ROCIO (referring to my friend Rosa Amelia) CHINO HELP ME I AM DYING",** and therefore she immediately went out and saw that her son **JORGE RANGEL MONTES** was seated on the sidewalk and he said to her **MAMA, HOLD ME CALL AN AMBULANCE, TAKE ME,** and she asked him who had hurt him, and he answered IT WAS **GEORGE EL GÜERO, EL GEORGE, EL GEORGE,** he stabbed me, and therefore they immediately called for an ambulance so that medical would be provided to the person now deceased, and the ambulance arrived shortly thereafter and they give him medical attention. But the Red Cross paramedics told her that her son had passed away, also municipal police officers arrived,

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

and minutes later the Public Prosecutor Office Personnel from The Forensic Medicine Service and took the lifeless body of her son, so she wishes to state that the person who took the life of her son **JORGE RANGEL MONTES** and to which her son referred to as **GEORGE EL GÜERO**, is called **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** and who she knows since he was a child, and this in the State of California since **GEORGE EL GÜERO** is a United States citizen, and who answers to the following physical description, approximately 26 years old, white skinned, blue eyes, shaved head, strong build, same that almost always uses a mustache, but occasionally he shaves his mustache. In this proceeding, the acting personnel proceeds to put at sight of the witness two color photographs of a male person, same which were remitted **by Preliminary Report with number 349/HOM.DOL./12 dated May 7, 2012, signed by OSCAR RODRIGUEZ ANDALON and ADRIANA E. CAMACHO ROCHA,** the witness observes them in detail and refers that the male person who appears in the photograph is the person she refers to as the person who took the life of her son, using it seems a blade or a stabbing instrument, this being **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** who at present looks exactly as he appears in the two photographs, since he has not changed physically. This same person after he took the life of her son **JORGE RANGEL MONTES** fled to an unknown destination, whom she wishes to add that she is aware he lived in the Praderas de la Mesa Neighborhood, same who after murdering her son fled to an unknown destination given that there is no information on him or his whereabouts. So she requests that the necessary investigations are carried out to locate **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO** and justice is served for his perpetration of the Homicide of her son named **JORGE RANGEL MONTES** fled to an unknown destination. This statement is confirmed by the witness **WALTER ULISES ROSALES HEREDIA,** rendered before the Local Crime Investigation Public Prosecutor, on which he stated: That when he was 8 years old he went to live to Los Angeles California for 22 years and on the month of October 2010, he was deported for the crime of domestic violence. When he was deported he returned to live at his hometown in Michoacán, and on the month of June 2011, committed to return to the United States as an illegal immigrant, but thing got complicated so he has not been able to return to Los Angeles, and remained in this city with a friend called RAUL, who offered him to be his roommate at his hose and they could share the expenses. He met in that same neighborhood called *Praderas de la Mesa* a man named **JORGE RANGEL MONTES aka JORGE** and his brother **OCTAVIO RANGEL MONTES aka EL CONEJO,** with whom they shared the light bulb with which they smoked crystal and Marihuana. One of those times, the man named **JORGE RANGEL,** now deceased, told him to go to his house, that he was going to give him some stuff as gifts and when he got there

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

he told him to stay and live with him and that they could share the expenses. After about a month of living there, the deponent stated that he was in fact a friend of the one nicknamed **CONEJO** and not a friend of **JORGE**, given that the deceased turned extremely violent when he got high on drugs along with a man named **GEORGE nicknamed el GÜERO**, when they got together at the home of the deceased, and they goy high on the shoot up drug known as CHIVA. So on Sunday, May 6th, 2012 around 17:00 hours when he was at the domicile along with the deceased, **GEORGE nicknamed el CONEJO**, who started to do drugs along with **JORGE** now deceased, so the deponent after smoking a marihuana cigarette around 23:00 hours decides to got to his room, given that **JORGE** was getting very violent and he wanted to avoid any problems with the deceased. Around 2:00 hours of May 7th, 2012, the deponent woke up because he heard someone screaming. **JORGE** and **GÜERO** were arguing, he saw **JORGE** throwing **GEORGE nicknamed el GÜERO**, towards the main door of the apartment, and when the deponent approached to ask what was going on, **JORGE** told him to get back to his room and to lock himself in, and he heard a neighbor shout STOP ARGUING, IF YOU CAN'T HANDLE THAT SHIT, QUIT THAT VICE, and he also heard the neighbor shout, BESIDES, IT'S YOUR PROBLEM. He heard a door being shut, and he heard nothing more so he went back to his room, and roughly half an hour later municipal police officer arrived, they woke him up and told him **JORGE** was dead, they questioned him about this, if he knew anything about the death of **JORGE**. The deponent likewise states that **GEORGE nicknamed el GÜERO**, has the following physical description, white skinned, heavy built, approximately 26 years old, crew cut brown hair, blue eyes, groomed mustache, height 1.80 meters, high forehead, medium lips, medium mouth, who if he saw again would without a doubt recognize evidentiary means that attain the weight of inference in conformity with the stipulations of article 223 of the Code of Criminal Procedure in force for the State, same that is granted full evidentiary weight upon being corroborated with the following proceeding of **TRANSPORTATION OF PERSONNEL AND MINISTERIAL ATTESTATION OF THE CORPSE**; carried out by the Criminal Investigations Agent of the Public Prosecutor, who attested that the **STATE MINISTERIAL POLICE DISPATCH CENTER FOR THE AGGRAVATED HOMICIDES** was informed by telephone of a dead person inside the domicile located at Calle Tule, Praderas de la Mesa, by which we, the acting personnel of the State Public Prosecutor, traveled and physically and legally convened at the indicated site, arriving at 03:27 hours to the domicile located at **CALLE TULE #1314, COLONIA PRADERAS DE LA MESA, DELEGACIÓN CERRO COLORADO, OF THIS CITY**, accompanied by the Agents of the State Public Prosecutor, assigned to the Investigative group of Aggravated Homicide, whose names are Juan Carlos Aaron Vazquez, and Jorge Omar Rios Montaño; as well as the Ministerial Agents of the Tijuana Zone's Nocturnal Guard CANCINO, VIRRUETA in charge of the Agent MEZA; Of the Criminalistics Experts assigned to the Division of Tiuana Zone Expert Services, NORMA ALICIA SANCHEZ RODRIGUEZ and REBECCA MATA;  representing the State Laboratory assigned to Expert Services, MARIA CHIQUETE; Among those employed in the Forensic Medical Service is FRANCISCO RAMIREZ and ALVARO RUIZ; also found present in the area were the

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

members of the Unit number P-495, under the command of Officer MARTINEZ, of the Ministry of Public Municipal Safety who were those that indicated the place in which WE ATTEST: To have at sight a street paved with hydraulic cement, and is in front of the domicile marked as number 1314 on public property, over the sidewalk, we attest to have at sight the lifeless body of an individual of the Masculine sex who in life was named **JORGE RANGEL MONTES** of 43 years of age. The person identifying the body was named EDELMIRA MONTES HERNANDEZ, who stated that she was the mother of the now deceased. She also stated that the now deceased **JORGE RANGEL MONTES** arrive to her domicile, with a knife injury, and before he died, he said that Jorge "N" had caused the wound. Continuing with the proceeding, it is attested that there is had at sight the lifeless body of a person of the masculine sex who in life was named **JORGE RANGEL MONTES,** and which was found lying, in a supine position, with the cephalic region oriented toward the south cardinal point, while the lower-extremities were flexed at the knee toward the south cardinal point, and slightly drawn, with the upper left-extremity extended and drawn, while the upper-right extremity was slightly bent and drawn. The now deceased is seen dressed in blue jeans, grey sweater, and black socks. Proceeding to the examination of the corpse, there is observed a total absence of life, eye/medulla-reflexes, since the pupils don't respond to the stimulus of light/dark. There is a lack of spontaneous respiration, since there is not rhythmic corporal movement. When touching the body, no pulse is perceived, and the temperature is inferior to that of the surrounding environment, and with an obvious pallor of a corpse; all the signs indicative of a real, true, and recent death. Thus, the personnel of Expert Services took photographic records of the body, which was then followed by personnel of the Forensic Medical Service proceeding to collect the body. Then, the personnel of Expert Services proceeded to establish the evidence at the moment of the collection of the body, locating under the body of the deceased, a red sweatshirt. As well, there are observed various blood stains on the vertical plane of the pedestrian door of the aforementioned domicile. There are also observed various bloodstains on a radio in the place where the body of the deceased was located. Proceeding to the examination of the deceased, the **PHYSICAL CHARACTERISTICS** observed are: 1.60 meters tall, brown-skinned, approximately 43 years old, of THIN build, with short dark-brown hair , oval face, brown eyes, wide forehead, thick eyebrows, concave nose, thick lips, large mouth, medium-sized ears, shaved moustache, and a goatee-type beard. No distinguishing features were identified. The following **CLOTHING** was being used: Blue Levi's pants, size 34x32; grey and green checkered underwear, brand JOKER; black socks; grey-colored t-shirt with the slogan ACCESS printed on the upper front, and similarly printed on the back, along with four holes cut in the cloth. There are also present the following **MARKS OF PHYSICAL VIOLENCE**: 1.- A wound from stabbing instrument located in the lower part of the right jaw, approximately 2x3 centimeters long; 2.- A wound from a stabbing instrument, in the lower right side of the neck, approximately 4.5x1 centimeters; 3.- A wound from a stabbing instrument located on the anterior surface of the distal third of the right arm, approximately 7x2.5 centimeters long; 4.- A wound from a stabbing instrument located on the inside of the thumb of the left hand

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

one centimeter in diameter; 5.- Two wounds from stabbing instrument located in the right side of the back, approximately 5x2 centimeters and the other approximately 3x1 centimeters; 6.- A wound from a stabbing instrument located on the mid-line of the posterior parietal region, approximately two centimeters long. In reference to **BELONGINGS**, it is attested: That the victim was not carrying any personal objects. At this point, the Personnel of the Forensic Medical Service are given the order to collect and transport the lifeless body to the installations of the Forensic Medical Services located at Boulevard Fundadores, Colonia Juarez, in this city, and they proceeded to admit the body of the deceased into the installations of the same with the purpose of practicing the necropsy according to Law. Therefore in continuation of this present proceeding, the Officials of the Ministry of Public Safety informed us that in the house number 1325 on the same street, and Colonia located several houses away, there appears to have been found the weapon with which the now deceased was wounded, an thus it is attested that there is observed constant dripping leading in the direction north-south, which ends at the lot numbered 1325, this being an approximate distance of 50 meters. On these premises there is found a residential house approximately 10 meters wide, of permanent construction. It has two floors, with a sign in front "FOR RENT 664-503-9747",with a black barred pedestrian gate, and before reaching the domicile there was found on the dirt path along sided the road, a set of keys with a key ring having the slogan "HUSKY". Inside the black barred pedestrian gate, at a distance of approximately 20 cm , it is attested that there is at sight a HOMEMADE SPIKE drenched in hematic liquid, as well as there being a trail of constant dripping on the floor which continues all the way to the second floor by way of the stairs, where there are located some apartments accessible by a hallway, here being where the trail of constant dripping ended. Continuing on with the proceeding, the state laboratory personnel took samples from the "homemade spike", as well as collecting samples of the trail of constant dripping as pertinent expert evidence. The HOMEMADE SPIKE measured approximately 11 centimeters, and is the same which was packaged by personnel of Expert Services as pertinent evidence, and is an object which is being held in the installations of this Public Prosecutor, to be handed over to whomever it legally corresponds; proceeding that acquires full evidentiary weight according to what is provided for in article 218 of the Code of Criminal Procedures currently in force in the State, being that it was carried out by the investigative Authority in the powers granted him in Constitutional article 21. Reinforcing the above with the **INFORMATION REPORT**, rendered to their Superior by the **Municipal Security Officers OSCAR MARTINEZ LOPEZ and HECTOR LEON MUÑOZ,** in which they sated: That it being 02:10 hundred hours on this date we were carrying out security patrol on board unit 4957, when radio central instructed us to transport ourselves to the street denominated Tule number 1314, which is lateral with the street of Camichin in the colonia Praderas de La Mesa to respond to the report of a dead person, and for this reason we transported ourselves to said location: PREVENTIVE INTERVENTION: Once we were at the location we interviewed the woman named **EDELMIRA MONTES HERNANDEZ**, 71 years old, same person who stated to us that moments prior when she was inside her domicile, she heard when from outside

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

on the public throughway her son named **JORGE RANGEL MONTES**, 43 years old, was shouting to her, and therefore she came closer and once she opened the door she saw that her son was visibly hurt and with his clothes full of blood. Therefore, she requested a Red Cross ambulance and to said location there arrived unit BC-166 for which the paramedic Paredes was in charge, and this person told her that said person was lifeless due to what appeared to be various wounds with a stabbing instrument on different parts of their body. Likewise, there arrived at said location the ministerial agents Meza and Virueta, as well as Emigdio Gutierrez from Intentional Homicides, from Expert Services, the chemist Norma Rebeca Mata, from the Forensic Medical Service, Francisco Ramirez, evidence to which is given evidentiary weight as established by article 223 of the Procedural Criminal Law, and is the same that acquires full evidentiary weight, seeing that it is confirmed with the weight of the evidence in the file. Adding to the preceding, there appears in the file the **CERTIFICATE OF NECROPSY and ITS MINISTERIAL ATTESTATION**; exhibited before the Criminal Investigations Agent of the Public Prosecutor, carried out by the **Medical Forensic Expert JOSE LUIS ARGUELLO MONTIEL**, on the date of May 7, 2011, on the one who was named **JORGE RANGEL MONTES**, and who after the present necropsy was determined that the immediate cause of death was: **HYPOVOLEMIC SHOCK, AS A SECONDARY RESULT OF PENETRATING WOUNDS TO THE NECK, THORAX, AND ABDOMEN DUE TO INJURIES WITH A STABBING INSTRUMENT**; as well as the **EXPERT OPINION ON CHEMICAL TOXICITY and THE MINISTERIAL ATTESTATION TO THE SAME;** number **LZT/1989/2012**, dated May 7, 2011, rendered by PABLO GUILLERMO RODRIGUEZ RUIZ , assigned to the State Laboratory of the Attorney General of the State, in which there is established the following CONCLUSION: "The sample in the plastic tube with a capacity of 6 milliliters, containing urine, labeled as 105/12/201 JORGE RANGEL MONTES, which was remitted under the chain of custody with folio number 107, and received the seventh of May of the current year, related to the Preliminary Investigation 105/12/201, resulted POSITIVE to the presence of metabolites of Methamphetamines, Amphetamines, and Opiates"; as well as **EXPERT OPINION ON CHEMICAL BLOOD ALCOHOL LEVEL and THE MINISTERIAL ATTESTATION TO THE SAME**; number LZT/1990/2012, dated May 7, 2011, rendered by **PABLO GUILLERMO RODRIGUEZ RUIZ** , assigned to the State Laboratory of the Attorney General of the State, in which there is established the following **CONCLUSION**: "The sample in the plastic tube with a capacity of 6 milliliters, containing blood, labeled as 105/12/201 **JORGE RANGEL MONTES,** which was remitted under the chain of custody with folio number 107, and received the seventh of May of the current year, related to the **Preliminary Investigation AP/105/12/201, there was NO presence of alcohol identified"** and EXPERT OPINION OF BLOOD COMPARISON AND MINISTERIAL ATTESTATION TO THE SAME: number LZT/211)/2012, dated May 7, 2012, formulated by **MARIA DE LOS ANGELES RODRIGUEZ LOPEZ,** assigned to the State Laboratory of the State Office of the Attorney General, which establishes the following **CONCLUSION: FIRST:** "The red brown stains observed at the domicile located at the street denominated Tule number 1314, colonia

FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Praderas de La Mesa, DO correspond to human blood: **SECOND:** The red brown stains observed at the domicile located at the street denominated Tule number 1314, colonia Praderas de La Mesa correspond to blood type "O"; **THIRD:** The blood type to which the sample remitted to the Forensic Medical Service belongs, identified with Preliminary Investigation number 105/12/201, correspond to **O Rh Positive** blood type"; these are the same which have been given evidentiary weight as established by article 222 of the Procedural Criminal Law, seeing that it fulfills the requirements which are called for in the article 179 of the same Legal Ordinance cited; having as well the evidentiary weight according to article 218 of the Procedural Criminal Law, since it was attested by the Investigative authority in full use of their powers which are conferred them by Constitutional article 21; evidentiary means which is reinforced with the statements of witnesses identified as **ILDA RANGEL and TIENA RAE GUTIERREZ** who before the Criminal Investigations Agent of the Public Prosecutor stated they had come from the installations of the Forensic Medical Service, location at which they fully recognized and without fear of making a mistake their **BROTHER and FATHER** respectively, who during his lifetime answered to the name of **JORGE RANGEL MONTES**, who was 43 years old, date of birth December 12, 1970, marital status single, a native of Guadalajara, Jalisco, unemployed, domiciled at the street denominated Tule number 1314, colonia Praderas de La Mesa, level of schooling completed middle school, Catholic, and he had the following physical description: Approximately 1.60 in height, thin build, light olive skin, straight hair, from the front oval shaped face, brown colored eyes, wide forehead, thick eyebrows, pug nose, thick lips, big mouth, oval chin, medium size ears, shaved moustache, goatee, and that he did not have any distinguishing marks: he did not smoke, they do not know, they do not know, he did not suffer any illness and in relation to the manner in which their **BROTHER and FATHER** died, they stated: "That today May 7, 2012 when it was approximately 02:00 hundred hours, **CLAUDIA RANGEL MONTES** called and informed them that **JORGE RANGEL MONTES** had been killed, and for that reason they travelled to this city of Tijuana, so as to go to the Forensic Medical Service to identify the body of the deceased, and adding that they do not know who killed the deceased or the reason why they do so, the forgoing added to **WITH DIGITALIZED COPY OF TWO PHOTOGRAPHIC IMPRESSIONS AND MINISTERIAL ATTESTATION TO THE SAME:** where there may be observed the face of a person of the male sex with the following physical description: light skinned, strong build, dark short hair almost crew cut, short mustache, wide forehead, medium-sized lips, medium mouth, thick arched eyebrows, in the first picture the man can be seen wearing a black t-shirt and in his arms a baby with white clothing, and in the second picture he is wearing a blue t-shirt; same photographic impressions which were attested to by the Criminal Investigations Public Prosecutor; as well as **I). –** With **REPORT number 349/HOM.DOL./12** dated May 7, 2012, rendered to the Criminal Investigations Public Prosecutor by the Agents of the **State Ministerial Police OSCAR RODRIGUEZ ANDALON and ADRIANA E. CAMACHO ROCHA,** which in this portion is taken as fully reproduced, in keeping with the principle of procedural economy; given inferential evidentiary weight granted by the provisions of article 223 of the Criminal

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Code of Procedures, same that is granted full evidentiary weight upon being corroborated with the rest of the collection of evidence that are part of the record; The evidence have the evidentiary value of inferences but upon being corroborated with the aforementioned collection of evidence and with those that will be mentioned below, in compliance with the provisions of article 223 of the State Code of Criminal Procedures in force their evidentiary weight increases until it is granted full evidentiary weight, evidentiary weight established for said purpose by articles 212, 213, and 214 of the Code of Criminal Procedures upon being corroborated and related in compliance to the provisions of article 223 of the same Law, for their natural and logical link they are efficient and appropriate to prove the direct intervention of the accused in the perpetration of the crime charged given that on on May 7, 2012, it being approximately 02:00 hundred hours the accused **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** being found at the domicile on the street denominated Tule number 1314, colonia Praderas de La Mesa, delegation Cerro Colorado, in this city, said accused person by unfair advantage took the life of the now deceased **JORGE RANGEL MONTES,** since he was carrying a knife-like weapon, causing with this weapon the injuries that ultimately caused his death, described in the certificate of necropsy as the determining cause of death: **HYPOVOLEMIC SHOCK, AS A SECONDARY RESULT OF PENETRATING WOUNDS TO THE NECK, THORAX, AND ABDOMEN DUE TO INJURIES WITH A STABBING INSTRUMENT;** formulated by the **Medical Forensic Expert JOSE LUIS ARGUELLO MONTIEL;** which was attested to by the Criminal Investigations Public Prosecutor, since the perpetrator did not run any risk of being killed or injured by the victim since there are satisfied the requirements established by articles 16 of the Constitution, 109 and 267, section I of the Code of Criminal Procedure it is appropriate to issue an **ARREST WARRANT** for **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** as the person probably responsible for the commission of the crime of **AGGRAVATED HOMICIDE.** This same order should be delivered to the Assigned Agent of the Public Prosecutor so that by their means it reaches the State Ministerial Police and orders the execution of the warrant, informing the aforesaid official that once said order is fulfilled, the accused should be interned in the Social Rehabilitation Center, in this city, at the disposition of this Court.

Due to what has been previously expressed, legally grounded and reasoned it should be decided as it is the:

## D E C I S I O N

**FIRST:** There is **ISSUED AN ARREST WARRANT** for JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**GÜERO,** as the person probably responsible for the commission of the crime of **AGGRAVATED HOMICIDE,** crime for which he was charged by the Criminal Investigations Public Prosecutor.

      **SECOND:** SOLELY NOTIFY THE ASSIGNED AGENT OF THE PUBLIC PROSECUTOR.

      T H U S: it was resolved and signed by **IGNACIA GLORIA FIMBRES MORENO,** Fourth Criminal Court Judge for this Judicial District, before **VICTOR MANUEL FERNANDEZ CORDOVA**, Second Clerk of Decisions with whom he acts and attests.

CONCLUDES THE ARREST WARRANT ISSUED IN CRIMINAL CASE:  279/2012. - -

FOURTH CRIMINAL COURT

On June, 11, 2012 notify (illegible) sign and attest

The Clerk

(Illegible)

(2 illegible signatures)

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

# EXHIBIT 2



FORMA C G- 1 A

ROCURADURÍA GENERAL
DE LA
REPÚBLICA

279/2012

**REPORT:** On October 31st, 2013 this Court Clerk Office notifies The Court through writ that the Assigned Agent of the Public Prosecutor exhibits. SO BE IT.

**RECORD.-** In the City of Tijuana, Baja California on October 31st, 2013.

**Having Reviewed**.- The reference writ to be entered into the record, the expressions of the Public Prosecutor Office are deemed as fulfilled, as requested issue certified copies in duplicate of the requested proceedings, on the other hand the request form the Office of the Public Prosecutor to compute the statute of limitations term of the right to punish, the term to start from date June 8th, 2012, on which the Arrest Warrant was issued against the accused against JORGE ANTONIO PASILLAS JARAMILLO, (A.K.A.) JORGE PASILLAS JARAMILLO, (A.K.A.) EL JORGE A. PASILLAS, (A.K.A.) JORGE ANTHONY PASILLAS, (A.K.A.) JORGE EL GÜERO, (A.K.A.) JORGE EL GÜERO, as the probable responsible individual in the commission of the crime of AGGRAVATED HOMICIDE, which in punishable according to the provisions of article 126 of the Criminal Code for the State with imprisonment of twenty to fifty years and according to the provisions of article 114 bis of the same law, the computation for the statute of limitations term in this case is June 9th, 2062.

The forgoing based in the provisions of articles110, 113, and 114 of the Criminal Code, related to articles 42, 43, 58 and 60 of the Code of Criminal procedures of the State.

**NOTIFY AND FULFILL**

Thus was ordered and signed by Fourth Criminal Court Judge of this Judicial Party, IGNACIA GLORIA FIMBRES MORENO, aided by Court Clerk VICTOR MANUEL FERNANDEZ CORDOVA, who authorizes and attests

(1 illegible signature)

FOURTH CRIMINAL COURT
(ILLEGIBLE TEXT) 11/04/13 (ILLEGIBLE TEXT)
(ILLEGIBLE SIGNATURE)

EXT_Pasillas Jaramillo_000089

FORMA C G· I A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

# EXHIBIT 3

FORMA  C G - 1 A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

## CHAPTER IX

### STATUTE OF LIMITATIONS

### GENERAL RULES

*Article 110.- **Effects and characteristics of the Statute of Limitations Term.**- The statute of limitations extinguishes the right to punish and the power to execute the penalties and security measures, it is personal right; it is a personal right and the simple passage of time, as indicated by law, shall be enough to cause Statute of limitations.*
*The statute of limitations shall be decided ex-officio or at the request of a party.*

*Article 112.- **Legal Impediment to the Statute of Limitations Term run**.- The terms for the statute of limitations shall not run when there is a legal impediment to exercise the right to punish or to execute imposed the penalties or security measures.*

### CHAPTER IX

### STATUTE OF LIMITATIONS OF THE RIGHT TO PUNISH

*Article 113.- **The term of the statute of limitations of the right to punish**.-The term of the statute of limitations of the right to punish shall be continuous, and shall begin to run:*
*I. From the moment in which the crime was perpetrated, if it was instantaneous;*
*II. From the time in which the last criminal act was carried out, or the omission of the due conduct took place, if it was a crime of attempt;*
*III. From the day when the last conduct was carried out, if the crime was continuing; and*
*IV. From the moment when the consummation of the crime stopped, in a permanent crime.*

*Article 117.- **Need of previous statement or decision for the Statute of Limitations Term Run.**- Whenever it is necessary that a previous statement or decision be issued by a competent authority in order to exercise or to continue to exercise the right to punish, the statute of limitations shall not start to run until that requirement is satisfied.*

### CHAPTER IX

### STATUTE OF LIMITATIONS OF THE RIGHT TO EXECUTE PENALTIES AND SECURITY MEASURES

*Article 122.- **Prohibition to live in certain location**.- The inmates of crimes such as intentional homicide of injuries or serious violence, who are prohibited to go to a certain place, and whose imprisonment penalty has prescribed, are not able to live in certain places where the victim, their descendants, life partners or brothers reside, after the statute of limitations term has run, for a period of time equal to the imprisonment penalty term.*

FORMA C G - I A



'ROCURADURÍA GENERAL
DE LA
REPÚBLICA

*BOOK TWO*

*SPECIAL PART*

*FIRST SECTION*

*CRIMES AGAINST THE INDIVIDUAL*

*FIRST TITLE*

*CRIMES AGAINST LIFE AND PERSONAL HEALTH*

*CHAPTER I*

*HOMICIDE*

*Article 133.- **Description of the Crime**.-The crime of homicide is committed by whomever takes the life of another.*

THE UNDERSIGNED **CARLOS ALBERTO LEAL SARIÑANA**, HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, IN COMPLIANCE TO THE PROVISIONS OF ARTICLE 42, SECTION V OF THE INTERNAL REGULATIONS OF THE OFFICE OF THE CHIEF ADMINISTRATOR OFFICER OF GOVERNMENT, PUBLISHED IN THE STATE OFFICIAL GAZETTE, ON NOVEMBER 18TH, 2011.

CERTIFY:

THAT THE CURRENT PHOTOCOPY IS EXACT AND FAITHFULL TO THE ORIGINAL THAT IS PART OF THE RECORD. SAME THAT IS FILED IN THIS OFFICE WHICH I HEAD, THREE DULLY CORROBORATED PAGES ARE ISSUED.

**MEXICALI, BAJA CALIFORNIA, NOVEMBER 25TH, 2013.**

**(AN ILLEGIBLE SIGNATURE)**
**CARLOS ALBERTO LEAL SALDAÑA**
**HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA**

FORMA C G - 1 A

PROCURADURÍA GENERAL
DE LA
REPÚBLICA

*OFFICIAL GAZETTE August 20, 1989*

-------------------------------------------------------------------------------------------------

### CHAPTER VII

### *GENERAL RULES FOR THE CRIMES OF HOMICIDE AND INJURIES*

*"Article 148.- **The Concept of Unfair Advantage**.- Unfair Advantage exists:*

*I.- When the defendant is stronger than the victim and the victim is unarmed.*

*II.- When the defendant is stronger due to the weapons he uses, by his grater skill on those weapons or by the persons who accompany him;*

*III. - When the defendant, by any means, weakens the victim's defense, and*

*IV. - When the victim is defenseless or fallen and the offender is armed or on his feet.*

*Unfair Advantage shall not be considered an aggravating circumstance in the first three mentioned cases if the person who has the unfair advantage is legitimately justified in using self-defense, nor shall it be considered in the fourth case if the person who is armed or who is standing was the victim, and furthermore the latter's life would have been endangered if they had not taken advantage of said circumstance.*

THE UNDERSIGNED **CARLOS ALBERTO LEAL SARIÑANA**, HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, IN COMPLIANCE TO THE PROVISIONS OF ARTICLE 42, SECTION V OF THE INTERNAL REGULATIONS OF THE OFFICE OF THE CHIEF ADMINISTRATOR OFFICER OF GOVERNMENT, PUBLISHED IN THE STATE OFFICIAL GAZETTE, ON NOVEMBER 18TH, 2011.

CERTIFY:

THAT THE CURRENT PHOTOCOPY IS EXACT AND FAITHFULL TO THE ORIGINAL THAT IS PART OF THE RECORD. SAME THAT IS FILED IN THIS OFFICE WHICH I HEAD, TWO DULLY CORROBORATED PAGES ARE ISSUED.

**MEXICALI, BAJA CALIFORNIA, NOVEMBER 25TH, 2013.**

**(AN ILLEGIBLE SIGNATURE)**
**CARLOS ALBERTO LEAL SALDAÑA**
**HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA**

FORMA C G - I A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

*April (illegible) 2003*                 **OFFICIAL GAZETTE**                 *Page 7*

--------------------------------------------------------------------------------

**THE XVII CONSTITUTIONAL LEGISLATURE OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, USING THE POWERS GRANTED BY ARTICLE 27, SECTION I OF THE STATE POLITICAL CONSTITUTION, ISSUES THE FOLLOWING:**

### DECREE 160

**ARTICLE 147- Aggravated Homicide and Bodily Injuries.-** Homicide and Bodily Injuries are aggravated when they are perpetrated with malice aforethought, unfair advantage, lying in wait or treachery; likewise they will be considered aggravated when they are committed against members of law enforcement agencies in the performance, or as a consequence of the performance, of their duties, including employees of private companies and those who independently give security, protection, surveillance or custody services of people, places or business, as well as assets or securities including their transportation, if they are properly registered by the public organizations with jurisdiction. This article is not to be used in cases involving non serious crimes due to negligence.

THE UNDERSIGNED **CARLOS ALBERTO LEAL SARIÑANA**, HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, IN COMPLIANCE TO THE PROVISIONS OF ARTICLE 42, SECTION V OF THE INTERNAL REGULATIONS OF THE OFFICE OF THE CHIEF ADMINISTRATOR OFFICER OF GOVERNMENT, PUBLISHED IN THE STATE OFFICIAL GAZETTE, ON NOVEMBER 18TH, 2011.

CERTIFY:

THAT THE CURRENT PHOTOCOPY IS EXACT AND FAITHFULL TO THE ORIGINAL THAT IS PART OF THE RECORD. SAME THAT IS FILED IN THIS OFFICE WHICH I HEAD, ONE DULLY CORROBORATED PAGE IS ISSUED.

**MEXICALI, BAJA CALIFORNIA, NOVEMBER 25TH, 2013.**

**(AN ILLEGIBLE SIGNATURE)**
**CARLOS ALBERTO LEAL SALDAÑA**
**HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA**

置

FORMA C G - 1 A



!OCURADURÍA GENERAL
DE LA
REPÚBLICA

*Page 8*                    **OFFICIAL GAZETTE**                    *June 12, 1998*

---------------------------------------------------------------------------------------------------------------------

"**Article 126.- <u>Aggravated Homicide</u>.-** An imprisonment penalty ranging from twenty to fifty years shall be imposed to the perpetrator of an aggravated homicide foreseen in Article 147."


THE UNDERSIGNED **CARLOS ALBERTO LEAL SARIÑANA**, HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, IN COMPLIANCE TO THE PROVISIONS OF ARTICLE 42, SECTION V OF THE INTERNAL REGULATIONS OF THE OFFICE OF THE CHIEF ADMINISTRATOR OFFICER OF GOVERNMENT, PUBLISHED IN THE STATE OFFICIAL GAZETTE, ON NOVEMBER 18TH, 2011.

CERTIFY:

THAT THE CURRENT PHOTOCOPY IS EXACT AND FAITHFULL TO THE ORIGINAL THAT IS PART OF THE RECORD. SAME THAT IS FILED IN THIS OFFICE WHICH I HEAD, ONE DULLY CORROBORATED PAGE IS ISSUED.

**MEXICALI, BAJA CALIFORNIA, NOVEMBER 25TH, 2013.**

**(AN ILLEGIBLE SIGNATURE)**
**CARLOS ALBERTO LEAL SALDAÑA**
**HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE**
**FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA**

FORMA C G - I A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

*Page 8*                    ***OFFICIAL GAZETTE***                    *September 02, 1994*

---------------------------------------------------------------------------------------------------------------------------------

**Article 115.-** <u>**Statute of Limitations Term of the criminal action of crimes prosecutable through complaint.**</u>- The criminal action arising from a crime that can only be initiated by the complaint or any other equivalent action of the victim shall be one year counted from the day knowledge of the crime and of the offender, and in three years, if the above requirement is not satisfied.

But if the procedural requirement is satisfied within the above-specified term, statute of limitations shall continue running according to the rules for crimes prosecutable "ex officio".

THE UNDERSIGNED **CARLOS ALBERTO LEAL SARIÑANA**, HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, IN COMPLIANCE TO THE PROVISIONS OF ARTICLE 42, SECTION V OF THE INTERNAL REGULATIONS OF THE OFFICE OF THE CHIEF ADMINISTRATIVE OFFICER OF GOVERNMENT, PUBLISHED IN THE STATE OFFICIAL GAZETTE, ON NOVEMBER 18TH, 2011.

CERTIFY:

THAT THE CURRENT PHOTOCOPY IS EXACT AND FAITHFULL TO THE ORIGINAL THAT IS PART OF THE RECORD. SAME THAT IS FILED IN THIS OFFICE WHICH I HEAD, TWO DULLY CORROBORATED PAGES ARE ISSUED.

**MEXICALI, BAJA CALIFORNIA, NOVEMBER 25TH, 2013.**

**(AN ILLEGIBLE SIGNATURE)**
**CARLOS ALBERTO LEAL SALDAÑA**
**HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE
FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA**

FORMA C G - 1 A

PROCURADURÍA GENERAL
DE LA
REPÚBLICA

*(Illegible)*          ***OFFICIAL GAZETTE***          *April 3, 2009*

-----------------------------------------------------------------------------------------------------------------

THE XIX CONSTITUTIONAL LEGISLATURE OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, USING THE POWERS GRANTED BY ARTICLE 27, SECTION I OF THE STATE POLITICAL CONSTITUTION, ISSUES THE FOLLOWING:

<u>DECREE 220</u>

FIRST: THE AMENDMENT OF ARTICLE 114 OF THE CRIMINAL CODE FOR THE STATE OF BAJA CALIFORNIA IS APPROVED, AND WILL READ AS FOLLOWS:

ARTICLE 114.- Prescription of the Right to Punish.- The right to punish shall prescribe in a term equal to the mathematical average of the prison terms established by law for the crime in matter, **unless it falls under the provisions of article 114 Bis. of this Code.** But in no case shall it be less than three years.

If the crime only warrants penalization of a fine, the right to punish shall prescribe in one year.

If in addition to an imprisonment penalty, the crime warrants penalization with an additional or alternative penalty, the statute of limitations for the right to punish with imprisonment shall be applicable.

In all other cases, the right to punish shall prescribe in two years.

SECOND: THE ADDITION OF ARTICLE 114 BIS. TO THE CRIMINAL CODE FOR THE STATE OF BAJA CALIFORNIA IS APPROVED, AND WILL READ AS FOLLOWS:

ARTICLE 114 Bis.- On crimes of homicide, kidnapping, human trafficking and terrorism, listed in this Code, prescription of the right to punish will be equivalent to the maximum punishment foreseen for the crime is the particular case.

### TEMPORARY ARTICLE

SOLE.- This amendment will enter into force the following day of it publication in the State Official Gazette.

GIVEN in the "Benito Juarez Garcia" Session Room of the Legislative Branch of the State of Baja California, in the City of Mexicali, B.C. on February 26, 2009.

FORMA C G - I A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

(Illegible signature)

### CONGRESSWOMAN GUADALUPE SANCHEZ MARTINEZ

### PRESIDENT

(Illegible signature)

### CONGRESSMAN CARLOS ALONSO ANGULO RENTERIA

### SECRETARY

THE UNDERSIGNED **CARLOS ALBERTO LEAL SARIÑANA**, HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, IN COMPLIANCE TO THE PROVISIONS OF ARTICLE 42, SECTION V OF THE INTERNAL REGULATIONS OF THE OFFICE OF THE CHIEF ADMINISTRATOR OFFICER OF GOVERNMENT, PUBLISHED IN THE STATE OFFICIAL GAZETTE, ON NOVEMBER 18TH, 2011.

CERTIFY:

THAT THE CURRENT PHOTOCOPY IS EXACT AND FAITHFULL TO THE ORIGINAL THAT IS PART OF THE RECORD. SAME THAT IS FILED IN THIS OFFICE WHICH I HEAD, TWO DULLY CORROBORATED PAGES ARE ISSUED.

**MEXICALI, BAJA CALIFORNIA, NOVEMBER 25TH, 2013.**

**(AN ILLEGIBLE SIGNATURE)**
**CARLOS ALBERTO LEAL SALDAÑA**
**HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA**

FORMA C G - 1 A



'OCURADURÍA GENERAL
DE LA
REPÚBLICA

*Page 08*          ***OFFICIAL GAZETTE***          *Octubre15, 2010*

---------------------------------------------------------------------------------------------------------------

**ARTICLE 118.- Interruption of the Statute of Limitations Term.-** The statute of limitations of the right to punish shall be interrupted by those proceedings that are related to the investigation of the crime, even though the proceedings are carried out against an unspecified person because the offenders are unknown.

...

...

...

...

THE UNDERSIGNED **CARLOS ALBERTO LEAL SARIÑANA**, HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, IN COMPLIANCE TO THE PROVISIONS OF ARTICLE 42, SECTION V OF THE INTERNAL REGULATIONS OF THE OFFICE OF THE CHIEF ADMINISTRATOR OFFICER OF GOVERNMENT, PUBLISHED IN THE STATE OFFICIAL GAZETTE, ON NOVEMBER 18TH, 2011.

CERTIFY:

THAT THE CURRENT PHOTOCOPY IS EXACT AND FAITHFULL TO THE ORIGINAL THAT IS PART OF THE RECORD. SAME THAT IS FILED IN THIS OFFICE WHICH I HEAD, ONE DULLY CORROBORATED PAGE IS ISSUED.

**MEXICALI, BAJA CALIFORNIA, NOVEMBER 25TH, 2013.**

**(AN ILLEGIBLE SIGNATURE)**
**CARLOS ALBERTO LEAL SALDAÑA**
**HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE**
**FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA**

FORMA CG-1A

PROCURADURÍA GENERAL
DE LA
REPÚBLICA

*September 21st, 2012.*          **OFFICIAL GAZETTE**          *Page 35*

-----------------------------------------------------------------------------------------------

**THE XX CONSTITUTIONAL LEGISLATURE OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, USING THE POWERS GRANTED BY ARTICLE 27, SECTION I OF THE STATE POLITICAL CONSTITUTION, ISSUES THE FOLLOWING:**

### DECREE 275

**SOLE.-** The amendments of articles 119 and 120 of the Criminal Code for the State of Baja California are approved, and will read as follows:

**ARTICLE 118.-** Terms for prescription of penalties .- The terms for prescription of penalties shall be continuous, and shall start running the day after the condemned person flees from the administration of justice if the penalties deprive or restrict his liberty; if the penalties are not of the type previously mentioned, prescription shall start to run from the date of the final sentence or at the moment the Law expressly commands it.

THE UNDERSIGNED **CARLOS ALBERTO LEAL SARIÑANA**, HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, IN COMPLIANCE TO THE PROVISIONS OF ARTICLE 42, SECTION V OF THE INTERNAL REGULATIONS OF THE OFFICE OF THE CHIEF ADMINISTRATOR OFFICER OF GOVERNMENT, PUBLISHED IN THE STATE OFFICIAL GAZETTE, ON NOVEMBER 18TH, 2011.

CERTIFY:

THAT THE CURRENT PHOTOCOPY IS EXACT AND FAITHFULL TO THE ORIGINAL THAT IS PART OF THE RECORD. SAME THAT IS FILED IN THIS OFFICE WHICH I HEAD, ONE DULLY CORROBORATED PAGE IS ISSUED.

**MEXICALI, BAJA CALIFORNIA, NOVEMBER 25TH, 2013.**

**(AN ILLEGIBLE SIGNATURE)**
**CARLOS ALBERTO LEAL SALDAÑA**
**HEAD OF THE GENERAL ARCHIVES DEPARTMENT OF THE EXECUTIVE BRANCH OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA**

FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

# EXHIBIT 4

FORMA CG-1A



PROCURADURÍA GENERAL
DE LA
REPUBLICA



FORMA C G - 1 A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA



FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPUBLICA



FORMA C G - I A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

# EXHIBIT 5

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Ministry of Municipal Law Enforcement

District: CERRO COLORADO

Section: 125

Official Letter: TIN/519/2012

File: ARCHIVO

Subject: ASSIGNED THROUGH COMPLAINT

Date: May 7, 2012

"2012, the year of the rights for physically challenged persons"

CAPTAIN RIARDO H. GARDUÑO

DIRECTOR OF MUNICIPAL TRANSIT POLICE

BY HAND.-

RECORDS: By means of the present official letter, allow us to inform you that it being 02:10 hundred hours on this date we were carrying out security patrol on board unit 4957, when RADIO CENTRAL instructed us to transport ourselves to the street denominated TULE number 1314, which is lateral with the street of CAMICHIN in the colonia PRADERAS DE LA MESA to respond to the report of a dead person, and for this reason we transported ourselves to said location.

PREVENTIVE INTERVENTION: Once we were at the location we interviewed the woman named EDELMIRA MONTES HERNANDEZ, 71 years old, same person who stated to us that moments prior when she was inside her domicile, she heard when from outside on the public throughway her son named JORGE RANGEL MONTES, 43 years old, was shouting to her, and therefore she came closer and once she opened the door she saw that her son was visibly hurt and with his clothes full of blood. Therefore, she requested a Red Cross ambulance and to said location there arrived unit BC-166 for which the paramedic Paredes was in charge, and this person told her that said person was lifeless due to what appeared to be various wounds with a stabbing instrument on different parts of their body. Likewise, there arrived at said location the ministerial agents Meza and Virueta, as well as Emigdio Gutierrez from Intentional Homicides, from Expert Services, the chemist Norma Rebeca Mata, from the SEMEFO, Francisco Ramirez, which is why it was brought to the knowledge of his superiors, as well as the Municipal Judge, who is in turn the person that called for the drawing up of the present section, addressed to the agency MPOC of Intentional Homicides.

VICTIMS: Due to these facts the one named JORGE RANGEL MONTES lost his life at 43 years.

(Illegible text): No knowledge was had.

ADDITIONAL INFORMATION: It is brought to your attention that said person was found lying on the sidewalk, said individual had wounds on the chin, neck, left lower arm and two

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

wounds on the back, apparently all of them caused by a stabbing weapon, likewise the witness noted that the perpetrator of the murder of her son is known to her by the name of Jorge Pasillas aka GEORGE, physical description thin build, light skin, color eyes (sic), who lives at Amapa Street on the corner with Hojas Street number 1840 apartment 1, Praderas de la Mesa.

Participants of the events:

Name: EDELMIRA MONTES HERNANDEZ Gander: Female, 71 Years old (02/10/1941), domicile at TULE 1341, PRADERAS DE LA MESA [WITNESS] NO INJURIES.

Name: JORGE RANGEL MONTES Gender: Male 43 Years old (01/05/1969) Domicile TULE 1341, PRADERAS DE LA MESA [DEAD] VIOLENT DEATH

The Municipal Judge in charge CESAR OMICRON RODRIGUEZ DIAZ, on being notified of the facts, ordered the current report be rendered, attached id the decision folio 356

We notify the authority awaiting a decision on this matter.

### RESPECTFULLY

### THE OFFICER OF POLICE UNIT 4987

### 4135 MARTINEZ LOPEZ OSCAR AND 4520 LEON MUÑOZ HECTOR

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPUBLICA

# EXHIBIT 6

EXT_Pasillas Jaramillo_000108

FORMA C G - 1 A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

# PGJE

OFFICE OF THE STATE ATTORNEY GENERAL

BAJA CALIFORNIA

MINISTERIAL POLICE, SECOND ZONE
INTENTIONAL HOMICIDE INVESTIGATION UNIT.

OFFICIAL LETTER 349/HOM.DOL./12

SUBJECT: SITUATION REPORT

TIJUANA, B.C. MAYO 7, 2012

**AGENT OF THE PUBLIC PROSECUTOR**

**FOR INTENTIONAL HOMICIDES.**

**BY HAND**

      **BACKGROUND:** THE UNDERSIGNED **OSCAR RODRIGUEZ ANDALON (1153 PME) AND ADRIANA E. CAMACHO ROCHA,** AGENTS OF THE STATE MINISTERIAL POLICE, RENDER OUR **FIRST PROGRESS REPORT,** ON INVESTIGATION 120/12/201 DATED MAY 7TH, 2012, WHICH ORDERED THE INVESTIGATION OF THE NOTIFIED FACTS ON RECORD NUMBER 105/12/201/AP, ASSIGNED TO THIS OFFICE OF THE PUBLIC PROSECUTOR FOR THE CRIME OF AGGRAVATED HOMICIDE, AGAINST **JORGE RANGEL MONTES,** AGAINST THE **RESPONSIBLE PARTY.**

**INVESTIGATION:** ONCE AWARE OF THE CONTENTS OF THIS INVESTIGATION ORDER THE UNDERSIGNED APPEARED AT THE DOMICILE LOCATED AT TULE 1325, PRADERAS DE LA MESA, LOCATION WHERE THE WEAPON WITH WHICH THE DECEASED WAS INJURED, WAS FOUND. ONCE THERE WE WERE INFORMED THAT WHEN ALIVE, THE DECEASED, LIVED IN AN APARTMENT MARKED AS INTERIOR 8 AND THAT HE SHARED IT WITH ANOTHER PERSON, SO WE APPEARED IN SAID APARTMENT WHERE AFTER IDENTIFYING OURSELVES WE WERE GREETED BY HE WHO CLAIMED TO BE NAMED **WALTER ULISES ROSALES HEREDIA,** WHO STATED THAT HE IN FACT SHARED THE APARTMENT WITH **JORGE RANGEL MONTES** FOR ABOUT A MONTH NOW, WE REQUESTED HIM TO ACCOMPANY US TO THIS OFFICES OF THE PUBLIC PROSECUTOR, HE ACCEPTED VOLUNTARILY.

ONCE IN THIS OFFICE HE STATED BEING NAMED **WALTER ULISES ROSALES HEREDIA,** 31 YEARS OLD, BIRTHDATE NOVEMBER 22, 1980, NATIVE OF ZACAPU, MICHOACÁN, SINGLE, OCCUPATION EMPLOYEE, AND ON THE FACTS UNDER INVESTIGATION HE STATED: THAT FOR APPROXIMATELY A MONTH HE HAD SHARED AND APARTMENT WITH THE DECEASED **JORGE RANGEL MONTES,** THAT YESTERDAY SUNDAY THEY SPENT ALL DAY INSIDE THE APARTMENT AND AT AROUND 17:00 HOURS A FRIEND OF JORGE ARRIVED WHO HE KNOWS AS "GEORGE" AKA "EL GUERO", THEY STARTED TO DO DRUGS, ONE KNOWN AS CHIVA. AROUND 22:00 HOURS THE DEPONENT DECIDES TO GOT TO HIS ROOM, GIVEN

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPUBLICA

THAT JORGE RANGEL WAS GETTING VERY VIOLENT BECAUSE OF HIS ADICTION TO LA CHIVA DRUG. AROUND 2:00 HOURS OF MONDAY, THE DEPONENT WOKE UP BECAUSE HE HEARD SOMEONE SCREAMING. JORGE AND "EL GÜERO" WERE ARGUING, HE SAW JORGE RANGEL THROWING GEORGE AKA "EL GÜERO", TOWARDS THE MAIN DOOR OF THE APARTMENT, AND JORGE WAS TELLING GEORGE TO GET OUT OF THE APARTMENT IN ENGLISH AND THEN JORGE TOLD HIM TO GET BACK TO HIS ROOM, HE HEARD THAT THE ARGUMENT CONTINUED IN THE HALLWAY, AND HE STAYED IN HIS ROOM. HE THEN HEARD A MALE VOICE SHOUT "STOP ARGUING", "IF YOU CAN'T HANDLE THAT SHIT, QUIT THAT VICE", AND HE RECOGNIZED THE VOICE AS THAT OF HIS NEIGHBOR, HE DOESN'T KNOW HE NEIGHBORS NAME. AFTER THE ARGUMENT HE DOES NOT KNOW WHAT HAPPENED WITH JORGE AND GORGE, HE WENT BACK TO SLEEP. BEING THIS ALL HE HAS TO STATE.

**COMPLEMENTARY:** WE NOTIFY THAT THE DEPONENT PROVIDED US WITH TWO COLOR PHOTOGRAPHS, IN THE FIRST ONE A MALE INDIVIDUAL APPEARS, LIGHT SKINNED, SHAVED HEAD, WEARING A BLACK T-SHIRT AND THE SECOND THE FACE OF A MALE INDIVIDUAL, BOTH PHOTOGRAPHS ARE OF THE PERSONA NAMED JORGE AKA "GEORGE"  AKA "EL GUERO"; SAME PHOTOGRAPHS THAT ARE SENT TO YOU.

APPEARS BEFORE YOU HE WHO IS NAMED **WALTER ULISES ROSALES HEREDIA,** 31 YEARS OLD.

WE NOTIFY THE AUTHORITY AWAITING A DECISION ON THIS MATTER.

**RESPECTFULLY**

**THE STATE MINISTERIAL POLICE OFFICERS**

**(ILLEGIBLE SIGNATURES)**

**OSCAR RODRIGUEZ ANDALON**          **ADRIANA CAMACHO ROCHA**

**(1153 HME)**                                           **(0509 PME)**

FORMA C G. 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

# EXHIBIT 7

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPUBLICA

# PGJE

OFFICE OF THE STATE ATTORNEY GENERAL

BAJA CALIFORNIA

> MINISTERIAL POLICE, SECOND ZONE
> INTENTIONAL HOMICIDE INVESTIGATION UNIT.
>
> OFFICIAL LETTER 356/HOM.DOL./12
>
> SUBJECT: REPORT
>
> TIJUANA, B.C. MAYO 9, 2012

**AGENT OF THE PUBLIC PROSECUTOR**

**FOR INTENTIONAL HOMICIDES.**

**BY HAND**

> **BACKGROUND:** THE UNDERSIGNED **OSCAR RODRIGUEZ ANDALON (1153 PME) AND ADRIANA E. CAMACHO ROCHA,** AGENTS OF THE STATE MINISTERIAL POLICE, RENDER OUR **REPORT,** ON INVESTIGATION 120/12/201 DATED MAY 7TH, 2012, WHICH ORDERED THE INVESTIGATION OF THE NOTIFIED FACTS ON RECORD NUMBER 105/12/201/AP, ASSIGNED TO THIS OFFICE OF THE PUBLIC PROSECUTOR FOR THE CRIME OF AGGRAVATED HOMICIDE, AGAINST **JORGE RANGEL MONTES,** AGAINST THE **RESPONSIBLE PARTY.**

THE UNDERSIGNED NOTIFY THAT **ILDA RANGEL MONTES AND TIANA RAE GUTIERREZ** APPEARED IN THIS OFFICE, THEY STATED TO HAVE BEEN AT THE FACILITIES OF THE FORENSIC MEDICAL SERVICE, WHERE THEY HAD AT SIGHT THE CORPSE OF A MALE INDIVIDUAL WHO WAS BROUGHT IN ON MAY 7TH, 2012, WHO THEY FULLY RECOGNIZE AS HE WHO IN LIFE WAS NAMED **JORGE RANGEL MONTES,** SO THEY ARE TO RENDER DEPOSITION AS IDENTIFICATION WITNESSES.

INTERVIEW WITH **ILDA RANGEL MONTES** 48 YEARS OLD, BIRTHDATE APRIL 5TH, 1964, NATIVE OF MICHOACÁN, MARRIED, OCCUPATION HOUSE WIFE, WITH DOMICILE AT 650 PALERMO WAY, LA HABRA, CALIFORNIA, 90631, IN THE UNITED STATES OF AMERICA, WHO RELATED TO THE FACTS UNDER INVESTIGATION STATED: SHE IS THE SISTER OF THE DECEASED **JORGE RANGEL MONTES,** AND WAS NOTIFIED OF HIS DEATH, BY HER MOTHER **EDELMIRA MONTES HERNANDEZ,**

FORMA C G - 1 A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

WHO TOLD HER OF THE EVENT ON THE PHONE AND THAT THE RESPONSIBLE PARTY OF THIS WAS **AKA "GEORGE" AKA "EL GUERO"**, WHOM THEY KNOW SINCE THEY WERE CHILDREN. BECAUSE OF THIS SHE TRAVELED TO THIS CITY FOR THE CORRESPONDING OFFICIAL PROCEDURES. THIS IS ALL SHE HAD TO STATE.

CONTINUING WITH THE INVESTIGATIONS; THE UNDERSIGNED APPEARED AT THE DOMICILE LOCATED AT TULE 1314, PRADERAS DE LA MESA, WHERE AFTER IDENTIFYING OURSELVES, WE WERE MET BY **EDELMIRA MONTES HERNANDEZ,** WHO ON THE FACTS UNDER INVESTIGATION STATED: BEING A NATIVE OF MICHOACÁN, 69 YEARS OLD, A WIDOW, OCCUPATION HOUSEWIFE, WITH THE ABOVE MENTIONED DOMICILE, STATING THAT ON MAY 7TH, OF THE CURRENT YEAR, AT APPROXIMATELY 02:00 HUNDRED HOURS SHE WAS SLEEPING INSIDE HER DOMICILE AND AT THAT MOMENT SHE HEARD HER SON **JORGE RANGEL MONTES** PLEADING FOR HELP AND THEREFORE SHE IMMEDIATELY WENT OUT TO SEE WHAT WAS HAPPENING AND SAW THAT HER SON JORGE WAS COVERED IN BLOOD, HOLDING ON THE PERIMETER FENCE OF THE DOMICILE, SO SHE WENT OUTSIDE ALONG WITH HER FRIEND AMELIA, THEY EXITED TO THE SIDEWALK TO HELP HIM, AT THAT MOMENT HER SON, PRESENTLY DECEASED TOLD HER THAT **AKA "GEORGE" AKA "EL GÜERO" HAD STABBED HIM**, AND THEREFORE THEY IMMEDIATELY CALLED FOR AN AMBULANCE THOROUGH EMERGENCY TELEPHONE NUMBER 066 THE AMBULANCE ARRIVED A FEW MINUTES LATER ALONG WITH THE MUNICIPAL POLICE, THE PARAMEDICS NOTIFIED HER THAT HER SON HAD PASSED AWAY, SO SHE WISHES TO STATE THAT THE PERSON WHO TOOK THE LIFE OF HER SON, AND TO WHICH HER SON REFERRED TO AS **AKA** "**GEORGE" AKA "EL GÜERO"**, IS CALLED **JORGE PASILLAS JARAMILLO** AND WHO SHE KNOWS SINCE HE WAS A CHILD, SHE DOES NOT KNOW HIS EXACT DOMICILE, BUT SHE KNOWS IT IS IN THE SAME NEIGHBORHOOD, THIS BEING ALL THE DEPONENT HAS TO STATE.

CONTINUING WITH THE INVESTIGATIONS, WE APPEARED AT THE DOMICILE LOCATED AT 1325, INTERIOR 7, TULE STREET, PRADERAS DE LA MESA, AFTER IDENTIFYING OURSELVES WE INTERVIEWED **OMAR JAVIER FRANCO PEREZ**, 36 YEARS OLD, A NATIVE OF CUIDAD JUAREZ, CHIHUAHUA, SINGLE, OCCUPATION EMPLOYEE, WITH THE ABOVE MENTIONED DOMICILE, WHO ON THE FACTS UNDER INVESTIGATION STATED: HE HAS LIVED IN HIS CURRENT APARTMENT FOR OVER A MONTH AND BEING A NEIGHBOR OF NUMBER 8 THE NEXT DOOR APARTMENT, WHERE THE DECEASED NAMED **JORGE** LIVED, HE WAS AWARE THAT HIS NEIGHBOR WAS A DRUG ADDICT AND THAT EVERY DAY HE WAS VISITED BY A MALE INDIVIDUAL APPROXIMATELY 25 YEARS OLD, MEDIUM HEIGHT, LIGHT BUILD, BEARING MULTIPLE TATTOOS, WHITE SKINNED, GREEN EYES AND SHAVED HEAD,

FORMA CG-1A



PROCURADURÍA GENERAL
DE LA
REPUBLICA

AKA "**GEORGE**" AKA "**EL GÜERO**", WHO WAS A CHILDHOOD FRIEND OF JORGE RANGEL. ON SUNDAY MAY 6TH, OF THE CURRENT YEAR ON BEING AT HIS DOMICILE HE SAW JORGE RANGEL, WALTER AND AKA "**GEORGE**" AKA "**EL GÜERO**", INSIDE JORGE'S APARTMENT, THE DEPONENT LEFT HIS APARTMENT TO VISIT HIS GIRLFRIEND, AND RETURNED AROUND 22:00 HOURS, HE FOUND IN THE HALLWAY OF SAID APARTMENTS NEAR THE STAIRS JORGE RANGEL AND AKA "GEORGE" AKA "EL GÜERO", BOTH LOOKED AGGRESSIVE AND APPEARED TO BE ON DRUGS, SO HE IMMEDIATELY ENTERED HIS APARTMENT, AT APPROXIMATELY 01:30 AM OF MONDAY, MAY 7TH, HE HEARD A LOUD DISCUSSION, HE IDENTIFIED THE VOICES OF AKA "GEORGE" AKA "EL GÜERO" AND JORGE RANGEL, WHO SHOUTED AMONGST OTHER THINGS, "LEAVE ME ALONE, THAT'S ENOUGH", IN EMGLISH ANS SPANISH, AND HE ALSO HEARD A STRUGGLE AND FIST FIGHTING. THE DEPONENT ADDS THAT AT 3:00 HOURS MUNICIPAL POLICE OFFICER ARRIVED AT HIS DOMICILE, WHO INFORMED HIM HIS NEIGHBOR JORGE RANGEL HAD BEEN KILLED AND THAT THEY WERE LOOKING FOR THE ALLEGED ATTACKER AKA "GEORGE" AKA "EL GÜERO", HE TOLD THE POLICE THAT MINUTES EARLIER HE HAD HEARD THE DECEASED FIGHTING WITH AKA "GEORGE" AKA "EL GÜERO", BUT HE DID NOT KNOW WHERE THE ALLEGED PERPETRATOR WAS. BEING THIS ALL THE DEPONENT HAS TO STATE.

THE UNDERSIGNED APPEARED AT THE FACILITIES OF THE FORENSIC MEDICAL SERVICE WHERE WE WERE INFORMED THAT THE CAUSE OF DEATH OF **JORGE RANGEL MONTES** WAS HYPOVOLEMIC SHOCK, AS A SECONDARY RESULT OF PENETRATING WOUNDS TO THE NECK, THORAX, AND ABDOMEN DUE TO INJURIES WITH A STABBING INSTRUMENT. AUTOPSY PERFORMED BY DOCTOR JOSE LUIS ARGUELLO MONTIEL, FORENSIC MEDICAL EXPERT ASSIGNED TO THE FORENSIC MEDICAL SERCVICES.

WE INFORM THAT WITH THE FULFILLED INVESTIGATIONS WE HAVE BEEN ABLE TO ESTABLISH THAT THE ALLEGED PERPETRATOR OF THE FACTS UNDER INVESTIGATION WHERE JORGE RANGEL MONTES LOST HIS LIFE, IS NAMED **JORGE ANTONIO PASILLAS JARAMILLO, (A.K.A.) JORGE PASILLAS JARAMILLO, (A.K.A.) EL JORGE A. PASILLAS, (A.K.A.) JORGE ANTHONY PASILLAS, (A.K.A.) JORGE EL GÜERO, (A.K.A.) JORGE EL GÜERO, DATE OF BIRTH MARCH 6TH, 1986.**

WE DO NOT OMIT INFORMING YOU THAT ON MARCH 7TH, OF THE CURRENT YEAR WE SENT TO THIS OFFICE FIRST PROGRESS REPORT NUMBER 349/HOMDOL/12, WHICH HAS TWO PHOTOGRAPHS OF THE ALLEGED RESPONSIBLE INDIVIDUAL.

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**COMPELMENTARY:** APPEARING BEFORE YOU **EDELMIRA MONTES HERNANDEZ.**

WE NOTIFY THE AUTHORITY AWAITING A DECISION ON THIS MATTER.

**RESPECTFULLY**

**THE STATE MINISTERIAL POLICE OFFICERS**

**(ILLEGIBLE SIGNATURES)**

**OSCAR RODRIGUEZ ANDALON**

**(1153 HME)**

**ADRIANA CAMACHO ROCHA**

**(0509 PME)**

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPUBLICA

# EXHIBIT 8

FORMA C G - 1 A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

(Illegible) (Two Illegible Seals)

Preliminary Investigation Division

**105/12/201/AP**

**WITNESS STATEMENT**: At TIJUANA, BAJA CALIFORNIA, 17:55 hrs. MAY 7th, 2012, MARTIN GALINDO ORNELAS, Local Public Prosecutor of the OFFICE OF THE PUBLIC PROSECUTOR FOR THE INVESTIGATION OF INTENTIONAL HOMICIDES, before the Court Clerk LORENA CASTILLO SARMIENTO, that authorizes and attest. CERTIFIES the appearance in this office of he who claimed to be named **WALTER ULISES ROSALES HEREDIA** who is sworn in to state the truth in compliance to article 190 of the Code of Criminal Procedures, the witness is notified of the penalties imposed on those that commit the crime of stating untruthfully or withholding the truth before this authority; and as general information gave the following: being 31 years old, Single, native of Zacapu Michoacan, occupation (cross-border) assembly plant employee, domicile at Tule 1325-8, Praderas de la Mesa, identifying himself with Voter Registration Identification Card number 2412123700186 and upon being question about the facts under investigation he stated: That when he was 8 years old he went to live to Los Angeles California for 22 years and on the month of October 2010, he was deported for the crime of domestic violence. When he was deported he returned to live at his hometown in Michoacán, and on the month of June 2011, committed to return to the United States as an illegal immigrant, but thing got complicated so he has not been able to return to Los Angeles, and remained in this city with a friend called RAUL, who offered him to be his roommate at his hose and they could share the expenses. He met in that same neighborhood called *Praderas de la Mesa* a man named **JORGE RANGEL MONTES aka JORGE** and his brother **OCTAVIO RANGEL MONTES aka EL CONEJO**, with whom they shared the light bulb with which they smoked crystal and Marihuana. One of those times, the man named **JORGE RANGEL**, now deceased, told him to go to his house, that he was going to give him some stuff as gifts and when he got there he told him to stay and live with him and that they could share the expenses. After about a month of living there, the deponent stated that he was in fact a friend of the one nicknamed **CONEJO** and not a friend of **JORGE**, given that the deceased turned extremely violent when he got high on drugs along with a man named **GEORGE nicknamed el GÜERO**, when they got together at the home of the deceased, and they goy high on the shoot up drug known as CHIVA. So on Sunday, May 6th, 2012 around 17:00 hours when he was at the domicile along with the deceased, **GEORGE nicknamed el CONEJO**, who started to do drugs along with **JORGE** now deceased, so the deponent after smoking a marihuana cigarette around 23:00 hours decides to got to his room, given that **JORGE** was getting very violent and he wanted to avoid any problems with the deceased. Around 2:00 hours of May 7th, 2012, the deponent woke up because he heard someone screaming. **JORGE** and **GÜERO** were arguing, he saw **JORGE** throwing **GEORGE nicknamed el GÜERO**, towards the main door of the apartment, and when the deponent approached to ask what was going on, **JORGE** told him to get back to his room and to lock himself in, and he heard a neighbor shout STOP ARGUING, IF YOU CAN'T HANDLE THAT SHIT, QUIT THAT VICE, and he also heard the

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

neighbor shout, BESIDES, IT´S YOUR PROBLEM. He heard a door being shut, and he heard nothing more so he went back to his room, and roughly half an hour later municipal police officer arrived, they woke him up and told him **JORGE** was dead, they questioned him about this, if he knew anything about the death of **JORGE**. The deponent likewise states that **GEORGE nicknamed el GÜERO**, has the following physical description, white skinned, heavy built, approximately 26 years old, crew cut brown hair, blue eyes, groomed mustache, height 1.80 meters, high forehead, medium lips, medium mouth, who if he saw again would without a doubt recognize. Being this all he has to state. He signs at the bottom after being read back his statement, before the State Public Prosecutor Agent aided by the Clerk that authorizes and attest. WE ATTEST.

<div align="center">

FILE CLOSED AND AUTHORIZED THE PROCEEDINGS


(ILLEGIBLE SIGNATURES)

</div>

FORMA CG-1A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA



Seal that reads:

**UNITED MEXICAN STATES**
(Mexican Coat of Arms)

# FEDERAL ELECTORAL INSTITUTE
## FEDERAL VOTERS REGISTRY
### VOTER'S IDENTIFICATION CARD

**NAME**                          **AGE**  29
ROSALES                           **GENDER**  M
HEREDIA
WALTER ULISES
**DOMICILE**
C RIO BRAVO 385                                   (PHOTOGRAPH)
OBRERA 58650
ZACAPU, MICH..
**FOLIO** 10160721112209        **REGISTRY YEAR**  2010 00
**VOTER'S CODE:**        RSHWL80112216H100
**CURP:**                ROHW801122HMNSRL03
**STATE:**         16        **DISTRICT:**
**MUNICIPALITY:** 108 **LOCATION:** 0001     **SECTION:**  2412

**ISSUED:** 2010   **VALID:** 2020



241212 2370 0186

THIS DOCUMENT SHALL NOT BE TRANSFERRED, NOT
VALID IF IT SHOWS CORRECTIONS OR AMENDMENTS.

THE BEARER MUST NOTIFY ANY CHANGE OF ADDRESS       (An illegible signature)
WITHIN THE NEXT FOLLOWING THIRTY DAYS.
                                          MA. DEL CARMEN ALANIS
                                          FIGUEROA
                                          EXECUTIVE SECRETARY OF THE
                                          FEDERAL ELECTORAL INSTITUTE

                                                          THUMB
                                                          PRINT

A SIGNATURE

FEDERAL ELECTIONS        LOCAL                    EXTRAORDINARY
  12   15   06   09     09  10  11  12  13  04  05  06  07  08

(ILLEGIBLE TEXT)

# CERTIFIED

THAT THE CURRENT COPY IS AN EXACT REPLICA AND DULLY MATCHES THE ON SIGHT AT (ILLEGIBLE TEXT)

LORENA CASTILLO SARMIENTO

(ILLEGIBLE SEALS)

FORMA  C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPUBLICA

# EXHIBIT 9

FORMA C G · 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

(Illegible) (Two Illegible Seals)

Preliminary Investigation Division

**105/12/201/AP**

**WITNESS STATEMENT**: At TIJUANA, BAJA CALIFORNIA, 19:20 hrs. MAY 9th, 2012, EMIGDIO GUTIERREZ, Local Public Prosecutor of the OFFICE OF THE PUBLIC PROSECUTOR FOR THE INVESTIGATION OF INTENTIONAL HOMICIDES, before the Court Clerk FRANCISCA PADILLA MEZA, that authorizes and attest. CERTIFIES the appearance in this office of he who claimed to be named **EDELMIRA MONTES HERNANDEZ** who is sworn in to state the truth in compliance to article 190 of the Code of Criminal Procedures, the witness is notified of the penalties imposed on those that commit the crime of stating untruthfully or withholding the truth before this authority; and as general information gave the following: named as has been written above, being 70 years old, date of birth May 18th, 1941, Marital status: Widow, native of Morelia Michoacan, occupation retired with pension, domicile at 650 Palermo, La Habra, California, United States of America, identifying herself with California State Identification Card number A3111262 and upon being question about the facts under investigation she stated: she appears in this Office of the Public Prosecutor by her own free will  and that since approximately 35 years she has been living in the State of California, United States of America, and it has been approximately 8 years to date that her son **JORGE RANGEL MONTES** came to live in this city since he had been living in the neighboring country same as her, therefore each month she would come to this city to see her son **JORGE** and therefore she stayed in the home of her friend **ROSA AMELIA OROZCO SANCHEZ** which is located on **CALLE TULE NUMBER 1314 OF THE COLONIA PRADERA DE LA MESA, in this city of Tijuana, Baja California,** and her son **JORGE** lived in an apartment located close to the same street and colonia at number 1325, and it is such that on the 6th of the current month and year she was in this city in the home of her friend **AMELIA** and it being approximately  02:00 hundred hours of Monday, May 7 of the current year, she was laying down and at that moment she heard some shouts that were coming from the street and were from her son **JORGE** which said: **"MAMA, ROCIO (referring to my friend Rosa Amelia) CHINO HELP ME I AM DYING"**, and therefore she immediately went out and saw that her son **JORGE RANGEL MONTES** was seated on the sidewalk and he said to her **MAMA, HOLD ME CALL AN AMBULANCE, TAKE ME,** and she asked him who had hurt him, and he answered **IT WAS GEORGE EL GÜERO, EL GEORGE, EL GEORGE,** he stabbed me (with a stabbing weapon), and therefore they immediately called 066 for an ambulance so that medical would be provided to my son Jorge, the person now deceased, and the ambulance arrived shortly thereafter and they give him medical attention. But the Red Cross paramedics told her that her son had passed away, also municipal police officers arrived, and minutes later the Public Prosecutor Office Personnel from The Forensic Medicine Service and took the lifeless body of her son, so she wishes to  state that the person who took the life of her son **JORGE RANGEL MONTES** and to which her son referred to as **GEORGE EL GÜERO,** is called **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** and who she knows since he was a child, and this in the State of California since **GEORGE EL GÜERO** is a United States citizen, and who answers to the following  physical  description, approximately 26 years old, white skinned, blue eyes,

EXT_Pasillas Jaramillo_000121

FORMA C G-1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

shaved head, strong build, same that almost always uses a mustache, but occasionally he shaves his mustache. In this proceeding, the acting personnel proceeds to put at sight of the witness two color photographs of a male person, same which were remitted **by Preliminary Report with number 349/HOM.DOL./12 dated May 7, 2012, signed by OSCAR RODRIGUEZ ANDALON and ADRIANA E. CAMACHO ROCHA,** the witness observes them in detail and refers that the male person who appears in the photograph is the person she refers to as the person who took the life of her son, using it seems a blade or a stabbing instrument, this being **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** who at present looks exactly as he appears in the two photographs, since he has not changed physically. This same person after he took the life of her son **JORGE RANGEL MONTES** fled to an unknown destination, whom she wishes to add that she is aware he lived in the Praderas de la Mesa Neighborhood, same who after murdering her son fled to an unknown destination given that there is no information on him or his whereabouts. So she requests that the necessary investigations are carried out to locate **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO** and justice is served for his perpetration of the Homicide of her son named **JORGE RANGEL MONTES.** This being all the deponent has to state. She signs at the bottom after being read back his statement, before the State Public Prosecutor Agent aided by the Clerk that authorizes and attest. WE ATTEST.

FILE CLOSED AND AUTHORIZED THE PROCEEDINGS

(ILLEGIBLE SIGNATURES)



**CERTIFIED**

THAT THE CURRENT COPY IS AN EXACT REPLICA AND DULLY MATCHES THE ON SIGHT AT (ILLEGIBLE TEXT)

(ILLEGIBLE SEALS)

FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPUBLICA

# EXHIBIT 10

FORMA C G - 1 A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

### STATE OF B.C. JUDICIAL BRANCH

### FORENSIC MEDICAL SERVICE

### NECROPSY CERTIFICATE

THE FORENSIC MEDICAL EXPERT FOR THE JUDICIAL PARTY OF TIJUANA BAJA CALIFORNIA, IN COMPLIANCE WITH THE WITH OFFICIAL LETTER 2063/12/201 DATED MAY 7TH, 2012, SENT BY AGENT OF THE INVESTIGATIVE PUBLIC PROSECUTOR EMIGDIO GUTIERREZ APPEARED AT THE AMPHITHEATER OF THE FORENSIC MEDICAL SERVICE OF THIS CITY, SO AS TO PERFORM THE NECROPSY OF HE WHO WAS NAMED JORGE RANGEL MONTES RELATED TO PRELIMINARY INVESTIGATION 105/12/201/AP //////////

| GENDER | MALE | PROBABLE AGE | BETWEEN 30 AND 35 YEARS OLD |
|--------|------|--------------|------------------------------|
| BUILD | HEAVY | HEIGHT | 1.63 MTS |
| SKIN | DARK BROWN | HAIR | BLACK |
| FOREHEAD | WIDE | EYEBROWS | SCARCE |
| EYES | BROWN | NOSE | STRAIGHT |
| MOUTH | MEDIUM | LIPS | MEDIUM |
| TEETH | COMPLETE | CHIN | OVAL |
| MUSTACHE | BLACK | EARS | MEDIUM |

(B) **DISTINGUISHING CHARACTERISTICS.-** THE LEFT CHEST REGION THE WORD RANGEL IS TATTOOED AND IN THE BACK FACE OF THE LEFT FOREARM THE WOD TANA IS TATTOOED. ////////////////////////

(C) **EXTERIOR EXAMINATION OF THE CORPSE.** BODY SHOWS CIANOSIS SUBNUGEAL ON BOTH FINGERS OF THE HANDS, THE BODY IS COVERED IN BLOOD, MOST PROMINENTLY IN THE CEPHALIC REGION, FACE, FRONT AND BACK OF THORAX. AND HAS THE FOLLOWING WOUNDS PRODUCED BY A STABBING WEAPON:

1.- A WOUND FROM STABBING INSTRUMENT LOCATED IN THE OCCIPITAL REGION THAT MEASURES 1.5 CMS. BY 0.2 MM AND SUPPORTED PLAIN OF 1.54 MTS. THAT ONLY PUNCTURED THE HAIR AND SKIN ITS TRAJECTORY FROM RIGHT TO LEFT, FROM BACK TO FRONT AND FROM UP TO DOWN.

2.- A WOUND FROM A STABBING INSTRUMENT, IN THE CHIN REGION ON THE RIGHT SIDE IN THE SHAPE OF THE LETTER "Z" WITH A FINAL LINE IN THE INFERIOR BACK THAT MEASURES 2.5 BY 0.5 MM, LOCATED IN THE RIGHT LINE AND 1.42 MTS FROM THE SUPPORTED PLAIN, TRAJECTORY FOR RIGHT TO LEFT, FROM THE BOTTOM TO THE TOP AND FROM THE BACK TO THE FRONT.

3.- A WOUND FROM A STABBING INSTRUMENT LOCATED ON THE RIGHT SIDE OF THE NECK MEASURING 4.5 CMS. BY 1.O CMS. WITH A FINAL LINE POSTERIOR SUPERIOR THAT MEASURES 0.3MM LOCATED AT 11.O CMS AT THE RIGHT MEDIAN LINE AND AT 1.37 FROM THE SUPPORTED PLAIN WITH A TRAJECTORY FROM BACK TO FRONT, FROM TOP TO BOTTOM AND FROM RIGHT TO LEFT.

FORMA C G - I A



RUGURADURÍA GENERAL
DE LA
REPUBLICA

4.- AN OBLIQUE WOUND FROM A STABBING INSTRUMENT LOCATED ON THE RIGHT INFRA SCAPULAR REGION MEASURING 4.5 CMS BY 1.O CMS. WITH A FINAL LINE POSTERIOR SUPERIOR THAT MEASURES 0.3MM LOCATED AT 3.O CMS AT THE RIGHT MEDIAN LINE AND AT 1.21 FROM THE SUPPORTED PLAIN WITH A TRAJECTORY FROM RIGHT TO LEFT, FROM BACK TO FRONT AND FROM TOP TO BOTTOM;

5.- AN OBLIQUE WOUND FROM A STABBING INSTRUMENT LOCATED ON THE RIGHT DORSAL REGION MEASURING 2.5 CMS BY 0.5 MMS. WITH A FINAL LINE POSTERIOR SUPERIOR THAT MEASURES 0.2 MM LOCATED AT 8.O CMS AT THE RIGHT MEDIAN LINE AND AT 1.17 FROM THE SUPPORTED PLAIN WITH A TRAJECTORY FROM LEFT TO RIGHT, FROM FRONT TO BACK AND FROM TOP TO BOTTOM

6.- A WOUND FROM A STABBING INSTRUMENT LOCATED ON THE POSTERIOR FACE OF THE RIGHT FOREARM IN THE LOWER THIRD QUADRANT MEASURING 6.4 CMS X 2.5 CMS, TRAJECTORY FROM LEFT TO RIGHT, FROM FRONT TO BACK AND FROM TOP TO BOTTOM.

(D).- **CRANIAL CAVITY:** AN AURICLE-AURICULAR INCISION IS PERFORMED WITH ANTERIOR AND POSTERIOR FLAPS RAISED IN THE SUBGALEA SOME TARDIUE STAINS ARE SEEN AND UPON INDUCING THE CALOTA AND UPON REMOVAL THE CONGESTIVE ENCEPHALUM, LAMINAR DIFFUSE HEMORRHAGING, UPON REMOVING THE BRAIN AND THE MENINGES THERE IS NO EVIDENCE OF FRACTURE IN THE BONES OF THE BRAIN VAULT AND THE BASE OF THE SKULL////////////

(E).- **NECK**... AN SUBENTO PUBIC INCISION WITH LATERAL FLAPS RAISED AND EXAMINATION OF THE SOFT PLAINS ARE PERFORMED THE RIGHT ELLADO HAS MUSCULAR SUFFUSIONS, HEMATOMA IN THE STERNOCLEIDOMASTOID MUSCLE IN THE LOWER THIRD QUADRANT. UPON DISSECTING THE AREA LACERATIONS OF THE RIGHT JUGULAR VEIN. UPON DISSECTING THE TRACHEA IT IS NOT CLOGGED.//////

(F).- **THORACIC CAVITY:** UPON INCISION THE SKIN, THE MUSCULAR PLAINS AND UPON REMOVING THE STERNAL CHEST AREA A 2000 CC HEMOTORAX ON THE RIGHT SIDE CAN BE SEEN, LEFT LUNG CONGESTIVE, ADHERED TO THE COSTAL GRILL AND TWO LACERATIONS IN THE RIGHT INFERIOR LOBE AND LACERATION-PERFORATION- IN THE COSTAL GRILL OF 7TH AND 9TH RIGHT INTERCOSTAL SPACE IN ITS POSTERIOR PART, LACERATION OF THE RIGHT HEMIDIAPHRAGM, THE LAFT LUNG CONGESTIVE BULBOUS AND UPON INCISION OF THE PERICARDIAC BAG THE HART IS SEEN CONGESTIVE.//////////



!OCURADURÍA GENERAL
DE LA
REPÚBLICA

**(G).- ABDOMINAL CAVITY:** UPON INCISION OF THE SKIN, THE MUSCULAR PLAINS AND UPON REMOVING THE PERITONEUM OF APPROXIMATELY1000CC THE RIGHT PREDOMINIUM AND UPON REACHING THIS CAVITY THE LACERATED LIVER CAN BE SEEN IN THE POSTERIOR RIGHT LOBE, SPLEEN IS FULLER, RIGHT KIDNEY PALE, LEFT KIDNEY CONGESTIVE, PANCREAS CONGESTIVE, UPON INCISION OF THE GASTRIC CHAMBER PLETORIC CAN BE SEEN WITH PASTE LIKE FOOD CONTENT YELLOW IN COLOR.////////////

**(H).- OTHER DATA:** BLOOD AND URINE SAMPLES ARE TALKEN FOR THE CORRESPONDING TESTS.//////////////////////

**(I).- CAUSE OF DEATH: HYPOVOLEMIC SHOCK, AS A SECONDARY RESULT OF PENETRATING WOUNDS TO THE NECK, THORAX, AND ABDOMEN DUE TO INJURIES WITH A STABBING INSTRUMENT.//////////////////////////**

SINCERELY

TIJUANA, B.C. MAY 7TH, 2012

THE ASSIGNED FORENSIC MEDICAL EXPERT

(SIGNED)

DR, JOSE LUIS ARGUELLO MONTES

FORMA  C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

# EXHIBIT 11

FORMA C G - 1 A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA



OFFICE OF THE STATE ATTORNEY GENERAL

BAJA CALIFORNIA

**OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF BAJA CALIFORNIA**

**EXPERT SERVICES**

> SUBJECT: FIELD CRIMINALISTIC EXPERT REPORT
> AREA: CRIMINALISTIC INVESTIGATION
> SECTION: FIELD CRIMINALISTIC

**DR. MARIA GUADALUPE LICEA CASTELLANOS**
**DIRECTOR OF EXPERT SERVICES**
**OF THE OFFICE OF THE ATTORNEY GENERAL**
**FOR THE STATE OF BAJA CALIFORNIA**
**BY HAND**

The undersigned Crminalistic Experts **REBECA MATA HERNANDEZ AND NORMA ALICIA SANCHEZ RODRIGUEZ** assigned to the Head Office of Expert Services Tijuana Zone under the Office of the Attorney General for the State of Baja California render our **EXPERT OPINION REPORT ON FIELD CRIMINALISTICS** on the request of **EMIGDIO GUTIERREZ** in compliance to the provisions of Article 25 (I), (II) and those related in the Organic Law of this institution, and on Article 82 (IX), (X), (XI), (XIV) and those related in the Bylaws of the Organic Law of the Office of the Attorney General for the State of Baja California related to the facts under investigation in record of preliminary investigation **105/12/201** issued by the local State Public Prosecutor Office for the probable perpetration of the crime of **HOMICIDE** against an unknown male individual identified as **JORGE RANGEL MONTES**, as detailed below.

### I.- PROBLEM TO BE SOLVED:

Based on the necessary Criminalistic activities, technical assistance and scientifically elucidating the facts under investigation on which an unknown male individual identified as **JORGE RANGEL MONTES** lost his life, facts related to the record of preliminary investigation **105/12/201**.

### II.- BACKGROUND:

At 02:00 hours of Monday, May 7th, 2012, verbal notification from Emigdio Gutierrez, Agent of the Public Prosecutor assigned to the Organic Unit for International Homicide

FORMA C G - I A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

Investigation, who request we transport ourselves to Tule Street number 1314, Pradera de la Mesa, given that there is a report of a corpse due to violent acts, requesting the necessary expert intervention we transported ourselves to the scene.

### III.- TECHNIQUE USED:

1. Thorough and comprehensive observation and inspection of the scene.

2. Thorough and comprehensive observation and description of the location, orientation and position of the corpse.

3. Photographs of the scene, the corpse and of the trace evidence, taken with a SONY DSLR-A100H digital camera with built-in flash and a resolution of 10.2 megapixels, with a 4 megabyte memory card.

4. Thorough analysis in the facilities of the Forensic Medical Service before the (illegible), corresponding to the clothes, cadaveric signs, as well as the wounds visible on the corpse.

5. Analysis and interpretation of the wounds described in the Necropsy Certificates performed by Forensic Medical Expert Dr. JOSE LUIS ARGUELO MONTIEL.

6. Considering the analysis of the results, the conclusions are obtained.

### IV.- RESULTS

### V.- CONCLUSIONS

FORMA C G - I A



ROCURADURÍA GENERAL
DE LA
REPÚBLICA

## DESCRIPTION OF THE SCENE:

We arrived at 3:26 hours at night conditions, the sky was partly cloudy with a temperature of 14 ° Celsius, the scene was an urban zone, with concrete streets, with street graphic signals and street lamps, scene where Police Officers of the Municipal Law Enforcement Ministry were guarding the scene, likewise we saw their police cruisers.

Along with the Public Prosecutor on the North section of the street on the sidewalk a bundle ins covered with a brown, green and black blanket, upon removing it a male corpse is seen, it is covered in blood there are stab wounds on the face and neck, likewise the white metal gate corresponding to domicile 1314 has dripping blood stains.

We continued with the      inspection observing blood patterns on the concrete surface which follow a northeastern direction towards the domicile marked with number

**Along**



FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

1325, which is a house used as a dwelling constructed of concrete, and two stories high. Upon entering accompanied by the Public Prosecutor we observed several blood stains with static and dynamic dripping patterns, we also found a knife blade stained in blood.

Continuing the inspection of the dwelling we climbed the stairs and found on them blood stains with dynamic dripping patterns until the Northeastern vortex of the second level corresponding to a balcony.

**Continuing the inspection**





FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA



FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLIC



**TRACE EVIDENCE CLOSE TO THE CORPSE:**

1.- Blood stains with a dynamic dripping pattern shown in a north to south direction approximately 50 meters from the domicile 1325 to 1314.

FORMA C G- I A



PROCURADURÍA GENERAL
DE LA
REPÚBLIC




**TRACE EVIDENCE AWAY FROM THE CORPSE:**
2.- Stainless steel blade, 11 centimeters in length, bent and stained in blood, located inside domicile 1325, on the entrance hallway.




FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

 

3.- Blood stains with a dynamic and static dripping pattern located on the stairs that lead to the second floor.

 

## POSITION, LOCATION AND ORIENTATION OF THE CORPSE:

The corpse was located in the concrete surface corresponding to the sidewalk in front of domicile 1314, covered in a blanket in a dorsal decubitus position, with his cephalic extremity pointing toward the southeast, with his upper left extremity extended and abducted and the right flexed and abducted, the lower extremities flexed and with slight abduction. Located his encephalic extremity at 1.30 meters west and 4.0 meters north of the South vortex of domicile 1314.

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLIC





## EXTERNAL EXAMINATION OF THE CORPSE:

### PHYSICAL CHARACTERISTICS:

Gender: Male. 25 to 30, Height 1.60 mts. Build: thin. Skin: light brown, Hair: dark brown short, Face: oval, Forehead: wide, Eyebrows: straight hairy, Eyes: brown, Nose: concave, Mouth: big, Lips: Full, Chin: oval, Ears: medium, Beard and moustache: trimmed circle beard.



FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

## DISTINGUISHING CHARACTERISTICS

Black ink Tattoo which reads "Rangel" located in the left chest region.



## CLOTHES:

Grey Acces T-Shirt, which is pulled up to the chest region, covered in blood, with cuts and rips on the back.

 

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Blue demi Levis Jeans, size 34 x 30, which is soaked in blood in approximately 70% of o
its surface.

 

Green colored boxer shorts Jocker
brand.



FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Black socks.



## CADAVERIC SIGNS:

Cold to the touch, no cadaveric rigidity, no cadaveric lividity, no corneal opacity.




## WOUNDS:

A wound from stabbing instrument located in the lower part of the right jaw, approximately 2x3 centimeters long




FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

A wound from a stabbing instrument, in the lower right side of the neck, approximately 4.5x1 centimeters




A wound from a stabbing instrument located on the anterior surface of the distal third of the right arm, approximately 7x2.5 centimeters long




A wound from a stabbing instrument located on the inside of the thumb of the left hand one centimeter in diameter




FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Two wounds from stabbing instrument located in the right side of the back, approximately 5x2 centimeters and the other approximately 3x1 centimeters




A wound from a stabbing instrument located on the mid-line of the posterior parietal region, approximately two centimeters long.




## RESULTS:

### IN THE SCENE:

The expertly investigated scene of Monday May 7th, 2012 corresponds to an open scene in Tule Street 1314 Praderas de la Mesa, where the corpse of an unknown male individual identified as **JORGE RANGEL MONTES** was found.

Trace evidence close to the corpse, blood stains with a static and dynamic dripping pattern on the concrete surface of the sidewalk and the street in front of the domicile 1314, of contact and blood splatter stains in the lock and the gate of the house with number 1314.

Trace evidence away from the corpse, blood stains with dynamic dripping pattern leading to the West of domicile 1325 and into the interior of the same more blood stains are found inside with dynamic dripping pattern on the entrance hallway on the concrete surface we located a knife dripping blood.

FORMA C G. I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**THE BODY:**

The corpse was located in the concrete surface corresponding to the sidewalk in front of domicile 1314, covered in a brown, green and black blanket in a dorsal decubitus position, with his cephalic extremity pointing toward the southeast.

He wore a grey T-Shirt which was covered in blood, it is cut and torn and was pulled over the chest, blue demi jeans, covered in blood, green plaid shorts and black socks.

The following wounds from stabbing instrument were seen: on the right jaw, on the right face of the neck, on the anterior face of the right arm, two on the right dorsal region and on the pareito-occipital region.

Cold to the touch, no cadaveric rigidity, no cadaveric lividity, no corneal opacity thus time of death is calculated at less than 3 hours from the time of examination by criminalistics field experts.

**FROM THE STATE LABORATORY:**

The result obtained from the biological samples of the corpse are the following:

Toxicological Test: (Substance abuse traces from urine sample) **POSITIVE to the presence of metabolites of Methamphetamines, Amphetamines, and Opiates**"

Alcohol level test (Blood sample alcohol level) **was NO presence of alcohol identified**

Alcohol Level Test (Urine sample alcohol level) **was NO presence of alcohol identified**

Corpse blood type: o+

Blood type of the stains on the concrete surface corresponding to the sidewalk and street in front of domicile 1314: Type o.

Blood type of blood stains on domicile 1325: Type o.

Blood type of the blood stains from the metal blade of the knife: Type o.

**NECROPSY CERTIFICATE:**

FORMA C G- I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

(C) **EXTERIOR EXAMINATION OF THE CORPSE.**    BODY SHOWS CIANOSIS SUBNUGEAL ON BOTH FINGERS OF THE HANDS, THE BODY IS COVERED IN BLOOD, MOST PROMINENTLY IN THE CEPHALIC REGION, FACE, FRONT AND BACK OF THORAX. AND HAS THE FOLLOWING WOUNDS PRODUCED BY A STABBING WEAPON:

1.- A WOUND FROM STABBING INSTRUMENT LOCATED IN THE OCCIPITAL REGION THAT MEASURES 1.5 CMS. BY 0.2 MM AND SUPPORTED PLAIN OF 1.54 MTS. THAT ONLY PUNCTURED THE HAIR AND SKIN ITS TRAJECTORY FROM RIGHT TO LEFT, FROM BACK TO FRONT AND FROM UP TO DOWN.

2.- A WOUND FROM A STABBING INSTRUMENT, IN THE CHIN REGION ON THE RIGHT SIDE IN THE SHAPE OF THE LETTER "Z" WITH A FINAL LINE IN THE INFERIOR BACK THAT MEASURES 2.5 BY 0.5 MM, LOCATED IN THE RIGHT LINE AND 1.42 MTS FROM THE SUPPORTED PLAIN, TRAJECTORY FOR RIGHT TO LEFT, FROM THE BOTTOM TO THE TOP AND FROM THE BACK TO THE FRONT.

3.- A WOUND FROM A STABBING INSTRUMENT LOCATED ON THE RIGHT SIDE OF THE NECK MEASURING 4.5 CMS. BY 1.O CMS. WITH A FINAL LINE POSTERIOR SUPERIOR THAT MEASURES 0.3MM LOCATED AT 11.O CMS AT THE RIGHT MEDIAN LINE AND AT 1.37 FROM THE SUPPORTED PLAIN WITH A TRAJECTORY FROM BACK TO FRONT, FROM TOP TO BOTTOM AND FROM RIGHT TO LEFT.

4.- AN OBLIQUE WOUND FROM A STABBING INSTRUMENT LOCATED ON THE RIGHT INFRA SCAPULAR REGION MEASURING 4.5 CMS BY 1.O CMS. WITH A FINAL LINE POSTERIOR SUPERIOR THAT MEASURES 0.3MM LOCATED AT 3.O CMS AT THE RIGHT MEDIAN LINE AND AT 1.21 FROM THE SUPPORTED PLAIN WITH A TRAJECTORY FROM RIGHT TO LEFT, FROM BACK TO FRONT AND FROM TOP TO BOTTOM;

5.- AN OBLIQUE WOUND FROM A STABBING INSTRUMENT LOCATED ON THE RIGHT DORSAL REGION MEASURING 2.5 CMS BY 0.5 MMS. WITH A FINAL LINE POSTERIOR SUPERIOR THAT MEASURES 0.2 MM LOCATED AT 8.O CMS AT THE RIGHT MEDIAN LINE AND AT 1.17 FROM THE SUPPORTED PLAIN WITH A TRAJECTORY FROM LEFT TO RIGHT, FROM FRONT TO BACK AND FROM TOP TO BOTTOM

6.- A WOUND FROM A STABBING INSTRUMENT LOCATED ON THE POSTERIOR FACE OF THE RIGHT FOREARM IN THE LOWER THIRD QUADRANT MEASURING 6.4 CMS X 2.5 CMS, TRAJECTORY FROM LEFT TO RIGHT, FROM FRONT TO BACK AND FROM TOP TO BOTTOM.

(E).- **NECK**... AN SUBENTO PUBIC INCISION WITH LATERAL FLAPS RAISED AND EXAMINATION OF THE SOFT PLAINS ARE PERFORMED THE RIGHT ELLADO HAS MUSCULAR SUFFUSIONS, HEMATOMA IN THE STERNOCLEIDOMASTOID MUSCLE IN THE LOWER THIRD QUADRANT. UPON DISSECTING THE AREA LACERATIONS OF

FORMA CG-1A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

THE RIGHT JUGULAR VEIN. UPON DISSECTING THE TRACHEA IT IS NOT CLOGGED.//////

**(F).- THORACIC CAVITY:** UPON INCISION THE SKIN, THE MUSCULAR PLAINS AND UPON REMOVING THE STERNAL CHEST AREA A 2000 CC HEMOTORAX ON THE RIGHT SIDE CAN BE SEEN, LEFT LUNG CONGESTIVE, ADHERED TO THE COSTAL GRILL AND TWO LACERATIONS IN THE RIGHT INFERIOR LOBE AND LACERATION- PERFORATION- IN THE COSTAL GRILL OF 7TH AND 9TH RIGHT INTERCOSTAL SPACE IN ITS POSTERIOR PART, LACERATION OF THE RIGHT HEMIDIAPHRAGM, THE LAFT LUNG CONGESTIVE BULBOUS AND UPON INCISION OF THE PERICARDIAC BAG THE HART IS SEEN CONGESTIVE.//////////

**(G).- ABDOMINAL CAVITY:** UPON INCISION OF THE SKIN, THE MUSCULAR PLAINS AND UPON REMOVING THE PERITONEUM OF APPROXIMATELY1000CC THE RIGHT PREDOMINIUM AND UPON REACHING THIS CAVITY THE LACERATED LIVER CAN BE SEEN IN THE POSTERIOR RIGHT LOBE, SPLEEN IS FULLER, RIGHT KIDNEY PALE, LEFT KIDNEY CONGESTIVE, PANCREAS CONGESTIVE, UPON INCISION OF THE GASTRIC CHAMBER PLETORIC CAN BE SEEN WITH PASTE LIKE FOOD CONTENT YELLOW IN COLOR.////////////

**(I).- CAUSE OF DEATH: HYPOVOLEMIC SHOCK, AS A SECONDARY RESULT OF PENETRATING WOUNDS TO THE NECK, THORAX, AND ABDOMEN DUE TO INJURIES WITH A STABBING INSTRUMENT.////////////////////////////**

## V.-CONCLUSIONS

**FIRST.-** The analysis of the location of the corpse, Tule street number 1314, Praderas de la Mesa, scene expertly inspected on Monday 7th, 2012 and based on the fact that the corpse was found on the concrete surface corresponding to the sidewalk taking into consideration the trace evidence found, the blood stains with static and dynamic splatter patterns on the concrete surface additionally to the blood stains of splatter and contact characteristics located in the entrance gate of the domicile 1314, in is concluded that in **CORRESPONDS** to the location where life sings cease of an unknown male individual identified as **JORGE RANGEL MONTES**.

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**SECOND.-** Based on the rest of trace evidence being the blood stains found away from the corpse with dynamic dripping pattern which follow a direction towards the west of the street towards number 1325 were we located blood stains with dynamic dripping and a knife blade, added to the results of the state laboratory from the samples taken from the corpse and from the blood stains on the scene, on both domiciles, and are of the same blood type. Thus the location corresponds to the scene where an unknown male individual identified as **JORGE RANGEL MONTES**, was injured, and this individual then walked to domicile 1314.

**THIRD.-** Based on the above conclusion and taking into considerations the blood stains observed on the lock and gate of the domicile number 1314, it is concluded that the deceased was standing leaving stains in the vertical plane, previous to the ceasing of his vital signs.

**FOURTH.-** Based on the injuries of the deceased on his left hand and right arm, it is concluded they were produced as a consequence of a defense maneuver by the victim against the attacker.

**FIFTH.-** taking into consideration the injuries on the body of the deceased caused by a stabbing instrument called this way because the instrument used was sharp and had a point compatible characteristics with the edge of a knife as the one located in the place where the injures are made (domicile 1325) and are also the same shape and size, taking into consideration the results from the state laboratory that the blood types of the deceased and the blood stained knife are similar, it is concluded that the knife blade is the stabbing weapon used to injure the victim an unknown male individual identified as **JORGE RANGEL MONTES**, by his attacker.

**SIXTH.-** Based on the above conclusion the injuries of the victim and the cause of death given by the Forensic Medical Experts conclude that the cause of death of an unknown male individual identified as **JORGE RANGEL MONTES**, is the consequence of **HYPOVOLEMIC SHOCK, AS A SECONDARY RESULT OF PENETRATING WOUNDS TO THE NECK, THORAX, AND ABDOMEN DUE TO INJURIES WITH A STABBING INSTRUMENT.**

**SEVENTH.-** Based on the fact that the corpse was found covered in a green, brown and black blanket, besides a grey t-shirt that was pulled over his chest, it is concluded that the deceased was moved by a third party after cease of his vital signs.

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**EIGHTH.-** Considering the cadaveric signs on the corpse it is established that time of death was after 1:26 hours and before 2:00 hours of Monday May 7th, 2012.

Once the forgoing is established the **PROBABLE CHAIN OF EVENTS** are as follows:

Between 1:27 hours and 1:59 hours of Monday May 7th, 2012, the deceased was at the hallway of the hose located at Tule 1314, Prederas de la Mesa, the victim along with his attacker, who had a knife blade (metallic knife blade) he injures the victim several times on the back and on the face, the victim tries to defend himself and is injured on the hand, the victim flees Northeast, towards the domicile marked with number 1314 of the same street where he falls in front of the access gate to the domicile, moment on which his vital sings stop, after this he is moved by a third party probable to administer medical attention. The attacker flees to parts unknown, leaving the trace evidence and the corpse, in the position and in the conditions on which we found it.

We notify the authority awaiting a decision on this matter.

**RESPECTFULLY**

**THE criminalistics experts**

**(ILLEGIBLE SIGNATURES)**

**REBECA MATA HERNANDEZ**          **NORMA ALICIA SANCHEZ RODRIGUEZ**

FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

# EXHIBIT 12

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

(Illegible) (Two Illegible Seals)

**Preliminary Investigation Division**

**Preliminary Investigation 105/12/201/AP**

**PHOTO ARRAY IDENTIFICATION PROCEEDING.-**At TIJUANA, BAJA CALIFORNIA, 12:26 hrs. NOVEMBER 4th, 2013, legally constituted the Agent of the Local Public Prosecutor LUIS FERNANDO GARCIA ZAMORA, aided by Court Clerk JUANA CABADA PEREYRA, to perform a photo array identification proceeding of the accused GEORGE ANTONY PASILLAS and EDELMIRA MONTES HERNANDEZ as witness since she claims to be able to fully recognize without a doubt the accused from a photograph a search is conducted in the files of the Special Prosecutor files of **five photographs** of persons with similar characteristics as GEORGE ANTONY PASILLAS adding his photograph so as to have **six photographs** so a page with six prtinted photographs of male individuals numbered **1,2,3,4, 5, 6,** Seen the statement of EDELMIRA MONTES HERNANDEZ related to being able to fully recognize either by photograph or in person we refer to her statmen on which she stated on **Monday, May 7 of the current year, she was laying down and at that moment she heard some shouts that were coming from the street and were from her son JORGE which said: "MAMA, ROCIO (referring to my friend Rosa Amelia) CHINO HELP ME I AM DYING", and therefore she immediately went out and saw that her son JORGE RANGEL MONTES was seated on the sidewalk and he said to her MAMA, HOLD ME CALL AN AMBULANCE, TAKE ME, and she asked him who had hurt him, and he answered IT WAS GEORGE EL GÜERO, EL GEORGE, EL GEORGE, he stabbed me (with a stabbing weapon), and therefore they immediately called 066 for an ambulance so that medical would be provided to my son Jorge, the person now deceased, and the ambulance arrived shortly thereafter and they give him medical attention. But the Red Cross paramedics told her that her son had passed away, also municipal police officers arrived, and minutes later the Public Prosecutor Office Personnel from The Forensic Medicine Service and took the lifeless body of her son, so she wishes to state that the person who took the life of her son JORGE RANGEL MONTES and to which her son referred to as GEORGE EL GÜERO, is called JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO, and who she knows since he was a child, and whom I and already recognized when rendering my deposition from photographs placed before me and that I fully recognize.** Next the witness is shown a photograph array of six male individuals number 1 through 6which she observes and under oath entered into the record the Agent of the Local Public Prosecutor LUIS FERNANDO GARCIA ZAMORA asks her if she recognizes any of the individuals as the one whom she mentioned in her statement; she says yes, the witness clearly signals photograph marked with number six same that corresponds to the man named GEORGE ANTONY PASILLAS. She is asked to state the differences or similarities from the photograph to the moment the perpetrator committed the crime **stating that at the time of the perpetration of the crime GEORGE ANTONY**

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**PASILLAS had shaved his moustache and has shaved his head, given that the photographs of GEORGE he has a moustache and more hair, adding that since he killed her son she has not sine him since** She signs at the bottom after being read back his statement, before the State Public Prosecutor Agent aided by the Clerk that authorizes and attest. WE ATTEST.

FILE CLOSED AND AUTHORIZED THE PROCEEDINGS

(ILLEGIBLE SIGNATURES)



FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA



FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPUBLICA

# EXHIBIT 13

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

OFFICE OF THE STATE OF BAJA CALIFORNIA ATTORNEY GENERAL

### Preliminary Investigation Division

### 105/12/201/AP

**PHOTO ARRAY IDENTIFICATION PROCEEDING BY EDELMIRA MONTES HERNANDEZ.-**At TIJUANA, BAJA CALIFORNIA, 11:07 hrs. JUNE 2, 2014, legally constituted in the Offices of the Organic Unit for Intentional Crimes, the Agent of the Local Public Prosecutor ALEJANDRO JIMENEZ RAFAEL, aided by Court Clerk TALINA CASTILLO ROCHA, to perform a photo array identification proceeding in compliance to the provisions of articles 200, 201, 202, 203 and 205 of the Code of Criminal Procedures which establishes that to recognize a person that is not present in the proceeding and that cannot be presented, a confrontation by photographs or similar means can be rendered by those giving statement; towards this goal appears EDELMIRA MONTES HERNANDEZ, 73 years old, native of MICHOACAN, marital status MARRIED, occupation HOMEMAKER, domicile 650 WY La Habra, California, providing telephone number 625-91-72 same that belongs to her friend ROSAMELIA OROZCO SANCHEZ who lives in this city, likewise the deponent ins made aware of the penalties of stating falsely or withholding the truth, to which she is sworn in th stets the truth, in compliance to article 202of the Code of Criminal Procedures for the State of Baja California, next the deponent is asked if she knows JORGE ANTONIO PASILLAS JARAMILLO, (A.K.A.) JORGE PASILLAS JARAMILLO, (A.K.A.) EL JORGE A. PASILLAS, (A.K.A.) JORGE ANTHONY PASILLAS, (A.K.A.) JORGE EL GÜERO, (A.K.A.) JORGE EL GÜERO, she states that she does indeed, so the prosecutor asks to describe him: he is approximately 5 feet and inches tall, Light Brown skin, thin build, short dark brown hair, at the moment of the perpetration of the crime he had no mustache or beard, brown eyes, medium mouth and regular lips, oval head, NEXT, the Prosecutor shows six photographs of persons with similar characteristics, and the deponent is asked if the person appears in the photo array of SIX male individuals to which she states: YES, I fully recognize photograph number six pointing to it with the index finger of her left hand and that photograph corresponds to JORGE ANTONIO PASILLAS JARAMILLO, (A.K.A.) JORGE PASILLAS JARAMILLO, (A.K.A.) EL JORGE A. PASILLAS, (A.K.A.) JORGE ANTHONY PASILLAS, (A.K.A.) JORGE EL GÜERO, (A.K.A.) JORGE EL GÜERO she also states that she knows JORGE ANTONIO PASILLAS since he was a boy we lived at the same neighborhood, as well as in the year 2010 he lived in the same domicile as mi deceased son, they were good friendsso my son moved to the apartment where the crime was committed and JORGE ANTONIO PASILLAS JARAMILLO followed my son there, but my son couldn't stand him anymore because he was really stubborn also on the day of the crime Monday, May 7 of the current year, she was laying down and at that moment she heard some shouts that were coming from the street and were from her son JORGE which said: "MAMA, ROCIO (referring to my friend Rosa Amelia) CHINO HELP ME I AM DYING", and therefore she immediately went out and saw that her son JORGE RANGEL MONTES was seated on the sidewalk and he said to her MAMA, HOLD ME CALL AN AMBULANCE, TAKE ME, and she asked him who had hurt him, and he answered IT WAS GEORGE EL GÜERO, EL GEORGE, EL

FORMA CG-1A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

GEORGE, he stabbed me (with a stabbing weapon), and therefore they immediately called 066 for an ambulance so that medical would be provided to my son Jorge, the person now deceased, and the ambulance arrived shortly thereafter and they give him medical attention. But the Red Cross paramedics told her that her son had passed away found out that JORGE ANTONIO PASILLAS had crossed the border to the United States the same day of the crime, given that he is an American Citizen. This is all she has to state. She signs at the bottom after being read back his statement, before the State Public Prosecutor Agent aided by the Clerk that authorizes and attest. WE ATTEST.

FILE CLOSED AND AUTHORIZED THE PROCEEDINGS

(ILLEGIBLE SIGNATURES)



FORMA CG-1A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

(Illegible text)



FORMA C G- I A



PROCURADURÍA GENERAL
DE LA
REPUBLICA

THE UNDERSIGNED COURT CLERK ASSIGNED TO THE ORGANIC UNIT

FOR INTENTIONAL HOMICIDE INVESTIGATIONS:

**CERTIFIES**

THAT THE CURRENT PHOTOCOPIES ARE A FAITHFULL AND EXACT COPY OF THE ORIGINALS THAT WERE AT SIGHT PART OF THE RECORD OF PRELIMINARY INVESTIGATION FILE 105/12/201 AND THAT WERE DULLY CORROBORATED CONSISTING OF -.- PAGES AND IS ISSUED AT THE REQUEST OF THE INTERESTED PARTY IN THE CITY OF TIJUANA B.C. ON JUNE 2ND, 2014

THE COURT CLERK

(SIGNED)

Talina Castillo Rocha

FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

## CERTIFICATION

- - - Mexico City, Federal District, on August 21, 2014. - - - - - - - - - - - - - - - - - -
- - -The undersigned, **ERIKA CABRERA BECERRA**, Federal Public Prosecutor in the service of the General Division of International Proceedings of the Office of the Assistant Attorney General for Legal and International Affairs of the Office Attorney General of the Republic pursuant to Articles 21 and 102 (A) of the Political Constitution of the United Mexican States; 206 and 208 of the Federal Code of Criminal Procedures, 2, 4 (III), and 10 (X) of the Organic Law of the Office Attorney General of the Republic; 3 (H) (V), 4 (XIII), 6 and 52 of the Regulations of the Organic Law of the Office Attorney General of the Republic acting in compliance to the provisions of article 16 of the Federal Code of Criminal Procedures along with the attesting witnesses who sign and attest at the end.

### CERTIFIES:

- - -That the current photocopies consisting of 79 pages are faithful reproduction and tally in all their terms with the documents in the extradition file in this office issued against **JORGE ANTONIO PASILLAS JARAMILLO (AKA) "JORGE PASILLAS JARAMILLO" (AKA) "EL GEORGE A. PASILLAS" (AKA) "GEORGE ANTHONY PASILLAS" (AKA) "GEORGE EL GÜERO" (AKA) "EL GÜERO"**, for his alleged criminal responsibility in the perpetration of the crime of **AGGRAVATED HOMICIDE**, which were at sight and the corresponding comparison thereof was made for the pertinent legal effects.

### I ATTEST
(An illegible signature)

Attesting Witness                    Attesting witness

(An illegible signature)              (An illegible signature)

Gerardo Ruiz Terroba              Noemi Cardiel Navarro

[SEAL: UNITED MEXICAN STATES,
MEXICAN COAT OF ARMS,
MEXICAN ATTORNEY GENERAL'S
OFFICE
GENERAL DIVISION OF
EXTRADITIONS AND LEGAL
ASSISTANCE]

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

[SEAL: MINISTRY OF THE
INTERIOR,    GOVERNMENT
UNIT,    UNITED    MEXICAN
STATES, MEXICAN COAT OF
ARMS]

**14938**

[HOLOGRAM:
UNITED MEXICAN
STATES,
MEXICAN COAT
OF ARMS]

QRM Code

**EFRAIN TERMINEL MUÑOZ,** DEPUTY DIRECTOR OF AGREEMENT RECORD, IN ASSISTANCE TO THE HEAD OF THE GOVERNMENT UNIT OF THE MINISTRY OF THE INTERIOR, PURSUANT TO THE PROVISIONS OF ARTICLE 10 (I) AND 11 LAST PARAGRAPH OF THE INTERNAL REGULATIONS OF THE MINISTRY OF THE INTERIOR, **CERTIFIES** THAT **ERIKA CABRERA BECERRA** WAS A PUBLIC PROSECUTOR OF THE FEDERATION IN THE SERVICE OF THE GENERAL DIVISION OF INTERNATIONAL PROCEEDINGS OF THE OFFICE OF THE ASSISTANT ATTORNEY GENERAL FOR LEGAL AND INTERNATIONAL AFFAIRS OF THE OFFICE OF THE ATTORNEY GENERAL OF THE REPUBLIC ON AGOSTO 21, 2014, AND THAT THE SIGNATURE APPEARING ON THE PRESENT DOCUMENT IS HER OWN.

MEXICO CITY, FEDERAL DISTRICT, AGOSTO 25, 2014.
REGISTRY **No. 14500**
TAX PAID $0.00
TAX EXEMPT

[an illegible signature]
SIGNATURE

CODE: **LNS2R3XCU**

THIS MINISTRY DOES NOT ASSUME ANY LIABILITY
AS FOR THE CONTENTS OF THIS DOCUMENT.

MADE/IAE/ETM

[SEAL:
UNITED MEXICAN STATES.
(Mexican Coat of Arms)
MINISTRY OF FOREIGN
AFFAIRS
CONSULAR SERVICE
AUTHENTICATIONS]

[SEAL:
UNITED MEXICAN STATES.
(Mexican Coat of Arms)
MINISTRY OF FOREIGN AFFAIRS,
CUAUHTEMOC DELEGATION]

F. 8

**No. 552861**

**THE MINISTRY OF FOREIGN AFFAIRS CERTIFIES:**

that *EFRAIN TERMINEL MUÑOZ WAS DEPUTY DIRECTOR OF AGREEMENT RECORD, IN ASSISTANCE TO THE HEAD OF THE GOVERNMENT UNIT OF THE MINISTRY OF THE INTERIOR, ON* AUGUST 25, 2014.

and that the preceding signature is his own.

*Mexico, Federal District*, *AUGUST 27* of 20*14*.

**BY RESOLUTION OF THE MINISTER**
The Delegate of the
Ministry of Foreign Affairs
[an illegible signature]
**Myrna Granados Hernandez**

THIS MINISTRY DOES NOT ASSUME ANY LIABILITY
AS FOR THE CONTENTS OF THE DOCUMENT
BEING AUTHENTICATED

EXT_Pasillas Jaramillo_000157

EXT_Pasillas Jaramillo_000158

Pasillas Jaramillo 000261

FORMA C G- I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

# ÍNDICE DE PRUEBAS

I.    Declaración jurada de la licenciada Erika Cabrera Becerra, Agente del Ministerio Público de la Federación adscrita a la Dirección General de Procedimientos Internacionales de la Subprocuraduría Jurídica y de Asuntos Internacionales de la Procuraduría General de la República, a la cual se acompañan los medios de prueba que a continuación se detallan:

**PRUEBA 1.**    Orden de aprehensión dictada el 8 de junio de 2012, por la Juez Cuarto Penal de Tijuana, Baja California, dentro de la causa penal número 279/2012, en contra de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**.

**PRUEBA 2.**    Auto del 31 de octubre de 2013, por el cual la Juez Cuarto Penal de Tijuana, Baja California, determinó que la fecha en que operará el cómputo de la prescripción de la acción penal a favor del reclámado, será el 9 de junio de 2062, por lo que la orden de aprehensión librada en contra de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, se encuentra vigente y ejecutable para lograr su aprehensión.

**PRUEBA 3.**    Texto de las disposiciones legales que tipifican y sancionan el delito de homicidio calificado, la pena aplicable al mismo, los textos que establecen lo relativo a la prescripción de la pretensión punitiva, vigentes en la época en que sucedieron los hechos.

**PRUEBA 4.**    Fotografías de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**.

**PRUEBA 5.**    Informe con número de oficio TIN/519/2012 de fecha 7 de mayo de 2012, signado por los oficiales de la Secretaría de Seguridad Pública Óscar Martínez López y Héctor León Muñoz, en el que hacen constar el llamado

PROCURADURÍA GENERAL
DE LA
REPÚBLICA

de la central de radio derivado del reporte de la madre de la víctima y el hallazgo de su cuerpo en la vía pública.

**PRUEBA 6.**   Informe con número de oficio 349/HOM.DOL./12 de fecha 7 de mayo de 2012, signado por los agentes de la policía ministerial del Estado de Baja California, Oscar Rodríguez Andalón y Adriana E. Camacho Rocha, donde se hace constar el hallazgo del arma con la que fue herido Jorge Rangel Montes.

**PRUEBA 7.**   Partes relevantes del informe con número de oficio 356/HOM.DOL./12 de fecha 9 de mayo de 2012, signado por los agentes de la policía ministerial del Estado de Baja California, Oscar Rodríguez Andalón y Adriana E. Camacho Rocha, donde se hace constar la declaración del testigo Omar Javier Franco Pérez.

**PRUEBA 8.**   Declaración ministerial a cargo del testigo Walter Ulises Rosales Heredia, del 7 de mayo de 2012.

**PRUEBA 9.**   Declaración y diligencia de identificación ministerial a cargo de la testigo Edelmira Montes Hernández, del 9 de mayo de 2012.

**PRUEBA 10.**   Certificado de necropsia practicado al cuerpo de la víctima Jorge Rangel Montes del 7 de mayo de 2012.

**PRUEBA 11.**   Dictamen en criminalística de campo realizado el 7 de mayo de 2012.

**PRUEBA 12.**   Diligencia de identificación con rueda fotográfica a cargo de la testigo Edelmira Montes Hernández, del 4 de noviembre de 2013.

**PRUEBA 13.**   Diligencia de identificación con rueda fotográfica a cargo de la testigo Edelmira Montes Hernández, del 2 de junio de 2013.

I

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**ESTADOS UNIDOS MEXICANOS**
**VS**
**JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO".**

**CAUSA PENAL: 279/2012.**
**JUEZ CUARTO PENAL DE TIJUANA, BAJA CALIFORNIA.**

**DECLARACIÓN JURADA EN APOYO DE LA PETICIÓN FORMAL DE EXTRADICIÓN.**

La que signa, **ERIKA CABRERA BECERRA**, bajo protesta de decir verdad, manifiesto:

Que soy ciudadana de los Estados Unidos Mexicanos, trabajo en la Ciudad de México, Distrito Federal, con título de Licenciado en Derecho, egresada del Centro de Estudios Universitarios y con cédula profesional para ejercer dicha profesión, registrada en los archivos de la Dirección General de Profesiones de la Secretaría de Educación Pública, mayor de edad, con 10 años de ejercicio profesional, con domicilio laboral en la Ciudad de México, Distrito Federal.

Que me he desempeñado como agente del Ministerio Público de la Federación, actualmente adscrita a la Dirección General de Procedimientos Internacionales de la Procuraduría General de la República.

Siendo una profesionista del Derecho y ejerciendo las funciones antes señaladas, soy estudiosa en la materia de derecho penal y de procedimientos penales en México.

Actualmente entre mis funciones tengo encomendado gestionar y dar seguimiento a los procedimientos de extradición promovidos por el gobierno mexicano, por lo que poseo conocimiento en la materia penal internacional, y en cumplimiento de mi deber y bajo protesta de decir verdad, manifiesto que en esta Dirección General se encuentra radicado el expediente de extradición de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"** (en adelante **JORGE ANTONIO PASILLAS JARAMILLO**).

### PROCEDIMIENTO PENAL EN LA LEY MEXICANA
### (ESTADO DE BAJA CALIFORNIA)

En Baja California, México la persecución de un delito se da en la etapa de averiguación previa, la cual inicia a partir del momento en que el Ministerio Público toma conocimiento a través de la

1

FORMA CG-1A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

denuncia (delitos perseguibles de oficio[1]) o de la querella[2] (delitos que se persiguen a petición de parte ofendida o de su representante legítimo) de que se ha cometido o se pretende cometer un hecho que la ley penal sanciona como delito.

El Ministerio Público, al iniciar la investigación realiza todas las diligencias legalmente necesarias para encontrar todos aquellos indicios, medios, instrumentos o cualquier otro tipo de elementos de convicción, que se conviertan en factores probatorios que permitan integrar la averiguación previa y la acción persecutoria (acusación en EUA).

Si de la investigación ministerial previa aparece que se ha acreditado el cuerpo del delito y la probable responsabilidad en términos de los artículos 257 y 258 del Código de Procedimientos Penales para el Estado de Baja California, así como que se han satisfecho los requisitos de procedibilidad (cuando sean exigibles), el Ministerio Público ejercitará la acción penal (consignación[3]) ante los Tribunales del Ramo Penal, solicitando la orden de aprehensión o de comparecencia, según corresponda, del o de los probables responsables, atendiendo a lo dispuesto por el Capítulo III del Título Segundo del Libro Primero del Código Penal para el Estado de Baja California.

Si la acusación[4] es sin detenido (como en el presente caso), conforme al Código de Procedimientos Penales para el Estado de Baja California, el órgano jurisdiccional radicará[5] el asunto dentro del término de 10 días, en el auto de radicación y en resolución por separado, dictaminará sobre el pedimento del ministerio público, ordenando o negando la orden de aprehensión o comparecencia.

Conforme al Código de Procedimientos Penales para el Estado de Baja California, vigente en la época de los hechos que se investigan, el Ministerio Público está obligado a proceder de oficio a la investigación de los delitos de que tenga noticia, excepto cuando éstos sólo se persigan a instancia de parte. La averiguación procesal se divide en preinstrucción e instrucción, la primera

---

[1] Son aquellos delitos en los que el Ministerio Público puede iniciar su investigación con solo tener conocimiento por cualquier medio de su comisión y la puede hacer cualquier persona.
[2] Son los delitos que para su prosecución por parte de la autoridad investigadora, se requiere previamente que la persona afectada con su comisión o su representante legítimo solicite su intervención.
[3] La Consignación es un sinónimo de ejercicio de la acción penal (acusación) y consiste en el conjunto de actividades realizadas por el Ministerio Público ante un órgano judicial, con la finalidad de que éste, a la postre, pueda declarar el derecho en un acto que se estima delictuoso. Con la consignación se pone en movimiento toda la actividad procesal, crea una situación jurídica especial para el probable responsable de un delito y obliga al órgano jurisdiccional a la ejecución de determinados actos.
[4] Idem.
[5] Auto de radicación: Primera resolución que dicta el Juez al recibir la acusación del Ministerio Público, con la cual se forma el expediente y se le asigna número.

2

EXT_Pasillas Jaramillo_000163

FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

comprende el auto de radicación que decide la situación jurídica del inculpado en el plazo constitucional de 48 horas, o dentro de la prórroga del mismo de 72 horas, a partir de que se encuentre a disposición del juez, la representación social realizará las diligencias pertinentes que permitan determinar los hechos, su clasificación conforme al tipo penal aplicable y la probable responsabilidad[6] del indiciado en la comisión del hecho delictivo y el cuerpo del delito[7].

Con base en lo anterior, el 8 de junio de 2012, la Juez Cuarto Penal en Tijuana, Baja California, dentro de la causa penal número 279/2012, libró orden de aprehensión en contra de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"** por su probable responsabilidad en la comisión del delito de **HOMICIDIO CALIFICADO**, ilícito previsto por los artículos 123, en relación con el 148, fracción II, y sancionado por el diverso 126, todos del Código Penal para el Estado de Baja California, vigente en la época en que sucedieron los hechos.

### INFORMACIÓN GENERAL E HISTORIA PROCESAL

Tengo conocimiento de la causa penal 279/2012, instruida en contra de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, por la Juez Cuarto Penal en Tijuana, Baja California, por el delito de homicidio calificado, dado que la suscrita revisó y analizó toda la documentación que integra la causa penal y las diligencias practicadas por el Agente del Ministerio Público de la Procuraduría General de Justicia del Estado de Baja California, que dieron origen a la mencionada causa criminal y a la orden de aprehensión.

El 7 de mayo de 2012, aproximadamente a las 2:00 horas en el interior del domicilio ubicado en la calle Tule número 1325, departamento número 8, colonia Praderas de La Mesa, en Tijuana, Baja California, **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"** apuñaló en la espalda, rostro y manos a Jorge

---

[6] Probable responsabilidad se actualiza por cualquiera de los medios probatorios permitidos por la ley, cuando existan datos bastantes que la acrediten.
[7] En la legislación del Estado de Baja California, el cuerpo del delito se integra con los elementos constitutivos de la conducta típica determinada en la descripción legal del delito y con los medios probatorios que permita la ley. Asimismo, se considera el conjunto de elementos objetivos o externos que constituyen la materialidad del hecho que la ley describe como delito. Dichos elementos objetivos o externos son: I) La acción u omisión, realizada voluntariamente; II) La lesión o puesta en peligro del bien jurídico penalmente protegido; III) Que la lesión o puesta en peligro del bien jurídico tutelado, sea atribuible a tal actividad o inactividad humana realizada voluntariamente; IV) la realización dolosa o culposa de la acción u omisión; V) El objeto material y sus características; VI) Los especiales medios de realización; VII) Las circunstancias de lugar, tiempo y ocasión; VIII) La calidad o número de los sujetos activo o pasivo; IX) Los especiales elementos subjetivos en el autor, distintos del dolo, y X) Las demás circunstancias específicas que el tipo en particular prevea.

EXT_Pasillas Jaramillo_000164

FORMA CG-1A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Rangel Montes, quien huyó del lugar rumbo a la casa donde estaba su madre sito en el número 1314 de la misma calle, para intentar ponerse a salvo, pero finalmente perdió la vida.

Tal conducta constituye el delito de **HOMICIDIO CALIFICADO** conforme a lo dispuesto en los artículos ya mencionados.

El agente del Ministerio Público de la Procuraduría General de Justicia del Estado de Baja California, ejercitó acción penal en contra de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, por su probable responsabilidad en la comisión del delito de **HOMICIDIO CALIFICADO**.

Después de realizar un estudio y análisis de la acusación y de las pruebas aportadas para soportar la misma, el 8 de junio de 2012, la Juez Cuarto Penal de Tijuana, Baja California, dentro de la causa penal número 279/2012, libró orden de aprehensión en contra de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"** por su probable responsabilidad en la comisión del delito de **HOMICIDIO CALIFICADO**, ilícito previsto por los artículos 123, en relación con el 148, fracción II, y sancionado por el diverso 126, todos del Código Penal para el Estado de Baja California, vigente en la época en que sucedieron los hechos. **(Prueba 1)**

### PRESCRIPCIÓN

El 31 de octubre de 2013, el Juez Cuarto Penal en Tijuana, Baja California, dictó acuerdo en el que estableció que tomando en consideración que el 8 de junio de 2012 se libró orden de aprehensión en contra del inculpado **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, como probable responsable del delito de **HOMICIDIO CALIFICADO**, ilícito sancionado en el numeral 126 del Código Penal para el Estado de Baja California con una penalidad de 20 a 50 años de prisión y atento a lo dispuesto por el artículo 114 bis del mismo ordenamiento legal, el cómputo para que opere la prescripción de la acción penal es el **9 de junio del 2062** a favor de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**. **(Prueba 2)**

### DISPOSICIONES LEGALES

Se ha incluido el texto fiel y fidedigno de los artículos 123, 148, fracción II, y 126, todos del

4



FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Código Penal para el Estado de Baja California, vigentes en la época en que sucedieron los hechos. **(Prueba 3)**

### HECHOS RELEVANTES

El 7 de mayo de 2012, aproximadamente a las 2:00 horas en el interior del domicilio ubicado en la calle Tule número 1325, departamento número 8, colonia Praderas de La Mesa, en Tijuana, Baja California, **JORGE ANTONIO PASILLAS JARAMILLO** apuñaló en la espalda, rostro y manos a Jorge Rangel Montes, quien huyó del lugar rumbo a la casa donde estaba su madre sito en el número 1314 de la misma calle, para intentar ponerse a salvo, pero finalmente perdió la vida.

Oficiales de la Policía Municipal fueron alertados de lo sucedido por la central de radio, por lo que se trasladaron a la calle Tule número 1314, colonia Praderas de La Mesa, en Tijuana, Baja California, encontrando tirado en la banqueta el cuerpo sin vida de Jorge Rangel Montes. En el lugar se encontraba Edelmira Montes Hernández, madre de la víctima. **(Prueba 5)**

Edelmira Montes Hernández declaró el 9 de mayo de 2012 ante el Agente del Ministerio Público Investigador de Delitos de Homicidios Dolosos de la Procuraduría General de Justicia de Baja California y refirió que aproximadamente a las 2:00 horas del día 7 de mayo de 2012 se encontraba en casa de su amiga Rosa Amelia, cuando escuchó gritos de su hijo Jorge Rangel Montes diciendo "mamá, Rocío (refiriéndose a su amiga Rosa Amelia), Chino, ayúdenme me estoy muriendo", por lo que al salir se percató que su hijo se encontraba sentado en la banqueta y le pidió que lo abrazara y que llamaran a una ambulancia, motivo por el cual Edelmira Montes Hernández le preguntó a su hijo quién lo había lesionado y respondió: "fue el George el Güero, el George, El George, me filereó" (refiriendo a que lo había lesionado con arma blanca).

En consecuencia, Edelmira Montes Hernández llamó al 066 y solicitó una ambulancia, los paramédicos le brindaron atención a la víctima, pero le dijeron que su hijo ya había fallecido.

Edelmira Montes Hernández manifestó que la persona a la que se refirió su hijo antes de fallecer se llama **JORGE ANTONIO PASILLAS JARAMILLO , (a) "JORGE PASILLAS JARAMILLO", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE A. PASILLAS", (a) "EL GÜERO"**, a quien conoce desde que era niño, porque era amigo de su hijo desde la infancia. **(Prueba 9)**

Walter Ulises Rosales Heredia manifestó ante el Agente del Ministerio Público Investigador de Delitos de Homicidios Dolosos de la Procuraduría General de Justicia de Baja California, que desde hace aproximadamente un mes vivía con Jorge Rangel Montes.

Walter Ulises Rosales Heredia manifestó que el domingo 6 de mayo de 2012, aproximadamente

5

FORMA C G- 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

a las 17:00 horas se encontraba en el domicilio ubicado en la calle de Tule 1325, interior 8 de la colonia Praderas de La Mesa, en Tijuana, Baja California, en compañía de Jorge Rangel Montes, lugar al que pocos minutos después llegó George (refiréndose a **JORGE ANTONIO PASILLAS JARAMILLO**) y comenzaron a drogarse.

En virtud de que Jorge Rangel Montes se tornaba violento cuando se drogaba, el declarante decidió fumarse un cigarro de marihuana y como a las 23:00 horas se retiró a descansar a su habitación para evitar problemas. Aproximadamente a las 2:00 horas del 7 de mayo de 2012 se despertó al escuchar los gritos de Jorge Rangel Montes y de "El Güero" (refiréndose a **JORGE ANTONIO PASILLAS JARAMILLO**) quienes discutían, por lo que al salir de su habitación se percató que Jorge aventaba a "El Güero" (refiréndose a **JORGE ANTONIO PASILLAS JARAMILLO**) hacia la puerta de acceso del departamento, preguntándoles qué estaba pasando, respondiendo Jorge que no se metiera y que se encerrara, por lo que decidió regresar a su habitación y después escuchó a un vecino que les gritaba "dejen de discutir, si no pueden controlar esa madre, dejen el vicio", y después adicionó el vecino "total es su bronca", escuchando finalmente que cerraban una puerta.

Después de media hora, llegaron al inmueble policías municipales, quienes le informaron de la muerte de Jorge Rangel Montes y le pidieron que los acompañara para que rindiera su declaración. **(Prueba 8)**

Agentes de la Policía Ministerial del Estado de Baja California hicieron constar en su informe del 7 de mayo de 2012 con número oficio 349/HOM.DOL./12, la entrevista con el declarante Walter Ulises Rosales Heredia en su domicilio, quien les proporcionó dos fotografías de **JORGE ANTONIO PASILLAS JARAMILLO**. En el mismo informe se hizo constar el hallazgo del arma con la que fue herido de muerte Jorge Rangel Montes en el mismo lugar. **(Prueba 6)**

Agentes de la policía ministerial de Tijuana, Baja California, realizaron reporte de fecha 9 de mayo de 2012, en el que entrevistaron a Omar Javier Franco Pérez, vecino de la víctima, quien habita en el departamento número 7 del número 1325 de la calle Tule, Fraccionamiento Praderas de La Mesa, en esa ciudad. Omar Javier Franco Pérez manifestó que su vecino del departamento 8 era Jorge Rangel Montes, quien era adicto a las drogas y a quien le consta que todos los días lo visitaba su amigo de la infancia apodado "El George o El Güero".

Omar Javier Franco Pérez refirió en la entrevista con los agentes de policía, que el domingo 6 de mayo de 2012 observó en el interior del departamento de Jorge Rangel a Walter y a "El George o El Güero"; momentos después, salió a visitar a su novia y a su regreso aproximadamente a las 22:00 horas, se encontró en el pasillo de los departamentos a Jorge y a

FORMA C G · I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

"El George" o "El Güero" drogados y con actitud agresiva, por lo que de inmediato entró a su vivienda.

Omar Javier Franco Pérez agregó que como a la 1:30 horas del 7 de mayo de 2012 escuchó una fuerte discusión, identificando las voces de "El George o El Güero" y de Jorge, éste último gritaba entre otras cosas "ya déjame, ya estuvo", escuchando que forcejeaban y que se golpeaban. Finalmente, a las 3:00 horas llegaron a su domicilio oficiales de la policía municipal, informándole que a su vecino Jorge lo habían matado y que buscaban al supuesto agresor "George", (a) "El Güero", refiriendo Omar Javier Franco Pérez que sólo escuchó que se pelearon a golpes, pero que desconocía su paradero. **(Prueba 7)**

Al respecto, del certificado de necropsia de fecha 7 de mayo de 2012 realizado por el perito médico legista José Luis Arguello Montiel, se desprende que la causa de la muerte de Jorge Rangel Montes fue por choque hipovolémico secundario a heridas penetrantes en cuello, tórax y abdomen producidas por instrumento punzocortante. **(Prueba 10)**

Del dictamen en materia de criminalística de campo se desprende que donde cesó la vida de Jorge Rangel Montes fue en la banqueta donde se localiza el domicilio en la calle Tule número 1314, colonia Praderas de La Mesa, Tijuana, Baja California, y tomando en consideración los indicios distantes de dicho lugar, se infiere que el lugar donde sucedieron los hechos lo es el ubicado en la misma calle, en el número 1325 (domicilio de la víctima), donde se encontró el arma punzocortante con la que fue lesionado Jorge Rangel Montes, quien después se desplazó al primer inmueble mencionado. **(Prueba 11)**

Edelmira Montes Hernández, reconoció en rueda fotográfica a **JORGE ANTONIO PASILLAS JARAMILLO**. **(Pruebas 12 y 13)**

## IDENTIFICACIÓN

**JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, es de nacionalidad estadounidense, con fecha de nacimiento 6 de marzo de 1986, tez blanca, complexión robusta, ojos color azul, cabello color castaño y muy corto, estatura 1.80 metros aproximadamente.

Se anexan fotografías de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"** (**Prueba 4**); así como diligencias de identificación. **(Pruebas 12 y 13)**.

FORMA C G- I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**CONCLUSIÓN**

El cúmulo de pruebas que el Agente del Ministerio Público obtuvo durante la investigación de los hechos que se imputan a **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO" (en adelante JORGE ANTONIO PASILLAS JARAMILLO)**, generó convicción para que la Juez librara orden de aprehensión en su contra.

La probable participación de **JORGE ANTONIO PASILLAS JARAMILLO**, en el delito de homicidio calificado perpetrado en agravio de Jorge Rangel Montes, quedó plenamente acreditada con las declaraciones ministeriales de Edelmira Montes Hernández y Omar Javier Franco Pérez de fecha 9 de mayo de 2012, así como de Walter Ulises Rosales Heredia, de fecha 7 de mayo de 2012, testigos de los hechos, ya que fueron coincidentes y contundentes al describir lo sucedido el 7 de mayo de 2012, aproximadamente a las 2:00 horas en el interior del domicilio ubicado en la calle Tule número 1325, departamento número 8, colonia Praderas de La Mesa, en Tijuana, Baja California, donde **JORGE ANTONIO PASILLAS JARAMILLO** apuñaló en la espalda, rostro y manos a Jorge Rangel Montes, quien huyó del lugar rumbo a la casa donde estaba su madre sito en el número 1314 de la misma calle, para intentar ponerse a salvo, pero finalmente perdió la vida; al tiempo en que el agresor huía del lugar en donde no se le volvió a ver.

En virtud de los hechos sucedidos en el inmueble referido, elementos de la Policía Municipal encontraron tirado en la banqueta el cuerpo sin vida de Jorge Rangel Montes, lugar donde también se localizaba Edelmira Montes Hernández, madre de la víctima.

Derivado de las investigaciones realizadas por Agentes de la Policía Ministerial del Estado de Baja California, pudieron obtener de Walter Ulises Rosales Heredia dos fotografías de **JORGE ANTONIO PASILLAS JARAMILLO** y localizaron en el lugar de los hechos el arma con la que fue herido de muerte Jorge Rangel Montes.

El certificado de necropsia del 7 de mayo de 2012, determinó que la causa de la muerte de Jorge Rangel Montes fue por choque hipovolémico secundario a heridas penetrantes en cuello, tórax y abdomen producidas por instrumento punzocortante.

Al ser **JORGE ANTONIO PASILLAS JARAMILLO**, la única persona que se encontraba con Jorge Rangel Montes el día de los hechos, lo cual se corrobora con el dicho de Walter Ulises Rosales Heredia; aunado al hecho de que **JORGE ANTONIO PASILLAS JARAMILLO** huyera

FORMA C G - I A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

del lugar y no se le volviera a ver, hasta que fue localizado en territorio de los Estados Unidos de América, cobran valor de pruebas circunstanciales que adminiculadas al resto de las probanzas tomadas en cuenta por la Juez Cuarto Penal en Tijuana, Baja California, hacen presumir la probable responsabilidad del ahora reclamado.

Por su parte, con el dictamen en criminalística de campo se concluye que el lugar del hallazgo fue donde cesaron los signos vitales de Jorge Rangel Montes y corresponde al ubicado en la entrada del domicilio ubicado en la calle Tule número 1314, colonia Praderas de La Mesa, Tijuana, Baja California, y el lugar de los hechos lo es el ubicado en la misma calle, en el número 1325 (domicilio de la víctima), donde se encontró el arma punzocortante con la que fue lesionado Jorge Rangel Montes, quien después se desplazó al primer inmueble mencionado. Ello se justifica con los rastros de goteo dinámico de líquido hemático que fueron encontrados entre uno y otro domicilio, con respecto a la localización del cuerpo sin vida de Jorge Rangel Montes.

Es concluyente también el peritaje en criminalística y concuerda con la necropsia al señalar que la muerte de Jorge Rangel Montes fue producida por un agente externo (instrumento con punta y filo), que corresponde con las características del cuchillo que fue encontrado en el lugar de los hechos.

Al respecto, Edelmira Montes Hernández a través de una rueda fotográfica, identificó a **JORGE ANTONIO PASILLAS JARAMILLO** como la persona que privó de la vida a su hijo Jorge Rangel Montes, quien el mismo día de los hechos cruzó a los Estados Unidos de América, ya que es nacional de ese país.

Con todos los medios de prueba que se concatenan entre sí, queda acreditada la intención que tuvo **JORGE ANTONIO PASILLAS JARAMILLO** para privar de la vida a Jorge Rangel Montes, en virtud del conocimiento que éste tenía de que su conducta era ilícita, aunado a lo declarado por la madre del occiso Edelmira Montes Hernández el 2 de junio de 2014 ante el Agente del Ministerio Público, donde refirió que en el año 2010 su hijo Jorge Rangel Montes vivió en el mismo domicilio con **JORGE ANTONIO PASILLAS JARAMILLO**, ya que eran amigos, sin embargo después Jorge Rangel Montes se cambió al domicilio donde sucedieron los hechos, porque **JORGE ANTONIO PASILLAS JARAMILLO** se tornaba muy necio.

En virtud de todo lo anterior, se concluye que quedaron demostradas las circunstancias de tiempo, lugar y modo de la ejecución de la conducta antijurídica, típica y punible que realizó **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, las cuales encuadran en el delito de **HOMICIDIO CALIFICADO**.

FORMA CG-1A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

(a) **"EL GÜERO"**, las cuales encuadran en el delito de **HOMICIDIO CALIFICADO**.

La presente declaración jurada sirve para fortalecer la petición formal que el gobierno de México presentó respecto de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, por lo que respetuosamente consideramos que la Corte correspondiente contará con pruebas suficientes, para determinar procedente su extradición a territorio mexicano, a fin de ser procesado por la Juez Cuarto Penal de Tijuana, Baja California, por su probable responsabilidad en la comisión del delito de homicidio calificado, en agravio de Jorge Rangel Montes.

Lo anterior, para los efectos legales a que haya lugar.

México, Distrito Federal, a 20 de agosto de 2014.

**NOMBRE Y FIRMA**
**LA C. AGENTE DEL MINISTERIO PÚBLICO DE LA FEDERACIÓN, ADSCRITA A LA DIRECCIÓN GENERAL DE PROCEDIMIENTOS INTERNACIONALES.**

**LIC. ERIKA CABRERA BECERRA**



SECRETARÍA DE GOBERNACIÓN
UNIDAD DE GOBIERNO

15096

EL LIC. EFRAÍN TERMINEL MUÑOZ SUBDIRECTOR DE SEGUIMIENTO DE ACUERDOS, EN AUXILIO DEL TITULAR DE LA UNIDAD DE GOBIERNO, CON FUNDAMENTO EN LOS ARTÍCULOS 10 FRACCIÓN I Y 11 ÚLTIMO PÁRRAFO DEL REGLAMENTO INTERIOR DE LA SECRETARÍA DE GOBERNACIÓN CERTIFICA: QUE LA C. LIC. ERIKA CABRERA BECERRA, ERA AGENTE DEL MINISTERIO PÚBLICO DE LA FEDERACIÓN ADSCRITA A LA DIRECCIÓN GENERAL DE PROCEDIMIENTOS INTERNACIONALES DE LA PROCURADURÍA GENERAL DE LA REPÚBLICA, EL DÍA 20 DE AGOSTO DE 2014 , Y SUYA LA FIRMA QUE APARECE EN EL PRESENTE DOCUMENTO.

MÉXICO, D.F. A 29 DE AGOSTO DE 2014
REGISTRO No. 14841
DERECHOS PAGADOS $0.00
S/PAGO DE DERECHOS :

Esta Secretaría no se hace responsable del contenido del documento
This Secretaría accepts no responsibility or liability whatsoever for the contents of this document
Ce Secretaría no devient pas responsable du contenu du document

MADE/IAE/null



**FIRMA**
CÓDIGO:**UYNLYYDXG**

Esta firma electrónica puede ser verificada en:
The electronic signature may be verified at:
la signature électronique peut être vérifiée sur:
www.dseppu.gobernacion.gob.mx/registro

10

SECRETARIA
RELACIONES EXTERIORES
DELEGACION CUAUHTEMOC

F8

FOLIO **553112**

**LA SECRETARIA DE RELACIONES EXTERIORES CERTIFICA :**

*EL LIC. EFRAÍN TERMINEL MUÑOZ ERA*

que......

**SUBDIRECTOR DE SEGUIMIENTO DE ACUERDOS, EN AUXILIO**

**DEL TITULAR DE LA UNIDAD DE GOBIERNO**

**DE LA SECRETARIA DE GOBERNACION EL DIA** 2 9 AGO 2014

y que es suya la firma que antecede.

**MEXICO, D.F.** a **03** de **SEPTIEMBRE** 20 **14**

ESTA SECRETARIA NO ASUME
RESPONSABILIDAD ALGUNA
POR EL CONTENIDO DEL
DOCUMENTO QUE SE LEGALIZA

P.O. DEL C. SECRETARIO
LA DELEGADA

**MYRNA GRANADOS HERNANDEZ**

UNITED MEXICAN STATES    )
FEDERAL DISTRICT    )
CITY OF MEXICO    )    ss:
EMBASSY OF THE UNITED    )
STATES OF AMERICA    )

Amanda Lugo

I, _____Vice Consul_____ Consul of the United States of
America, duly commissioned and qualified, certify that the signature and official seal of:

**MYRNA GRANADOS HERNANDEZ**
(Name of Foreign Official)

an official empowered to act in the capacity designated in the annexed document, to
which faith and credit are due, are true and correct.

For the contents of the annexed document I assume no responsibility.

_____
(Signature of Consular Officer)

Amanda Lugo
Vice Consul
_____
(Type Name of Consular Officer)

OCT 0 8 2014
_____
(Date)

# PRUEBA 1

EXT_Pasillas Jaramillo_000173

- - - **CUENTA:** En ocho de junio del año del año del dos mil doce, esta Secretaría da cuenta a la C. Juez con el **Pedimento de Orden de Aprehensión**, que solicita el **C. Agente del Ministerio Público Investigador de Delitos, Titular de la Unidad Orgánica de Homicidios Dolosos**, en contra de **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO**, como probable responsable en la comisión del delito de **HOMICIDIO CALIFICADO.** Conste.- - - - - - - - -

- - - **AUTO:** En Tijuana, Baja California, a los ocho días del mes de junio del año del dos mil doce.- - - - - - - - - - - - -

- - - V I S T O lo de cuenta, se tiene al **C. Agente del Ministerio Público Investigador de Delitos, Titular de la Unidad Orgánica de Homicidios Dolosos,** ejercitando acción penal en contra de **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO,** por considerarla probable responsable en la comisión del delito de **HOMICIDIO CALIFICADO,** ilícito previsto por los artículos 123 en relación con el 126, 148 fracciones I y II y 149 del Código Penal vigente en la entidad; con relación al pedimento de orden de aprehensión formulado por el Fiscal Investigador, se considera procedente, ya que en el caso se encuentran satisfechos los requisitos que para tal efecto exigen los artículos 16 Constitucional, 109 y 267 fracción I del Código de Procedimientos Penales; En efecto el artículo 16 Constitucional exige que para librar una orden de aprehensión debe contener como requisitos esenciales los siguientes: a).- Que sea dictada por autoridad judicial; b).- Que preceda a ésta, una denuncia, o querella de un hecho que la ley señale como delito, sancionado con pena privativa

EXT_Pasillas Jaramillo_000174

2

de libertad; c).- Que existan datos que establezcan que se ha cometido ese hecho y que exista la probabilidad de que el indiciado lo cometió o participo en su comisión. Además, como requisito de todo acto de Autoridad, la Orden de Aprehensión debe estar debidamente fundada y motivada.- Establecido lo anterior y ya que existe una denuncia en relación con un hecho delictivo que la Ley sanciona con Pena Privativa de Libertad, misma que se encuentra apoyada con datos de prueba con los cuales se acreditan los elementos que integran el cuerpo del delito a que nos hemos venido refiriendo y hacen probable la responsabilidad penal del inculpado de referencia en la comisión del citado ilícito; de acuerdo a los razonamientos que se exponen en los considerandos subsecuentes: - - - - - - - - - - - - - - - - - -

- - - - - - - - - - C O N S I D E R A N D O S - - - - - - - - - -

- - I.- El delito de **HOMICIDIO CALIFICADO,** previsto por los artículos 123, 126 y 148 fracciones II del Código Penal vigente en la Entidad, respectivamente; El artículo 123 del Código Penal, define el delito de **HOMICIDIO** de la siguiente manera:..." El que prive de la vida a otro"; el artículo 148 en su fracción en su fracción II, señala: Cuando es superior por las armas que emplea, por su mayor destreza en el manejo de ellas o por el número de los que lo acompañen; no tomando en consideración la fracción I del artículo 248 del Código Penal, que el Ministerio Publico invoca en su determinación, en virtud que de acuerdo a la mecánica de los hechos, no se advierte dicho supuesto, sino que la ventaja que existía entre el sujeto activo y la victima es precisamente el arma empleada, siendo superior por ésta razón, no obrando dato de prueba alguno que determinara que el activo fuera superior en fuera física al ofendido, por lo que siendo de explorado derecho que el Ministerio Publico consigna hechos y es el Juzgador quien determina porque delito deba seguirse el proceso, con fundamento en lo establecido por el artículo 10 del Código de Procedimientos Penales en el Estado, no se

entrara al estudio de la fracción aludida y se analizara el delito de HOMICIDIO CALIFICADO bajo los preceptos, 123, en relación con el 126, 148 fracción II del Código Punitivo de la materia. Los elementos del cuerpo del delito de **HOMICIDIO CALIFICADO** son: a).- La existencia previa de una vida humana; b).- Supresión de esa vida, elemento material; c).- que sea superior por el arma empleada; d).-que el activo del delito no corra riesgo alguno de ser muerto ni herido por el ofendido y aquel o obre en legítima defensa. - - - - - - - - - -

- - - El cuerpo del delito de **HOMICIDIO CALIFICADO**, ilícito previsto por los artículos 123 y 126 en relación con el artículo 148 fracción II todos del Código Penal, en autos se encuentra legalmente evidenciado, en términos de lo dispuesto por el artículo 255 de la Ley Adjetiva Penal, con los elementos de prueba que a continuación se analizan: - - - - - - - - - - - - - -

- - - **A).-** Con la diligencia de **TRASLADO DE PERSONAL Y FE MINISTERIAL DE CADÁVER;** realizada por el C. Agente del Ministerio Publico Investigador de Delitos, quien hizo constar se informó vía telefónica por parte de la **CENTRAL DE RADIO DE LA POLICÍA MINISTERIAL DEL ESTADO DEL GRUPO DE HOMICIDIOS DOLOSOS** de una persona fallecida en interior de un domicilio ubicado calle Tule, Praderas de La Mesa, por lo que el personal actuante de esta Representación Social Estatal, nos trasladamos y constituimos física y legalmente al lugar indicado, arribando a las 03:27 horas en el domicilio ubicado en **CALLE TULE # 1314 COLONIA PRADERAS DE LA MESA, DELEGACIÓN CERRO COLORADO, DE ESTA CIUDAD,** en compañia de los Agentes de la Policía Ministerial del Estado, adscritos al Grupo Investigador de Homicidios Dolosos el **C. JUAN CARLOS AARÓN VÁZQUEZ** y **JORGE OMAR RÍOS MONTAÑO;** así como los Agentes Ministeriales de Zona Tijuana Guardia Nocturna CANCINO, VIRRUETA a cargo del Agente MEZA; De los Peritos en Criminalística adscritos a la Jefatura de Servicios Periciales Zona Tijuana los Peritos LIC.

NORMA ALICIA SÁNCHEZ RODRÍGUEZ y LIC. REBECA MATA; por parte del Laboratorio Estatal Adscrito a Servicios Periciales la Química MARÍA CHIQUETE; De los empleados del Servicio Médico Forense FRANCISCO RAMÍREZ y ÁLVARO RUIZ; encontrándose presentes Resguardando el área unidades los tripulantes de la Unidad número P-4957 a cargo del Oficial MARTÍNEZ, de la Secretaria de Seg... dad Pública Municipal, quienes nos señalaron el lugar en que se DA FE: De tener a la vista una calle con pavimento hidráulico y es frente al domicilio marcado con el numero 1314 en vía publica sobre la banqueta se da fe de tener a la vista el cuerpo sin vida de UN INDIVIDUO DEL SEXO MASCULINO quien en vida llevo por nombre **JORGE RANGEL MONTES** de 43 años de edad, siendo identificado por la de nombre EDELMIRA MONTES HERNÁNDEZ, quien dijo ser madre del occiso, misma que nos informo que el hoy occiso **JORGE RANGEL MONTES** llego a su domicilio lesionado por arma blanca y que antes de perder la vida le dijo que **JORGE "N"** lo había lesionado; continuando con la presente diligencia se procede a dar fe que se tiene a la vista el cuerpo sin vida de una persona del sexo masculino quien en vida llevara por nombre **JORGE RANGEL MONTES,** el cual se encuentro en posición de cubito dorsal con la región cefálica orientada hacia el punto cardinal sur, las extremidades inferiores flexionadas al nivel de la rotula hacia el punto cardinal sur y en ligera aducción, la extremidades superiores la izquierda en extensión y aducción y la derecha en ligera flexión y aducción, occiso el cual se observa que viste un pantalón de mezclilla de color azul, sudadera de color gris, calcetines de color negro, procediendo al examen del cuerpo se aprecia ausencia total de conciencia, reflejos oculares y medulares al no responder las pupilas a los estimulos de luz y opacidad de la vista; falta de respiración espontánea, ante la ausencia del movimiento rítmico corporal; al tacto no se aprecia pulso; su temperatura es inferior a la del medio ambiente, así como marcada palidez

cadavérica: todos los signos indicativos de que se trata de una muerte real y verdadera y reciente; por lo que una vez que el personal de Servicios Periciales fijo fotográficamente el cuerpo; acto seguido el personal del Servicio Médico Forense procede al levantamiento del cuerpo, por lo que el personal de Servicios Periciales procede a fijar los indicios localizando al momento del levantamiento del cadáver, localizándose bajo el cuerpo del occiso, una sudadera de color rojo, asimismo se observan manchas hematicas sobre plano vertical de puerta peatonal de dicho domicilio, asimismo se localizaron varias manchas hematicas en un radio en donde se localizo el cuerpo del occiso; procediendo al examen del occiso apreciándose como **MEDIA FILIACIÓN:** 1.60 metros de estatura, de tez moreno, edad aproximada de 43 años, complexión DELGADA, de cabello CORTO CASTAÑO OSCURO, cara OVAL, ojos color CAFÉ, frente AMPLIA, cejas POBLADAS, nariz CÓNCAVA, labios GRUESOS, boca GRANDE, mentón OVAL, orejas MEDIANAS, bigote RASURADO, barba TIPO CANDADO; NO se encontraron señas particulares; presenta la siguiente **VESTIMENTA:** Pantalón levis color azul talla 34x32, calzón color gris y verde a cuadros marca JOKER, calcetines de color negro, camiseta de color gris con leyenda en la parte frontal superior ACCESS misma que en la parte posterior presenta cuatro orificios o cortes; así como se le aprecian las siguientes **HUELLAS DE VIOLENCIA FISICA:** 1.- Una herida al parecer punzo cortante localizada en rama descendente de mandíbula derecha de aproximadamente 2 X 3 centímetros; 2.- Una herida al parecer punzo cortante localizada en cara posterior lateral derecha de cuello de aproximadamente 4.5 X 1 centímetro; 3.- Una herida al parecer punzo cortante localizada en cara anterior de tercio distal de brazo derecho de aproximadamente .7 X 2.5 centímetros; 4.- Una herida al parecer punzo cortante localizada en dedo pulgar de cara palmar de mano izquierda de un centímetro de diámetro; 5.-

6

Dos heridas al parecer punzo cortantes localizadas en región dorsal derecha siendo una de aproximadamente 5 X 2 centímetros y la otra de aproximadamente 3 X 1 centímetros; 6.- Una herida al parecer punzo cortante localizada en región parietal posterior de línea media de aproximadamente dos centímetros de longitud; se da fe que como **PERTENENCIA:** No portaba ninguna pertenencia; acto seguido se ordena al Personal del Servicio Médico Forense el levantamiento y traslado del cuerpo sin vida a las instalaciones del Servicios Médico Forense ubicadas en Boulevard Fundadores Colonia Juárez de esta ciudad y proceda a ingresar el cuerpo del occiso a las instalaciones del mismo para efecto de que le sea practicada la necropsia de Ley. Por lo que continuando con la presente diligencia los Oficiales de la Secretaria de Seguridad Publica nos informan que en la casa marcada con el numero 1325 de la misma calle y colonia localizada a varias casas de distancia al parecer se encuentra el arma con el cual fue lesionado el occiso, por lo que se da fe da fe que se observa goteo dinámico en dirección norte a sur el cual finaliza con predio 1325 siendo una distancia aproximada de cincuenta metros, siendo este una casa habitación de aproximadamente diez metros parte frontal construida de material, inmueble el cual cuenta de dos pisos y presenta leyenda "SE RENTA 664-503-9747", reja peatonal de color negro y antes de llegar al domicilio se localizaron en banqueta de terracería se localizaron un juego de llaves las cuales prenden de un llavero de metal color negro y plata con leyenda "HUSKY", y en la puerta peatonal de rejas metálicas de color negro a una distancia aproximada de veinte centímetros se da fe que se tiene a la vista UNA PUNTA HECHIZA embebida de liquido hematico, así como en el piso goteo dinámico goteo el cual continua hasta la segundo piso por las escaleras de material, donde se ubica un pasillo que da acceso a los departamentos terminando en este lugar el goteo cinámico, procediendo el personal del laboratorio estatal a muestrear la "punta

hechiza" así como recabar muestras del goteo dinámico para las pruebas periciales pertinentes, PUNTA HECHIZA QUE MIDE APROXIMADAMENTE ONCE CENTÍMETROS, misma que fue embalada por el personal de Servicios Periciales para las pruebas pertinentes; objeto que es resguardado en las instalaciones de esta H. Representación para su entrega a quien derecho corresponda.- Con lo anterior se da por terminada la presente diligencia.- - - - - - - - - - - - - - - - - - - - -  **B)**.- Con el **PARTE INFORMATIVO**, número TIN/519/2012, de fecha siete de mayo del dos mil doce, rendido a su Superior por los **CC. Oficiales de Seguridad Pública Municipal OSCAR MARTÍNEZ LÓPEZ y HÉCTOR LEÓN MUÑOZ**, en el cual asentaron: Que siendo las 02:10 horas del día de hoy al encontrarnos efectuando nuestro recorrido de vigilancia a bordo de la unidad 4957 la central de radio nos indico trasladarnos a la calle Tule número 1314 lateral con la calle Camichín de la colonia Praderas de La Mesa para atender reporte de una personas sin vida, motivo por el cual nos trasladamos al lugar: **INTERVENCIÓN PREVENTIVA:** Ya una vez en el lugar nos entrevistamos con la de nombre **EDELMIRA MONTES HERNÁNDEZ**, de 71 años de edad, misma que nos manifestó que momentos antes al encontrarse en el interior de su domicilio escucho cuando desde el exterior en la vía pública su hijo de nombre **JORGE RANGEL MONTES**, de 43 años de edad, le gritaba, por lo que se aproximó y al abrir la puerta se percato de que su hijo se encontraba visiblemente herido y con la ropa llena de sangre por lo que procedió a solicitar una ambulancia de la cruz roja llegando al lugar la unidad BC-166 a cargo del paramédico Paredes, mismo que indico que dicha persona se encontraba sin vida al parecer a causa de varias heridas con arma punzo cortante en diferentes partes del cuerpo, asimismo al lugar arribaron los agentes ministeriales, Meza y Virueta, así como el Licenciado Emigdio Gutiérrez de Homicidios Dolosos, de Periciales la Química Norma Rebeca Mata, de SEMEFO,

Francisco Ramírez, por lo que se le hizo del conocimiento a la Superioridad.- - - - - - - - - - - - - - - - - - - - - - - - - -

- - - **C).-** Con la declaración del testigo **WALTER ULISES ROSALES HEREDIA,** rendida ante el C. Agente del Ministerio Público Investigador de Delitos, en la que manifestó: Que desde que tenía 8 años se fue a vivir a Los Ángeles California durante 22 años y en el mes de octubre de 2010, lo deportaron por el delito de violencia familiar, y que cuando lo deportaron se fue a vivir a su ciudad natal en Michoacán, y que en el mes de junio de 2011, con la intención de regresar a Estados Unidos de ilegal, pero las cosas se complicaron y por lo tanto no ha podido regresar a Los Ángeles, y se quedo en esta ciudad con un amigo de nombre RAÚL, quien le tendió la mano apoyándolo para que se quedara en su casa compartiendo gastos, y conoció en la misma colonia Praderas de La Mesa al de nombre **JORGE RANGEL MONTES alias JORGE,** y a su hermano **OCTAVIO RANGEL MONTES alias EL CONEJO,** con quienes compartían el foco con el que fumaban cristal y Marihuana, y en una ocasión el de nombre **JORGE RANGEL** ahora occiso le dijo que se fuera a su casa, que le iba a regalar unas cosas y cuando llego le dijo que se quedara en su casa y que compartirían gastos, teniendo alrededor de un mes aproximadamente viviendo en el domicilio, manifestando el declarante que en realidad era amigo del apodado **CONEJO** no de **JORGE,** ya que el hoy occiso era muy violento cuando se drogaba junto con el de nombre **GEORGE apodado el GÜERO,** ya que se juntaban en la casa del occiso, y consumían droga de la inyectada conocida como CHIVA, y tal es el caso que el día domingo seis de mayo de 2012 a eso de las 17:00 horas aproximadamente cuando se encontraba en el domicilio en compañía del occiso, llego **GEORGE apodado el CONEJO,** quien empezó a drogarse junto con **JORGE** ahora occiso, por lo que el declarante después de consumir un cigarro de marihuana como a eso de las 23:00 horas decide retirarse a su

habitación, ya que **JORGE** andaba muy agresivo y para evitarse problemas con el occiso, y que serian como las 2:00 horas del día siete de mayo de 2012, que el declarante se despertó de los gritos que se escuchaban, ya que **JORGE** y el **GÜERO**, estaban discutiendo, percatándose de que **JORGE** aventaba a **GEORGE alias EL GÜERO**, hacia la puerta de acceso del departamento, y cuando el declarante se acerco para preguntar qué era lo que estaba pasando, **JORGE** le respondió que se metiera a su cuarto y que se encerrara, y en ese momento escucha el de la voz que uno de los vecinos le decía que DEJARAN DE DISCUTIR, QUE SI NO PODÍAN CONTROLAR ESA MADRE, QUE DEJARAN EL VICIO, y que todavía alcanzo a escuchar que el vecino dijo, TOTAL ES MUY SU BRONCA. escuchando que cerraban una puerta, y sin escuchar mas se fue a su habitación y que después de media hora, llegaron unos policías municipales quienes lo levantaron diciéndole que **JORGE** estaba muerto, preguntándole que si sabía algo en relación a la muerte de JORGE, asimismo manifiesta el declarante que **GEORGE alias el GÜERO** tiene la siguiente media filiación de tez blanca, complexión robusta, de 26 años aproximadamente, cabello corto castaño casi a rapa, ojos azules, bigote recortado, de estatura de 1.80 metros, frente amplia, labios medianos, boca mediana, ceja arqueada poblada, el cual si vuelve a ver podría reconocer sin temor a equivocarse. Siendo todo lo que tiene que manifestar.- - - - - - - - - - - - - -
- - - **D).-** Con la declaración de la testigo **EDELMIRA MONTES HERNÁNDEZ**, rendida ante el C. Agente del Ministerio Público Investigador de Delitos, en la que manifestó: Que comparezco ante esta Representación Social de manera voluntaria para manifestar que es el caso que desde hace treinta y cinco años que me encuentra radicando en el Estado de California, Estados Unidos de Norteamérica, siendo que hace aproximadamente ocho años a la fecha que mi hijo de nombre **JORGE RANGEL MONTES** se vino a radicar a esta

ciudad ya que radicaba en el vecino país al igual que la de la voz, por lo que cada mes venía a esta ciudad a ver a mi hijo **JORGE** por lo que la de la voz me quedaba en la casa de mi amiga de nombre **ROSA AMELIA OROZCO SÁNCHEZ** misma que se encuentra ubicada en **CALLE TULE NUMERO 1314 DE LA COLONIA PRADERAS DE LA MESA, en esta ciudad de Tijuana, Baja California,** siendo el caso que mi hijo **JORGE** vivía en un departamento ubicado por la misma calle y colonia pero con numero 1325, es el caso que el día seis del mes y año en curso me encontraba en esta ciudad en casa de mi amiga **AMELIA** como ya manifesté anteriormente por lo que siendo aproximadamente las 02:00 horas ya del día lunes siete de mayo del año en curso, la de la voz me encontraba acostada y en ese momento escuche unos gritos que venían de la calle y eran de mi hijo **JORGE** el cual decía: **"MAMA, CUA ROCÍO (refiriéndose a mi amiga Rosa Amelia), CHINO AYÚDENME ME ESTOY MURIENDO",** por lo que de inmediato salimos y veo que mi hijo **JORGE RANGEL MONTES** se encontraba sentado en la banqueta y me dijo **MAMA ABRÁSEME LLAMEN A UNA AMBULANCIA, LLÉVENME,** y le pregunte que quien lo había lesionado y me contesto **FUE EL GEORGE EL GÜERO, EL GEORGE, EL GEORGE,** me filereado (refiriendo a que lo había filereado con arma blanca) por lo que de inmediato le hablaron al 066 y solicitaron una ambulancia para que le brindaran atención medica a mi hijo **JORGE** hoy occiso, llegando la ambulación a los pocos minutos y le brindaron atención medica a mi hijo pero los paramédicos de la Cruz Roja me dijeron que mi hijo **JORGE** ya había fallecido, asimismo llego los policías municipales, a los minutos llego el Ministerio Publico, SEMEFO y levantaron el cuerpo sin vida de mi hijo, por lo que deseo manifestar que la persona que le quito la vida a mi hijo **JORGE RANGEL MONTES** y al cual mi hijo se refirió como **GEORGE "EL GÜERO",** se llama **JORGE ANTONIO PASILLAS JARAMILLO** alias **JORGE PASILLAS**

JARAMILLO, ALAS GEORGE ANTHONY PASILLAS alias
GEORGE A. PASILLAS, ALIAS EL GÜERO, al cual la de la
voz lo conozco desde que era un niño esto en el Estado de
California ya que **GEORGE EL GÜERO** es ciudadano
americano, el cual es de la siguiente media filiación edad
aproximada 26 años, tez blanca, ojos de color azul, cabello a
rapa, complexión robusta, mismo que casi siempre usa
bigote, pero en ocasiones lo trae rasurado; en este acto el
personal actuante procede a poner a la vista de la declarante
dos fotografías a color de una persona del sexo masculino
mismas que nos fueron remitidas mediante **Avance de
Informe con numero 349/HOM.DOL./12 de fecha 07 de
Mayo del 2012, suscrito por los CC. OSCAR RODRÍGUEZ
ANDALÓN y ADRIANA E. CAMACHO ROCHA,** la declarante
las ve fijamente y refiere que el individuo del sexo masculino
que aparece en las foto es al que me refiero como el que privo
de la vida a mi hijo utilizando al parecer una navaja o un
objeto punzocortante siendo el de nombre **JORGE ANTONIO
PASILLAS JARAMILLO alias JORGE PASILLAS
JARAMILLO, alias GEORGE ANTHONY PASILLAS alias
GEORGE A. PASILLAS, ALIAS GEORGE ALIAS EL GÜERO.**
el cual actualmente se ve igual que como aparece en las dos
fotografías ya que no ha cambiado nada físicamente, mismo el
cual después de privar de la vida a mi hijo **JORGE RANGEL
MONTEL** se dio a la fuga con rumbo desconocido, el cual
deseo agregar que tengo conocimiento que radicaba en la
colonia Praderas de la Mesa, mismo el cual después de
asesinar a mi hijo huyo con rumbo desconocida ya que no se
sabe nada de él ni su paradero. Por lo que pido que se lleven a
cabo las investigaciones pertinentes y se dé con el paradero
de **GEORGE EL GÜERO JORGE ANTONIO PASILLAS
JARAMILLO alias JORGE PASILLAS JARAMILLO, alias
GEORGE ANTHONY PASILLAS alias GEORGE A. PASILLAS,**
y se le aplique todo el peso de la ley por el Homicidio de mi

hijo que en vida llevara por nombre **JORGE RANGEL MONTES.** Siendo todo lo que tiene que manifestar.- - - - - - -
- - - **E).-** Con la declaración del testigo de identidad **ILDA RANGEL,** quien ante el C. Agente del Ministerio Público Investigador de Delitos, manifestó: Que viene de las instalaciones del Servicio Médico Forense lugar donde identifica plenamente y sin temor a equivocarse a su **HERMANO** como quien en vida llevara el nombre de **JORGE RANGEL MONTES,** quien contaba con la edad de 43 años de edad, fecha de nacimiento doce de diciembre de 1970, estado civil soltero, originario de Guadalajara Jalisco, de ocupación desempleado, con domicilio en calle Tule numero 1314 colonia praderas de la mesa, grado de escolaridad secundaria completa, de religión católico, y era de la siguiente media filiación: estatura de 1.60 aproximadamente, complexión delgado, tez moreno claro, cabello lacio, frente cara oval, ojos color café, frente amplia, cejas pobladas, nariz cóncava, labios gruesos, boca grande, mentón oval, orejas medianas, bigote rasurado, barba tipo candado, no cuenta con señas; no fumaba, no sabe, no sabe, no padecía de enfermedad, y en relación a la manera en que falleció su **HERMANO** manifestó..."Que el día de hoy siete de mayo del 2012, siendo aproximadamente las 02:00 horas mi hermana de nombre **CLAUDIA RANGEL MONTES** para informarme que nuestra madre le había hablado por teléfono para informale que a mi hermano **JORGE RANGEL MONTES** lo habían privado de la vida, por lo que el mismo día me traslade a esta ciudad de Tijuana, para acudir al SEMEFO a reconocer el cuerpo de mi hermano, agregando que ignoro quién o quienes pudieron haber privado de la vida a mi hermano o el motivo por el cual lo hicieron, por lo que se encuentra presente en estas oficinas solicitando la entrega del cuerpo de su **HERMANO** que en vida llevara el nombre de **JORGE RANGEL MONTES** para realizar los trámites funerarios correspondientes. Siendo todo lo que tiene que manifestar.- - - - - - - - - - - - - - -

- - - **F).**- Con la declaración del testigo de identidad **TIENA RAE GUTIÉRREZ,** quien ante el C. Agente del Ministerio Público Investigador de Delitos, manifestó: Que viene de las Instalaciones del Servicio Médico Forense lugar donde identifica plenamente y sin temor a equivocarse a su **PAPA** como quien en vida llevara el nombre de **JORGE RANGEL MONTES,** quien contaba con la edad de 43 años de edad, fecha de nacimiento 12 de diciembre de 1970, estado civil soltero, originario de Guadalajara Jalisco, de ocupación desempleado, con domicilio en calle Tule numero 1314 colonia Praderas de La Mesa, grado de escolaridad secundaria completa, de religión católico, y era de la siguiente media filiación: Estatura de 1.60 aproximadamente, complexión delgado, tez moreno claro, cabello lacio, frente cara oval, ojos color café, frente amplia, cejas pobladas, nariz cóncava, labios gruesos, boca grande, mentón oval, orejas medianas, bigote rasurado, barba tipo candado, no cuenta con señas: no fumaba, no sabe, no sabe, no padecía de enfermedad, y en relación a la manera en que falleció su HERMANO manifestó..."Que el día de hoy 7 de mayo del 2012, mi tía de nombre ARGELIA me informo que mi papa **JORGE RANGEL MONTES** lo habían privado de la vida, por lo que este mismo día me traslade a esta ciudad de Tijuana, para acudir al SEMEFO a reconocer el cuerpo de mi padre, agregando que ignoro quién o quienes pudieron haber privado de la vida a mi papa o el motivo por el cual lo hicieron, por lo que se encuentra presente en estas oficinas solicitando la entrega del cuerpo de su **PADRE** que en vida llevara el nombre de **JORGE RANGEL MONTES** para realizar los trámites funerarios correspondientes. Siendo todo lo que tiene que manifestar.- - - - - - - - - - - - - - - - - - - - - - - - -

- - - **G).**- Con el **CERTIFICADO DE NECROPSIA y FE MINISTERIAL DEL MISMO;** exhibida ante el C. Agente del Ministerio Publico Investigador de Delitos realizado por el C. **Perito Médico Legista Doctor JOSÉ LUIS ARGUELLO**

MONTIEL, en fecha siete de mayo de dos mil once, a quien llevara por nombre de **JORGE RANGEL MONTES,** a quien después de platicada la necropsia determinaron que la **CAUSA DETERMINANTE DE LA MUERTE: CHOQUE HIPOVOLEMICO SECUNDARIO A HERIDAS PENETRANTES DE CUELLO, TÓRAX y ABDOMEN POR HERIDA CON INSTRUMENTO PUNZOCORTANTE;** mismo certificado del cual diera fe la Representación Social Investigadora de Delitos.- - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - E).- Con el **DICTAMEN QUÍMICO TOXICOLÓGICO y FE MINISTERIAL DEL MISMO;** número **LZT/1989/2012,** de fecha siete de mayo del dos mil once, elaborado por el **C. QFB. PABLO GUILLERMO RODRÍGUEZ RUIZ,** adscrito al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN:** "La muestra en tubo de plástico con capacidad para 6 mililitros conteniendo orina rotulado como 105/12/201 **JORGE RANGEL MONTES,** la cual fue remitida bajo cadena de custodia con folio 107 recibida el día siete de mayo del año en curso, relacionado con la Averiguación Previa 105/12/201, resulto **POSITIVO** a la presencia de metabolitos de Metanfetaminas, Anfetaminas y Opiáceos"; dictamen del cual diera fe la Representación Social Investigadora de Delitos. - - -

- - - F).- Con el **DICTAMEN QUÍMICO de ALCOHOLEMIA Y FE MINISTERIAL DEL MISMO;** número LZT/1990/2012, de fecha siete de mayo del dos mil doce, elaborado por el **C. QFB. GUILLERMO RODRÍGUEZ RUIZ,** adscrito al Laboratorio Estatal de la Procuraduría de Justicia del Estado en el que se establece la siguiente **CONCLUSIÓN:** "A las muestras contenidas en tubo de plástico con capacidad para 6 mililitros conteniendo sangre, rotulado como **105/12/201, JORGE RANGEL MONTES,** el cual fue remitida bajo la cadena de custodia con folio 107 recibida el día siete de mayo del año en curso, relacionados con la **Averiguación Previa AP/105/12/201, NO se identifico la presencia de**

**alcohol";** dictamen del cual diera fe la Representación Social Investigadora de Delitos.- - - - - - - - - - - - - - - - - - -

- - - **G).-** Con el **DICTAMEN DE COMPARATIVA HEMATICA Y FE MINISTERIAL DEL MISMO;** número LZT/2119/2012, de fecha siete de mayo del dos mil doce, elaborado por el **C. Q.I. MARÍA DE LOS ÁNGELES RODRÍGUEZ LÓPEZ,** adscrita al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN: PRIMERA:** "Las manchas pardo rojizas localizadas en el domicilio ubicado en calle Tule 1325 Fraccionamiento Praderas de la Mesa. SI corresponden a sangre humana; **SEGUNDA:** Las manchas pardo rojizas localizadas en el domicilio ubicado en Calle Tule 1325 Fraccionamiento Praderas de la Mesa, corresponde al tipo sanguíneo ."O"; **TERCERA:** El tipo sanguíneo al que pertenece la muestra remitida del Servicio Médico Forense, identificada con el número de Averiguación Previa 105/12/201 corresponde al tipo **O Rh POSITIVO";** dictamen del cual diera fe la Representación Social Investigadora de Delitos.- - - - - - - - - -

- - - **H).-** Con **COPIA DIGITALIZADA DE DOS IMPRESIONES FOTOGRÁFICAS y FE MINISTERIAL DE LAS MISMAS;** en las que se aprecia el rostro de una persona de sexo masculino con la siguiente media filiación; de tez blanca, complexión robusta, cabello corto oscuro casi a rapa, bigote recortado, frente amplia, labios medianos, boca mediana, ceja arqueada poblada, en la primera de ellas se aprecia vistiendo una camiseta color negro y en brazos un bebe con ropa de color blanco, y en la segunda viste playera de color azul; mismas impresiones fotográficas de las cuales diera fe la Representación Social Investigadora de Delitos.- - - - - - - - - -

- - - **I).-** Con el **INFORME número 349/HOM.DOL./12** de fecha siete de mayo del año del dos mil doce, rendido al C. Agente del Ministerio Público Investigador de Delitos, por los **CC. Agentes de la Policía Ministerial del Estado OSCAR RODRÍGUEZ ANDALÓN y ADRIANA E. CAMACHO ROCHA,**

el cual en este apartado se íntegramente por reproducida atendiendo al principio de economía procesal.- - - - - - - - -

- - - A los anteriores elementos de convicción, se es confiere el valor probatorio que en lo individual y en su conjunto establecen para tal efecto los artículos 214, 215, 218, 221, 222 y 223 del Código de Procedimientos Penales, ya que los mismo resultan aptos y eficaces por el momento para evidenciar legalmente que el día siete de mayo del año del dos mil doce, siendo aproximadamente las 02:00 horas el inculpado **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO,** al encontrarse en el domicilio ubicado en calle Tule número 1325 colonia Praderas de La Mesa, delegación Cerro Colorado, de esta ciudad, dicho inculpado ventajosamente lo privo de la vida al ahora occiso CUAF. **JORGE RANGEL MONTES,** ya que portaba un arma blanca tipo navaja agrediéndolo con la misma, provocándole con esta las lesiones que a la postre le provocaron la muerte, describiéndose en el certificado de necropsia como causa determinante de la muerte: **choque hipovolemico secundario a heridas penetrantes de cuello, tórax y abdomen por herida con instrumento punzocortante;** elaborado por el **C. Perito Médico Legista JOSÉ LUIS ARGUELLO MONTIEL;** del cual diera fe el Fiscal Investigador de Delitos, no corriendo riesgo alguno el sujeto activo de ser muerto o herido por el pasivo; materializándose así los elementos que integran el cuerpo del delito de **HOMICIDIO CALIFICADO.**- - - - - - - - - - - - - - - - - - - - - - - - - -

- - - **II.- La Probable Responsabilidad** del inculpado **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO,** en la comisión del delito de **HOMICIDIO CALIFICADO,** ilícito previsto por el artículo 123 en relación

con el 148 fracción II. del Código Penal vigente en el Estado, en su carácter de autor directo, de conformidad a lo establecido por el artículo **16 fracción I** del mismo Ordenamiento Legal antes invocado, en autos ha quedado legalmente evidenciada con todos y cada uno de los elementos de prueba que sirvieron de base para tener por comprobado el cuerpo del delito en estudio; destacando de entre ellas la declaración rendida por la testigo **EDELMIRA MONTES HERNÁNDEZ**, ante el C. Agente del Ministerio Público Investigador de Delitos, en la que manifestó que desde hace treinta y cinco años que se encuentra radicando en el Estado de California, Estados Unidos de Norteamérica, siendo que hace aproximadamente ocho años a la fecha que su hijo **JORGE RANGEL MONTES** se vino a radicar a esta ciudad ya que radicaba en el vecino país al igual que ella, por lo que cada mes venia a esta ciudad a ver a su hijo **JORGE** por lo que ésta se quedaba en la casa de su amiga **ROSA AMELIA OROZCO SÁNCHEZ** misma que se encuentra ubicada en **CALLE TULE NUMERO 1314 DE LA COLONIA PRADERAS DE LA MESA, en esta ciudad de Tijuana, Baja California**, y que su mi hijo **JORGE** vivía en un departamento ubicado por la misma calle y colonia en el número 1325, es el caso que el día seis del mes y año en curso se encontraba en esta ciudad en casa de su amiga **AMELIA** y siendo aproximadamente las 02:00 horas ya del día lunes siete de mayo del año en curso, se encontraba acostada y en ese momento escucho unos gritos que venían de la calle y eran de su hijo **JORGE** el cual decía: "**MAMA, ROCÍO, refiriéndose a mi amiga Rosa Amelia), CHINO AYÚDENME ME ESTOY MURIENDO**", por lo que de inmediato salió y vio que su hijo **JORGE RANGEL MONTES** se encontraba sentado en la banqueta y le dijo **MAMA ABRÁSEME LLAMEN A UNA AMBULANCIA, LLÉVENME**, preguntándole que quien lo había lesionado, contestándole **FUE EL GEORGE EL GÜERO, EL GEORGE, EL GEORGE,** me filereado, por lo que de inmediato

solicitaron una ambulancia para que le brindaran atención medica al hoy occiso, llegando la ambulación a los pocos minutos y le brindaron atención medica, pero los paramédicos de la Cruz Roja le dijeron que su hijo **JORGE** ya había fallecido, asimismo manifestó que la persona que le quito la vida a su hijo **JORGE RANGEL MONTES** y al cual su hijo se refirió como **GEORGE "EL GÜERO"**, se llama **JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO, ALAS GEORGE ANTHONY PASILLAS alias GEORGE A. PASILLAS, ALIAS EL GÜERO,** al cual la testigo lo conoce desde que era un niño esto en el Estado de California ya que **GEORGE EL GÜERO** es ciudadano americano, el cual es de la siguiente media filiación edad aproximada 26 años, tez blanca, ojos de color azul, cabello a rapa, complexión robusta, mismo que casi siempre usa bigote, pero en ocasiones lo trae rasurado; en ese acto el personal actuante procede a poner a la vista de la testigo dos fotografías a color de una persona del sexo masculino mismas que les fueron remitidas mediante **Avance de Informe con numero 349/HOM.DOL./12 de fecha 07 de Mayo del 2012,** **suscrito por los CC. OSCAR RODRÍGUEZ ANDALÓN y ADRIANA E. CAMACHO ROCHA,** la testigo las ve fijamente y refiere que el individuo del sexo masculino que aparece en las foto es al que le refiero como el que privo de la vida a su hijo utilizando al parecer una navaja o un objeto punzocortante siendo **JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO, ALIAS GEORGE ANTHONY PASILLAS alias GEORGE A. PASILLAS, ALIAS GEORGE ALIAS EL GÜERO.** el cual actualmente se ve igual que como aparece en las dos fotografías ya que no ha cambiado nada físicamente, mismo el cual después de privar de la vida a su hijo **JORGE RANGEL MONTEL** se dio a la fuga con rumbo desconocido; declaración que se confirma con lo declarado por el testigo **WALTER ULISES ROSALES HEREDIA,** ante el C. Agente del Ministerio Público Investigador de Delitos, en la

que manifestó que desde que tenía ocho años de edad se fue a vivir a Los Ángeles California durante 22 años y en el mes de octubre de 2010, lo deportaron por el delito de violencia familiar, y que cuando lo deportaron se fue a vivir a su ciudad natal en Michoacán, y que en el mes de junio de 2011, con la intención de regresar a Estados Unidos de ilegal, pero las cosas se complicaron y por lo tanto no ha podido regresar a Los Ángeles, y se quedo en esta ciudad con un amigo de nombre RAUL, quien le tendió la mano apoyándolo para que se quedara en su casa compartiendo gastos, y conoció en la misma colonia Praderas de La Mesa al de nombre **JORGE RANGEL MONTES alias JORGE**, y a su hermano **OCTAVIO RANGEL MONTES alias EL CONEJO**, con quienes compartían el foco con el que fumaban cristal y Marihuana, y en una ocasión el de nombre **JORGE RANGEL** ahora occiso le dijo que se fuera a su casa, que le iba a regalar unas cosas y cuando llego le dijo que se quedara en su casa y que compartirían gastos, teniendo alrededor de un mes aproximadamente viviendo en el domicilio, manifestando el declarante que en realidad era amigo del apodado **CONEJO** no de **JORGE**, ya que el hoy occiso era muy violento cuando se drogaba ya que se juntaban en la casa del occiso, y consumían droga de la inyectada conocida como chiva, y que el dia domingo seis de mayo de 2012 a eso de las 17:00 horas aproximadamente cuando se encontraba en el domicilio en compañia del occiso, llego **GEORGE apodado el CONEJO**, quien empezó a drogarse junto con **JORGE** ahora occiso, por lo que el declarante después de consumir un cigarro de marihuana como a eso de las 23:00 horas decide retirarse a su habitación, ya que **JORGE** andaba muy agresivo y para evitarse problemas con el occiso, y que serian como las 2:00 horas del día siete de mayo de 2012, el testigo se despertó de los gritos que se escuchaban, ya que **JORGE** y el **GÜERO**, estaban discutiendo, percatándose de que **JORGE** aventaba a **GEORGE alias EL GÜERO**, hacia la puerta de acceso del

departamento, y cuando el testigo se acerco para preguntar qué era lo que estaba pasando, **JORGE** le respondió que se metiera a su cuarto y que se encerrara, y en ese momento escucha el de la voz que uno de los vecinos le decía que dejaran de discutir, que si no podían controlar esa madre, que dejaran el vicio, y que todavía alcanzo a escuchar que el vecino dijo, total es muy su bronca, escuchando que cerraban una puerta, y sin escuchar mas se fue a su habitación y que después de media hora, llegaron unos policías municipales quienes lo levantaron diciéndole que **JORGE** estaba muerto, preguntándole que si sabía algo en relación a la muerte de **JORGE,** asimismo manifiesta el testigo que **GEORGE alias el GÜERO** tiene la siguiente media filiación de tez blanca, complexión robusta, de 26 años aproximadamente, cabello corto castaño casi a rapa, ojos azules, bigote recortado, de estatura de 1.80 metros, frente amplia, labios medianos, boca mediana, ceja arqueada poblada, el cual si vuelve a ver podría reconocer sin temor a equivocarse; elementos de prueba que adquiere el valor indiciario de conformidad a lo establecido por el artículo 223 del Código de Procedimientos Penales vigente en el Estado, mismo que alcanza el valor de prueba plena al verse corroborado con la diligencia de **TRASLADO DE PERSONAL Y FE MINISTERIAL DE CADÁVER,** realizada por el C. Agente del Ministerio Público Investigador de Delitos, quien hizo constar de haber trasladado física y legalmente al domicilio ubicado en **CALLE TULE # 1314 COLONIA PRADERAS DE LA MESA, DELEGACIÓN CERRO COLORADO, DE ESTA CIUDAD,** en compañía de los Agentes de la Policía Ministerial del Estado, adscritos al Grupo Investigador de Homicidios Dolosos el **C. JUAN CARLOS AARÓN VÁZQUEZ y JORGE OMAR RÍOS MONTAÑO;** encontrándose presentes resguardando el área unidades a cargo del Oficial Martínez, de la Secretaria de Seguridad Pública Municipal, quienes les señalaron el lugar y dio fe de tener a la vista una calle con pavimento hidráulico y en frente

al domicilio marcado con el numero 1314 en vía pública sobre la banqueta y da fe de tener a la vista el cuerpo sin vida de un individuo del sexo masculino quien en vida llevo por nombre **JORGE RANGEL MONTES** de 43 años de edad, siendo identificado por la de nombre **EDELMIRA MONTES HERNÁNDEZ,** quien dijo ser madre del occiso, misma que les informo que el hoy occiso **JORGE RANGEL MONTES** llego a su domicilio lesionado por arma blanca y que antes de perder la vida le dijo que **JORGE "N"** lo había lesionado; continuando con la presente diligencia se procedió a dar fe que se tiene a la vista el cuerpo sin vida de una persona del sexo masculino quien en vida llevara por nombre **JORGE RANGEL MONTES,** el cual se encuentro en posición de cubito dorsal con la región cefálica orientada hacia el punto cardinal sur, las extremidades inferiores flexionadas al nivel de la rotula hacia el punto cardinal sur y en ligera aducción, la extremidad superior izquierda en extensión y aducción y la derecha en ligera flexión y aducción, occiso el cual se observa que viste un pantalón de mezclilla de color azul, sudadera de color gris, calcetines de color negro, procediendo al examen del cuerpo se aprecia ausencia total de conciencia, reflejos oculares y medulares al no responder las pupilas a los estímulos de luz y opacidad de la vista, falta de respiración espontánea, ante la ausencia del movimiento rítmico corporal, al tacto no se aprecia pulso, su temperatura es inferior a la del medio ambiente, así como marcada palidez cadavérica; todos los signos indicativos de que se trata de una muerte real, verdadera y reciente; por lo que una vez que el personal de Servicios Periciales fijo fotográficamente el cuerpo, el personal del Servicio Médico Forense procede al levantamiento del cuerpo, por lo que el personal de Servicios Periciales procede a fijar los indicios localizando al momento del levantamiento del cadáver, localizándose bajo el cuerpo del occiso, una sudadera de color rojo, asimismo se observan manchas hematicas sobre plano vertical de puerta peatonal de dicho

domicilio, asimismo se localizaron varias manchas hematicas en un radio en donde se localizo el cuerpo del occiso; procediendo al examen del occiso apreciándose como **MEDIA FILIACIÓN:** 1.60 metros de estatura, de téz moreno, edad aproximada de 43 años, complexión DELGADA, de cabello CORTO CASTAÑO OSCURO. cara OVAL, ojos color CAFÉ, frente AMPLIA, cejas POBLADAS, nariz CÓNCAVA, labios GRUESOS, boca GRANDE, mentón OVAL, orejas MEDIANAS, bigote RASURADO, barba TIPO CANDADO; NO se encontraron señas particulares; presenta la siguiente **VESTIMENTA:** Pantalón levis color azul talla 34 x 32, calzón color gris y verde a cuadros marca JOKER, calcetines de color negro, camiseta de color gris con leyenda en la parte frontal superior ACCESS misma que en la parte posterior presenta cuatro orificios o cortes; así como se le aprecian las siguientes **HUELLAS DE VIOLENCIA FISICA:** 1.- Una herida al parecer punzo cortante localizada en rama descendente de mandibula derecha de aproximadamente 2 X 3 centímetros; 2.- Una herida al parecer punzo cortante localizada en cara posterior lateral derecha de cuello de aproximadamente 4.5 X 1 centímetro; 3.- Una herida al parecer punzo cortante localizada en cara anterior de tercio distal de brazo derecho de aproximadamente 7 X 2.5 centímetros; 4.- Una herida al parecer punzo cortante localizada en dedo pulgar de cara palmar de mano izquierda de un centímetro de diámetro; 5.- Dos heridas al parecer punzo cortantes localizadas en región dorsal derecha siendo una de aproximadamente 5 X 2 centímetros y la otra de aproximadamente 3 X 1 centímetros; 6.- Una herida al parecer punzo cortante localizada en región parietal posterior de línea media de aproximadamente dos centímetros de longitud; asimismo dieron fe que como **PERTENENCIA:** No portaba ninguna pertenencia, se ordena al Personal del Servicio Médico Forense el levantamiento y traslado del cuerpo sin vida a las instalaciones del Servicios Médico Forense ubicadas en Boulevard Fundadores Colonia

Juárez de esta ciudad y proceda a ingresar el cuerpo del occiso a las instalaciones del mismo para efecto de que le sea practicada la necropsia de Ley. Por lo que continuando con la presente diligencia los Oficiales de la Secretaria de Seguridad Publica les informan que en la casa marcada con el numero 1325 de la misma calle y colonia localizada a varias casas de distancia al parecer se encuentra el arma con el cual fue lesionado el occiso, por lo que se da fe da fe que se observa goteo dinámico en dirección norte a sur el cual finaliza con predio 1325 siendo una distancia aproximada de cincuenta metros. siendo este una casa habitación de aproximadamente diez metros parte frontal construida de material, inmueble el cual cuenta de dos pisos y presenta leyenda "SE RENTA 664-503-9747". reja peatonal de color negro y antes de llegar al domicilio se localizaron en banqueta de terracería se localizaron un juego de llaves las cuales prenden de un llavero de metal color negro y plata con leyenda "HUSKY", y en la puerta peatonal de rejas metálicas de color negro a una distancia aproximada de veinte centímetros se da fe que se tiene a la vista UNA PUNTA HECHIZA embebida de liquido hematico, así como en el piso goteo dinámico goteo el cual continua hasta la segundo piso por las escaleras de material, donde se ubica un pasillo que da acceso a los departamentos terminando en este lugar el goteo dinámico, procediendo el personal del laboratorio estatal a muestrear la "punta hechiza" así como recabar muestras del goteo dinámico para las pruebas periciales pertinentes, PUNTA HECHIZA QUE MIDE APROXIMADAMENTE ONCE CENTÍMETROS, misma que fue embalada por el personal de Servicios Periciales para las pruebas pertinentes; objeto que es resguardado en las instalaciones de esta H. Representación para su entrega a quien derecho corresponda; diligencia que adquiere el valor de prueba plena de conformidad a los establecido por el artículo 218 del Código de Procedimientos Penales vigente en el Estado, ya que fue realizada por la Autoridad Investigadora en

las facultades que le otorga el artículo 21 Constitucional; robusteciendo lo anterior obran el **PARTE INFORMATIVO,** rendido por los **CC. Oficiales de Seguridad Pública Municipal OSCAR MARTÍNEZ LÓPEZ y HÉCTOR LEÓN MUÑOZ,** en el que asentaron que siendo las 02:10 horas del día de los hechos al encontrarse efectuando su recorrido de vigilancia se les indico trasladarse a la calle Tule número 1314 lateral con la calle Camichín de la colonia Praderas de La Mesa para atender reporte de una personas sin vida, motivo por el cual se trasladaron al lugar entrevistándose con la testigo **EDELMIRA MONTES HERNÁNDEZ,** quien les manifestó que momentos antes al encontrarse en el interior de su domicilio escucho cuando desde el exterior en la vía pública su hijo **JORGE RANGEL MONTES,** de 43 años de edad, le gritaba, por lo que se aproximó y al abrir la puerta se percato de que su hijo se encontraba visiblemente herido y con la ropa llena de sangre por lo que procedió a solicitar una ambulancia de la cruz roja llegando al lugar la unidad BC-166 a cargo del paramédico Paredes, mismo que indico que dicha persona se encontraba sin vida al parecer a causa de varias heridas con arma punzo cortante en diferentes partes del cuerpo, asimismo al lugar arribaron los agentes ministeriales, Meza y Virueta, así como el Licenciado Emigdio Gutiérrez de Homicidios Dolosos, de Periciales la Química Norma Rebeca Mata, de SEMEFO, Francisco Ramírez; prueba a la que se le otorga el valor indiciario que para ello establece el artículo 223 de la ley adjetiva penal, mismo que alcanza el valor de prueba plena al verse confirmado con el restante caudal probatorio obrante en el sumario. Aunado a lo anterior obra en el sumario el **CERTIFICADO DE NECROPSIA y FE MINISTERIAL DEL MISMO;** remitido al C. Agente del Ministerio Publico Investigador de Delitos realizado por el **C. Perito Médico Legista Doctor JOSÉ LUIS ARGUELLO MONTIEL,** en fecha siete de mayo de dos mil ~~~~~, a quien llevara por nombre de **JORGE RANGEL MONTES,** a quien

después de practicada la necropsia determinaron que la **CAUSA DETERMINANTE DE LA MUERTE: CHOQUE HIPOVOLEMICO SECUNDARIO A HERIDAS PENETRANTES DE CUELLO, TÓRAX y ABDOMEN POR HERIDA CON INSTRUMENTO PUNZOCORTANTE;** así como el **DICTAMEN QUÍMICO TOXICOLÓGICO y FE MINISTERIAL DEL MISMO;** numero **LZT/1989/2012,** de fecha siete de mayo del dos mil once, elaborado por el **C. QFB. PABLO GUILLERMO RODRÍGUEZ RUIZ,** adscrito al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN:** "La muestra en tubo de plástico con capacidad para 6 mililitros conteniendo orina rotulado como 105/12/201 **JORGE RANGEL MONTES,** la cual fue remitida bajo cadena de custodia con folio 107 recibida el día siete de mayo del año en curso, relacionado con la Averiguación Previa 105/12/201, resulto **POSITIVO** a la presencia de metabolitos de Metanfetaminas, Anfetaminas y Opiáceos"; asimismo obra el **DICTAMEN QUÍMICO de ALCOHOLEMIA Y FE MINISTERIAL DEL MISMO;** numero LZT/1990/2012, de fecha siete de mayo del dos mil doce, elaborado por el **C. QFB. GUILLERMO RODRÍGUEZ RUIZ,** adscrito al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN:** "A las muestras contenidas en tubo de plástico con capacidad para 6 mililitros conteniendo sangre, rotulado como **105/12/201, JORGE RANGEL MONTES,** el cual fue remitida bajo la cadena de custodia con folio 107 recibida el día siete de mayo del año en curso, relacionados con la **Averiguación Previa AP/105/12/201/, NO se identifico la presencia de alcohol";** y el **DICTAMEN DE COMPARATIVA HEMATICA Y FE MINISTERIAL DEL MISMO;** numero LZT/2119/2012, de fecha siete de mayo del dos mil doce, elaborado por el **C. Q.I. MARÍA DE LOS ÁNGELES RODRÍGUEZ LÓPEZ,** adscrita al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN: PRIMERA:**

"Las manchas pardo rojizas localizadas en el domicilio ubicado en calle Tule 1325 Fraccionamiento Praderas de la Mesa. SI corresponden a sangre humana; **SEGUNDA:** Las manchas pardo rojizas localizadas en el domicilio ubicado en Calle Tule 1325 Fraccionamiento Praderas de la Mesa, corresponde al tipo sanguíneo "O"; **TERCERA:** El tipo sanguíneo al que pertenece la muestra remitida del Servicio Médico Forense, identificada con el numero de Averiguación Previa 105/12/201, corresponde al tipo **O Rh POSITIVO"**; Certificado de Necropsia y Dictámenes de los cuales diera fe la Representación Social Investigadora de Delitos; mismos que se les confiere el valor probatorio que para ello establece el artículo 222 de la Ley Adjetiva Penal, ya que cumple con los requisitos que exige el diverso numeral 179 del mismo Ordenamiento Legal en cita; teniendo además el valor probatorio que señala el artículo 218 de la Ley Adjetiva Penal, ya que fue fedatado por la Autoridad investigadora en pleno ejercicio de las atribuciones que le confiere el artículo 21 Constitucional; elementos de prueba que se robustecen con las declaraciones de los testigos de identidad **ILDA RANGEL y TIENA RAE GUTIÉRREZ,** quienes manifestaron ante el C. Agente del Ministerio Público Investigador de Delitos, manifestó que venían de las Instalaciones del Servicio Médico Forense lugar donde identifica plenamente y sin temor a equivocarse a su **HERMANO y PADRE** respectivamente como quien en vida llevara el nombre de **JORGE RANGEL MONTES,** quien contaba con la edad de 43 años de edad, fecha de nacimiento doce de diciembre de 1970, estado civil soltero, originario de Guadalajara Jalisco, de ocupación desempleado, con domicilio en calle Tule numero 1314 colonia Praderas de La Mesa, grado de escolaridad secundaria completa, de religión católico, y era de la siguiente media filiación: estatura de 1.60 aproximadamente, complexión delgado, tez moreno claro, cabello lacio, frente cara oval, ojos color café, frente amplia, cejas pobladas, nariz cóncava, labios

gruesos, boca grande, mentón oval, orejas medianas, bigote rasurado, barba tipo candado, no cuenta con señas; no fumaba, no sabe, no sabe, no padecía de enfermedad, y en relación a la manera en que falleció el **HERMANO y PADRE** de las respectivas testigos manifestaron..."Que el día de hoy siete de mayo del 2012, siendo aproximadamente las 02:00 horas les llamo **CLAUDIA RANGEL MONTES** informándoles que **JORGE RANGEL MONTES** lo habían privado de la vida, por lo que el mismo día se trasladaron a esta ciudad de Tijuana, para acudir al SEMEFO a reconocer el cuerpo del occiso, agregando que ignoran quién o quienes pudieron haber privado de la vida al occiso o él motivo por el cual lo hicieron; aunado a lo anterior obra **COPIA DIGITALIZADA DE DOS IMPRESIONES FOTOGRÁFICAS y FE MINISTERIAL DE LAS MISMAS;** en las que se aprecia el rostro de una persona de sexo masculino con la siguiente media filiación: de tez blanca, complexión robusta, cabello corto oscuro casi a rapa, bigote recortado, frente amplia, labios medianos, boca mediana, ceja arqueada poblada, en la primera de ellas se aprecia vistiendo una camiseta color negro y en brazos un bebe con ropa de color blanco, y en la segunda viste playera de color azul; mismas impresiones fotográficas de las cuales diera fe la Representación Social Investigadora de Delitos; así como el **INFORME número 349/HOM.DOL./12** de fecha siete de mayo del año del dos mil doce, rendido al C. Agente del Ministerio Público Investigador de Delitos, por los **CC. Agentes de la Policía Ministerial del Estado OSCAR RODRÍGUEZ ANDALÓN y ADRIANA E. CAMACHO ROCHA,** el cual en este apartado se integramente por reproducida atendiendo al principio de economía procesal; prueba a la que se le otorga el valor indiciario que para ello establece el artículo 223 de la ley adjetiva penal, mismo que alcanza el valor de prueba plena al verse confirmado con el restante caudal probatorio obrante en el sumario; Estas pruebas tienen en principio valor de indicio pero

adminiculada con las demás pruebas que a se han mencionados y con las que a continuación se citaran, de acuerdo a lo indicado en el artículo 223 del Código de Procedimientos Penales Vigente en la entidad su valor probatorio se incrementa hasta adquirir plenitud; elementos de convicción que valorados en términos de los artículos 212, 213 y 214 de la Ley Adjetiva Penal al ser además adminiculados y relacionados entre sí en términos del artículo 223 del mismo Ordenamiento Legal en cita, por su enlace lógico y natural resulta aptos y eficaces para acreditar la intervención que en forma directa realizó el inculpado de mérito en la comisión de este hecho delictuoso que se les imputa, ya que el día siete de mayo del año del dos mil doce, siendo aproximadamente las 02:00 horas el inculpado **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO,** al encontrarse en el domicilio ubicado en calle Tule número 1325 colonia Praderas de La Mesa, delegación Cerro Colorado, de esta ciudad, dicho inculpado ventajosamente lo privo de la vida al ahora occiso **JORGE RANGEL MONTES,** ya que portaba un arma blanca tipo navaja agrediéndolo con la misma, provocándole con esta las lesiones que a la postre le provocaron la muerte, describiéndose en el certificado de necropsia como causa determinante de la muerte: **choque hipovolemico secundario a heridas penetrantes de cuello, tórax y abdomen por herida con instrumento punzocortante;** elaborado por el **C. Perito Médico Legista JOSÉ LUIS ARGUELLO MONTIEL;** del cual diera fe el Fiscal Investigador de Delitos, no corriendo riesgo alguno el sujeto activo de ser muerto o herido por el pasivo; por lo que encontrándose reunidos los requisitos que establecen los artículos 16 Constitucional, 109 y 267 fracción I del Código de Procedimientos Penales es procedente decretar **ORDEN DE APREHENSIÓN** en contra **JORGE ANTONIO PASILLAS**

JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO, como probable responsable en la comisión del delito de **HOMICIDIO CALIFICADO**, misma orden que deberá entregarse al Agente del Ministerio Público Adscrito, para que por su conducto la haga llegar a la Policía Ministerial del Estado y ordene su ejecución, haciéndole saber al citado funcionario, que cumplimentada que sea dicha orden, deberá internarse al indiciado de referencia en el Centro de Reinserción Social, de esta ciudad, a disposición de este Juzgado.- - - - - - - - - - -

- - - Por lo antes expuesto, fundado y motivado es de resolverse como se:- - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - **R E S U E L V E** - - - - - - - - - - - -

- - - **PRIMERO:** Se **LIBRA ORDEN DE APREHENSIÓN** en contra de **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO**, como probable responsable en la comisión del delito de **HOMICIDIO CALIFICADO**, ilícito por el cual lo consignó el Agente del Ministerio Público Investigador de Delitos.- - - - - - - - - - - - - - - - - - - - - - - -

- - - **SEGUNDO:** NOTIFÍQUESE ÚNICAMENTE AL C. AGENTE DEL MINISTERIO PUBLICO ADSCRITO.- - - - - - - - - -

- - - A S I; lo resolvió y firma la Ciudadana **Licenciada IGNACIA GLORIA FIMBRES MORENO,** Juez Cuarto Penal de este Partido Judicial, ante el ~~Licenciado~~ **VÍCTOR MANUEL FERNÁNDEZ CÓRDOVA,** Segundo Secretario de Acuerdos, con quien actúa y da fe.- - - - - - - - - - - - - - - - - -

CONCLUYE ORDEN DE APREHENSIÓN DICTADA EN LA CAUSA PENAL: 279/2012.- - - - - - - - - - - - - - - - - - - - -

JUZGADO CUARTO PENAL

En _____ 11 junio 2017 _____ Fue notificado

el ciudadano Agente del Ministerio Público del ____

_____ y de enterado firmo, Doy fe.

La Actuaria

Remite oficio 1679-2    11-junio-2012

CUART

CUART
Tl.

# PRUEBA 2

EXT_Pasillas Jaramillo_000204

151

**279/2012**

**CUENTA**: En 31 treinta y uno de octubre del año dos mil trece, esta Secretaría da cuenta al C. Juez con un escrito que exhibe la Agente del Ministerio Público Adscrita. CONSTE. - - - - - - - - - - - - - - - - - - -

**AUTO**.- En la Ciudad de Tijuana, Baja California a 31 treinta y uno de Octubre del año dos mil trece. - - - - - - - **Vistos**, a sus autos el escrito a que se refiere la razón de cuenta para que obren como correspondan, se tienen por hechas las manifestaciones de la Representación Social, como lo solicita expídansele copias certificadas por duplicado de las actuaciones que refiere, por otra parte a solicitud de la Representación Social se realiza el computo de la prescripción de la pretensión punitiva, tomando en consideración que en fecha ocho de Junio del año dos mil doce, se libro Orden de Aprehensión en contra del inculpado JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO, como probable responsable del delito de HOMICIDIO CALIFICADO, ilícito sancionado en el numeral 126 del Código Penal en el Estado con una penalidad de veinte a cincuenta años de prisión y atento a lo dispuesto por el artículo 114 bis del mismo ordenamiento legal, el computo para que opere la prescripción en la presente causa penal es el día nueve de Junio del año dos mil sesenta y dos. - - - - - - - - - - - - - - - - - - - - - - - - - - - -Lo anterior con fundamento en lo dispuesto por

los artículos 110, 113 y 114 bis del Código Penal, en relación con los artículos 42, 43, 58 y 60 del Código de Procedimientos Penales en el Estado. - - - - - - - -

- - -**NOTIFÍQUESE Y CÚMPLASE** - - - - - - - - - - - -

- -A S I lo acordó y firma la C. Juez Cuarto de lo Penal de este Partido Judicial, **Licenciada IGNACIA GLORIA FIMBRES MORENO**, asistida por la C. Secretario de Acuerdos **Licenciado VÍCTOR MANUEL FERNÁNDEZ CÓRDOVA**, quien autoriza y da fe.- - - - - - - - - - - - - - - - - - - - - - - - -

JUZGADO CUARTO PENAL
04-11-13    Fue notificado
En _____
el ciudadano Agente del Ministerio Público del rubro
y de enterado firmo, Doy fe.
La Actuaria

# PRUEBA 3

EXT_Pasillas Jaramillo_000207

**Artículo 109.- Efectos del indulto.-** El indulto extingue las penas y medidas de seguridad impuestas en sentencia ejecutoria, salvo el decomiso de instrumentos y objetos del delito y la reparación de los daños y perjuicios.

Es facultad discrecional del ejecutivo del estado conceder el indulto, cuando el reo haya prestado importantes servicios a la Nación o al Estado.

## CAPITULO IX

### PRESCRIPCION

#### DISPOSICIONES GENERALES

**Artículo 110.- Efectos y características de la prescripción.-** La prescripción extingue la pretensión punitiva y la potestad de ejecutar las penas y medidas de seguridad; es personal y para ello bastará el transcurso del tiempo señalado por la Ley.

La prescripción será declarada de oficio o a petición de parte.

**Artículo 111.- Prescripción en caso de medidas para inimputables.-** En el caso de las medidas para inimputables permanentes, la prescripción de la pretensión punitiva se regirá por lo dispuesto en el primer párrafo del artículo 114, mientras que la potestad para ejecutarla prescribirá en un plazo igual al que debería durar, sin que pueda ser inferior a dos años. en todo caso se observará lo dispuesto por el artículo 102 de este Código.

**Artículo 112.- Impedimento legal para correr los plazos.-** No correrán los plazos para la prescripción cuando exista algún impedimento legal para el ejercicio de la prescripción de la pretensión punitiva o para ejecutar las penas o medidas de seguridad impuestas.-

## CAPITULO X

### PRESCRIPCION DE LA PRETENSION PUNITIVA

**Artículo 113.- Plazos de la prescripción de la pretensión punitiva.-** Los plazos de la prescripción de la pretensión punitiva serán continuos y se contarán:

I.- A partir del momento en que se consumó el delito, si fuere instantáneo;

II.- A partir del día en que se realizó el último acto de ejecución o se omitió la conducta debida, si el delito fuere en grado de tentativa;

III.- Desde el día en que se realizó la última conducta, tratándose de delito continuado y;

IV.- Desde la cesación de la consumación en el delito permanente.

**Artículo 114.- Prescripción de la pretensión punitiva, según el tipo de pena señalada al delito.-** La pretensión punitiva prescribirá en un plazo igual al término medio aritmético de la pena privativa que señale la Ley para el delito de que se trate, pero en ningún caso será menor de tres años.

Si el delito solo mereciere multa, la pretensión punitiva prescribirá en un año.

Si además de la pena de prisión el delito mereciere otra accesoria o una alternativa, se atenderá a la prescripción de la pretensión punitiva de la pena privativa de libertad.

En los demás casos, la pretensión punitiva prescribirá en dos años.

**Artículo 115 Prescripción de la pretensión punitiva en caso de delito de querella.-** La pretensión punitiva que nazca de un delito que sólo pueda perseguirse por querella del ofendido o algún otro acto equivalente, prescribirá en un año, contado a partir del día en que quienes puedan formular la querella o el acto equivalente tengan conocimiento del delito, y en tres, fuera de esta circunstancia.

Pero si llenado el requisito inicial de la querella o del acto equivalente, ya se hubiese deducido la acción ante los Tribunales, se observarán las reglas señaladas por la Ley para los delitos que se persiguen de oficio.

**Artículo 116.- Prescripción en caso de concurso de delitos.-** En los casos de concurso real o ideal de delitos, los plazos de prescripción de la

presión punitiva se computarán separadamente para cada delito.

**Artículo 117.- Necesidad de la declaración o resolución previa a la prescripción.-** Cuando para ejercitar o continuar el ejercicio de la pretensión punitiva sea necesaria una declaración o resolución previa de la autoridad competente, la prescripción no comenzará a correr sino hasta que sea satisfecho ese requisito.

**Artículo 118.- Interrupción de la prescripción.-** La prescripción de la pretensión punitiva se interrumpirá por las actuaciones que se practiquen para la averiguación del delito, aunque,

por ignorarse quien o quienes sean los inculpados, las diligencias no se practiquen contra persona o personas determinadas.

Si se dejare de actuar, la prescripción comenzará a correr de nuevo desde el día siguiente al de la última actuación.

Se interrumpirá igualmente la prescripción cuando el inculpado cometiere nuevo delito.

Lo prevenido en los párrafos anteriores de este artículo no comprende el caso en que las actuaciones se practiquen después de que haya transcurrido la mitad del lapso necesario para la prescripción. Entonces ésta continuará corriendo y no se interrumpirá sino por la aprehensión del inculpado.

## CAPITULO XI

### PRESCRIPCION DE LA POTESTAD DE EJECUTAR LAS PENAS Y MEDIDAS DE SEGURIDAD

**Artículo 119.- Plazos para la prescripción.-** Los plazos para la prescripción de la potestad para ejecutar las penas y medidas de seguridad, serán continuos y correrán desde el día siguiente a aquél en que el sentenciado se substraiga a la acción de la justicia, si las penas o medidas de seguridad fueren privativas o restrictivas de la libertad, y si no lo son desde la fecha de la sentencia ejecutoria.

**Artículo 120.- Lapso de prescripción de la potestad de ejecutar las diversas penas.-** La potestad para ejecutar la pena privativa de libertad prescribirá en un lapso igual al fijado en la sentencia, pero no podrá ser inferior a tres años.

Cuando se hubiere cumplido parte de la pena privativa de libertad, se necesitará para la prescripción un tiempo igual al que falte para el cumplimiento de la condena, tomando en cuenta los límites fijados en el párrafo anterior.

La potestad para ejecutar la pena de multa prescribirá en un año; la de las demás sanciones prescribirán en un plazo igual al que deberían durar, sin que pueda ser inferior a dos años; y las que no tengan temporalidad, prescribirán en dos años. Los plazos serán contados a partir de la fecha en que el sentenciado se substraiga a la acción de la justicia.

Cuando se imponga una medida de seguridad conjuntamente con una pena privativa de libertad, el plazo para la prescripción de la potestad de ejecutarla será igual a la que corresponda a la pena.

Tratándose de inimputables la potestad de ejecutar la medida de seguridad prescribirá en un plazo igual al que corresponda a la pena.

Las demás medidas de seguridad prescribirán en un lapso de tres años.

**Artículo 121.- Interrupción de la prescripción.-** La prescripción de la potestad de ejecutar las penas privativas o restrictivas de la libertad sólo se interrumpirá, por la aprehensión del sentenciado o por la comisión por parte de éste de un nuevo delito. Si se dejare de actuar, la prescripción comenzará a correr de nuevo desde el día siguiente al del último acto realizado. No corre la prescripción cuando exista obstáculo legal para capturar al responsable del delito o para ejecutar la pena impuesta.

La prescripción de la potestad para ejecutar las demás penas y medidas de seguridad se interrumpirá por cualquier acto de autoridad competente para hacerlas efectivas, y comenzará a correr de nuevo al día siguiente del último acto realizado.

**Artículo 122.- Prohibición de residir en determinado lugar.-** Los reos de homicidio intencional o de heridas o violencias graves a quienes se hubiere impuesto la prohibición de ir a determinado lugar, y cuya sanción corporal haya prescrito, no podrán residir en el lugar donde vive el ofendido o sus descendientes, cónyuges o hermanos, sino transcurrido después de consumada la prescripción, un tiempo igual al que debiera durar la sanción.



OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

# LIBRO SEGUNDO

## PARTE ESPECIAL

### SECCION PRIMERA

### DELITOS CONTRA EL INDIVIDUO

## TITULO PRIMERO

### DELITOS CONTRA LA VIDA Y LA SALUD PERSONAL

### CAPITULO I

### HOMICIDIO

Artículo 123.- **Tipo**.- Comete el delito de homicidio el que priva de la vida a otro.

Artículo 124.- **Punibilidad de homicidio simple**.- Al que prive de la vida a otro se le impondrá de ocho a quince años de prisión.

Artículo 125.- **Homicidio en riña**.- Al que prive de la vida a otro en riña, se le impondrá de cuatro a diez años de prisión.

Para la fijación de la pena, dentro de los mínimos y máximos anteriormente señalados, se tomará en cuenta quien fue el provocado y quien el provocador, así como la mayor o menor importancia de la provocación.

Artículo 126.- **Homicidio calificado**.- Se impondrá de dieciséis a treinta años de prisión al responsable de homicidio calificado previsto en el artículo 147.

### CAPITULO II

### HOMICIDIO AGRAVADO POR RAZON DE PARENTESCO

Artículo 127.- **Parentesco consanguíneo**.- Al que dolosamente prive de la vida a cualquier ascendiente o descendiente consanguíneo en línea recta, o a su hermano, con conocimiento de ese parentesco, se le impondrá de dieciséis a treinta años de prisión.

Artículo 128.- **Parentesco no consanguíneo**.- Al que dolosamente prive de la vida a su cónyuge, concubino o concubina, adoptante o adoptado, con conocimiento de ese parentesco o relación se le impondrá de diez a veinte años de prisión.

### CAPITULO III

### INFANTICIDIO

Artículo 129.- **Tipo y punibilidad**.- Se impondrá de tres a diez años de prisión, a la madre que por móviles de honor prive de la vida a su descendiente consanguíneo, dentro de las setenta y dos horas de su nacimiento, siempre que concurran las siguientes circunstancias:

I.- Que no tenga mala fama;

II.- Que haya ocultado su embarazo;

III.- Que el nacimiento del infante haya sido oculto y no se hubiere inscrito en el Registro Civil;

IV.- Que el infante no sea legítimo.

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O :

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN TRES HOJAS UTILES DEBIDAMENTE COTEJADAS.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

----------------------------------------

**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA**

acción por omisión.

A nadie se le podrá atribuir un resultado típico como consecuencia de su acción u omisión.

En los delitos de resultado material, también responderá del resultado típico producido quien, teniendo el deber jurídico de actuar para evitarlo, no lo impide.

Artículo 13.- **Delitos Instantáneo, Permanente y Continuado.**- Para los efectos de este Código, el delito es:

I.- Instantáneo, cuando se consuma en el mismo momento en que se han realizado todos los elementos de la descripción legal;

II.- Permanente o continuo, cuando la consumación se prolonga en el tiempo; y

III.- Continuado, cuando con unidad de propósito delictivo y pluralidad de conductas se viola el mismo precepto legal.

Artículo 14.- **Dolo, Culpa y Preterintención.**-

Los delitos se pueden realizar dolosa, culposa o preterintencionalmente:

I.- Obra dolosamente el que, conociendo los elementos objetivos de la descripción legal, o previendo como posible el resultado típico, quiere o acepta la realización de la conducta o hecho descrito por la ley;

II.- Obra culposamente el que produce el resultado típico que no previó siendo previsible o previó confiado en que no se produciría, al infringir un deber de cuidado que las circunstancias y condiciones personales le imponen;

III.- Obra preterintencionalmente el que causa un resultado típico más grave al querido, si aquél se produce culposamente.

Sólo es punible el delito doloso y lo será el culposo y el preterintencional, si la Ley lo conmina expresamente con pena.

La punibilidad del delito preterintencional, sólo es admisible en los casos en que se admite la del delito culposo.

## CAPITULO II

### TENTATIVA

Artículo 15.- **Tentativa Punible, Delito Imposible y Desistimiento y Arrepentimiento.**- Existe tentativa punible cuando la resolución de cometer un delito se exterioriza ejecutando la conducta que debería producirlo u omitiendo, la que debería evitarlo, si aquél no se consuma por causas ajenas a la voluntad del agente.

También es punible la tentativa cuando el delito no se pudiera consumar, por inidoneidad de los medios o por inexistencia del bien jurídico tutelado o del objeto material.

Si la tentativa deriva de la notoria incultura, marginación social, o causas similares, a juicio del órgano jurisdiccional, la tentativa no es punible.

Si el sujeto espontáneamente se desistiere de la ejecución o impidiere la consumación del delito, no se impondrá pena o medida de seguridad alguna, a no ser que los actos ejecutados u omisiones constituyan por sí mismos delito, en cuyo caso se le impondrá la pena o medida señalada para éstos.

## CAPITULO III

### AUTORIA Y PARTICIPACION

Artículo 16.- **Autores y Partícipes.**- Son autores o partícipes del delito cometido, según el caso:

I.- **Autores Directos.**- Los que lo realicen por sí;

II.- **Coautores.**- Los que lo realicen conjuntamente;

III.- **Autores mediatos.**- Los que lo lleven a cabo sirviéndose de otro como instrumento;

IV.- **Instigadores.**- Los que determinen dolosamente a otro a cometerlo;

V.- **Cómplice.**- Los que dolosamente presten ayuda o auxilio a otro para su comisión; y

VI.- **Auxilio en cumplimiento de promesa anterior.**- Los que con posterioridad a su ejecución auxilien al autor en cumplimiento de una promesa anterior al delito.

Artículo 17.- **Delito Emergente.**- Si varias personas toman parte en la realización de un delito determinado y alguna de ellas comete un delito distinto, sin previo acuerdo con las otras, todas serán responsables de la comisión del nuevo delito, salvo que concurran los requisitos siguientes:

I.- Que el nuevo delito no sirva de medio adecuado para cometer el principal;

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O :

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN UNA HOJA UTIL DEBIDAMENTE COTEJADA.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

-----------------------------------------------------------
**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA.**

**ADICIONAN** un Capítulo VII denominado "Violencia Intrafamiliar" al Título Primero denominado "Delitos Contra el Orden de la Familia", en la Parte Especial de la Sección Segunda, del Libro Segundo, que contiene el Artículo 242 Bis; así como un párrafo segundo al Artículo 182; y se **DEROGAN** el Artículo 186 y la fracción III del Artículo 335, todos del Código Penal para el Estado de Baja California; para quedar como sigue:

**ARTICULO 2.-** _Principio de tipicidad y prohibición de la aplicación analógica o por mayoría de razón.- Nadie podrá ser sancionado por una acción u omisión, si éstas no reúnen los elementos del tipo penal. Queda **prohibida** la aplicación analógica o por mayoría de razón de la Ley penal en perjuicio de persona alguna._

**ARTICULO 13.-**
I.- Instantáneo, cuando se consuma en el mismo momento en que se han realizado todos los elementos del tipo penal;
II a III.- ...

**ARTICULO 14.-**
I.- Obra dolosamente el que, conociendo los elementos objetivos del tipo penal, o previendo como posible el resultado típico, quiere o acepta la realización de la conducta o hecho descrito por la ley;
II a III.- ...
...
...

**ARTICULO 23.-**
I.- ...
II.- Atipicidad.- Falte alguno de los elementos esenciales del tipo penal;
III a IX.- ...

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O :

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN UNA HOJA UTIL DEBIDAMENTE COTEJADA.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

-----------------------------------------

**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA**

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

Página 26

en comunidad de diez a treinta días según proceda a juicio del juzgador.

Si tarda en sanar más de quince días se le impondrá prisión de cuatro meses a dos años y de veinte a cien días multa .

**Artículo 139.- Punibilidad de las lesiones simples en razón del resultado.-** Las lesiones que no pongan en peligro la vida, cualquiera que sea su tiempo de curación, serán penadas:

I.- De dos a cinco años de prisión y hasta cien días multa, si dejan cicatriz en la cara notable y permanente;

II.- De tres a cinco años de prisión y hasta cien días multa, cuando disminuyan facultades o el normal funcionamiento de órganos o miembros o cuando produzcan incapacidad temporal de hasta un año para trabajar; o

III.- De tres a ocho años de prisión y hasta doscientos días multa si producen la pérdida definitiva de cualquier función orgánica, miembro órgano o facultad, o causen una enfermedad segura o probablemente incurable o deformidad incorregible, o incapacidad por más de un año o permanente para trabajar.

Si se produjeren varios de los resultados previstos en este artículo solamente se aplicará la pena correspondiente al de mayor gravedad.

**Artículo 140.- Lesiones que ponen en peligro la vida.-** Al que infiera lesiones que pongan en peligro la vida se le impondrán de tres a seis años de prisión y hasta ciento cincuenta días multa, sin perjuicio de las sanciones que le correspondan conforme al artículo anterior.

**Artículo 141.- Lesiones en riña .-** Si las lesiones fueren inferidas en riña , se disminuirán hasta la mitad o hasta la tercera parte de las penas previstas en los tres artículos anteriores, según se trate de provocador o del provocado, respectivamente.

**Artículo 142.- Lesiones agravadas por razón del parentesco.-** Al que dolosamente lesione a su ascendiente o descendiente consanguíneo en línea recta, a su hermano, cónyuge, concubino, concubina, adoptante o adoptado, con conocimiento de ese parentesco o relación, se le impondrá hasta una mitad más de la pena que corresponda a la lesión inferida.

Si las lesiones son inferidas a un menor de dieciséis años o incapaz, sujeto a la patria potestad, tutela o custodia del autor, además de las penas que le correspondan por la lesión producida se privará al delincuente de esa potestad, tutela o custodia.

**Artículo 143.- Lesiones calificadas.-** Cuando las lesiones sean calificadas, en términos del artículo 147, la pena correspondiente a las lesiones simples se aumentará en dos terceras partes.

**Artículo 144.- Lesiones perseguibles por querella.-** Se persiguen por querella de parte:

I.- Las lesiones previstas en el artículo 138;

II.- Cuando se causen lesiones culposas, cualquiera que sea su naturaleza con motivo de tránsito de vehículos, siempre que el conductor no se hubiese encontrado en estado de ebriedad o bajo el influjo de estupefacientes, psicotrópicos o de cualquier otra substancia que produzca efectos similares, y no se haya dejado abandonada a la víctima; o en los casos en que ésta sea consecuencia de la conducta culposa del personal de empresas de transporte de pasajeros, de carga de servicio público o concedido por autorización, permiso o licencia de las autoridades competentes

**Artículo 145.- Lesiones causadas por animal.-** De las lesiones que a una persona cause algún animal será responsable el que con esa intención lo azuce, lo suelte o haga esto último por descuido.

## CAPITULO VII

### DISPOSICIONES COMUNES PARA LOS DELITOS DE HOMICIDIO Y LESIONES

**Artículo 146.- Concepto.-** Por riña se entiende para todos los efectos penales, la contienda de obra y no la de palabra entre dos o más personas, con el propósito de dañarse recíprocamente.

**Artículo 147.- Homicidio y lesiones calificados.-** se entiende que las lesiones y el homicidio son calificados, cuando se cometan con premeditación, con ventaja, con alevosía o a traición.

**Concepto de premeditación.-** Hay premeditación, siempre que el reo cause intencionalmente una lesión, después de haber reflexionado sobre el delito que va a cometer.

Se presumirá que existe premeditación cuando las lesiones o el homicidio se cometan por inundación, incendio, minas, bombas o explosivos;

or medio de venenos o cualquier otra substancia nociva a la salud, contagio venéreo, asfixia o enervantes o por retribución dada o prometida; por tormento, motivos depravados o brutal ferocidad.

**Artículo 148.- Concepto de ventaja.-** Se entiénde que hay ventaja:

I.- Cuando el delincuente es superior en fuerza física al ofendido y éste no se halla armado.

II.- Cuando es superior por las armas que emplea, por su mayor destreza en el manejo de ellas o por el número de los que lo acompañen;

III.- Cuando se vale de algún medio que debilita la defensa del ofendido, y

IV.- Cuando éste se halla inerme o caído y aquel armado o de pie.

La ventaja no se tomará en consideración en los tres primeros casos, si el que tiene obrase en defensa legítima, ni en el cuarto, si el que se halla armado o de pie fuere el agredido, y además hubiere corrido peligro su vida por no aprovechar esa circunstancia.

**Artículo 149.- Concepto de ventaja condicionada.-** Sólo será considerada la ventaja como calificativa de los delitos de que hablan los capítulos anteriores de este título, cuando sea tal que el delincuente no corra riesgo alguno de ser muerto ni herido por el ofendido y aquel no obre en legítima defensa.

**Artículo 150.- Concepto de alevosía.-** La alevosía consiste en sorprender intencionalmente, a alguien de improviso, o empleando acechanza u otro medio que no le dé lugar a defenderse ni evitar el daño que se le quiere hacer.

**Artículo 151.- Concepto de traición.-** Obra a traición el que no solamente emplea la alevosía, sino también la perfidia, violando la fe o seguridad que expresamente había prometido a su víctima, o la tácita que ésta debía prometerse de aquel por sus relaciones de parentesco, gratitud, amistad o cualquier otra que inspire confianza.

**Artículo 152.- Homicidio o lesiones culposos.-** Son punibles el homicidio y las lesiones causados

culposamente.

**Artículo 153.- Penas adicionales para los delitos de homicidio y lesiones.-** El juzgador, si lo estima pertinente, además de las penas que se señalan para los delitos de homicidio y lesiones, podrá en su caso:

I.- Declarar a los reos sujetos a vigilancia de la autoridad;

II.- Prohibirles ir a circunscripción territorial determinada o residir en ella.

**Artículo 154.- Homicidio o lesiones por infidelidad conyugal.-** Se impondrán de dos a cinco años de prisión, al que, sorprendiendo a su cónyuge en el acto carnal o próximo a la consumación mate o lesione a cualquiera de los culpables, o ambos, salvo el caso de que el matador haya contribuido a la corrupción de su cónyuge. En este último caso se impondrán al homicida de cinco a diez años de prisión.

**Artículo 155.- Homicidio o lesiones por corrupción de descendiente o adoptado.-** Se impondrán de dos a cinco años de prisión al ascendiente o adoptante que mate o lesione al corruptor del descendiente o adoptado que está bajo su potestad, o a ambos, si lo hiciere en el momento de hallarlos en el acto sexual o en uno próximo a él, si no hubiere procurado la corrupción de su descendiente o adoptado con el varón o mujer con quien lo sorprenda, ni con otra persona.

**Artículo 156.- Tipo y punibilidad.-** Se aplicará sanción de dos a cinco años de prisión y hasta doscientos días multa:

I.- Al que dispare a una persona o un grupo de personas un arma de fuego;

II.- Al que ataque a alguien de tal manera que en razón del medio empleado, el arma, la fuerza o destreza del agresor, o de cualquier otra circunstancia semejante, pueda producir como resultado la muerte.

El artículo anterior sólo tendrá aplicación cuando no pueda sancionarse el hecho conforme al artículo 15 de este Código, para los delitos de homicidio o lesiones.

## CAPITULO VIII

### DELITOS DE PELIGRO PARA LA VIDA Y LA SALUD DE LAS PERSONAS

**Artículo 157.- Omisión de auxilio.-** Al que omita prestar auxilio necesario a quien se encuentre

desamparado y en peligro manifiesto en su persona, cuando pudiere hacerlo, según las circunstancias,

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O:

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN DOS HOJAS UTILES DEBIDAMENTE COTEJADAS.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA.**

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

**LA H. XVII LEGISLATURA CONSTITUCIONAL DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, EN USO DE LAS FACULTADES QUE LE CONFIERE EL ARTICULO 27, FRACCION I DE LA CONSTITUCION POLITICA LOCAL, EXPIDE EL SIGUIENTE:**

## DECRETO N° 160

**UNICO.**-Se aprueba la **REFORMA A LOS ARTÍCULOS 147 Y 317-BIS DEL CÓDIGO PENAL PARA EL ESTADO DE BAJA CALIFORNIA,** en razón de los argumentos vertidos en el presente Dictamen, a efecto de quedar como sigue:

**ARTICULO 147- Homicidio y lesiones calificados.-** Se entiende que las lesiones y el homicidio son calificados, cuando se cometan con premeditación, con ventaja, con alevosía o traición; de igual manera serán considerados calificados, cuando se cometan en contra de agentes integrantes de las corporaciones de seguridad pública en ejercicio o como consecuencia del desempeño de sus funciones, incluyendo a los elementos de las empresas privadas y a los que de manera independiente presten servicios de seguridad, protección, vigilancia o custodia de personas, lugares o establecimientos, así como de bienes o valores incluido su traslado, siempre y cuando estén debidamente registrados ante los organismos públicos correspondientes. La presente disposición no surtirá efectos en el caso de delitos no graves por culpa.

Concepto de premeditación . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Se presumirá . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**ARTICULO 317-BIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Esta disposición no surtirá . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

## C E R T I F I C O:

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO, MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN UNA HOJA UTIL DEBIDAMENTE COTEJADA.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

----------------------------------------
**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO,**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA**





OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

**ARTICULO 148.-** Concepto de ventaja.- Se entiende que hay ventaja:

I.- Cuando el delincuente es superior en fuerza física al ofendido y éste no se halla armado;

II.-....

III.- Cuando se vale de algún medio que debilita la defensa del ofendido;

IV.- Cuando éste se halla inerme o caído y aquel armado o de pie.

V.- Derogada.

VI.- Derogada.

La ventaja ...

**ARTICULO 149.-** Concepto de ventaja condicionada.- Sólo será considerada la ventaja como calificativa de los delitos de que hablan los Capítulos anteriores de este Título, cuando sea tal que el delincuente no corra riesgo alguno de ser muerto ni herido por el ofendido y aquel no obre en legítima defensa.

**ARTICULO 157.-** Omisión de auxilio.- Al que omita prestar auxilio a un menor expósito o abandonado o incapaz que no pueda valerse por sí mismo, o a quien se encuentre herido, inválido o desamparado y en peligro manifiesto en su persona, cuando según las circunstancias pudiere hacerlo, sin riesgo propio ni de terceros, se le impondrá de seis meses a dos años de prisión y hasta cien días multa.

La misma pena se impondrá ...

**ARTICULO 158.-** Omisión de cuidado.- Al que abandone a una persona incapaz de valerse por sí misma, teniendo la obligación de cuidarla y con ello ponga en situación de peligro su integridad física y moral, se le aplicará prisión de uno a cuatro años, y se le privará del derecho de ejercer la patria potestad o tutela si el agente fuere ascendiente o tutor del ofendido.

Si del abandono resultare .....

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O:

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN UNA HOJA UTIL DEBIDAMENTE COTEJADA.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

-------------------------------------
**LIC. CARLOS ALBERTO LEAL SARIÑANA
JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO
DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO
LIBRE Y SOBERANO DE BAJA CALIFORNIA**

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.



OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

ARTICULO 107.- ...

El perdón del ofendido beneficiará al inculpado o inculpados en cuyo favor se otorgue y sólo beneficiará a todos los inculpados y al encubridor, cuando se haya reparado el daño y las consecuencias inherentes del mismo al ofendido.

ARTICULO 125.- Homicidio en riña.- Al que prive de la vida a otro en riña, se le impondrá de seis a doce años de prisión.

...

ARTICULO 126.- Homicidio calificado.- Se impondrá de veinte a cincuenta años de prisión al responsable de homicidio calificado previsto en el Artículo 147.

ARTICULO 127.- Parentesco consanguíneo.- Al que dolosamente prive de la vida a cualquier ascendiente o descendiente consanguíneo en línea directa, o a su hermano, con conocimiento de ese parentesco, se le impondrá de veinte a cincuenta años de prisión.

ARTICULO 128.- Parentesco no consanguíneo.- Al que dolosamente prive de la vida de su cónyuge, concubinario o concubina, adoptante o adoptado, con conocimiento de ese parentesco o relación, se le impondrá de dieciséis a treinta años de prisión.

COTEJADO

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O :

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN UNA HOJA UTIL DEBIDAMENTE COTEJADA.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

---

**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO,**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA**

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

ARTICULO 122.- Prohibición de residir en determinado lugar.- Los reos de homicidio intencional o de heridas o violencias graves a quienes se hubiere impuesto la prohibición de ir a determinado lugar, y cuya sanción corporal haya prescrito, no podrán residir en el lugar donde vive la víctima o el ofendido o sus descendientes, cónyuges o hermanos, sino transcurrido después de consumada la prescripción, un tiempo igual al que debiera durar la sanción.

ARTICULO 129.- DEROGADO.

ARTICULO 130.- DEROGADO.

ARTICULO 131.- Tipo y punibilidad.- Al que instigue o ayude ...

Si la persona a quien se instiga o ayuda al suicidio fuere persona menor de dieciocho años de edad  o persona que no tuviere capacidad de comprender el significado del hecho, la pena aplicable será la correspondiente al homicidio calificado.



ARTICULO 143 BIS.- Lesiones contra personas menores de dieciocho años de edad, personas con capacidades diferentes, adultos mayores de sesenta años de edad o personas que no tengan capacidad para comprender el significado del hecho.- Al que dolosamente lesione a  persona menor de dieciocho años de edad, persona con capacidades diferentes, adulto mayor de sesenta años de edad, o a persona no tengan capacidad para comprender el significado del hecho, sujeto a tutela, custodia, guarda-protección, educación, cuidado o instrucción, se le impondrá una pena de seis meses a dos años de prisión, si las lesiones inferidas son de las que no ponen en peligro la vida, cualquiera que sea el tiempo de su curación.



Si las lesiones a que se refiere el párrafo anterior son inferidas a personas menores de doce años de edad, se impondrá una pena de dos a cinco años de prisión y hasta ciento cincuenta días multa.

Si las lesiones inferidas son de las señaladas en el artículo 139, o de las que ponen en peligro la vida, la pena correspondiente a la lesión inferida aumentará en dos terceras partes, y se privará al agente del derecho de ejercer la patria potestad, la tutela, custodia, guarda-protección, educación cuidado o instrucción de personas menores de dieciocho años de edad,  adultos mayores de sesenta años de edad, personas con capacidades diferentes o personas que no tengan  capacidad para comprender el significado del hecho.

ARTICULO 148.- Concepto de ventaja.- Se entiende que hay ventaja:

I.- Cuando el delincuente es superior en fuerza física a la víctima  y éste no se encuentra armado;



OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

COTEJADO

II.-....

III.- Cuando se vale de algún medio que debilita la defensa de la víctima;

IV.- Cuando éste se encuentre inerme o caído y aquel armado o de pie;

V.- Cuando la víctima es persona menor de dieciocho años de edad o persona que no tuviera la capacidad de comprender el significado del hecho o persona con capacidades diferentes, sin estar el sujeto activo dentro de estas hipótesis;

VI.- Cuando la víctima sea un adulto mayor de sesenta años de edad y el sujeto activo sea menor de sesenta años de edad.

La ventaja no se...



ARTICULO 149.- Concepto de ventaja condicionada.- Sólo será considerada la ventaja como calificativa de los delitos de que hablan los Capítulos anteriores de este Título, cuando sea tal que el delincuente no corra riesgo alguno de ser muerto ni herido por la víctima y aquel no obre en legítima defensa.

ARTICULO 157.- Omisión de auxilio.- Al que omita prestar auxilio a personas menores de dieciocho años de edad, personas con capacidades diferentes, adultos mayores de sesenta años de edad o persona que no tenga capacidad para comprender el significado del hecho, que no pueda valerse por sí mismo, o a quien se encuentre herido o desamparado y en peligro manifiesto en su persona, cuando según las circunstancias pudiere hacerlo, sin riesgo propio ni de terceros, se le impondrá de seis meses a dos años de prisión y hasta cien días multa.

La misma pena se impondrá...

ARTICULO 158.- Omisión de cuidado.- Al que abandone a una persona menor de dieciocho años de edad, adulto mayor de sesenta años de edad, persona que no tenga capacidad para comprender el significado del hecho o con capacidades diferentes, teniendo la obligación de cuidarla y con ello ponga en situación de peligro su integridad física y emocional, se le aplicará prisión de uno a cuatro años, y se le privará del derecho de ejercer la patria potestad o tutela si el agente fuere ascendiente o tutor de la víctima.

Si del abandono resultare...

### TITULO SEGUNDO

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

## C E R T I F I C O :

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN DOS HOJAS UTILES DEBIDAMENTE COTEJADAS.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA**

**Artículo 37.- <u>Ejecución de la garantía otorgada.</u>** Al momento de dictar sentencia, el juez tomará en consideración la caución otorgada para garantizar la reparación del daño, ordenando que se haga efectiva si el condenado no cubre voluntariamente su importe, en el plazo de quince días a partir de que se declare ejecutoriada la sentencia, o solicita y garantiza su pago en parcialidades ante la misma autoridad judicial.

**Artículo 45.- <u>Solidaridad del pago de la reparación del daño.</u>** La reparación del daño podrá exigirse en forma solidaria y mancomunada al acusado o al tercero obligado.

**Artículo 47.- <u>Aseguramiento oficioso de los instrumentos del delito culposo.</u>** Los automóviles, camiones y otros objetos de uso lícito con que se cometan delitos culposos, si son propiedad del acusado se asegurarán de oficio por el Ministerio Público o la autoridad judicial, según la fase procesal, para garantizar el pago de la reparación del daño, dejándolos en depósito del inculpado, cuando no exista riesgo de ocultamiento o traslado. Solamente podrá negarse el aseguramiento o levantarse, en su caso, si se otorga caución bastante en forma legal.

**Artículo 114.- <u>Prescripción de la pretensión punitiva.</u>** la pretensión punitiva prescribirá en un plazo igual al término medio aritmético de la pena privativa de libertad, señalada para el delito de que se trate, pero en ningún caso será menor de tres años ni mayor de quince.

Si el delito .....

Si además .....

En los demás casos .....

**Artículo 115.- <u>Prescripción de la pretensión punitiva en los delitos de querella.</u>** La pretensión punitiva que nazca de un delito que solo pueda perseguirse por querella del ofendido o algún otro acto equivalente, prescribirá en un año desde que el ofendido tenga conocimiento del delito, y en tres, independientemente de esta circunstancia.

Llenado el requisito procesal de la querella o del acto equivalente, se aplicarán las reglas de los delitos perseguibles de oficio.

**Artículo 120.- <u>Prescripción de la facultad para ejecutar las penas y las medidas de seguridad.</u>** La potestad para ejecutar la pena privativa de libertad, prescribirá en un lapso igual al fijado en la sentencia, pero no podrá ser inferior a tres años.

OFICIALIA MAYOR
ARCHIVO GRAL. DE
PODER EJECUTIVO
MEXICALI, B.C.

Cuando se hubiese cumplido parte de la pena privativa de la libertad, se necesitará para la prescripción el mismo tiempo que falte para el cumplimiento de la pena, pero nunca será menor a tres años. La prescripción de la pena de prisión correrá desde que el condenado se evada.

La multa prescribirá en un año y la reparación del daño en cinco, a partir de que se declare ejecutoriada la sentencia. Las demás penas que no tengan temporalidad prescribirán en dos años, a partir de la sentencia firme.

La suspensión de derechos y cualquier otra pena o medida de seguridad determinadas en función de tiempo, prescribirá en el plazo señalado en la sentencia, a partir de que el individuo recupere su libertad por cualquier causa legal. Cuando no vaya acompañada de la pena de prisión, la prescripción se contará a partir de la sentencia ejecutoriada.

Las medidas de seguridad aplicables a inimputables, prescribirán en un plazo igual al máximo de la pena prevista para el delito. Las demás medidas de seguridad prescribirán en tres años contados a partir de la sentencia firme.

**Artículo 201.-** **Punibilidad.-** A quien cometa el delito de robo se le impondrán las penas siguientes:

I a III.- ....

Cuando el valor de lo robado no exceda de 40 días de salario mínimo y se trate de un delincuente primario, que haya admitido su responsabilidad durante la averiguación previa y restituya el objeto materia del delito o su importe, el Ministerio Público suspenderá el ejercicio de la acción penal, siempre que el inculpado no haya empleado violencia sobre las personas y no se trate de las hipótesis previstas en el artículo 208 fracciones I y II de este Código, apercibiéndole formalmente, dejando constancia, de que en caso de cometer un nuevo robo dentro del término de tres años, se ejercitará acción penal por éste y el último delito cometido.

**Artículo 219.-** **Fraudes específicos.-** ....

I al IX.- ....

X.- Al fiador que habiendo garantizado la libertad caucional de un inculpado, caiga deliberadamente en insolvencia para impedir que se haga efectiva la caución, a raíz de la revocación del beneficio.

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O:

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN DOS HOJAS UTILES DEBIDAMENTE COTEJADAS.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

---

**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA**

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.



24 de febrero de 2006.        PERIODICO OFICIAL        Página 71

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

LA H. XVIII LEGISLATURA CONSTITUCIONAL DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, EN USO DE LAS FACULTADES QUE LE CONFIERE EL ARTÍCULO 27, FRACCIÓN I DE LA CONSTITUCIÓN POLÍTICA LOCAL, EXPIDE EL SIGUIENTE:

## DECRETO N° 187

ÚNICO.- Se aprueba la reforma al Primer Párrafo del Artículo 114 del Código Penal Vigente en el Estado de Baja California, para quedar como sigue:

**Artículo 114.-** Prescripción de la pretensión punitiva.- La pretensión punitiva prescribirá en un plazo igual al término medio aritmético de la pena privativa de libertad, señalada para el delito de que se trate, pero en ningún caso será menor a tres años.

Si el delito sólo....

Si además de lo ....

En los demás casos...

### ARTICULO TRANSITORIO

ÚNICO.- La presente reforma entrará en vigor al día siguiente de su publicación en el Periódico Oficial del Estado de Baja California.

DADO en el Salón de Sesiones "Lic. Benito Juárez García" del Honorable Poder Legislativo, en la Ciudad de Mexicali, Baja California, a los treinta y un días del mes de enero del año dos mil seis.

DIP. ELVIRA LUNA PINEDA
PRESIDENTA



DIP. ELÍAS LÓPEZ MENDOZA
SECRETARIO

C.PE.M.hgr.

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O :

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN UNA HOJA UTIL DEBIDAMENTE COTEJADA.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

---------------------------------------------------
**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA.**

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

PERIODICO OFICIAL                    03 de Abril de 2009.

OFICIALIA MAYOR
ARCHIVO GRAL DEL
PODER LEGIS

**LA XIX LEGISLATURA CONSTITUCIONAL DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, EN USO DE LAS FACULTADES QUE LE CONFIERE EL ARTÍCULO 27, FRACCIÓN I DE LA CONSTITUCIÓN POLÍTICA LOCAL, EXPIDE EL SIGUIENTE:**

## DECRETO Nº 220

**PRIMERO: SE APRUEBA LA REFORMA AL ARTÍCULO 114 DEL CÓDIGO PENAL PARA EL ESTADO DE BAJA CALIFORNIA, PARA QUEDAR COMO SIGUE:**

**ARTÍCULO 114.-** Prescripción de la pretensión punitiva.- La pretensión punitiva prescribirá en un plazo igual al término medio aritmético de la pena privativa de libertad, señalada para el delito de que se trate, **salvo lo establecido en el artículo 114 Bis de este Código.** En ningún caso el término de prescripción de la pretensión punitiva podrá ser menor a tres años.

Si el delito sólo mereciere multa, la pretensión punitiva prescribirá en un año.

Si además de la pena de prisión el delito mereciere otra accesoria o una alternativa, se atenderá a la prescripción de la pretensión punitiva de la pena privativa de libertad.

En los demás casos, la pretensión punitiva prescribirá en dos años.

**SEGUNDO: SE APRUEBA LA ADICIÓN DE UN ARTÍCULO 114 BIS DEL CÓDIGO PENAL PARA EL ESTADO DE BAJA CALIFORNIA, PARA QUEDAR COMO SIGUE:**

EXT_Pasillas Jaramillo_000233

**ARTÍCULO 114 Bis.**- En los delitos de homicidio, secuestro, violación, trata de personas y terrorismo, que refiere este Código, el plazo de la prescripción de la pretensión punitiva será el equivalente a la pena máxima señalada para el delito de que se trate.

## ARTÍCULO TRANSITORIO

**ÚNICO.**- La presente reforma entrará en vigor al día siguiente de su publicación en el Periódico Oficial del Estado.

**DADO** en el Salón de Sesiones "Lic. Benito Juárez García" del H. Poder Legislativo del Estado de Baja California, en la Ciudad de Mexicali, B.C., a los veintiseis días del mes de febrero del año dos mil nueve.

DIP. ADRIANA GUADALUPE SÁNCHEZ MARTÍNEZ
PRESIDENTA

DIP. CARLOS ALONSO ANGULO RENTERÍA
SECRETARIO

AGSM/CAAR/Kdr

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O:

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN DOS HOJAS UTILES DEBIDAMENTE COTEJADAS.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

---------------------------------------------------------
**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA.**

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

**ARTÍCULO 118.- Interrupción de la prescripción.-** La prescripción de la pretensión punitiva se interrumpirá por las actuaciones que se practiquen para la averiguación e investigación del delito, aunque, por ignorarse quien o quienes sean los inculpados, las diligencias no se practiquen contra persona o personas determinadas.

......

......

**ARTÍCULO 194.- Suspensión de la acción.-** Cuando haya pendiente un juicio en averiguación o investigación de un delito imputado a alguien calumniosamente, se suspenderá el ejercicio de la acción de calumnia hasta que dicho juicio termine. Para los efectos de la prescripción, en este caso se estará a lo dispuesto por el artículo 112 de este Código.

**ARTICULO 201.-...**

I a III.-...

Cuando el valor de lo robado no exceda de 40 días de salario mínimo y se trate de un delincuente primario, que haya admitido su responsabilidad durante la averiguación previa o investigación y restituya el objeto materia del delito o su importe, el Ministerio Público suspenderá el ejercicio de la acción penal, siempre que el inculpado no haya empleado violencia sobre las personas y no se trate de las hipótesis previstas en el artículo 208 fracciones I y II de este Código, apercibiéndole formalmente, dejando constancia, de que en caso de cometer un nuevo robo dentro del término de tres años, se ejercitará acción penal por éste y el último delito cometido.

**ARTÍCULO 323.-...**

I a VII.-...

VIII.- Detener a un individuo durante la averiguación previa o investigación fuera de los casos de flagrancia y urgencia administrativa, o no ponerlo a disposición del Ministerio Público en forma inmediata.

IX.- Prolongar la detención por más de cuarenta y ocho horas o el doble, si se trata de crimen organizado, de una persona sometida a averiguación previa o investigación, sin hacer la consignación a la autoridad judicial o dejarla en libertad, según proceda.

X.- ...

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

## C E R T I F I C O:

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN UNA HOJA UTIL DEBIDAMENTE COTEJADA.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

---------------------------------------
**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO,**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA**

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

LA H. XX LEGISLATURA CONSTITUCIONAL DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, EN USO DE LAS FACULTADES QUE LE CONFIERE EL ARTÍCULO 27, FRACCIÓN I DE LA CONSTITUCIÓN POLÍTICA LOCAL, EXPIDE EL SIGUIENTE:

## DECRETO No. 275

ÚNICO.- Se aprueban las reformas a los artículos 119 y 120 del Código Penal para el Estado de Baja California, para quedar como sigue:

ARTÍCULO 119.- Plazos para la prescripción.- Los plazos para la prescripción de la potestad para ejecutar las penas y medidas de seguridad, serán continuos y correrán desde el día siguiente a aquél en que el sentenciado se substraiga a la acción de la justicia, si las penas o medidas de seguridad fueren privativas o restrictivas de la libertad, y si no lo son desde la fecha de la sentencia ejecutoria o del momento en que expresamente lo disponga la Ley.

ARTÍCULO 120.- Prescripción de la facultad para ejecutar las penas y las medidas de seguridad.- La potestad para ejecutar la pena privativa de libertad, prescribirá en un lapso igual al fijado en la sentencia, pero no podrá ser inferior a tres años.

Cuando se hubiese cumplido parte de la pena privativa de la libertad, se necesitará para la prescripción el mismo tiempo que falte para el cumplimiento de la pena, que no será menor a tres años. La prescripción de la pena de prisión correrá desde que el condenado se evada.

La multa prescribirá en un año y la reparación del daño en diez, a partir de que se declare ejecutoriada la sentencia. Las demás penas que no tengan temporalidad prescribirán en dos años, a partir de la sentencia firme.

La suspensión de derechos y cualquier otra pena o medida de seguridad determinadas en función de tiempo, prescribirá en el plazo señalado en la sentencia, a partir de que el individuo recupere su libertad por cualquier causa legal. Cuando no vaya acompañada de la pena de prisión, la prescripción se contará a partir de la sentencia ejecutoriada.

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O :

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN UNA HOJA UTIL DEBIDAMENTE COTEJADA.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

--------------------------------------
**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA**

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI. B.C.

Las medidas de seguridad aplicables a inimputables, prescribirán en un plazo igual al máximo de la pena prevista para el delito. Las demás medidas de seguridad prescribirán en tres años contados a partir de la sentencia firme.

## ARTÍCULO TRANSITORIO

**ÚNICO.-** El presente Decreto iniciará su vigencia el día siguiente al de su publicación en el Periódico Oficial del Estado de Baja California.

**DADO** en el Salón de Sesiones "Lic. Benito Juárez García" del H. Poder Legislativo del Estado de Baja California, en la Ciudad de Mexicali, B.C., a los veintiocho días del mes de agosto del año dos mil doce.

DIP. ALFONSO GARZÓN ZATARAIN
PRESIDENTE

DIP. FAUSTO ZÁRATE ZEPEDA
SECRETARIO

AGZ/FZZ/Kdr

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

# C E R T I F I C O:

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN UNA HOJA UTIL DEBIDAMENTE COTEJADA.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA**

# PRUEBA 4

EXT_Pasillas Jaramillo_000242





# PRUEBA 5

EXT_Pasillas Jaramillo_000245

Secretaria de Seguridad Publica Municipal
Distrito: CERRO COLORADO
Sector      125
Oficio: TIN/519/2012
Expediente: ARCHIVO
Asunto: Turnación VIA DENUNCIA
Fecha: 7 de Mayo de 2012

"2012 año de los derechos de las personas discapacitadas"

CPTN. RICARDO H. GARDUÑO
DIRECTOR DE POLICIA Y TRANSITO MUNICIPAL
P R E S E N T E.-

ANTECEDENTES: Por medio del presente nos permitimos informar a usted que siendo aproximadamente las 02:10 hrs. del día de hoy al encontrarnos efectuando nuestro recorrido de vigilancia abordo de la unidad 4957, la CENTRAL DE RADIO nos indico trasladarnos a la CALLE TULE 1314 , lateral con la calle CAMICHIN de la colonia PRADERAS DE LA MESA, para atender reporte de una persona sin vida, motivo por el cual nos trasladamos al lugar.

INTERVENCION PREVENTIVA: Ya una vez lugar nos entrevistamos con la de nombre EDELMIRA MONTES HERNANDEZ DE 71 años de edad, misma que nos manifestó que momentos antes al encontrarse en el interior de su domicilio escucho cuando desde el exterior en la vía publica, su hijo de nombre JORGE RANGEL MONTES de 43 años de edad, le gritaba , por lo que se aproximo y al abrir la puerta se percato de que su hijo se encontraba visiblemente herido y con la ropa llena de sangre, por polo que    ocedió a solicitar una  ambulancia de la cruz roja llegando al lugar  la unidad Bc-166 a cargo del paramédico Paredes , mismo que indico que dicha persona se encontraba sin vida al fallecer  a causa de varias heridas con arma punzo cortante en diferentes partes del cuerpo, así mismo al lugar arribaron los agentes Ministeriales , Meza y Virueta, así como el Lic. Emigdio Gutierrez de homicidios dolosos, de periciales la Ing. Norma Rebeca Mata, de semefo Francisco Ramirez, por lo que se le hizo del conocimiento a la superioridad así como al Juez Municipal en turno quien indico se elaborara el presente parte dir'    'o a la agencia M.P.O.C. de homicidios Dolosos.

TIMAS: De estos hechos resulto sin vida el de nombre JORGE RANGEL MONTES de 43 años de edad.

D',   3: No se tuvo conocimiento.

COMPLEMENTARIAS: Se hace de su conocimiento que dicha se encontraba tirada en la banqueta mismo que presentaba una herida en el mentón , en el cuello, antebrazo izquierdo y dos heridas en la espalda , todas ellas al parecer de arma punzo cortante, así mismo la parte reportante indicó que el responsable de darle muerte a su hijo lo conoce con el nombre de Jorge Pasillas alias  GEORGE, con características delgado, de tez clara, con ojos de color, el cual tiene su domicilio en la calle Amapa esquina con calle Hojas numero 1840 departamento No. 1, de la colonia praderas de la mesa

Intervinieron en los hechos:

* Nombre: EDELMIRA MONTES HERNANDEZ Sexo: Femenino de 71 años de edad  (10/02/1941), con domicilio en Calle TULE, No. 1314, Col. PRADERAS DE LA MESA [REPORTANTE] SIN LESIONES

* Nombre: JORGE RANGEL MONTES Sexo: Masculino de 43 años de edad  (05/01/1969), con domicilio en Calle TULE, No. 1314, Col. PRADERAS DE LA MESA  [MUERTO] MUERTE CON VIOLENCIA

El C. Juez Municipal en Turno LIC. CESAR OMICRON RODRIGUEZ DIAZ al tener conocimiento de los hechos, indico se formulara el presente informe; se anexa folio de determinación num. 356

Lo que nos permitimos informar a usted para lo que a bien tenga ordenar.

R E S P E T U O S A M E N T E
LOS CC. OFICIALES TRIPULANTES DE LA UNIDAD 4957.

4135  MARTINEZ LOPEZ OSCAR  y  4520  LEON MUÑOZ HECTOR

Captura: Robles Ortiz Arlet Liliana.

# PRUEBA 6

EXT_Pasillas Jaramillo_000247



**PGJE**

PROCURADURIA GENERAL DE JUSTICIA DEL ESTADO

BAJA CALIFORNIA

POLICÍA MINISTERIAL, SEGUNDA ZONA
UNIDAD INVEST. DE HOMICIDIOS DOLOSOS.

OFICIO NUM. 349/ /HOM.DOL./12

ASUNTO: SE RINDE AVANCE DE INFORME

TIJUANA, B.C. MAYO 07 DEL 2012.

C. AGENTE DEL MINISTERIO PÚBLICO
DE HOMICIDIOS DOLOSOS.
P R E S E N T E.

**ANTECEDENTES:** LOS SUSCRITOS **OSCAR RODRIGUEZ ANDALON (1153 PME) Y ADRIANA E. CAMACHO ROCHA,** AGENTES DE LA POLICÍA MINISTERIAL DEL ESTADO, NOS PERMITIMOS RENDIR **PRIMER AVANCE DE INFORME,** CON RELACIÓN A LA ORDEN DE INVESTIGACIÓN NUM. 120/12/201, DE FECHA 07 DE MAYO DEL 2012, EN DONDE ORDENA SE INVESTIGUEN LOS HECHOS DENUNCIADOS EN EL ACTA NUM. 105/12/201/AP, INSTRUIDA EN ESA H. REPRESENTACIÓN SOCIAL POR EL DELITO DE HOMICIDIO CALIFICADO, EN AGRAVIO DE **JORGE RANGEL MONTES,** APARECIENDO COMO PRESUNTO RESPONSABLE **QUIEN RESULTE.**

**INVESTIGACIÓN:** UNA VEZ ENTERADOS DEL CONTENIDO DE LA PRESENTE ORDEN DE INVESTIGACIÓN, LOS SUSCRITOS NOS TRASLADAMOS AL DOMICILIO UBICADO EN CALLE TULE NUMERO 1325, DE LA COLONIA PRADERAS DE LA MESA, LUGAR DONDE FUE LOCALIZADO EL ARMA CON LA CUAL FUE LESIONADO EL HOY OCCISO, UNA VEZ EN EL LUGAR FUIMOS INFORMADOS QUE EL AHORA OCCISO HABITABA EL DEPARTAMENTO MARCADO COMO INTERIOR 8, Y LO COMPARTIA CON OTRA PERSONA, POR LO QUE NOS APERSONAMOS EN DICHO DEPARTAMENTO DONDE PREVIA IDENTIFICACION COMO CORRESPONDE FUIMOS ATENDIDOS POR QUIEN DIJO LLAMARSE **WALTER ULISES ROSALES HEREDIA,** QUIEN MANIFESTO QUE EFECTIVAMENTE COMPARTIA EL DEPARTAMENTO CON EL DE NOMBRE **JORGE RANGEL MONTES,** DESDE HACE APROXIMADAMENTE UN MES, POR LO QUE LE SOLICITAMOS NOS ACOMPAÑARA A ESTAS OFICINAS PARA UNA ENTREVISTA FORMAL, ACCEDIENDO DE MANERA VOLUNTARIA.

UNA VEZ EN ESTAS OFICINAS MANIFESTO LLAMARSE **WALTER ULISES ROSALES HEREDIA,** 31 AÑOS, CON FECHA DE NACIMIENTO 22 DE NOVIEMBRE DE 1980, ORIGINARIO DE ZACAPU, MICHOACAN, ESTADO CIVIL SOLTERO, DE OCUPACION EMPLEADO, QUIEN EN RELACION A LOS HECHOS QUE SE INVESTIGAN MANIFESTO: QUE DESDE HACE APROXIMADAMENTE UN MES, COMPARTE EL DEPARTAMENTO CON EL AHORA OCCISO **JORGE RANGEL MONTES,** QUE EL DIA DE AYER DOMINGO ESTUVIERON TODO EL DIA SIN SALIR DEL DEPARTAMENTO Y APROXIMADAMENTE A LAS 17:00 HORAS LLEGO UN AMIGO DE JORGE A QUIEN CONOCE COMO "GEORGE",

ALIAS "EL GÜERO", QUIENES ESTUVIERON DROGANDOSE CON LA DROGA CONOCIDA COMO CHIVA. MANIFIESTA EL ENTREVISTADO QUE APROXIMADAMENTE A LAS 22:00 HORAS EL ENTREVISTADO SE RETIRO A SU HABITACION PORQUE JORGE RANGEL ESTABA AGRESIVO POR SU ADICCION A LA CHIVA, Y FUE APROXIMADAMENTE LAS 02:00 HORAS DEL DIA LUNES 07 QUE EL ENTREVISTADO SE DESPERTO PORQUE ESCUCHO QUE JORGE Y GEORGE ALAIS "EL GÜERO", ESTABAN DISCUTIENDO, SALIENDO DEL CUARTO Y VIENDO EN ESE MOMENTO QUE JORGE RANGEL EMPUJABA A JORGE ALIAS GEORGE ALIAS EL GÜERO, TRATANDO DE SACARLO DEL DEPARTAMENTO, Y DICIENDOLE JORGE EN INGLES A GEORGE QUE SE FUERA DEL DEPARTAMENTO, DICIENDOLE EN ESE MOMENTO JORGE AL ENTREVISTADO TU METETE, CONTINUANDO AMBOS LA DISCUCIÓN EN EL PASILLO, Y QUEDÁNDOSE EN EL INTERIOR DEL DEPARTAMENTO EL ENTREVISTADO. SIGUE MANIFESTANDO EL ENTREVISTADO QUE MOMENTOS DESPUES ESCUCHO ADEMAS DE LA DISCUSION, LA VOZ DE UNA PERSONA DEL SEXO MASCULINO QUE LES DECIA "DEJEN DE DISCUTIR", "CALMENSE, SI NO SABEN CONTROLAR ESA MADRE DEJEN ESO", IDENTIFICANDO ESA VOZ COMO LA DE SU VECINO QUE NO SABE CÓMO SE LLAMA. QUE DESPUES DE LA DISCUSION DE JORGE Y GEORGE NO SABE QUE PASO, YA QUE SE REGRESO A DORMIR. SIENDO TODO LO QUE MANIFESTO.

**COMPLEMENTARIAS:** SE HACE DE SU CONOCIMIENTO QUE EL ENTREVISTADO NOS PORPORCIONO DOS FOTOGRAFIAS A COLORES; LA PRIMERA DONDE APARECE UNA PERSONA DEL SEXO MASCULINO, DE TEZ BLANCA, CABELLO A RAPA, QUE VISTE UNA PLAYERA DE COLOR NEGRO Y LA SEGUNDA DEL ROSTRO DE UNA PERSONA DEL SEXO MASCULINO, AMBAS FOTOGRAFIAS SON DE QUIEN SE LLAMA JORGE ALIAS "GEORGE", ALIAS "EL GÜERO", MISMAS FOTOGRAFIAS QUE SE REMITEN A USTED.

SE PRESENTA ANTE USTED AL DE NOMBRE **WALTER ULISES ROSALES HEREDIA,** DE 31 AÑOS DE EDAD.

LO QUE HACEMOS DE SU CONOCIMIENTO PARA LO QUE A BIEN TENGA DETERMINAR.

**A T E N T A M E N T E**
**LOS CC. AGENTES DE LA POLICÍA MINISTERIAL DEL EDO.**

**OSCAR RODRIGUEZ BANDALON**
(1153 PME )

**ADRIANA E. CAMACHO ROCHA**
(0590 PME)

# PRUEBA 7

EXT_Pasillas Jaramillo_000250



**PGJE**
PROCURADURÍA GENERAL DE JUSTICIA DEL ESTADO
**BAJA CALIFORNIA**

POLICÍA MINISTERIAL, SEGUNDA ZONA
UNIDAD INVEST. DE HOMICIDIOS DOLOSOS.

OFICIO NUM. 356 /HOM.DOL./12

ASUNTO: SE RINDE INFORME

TIJUANA, B.C. MAYO 09 DEL 2012.

**C. AGENTE DEL MINISTERIO PÚBLICO**
**DE HOMICIDIOS DOLOSOS.**
**P R E S E N T E.**

    **ANTECEDENTES:** LOS SUSCRITOS **OSCAR RODRIGUEZ ANDALON (1153 PME) Y ADRIANA EMILIA CAMACHO ROCHA,** AGENTES DE LA POLICÍA MINISTERIAL DEL ESTADO, NOS PERMITIMOS RENDIR **INFORME,** CON RELACIÓN A LA ORDEN DE INVESTIGACIÓN NUM. 120/12/201, DE FECHA 07 DE MAYO DEL 2012, EN DONDE ORDENA SE INVESTIGUEN LOS HECHOS DENUNCIADOS EN EL ACTA NUM. 105/12/201/AP, INSTRUIDA EN ESA H. REPRESENTACIÓN SOCIAL POR EL DELITO DE HOMICIDIO CALIFICADO, EN AGRAVIO DE **JORGE RANGEL MONTES,** APARECIENDO COMO PRESUNTO RESPONSABLE **QUIEN RESULTE.**

    LOS SUSCRITOS HACEMOS DE SU CONOCIMIENTO QUE SE PRESENTARON EN ESTAS OFICINAS LAS DE NOMBRE **ILDA RANGEL MONTES Y TIANA RAE GUTIERREZ,** MANIFESTANDO VENIR DE LAS INSTALACIONES DEL SERVICIO MEDICO FORENSE, DONDE TUVIERON A LA VISTA EL CUERPO SIN VIDA DE UNA PERSONA DEL SEXO MASCULINO, QUIEN INGRESO EN FECHA 07 DE MAYO DEL 2012, A QUIEN RECONOCEN PLENAMENTE COMO QUIEN EN VIDA LLEVARA EL NOMBRE DE **JORGE RANGEL MONTES,** POR LO CUAL PROCEDIMOS A ENTREVISTARLAS EN CALIDAD DE TESTIGOS DE IDENTIDAD.

    EN ENTREVISTA CON LA DE NOMBRE **ILDA RANGEL MONTES,** DE 48 AÑOS DE EDAD, DE FECHA DE NACIMIENTO 05 DE ABRIL DE 1964, ORIGINARIA DE MICHOACAN, ESTADO CIVIL CASADA, DE OCUPACION AMA DE CASA, CON DOMICILIO EN 650 PALERMO WAY, EN LA HABRA, CALIFORNIA, 90631, EN ESTADOS UNIDOS DE NORTEAMERICA, QUIEN EN RELACIÓN A LOS HECHOS QUE SE INVESTIGAN MANIFESTO: QUE ES HERMANA DEL HOY OCCISO DE NOMBRE **JORGE RANGEL MONTES** Y FUE ENTERADA DEL DECESO DE ESTE, POR SU MADRE DE NOMBRE **EDELMIRA MONTES HERNANDEZ,** QUIEN VIA TELEFONICA LE COMUNICO LO SUCEDIDO Y QUE EL RESPONSABLE ERA **ALIAS "GEORGE", ALIAS " EL GÜERO",** A QUIEN CONOCEN DESDE SU INFANCIA, MOTIVO POR EL CUAL SE TRASLADO A ESTA CIUDAD PARA LOS TRAMITES CORRESPONDIENTES. SIENDO TODO LO QUE MANIFESTO.

ENTREVISTA CON LA DE NOMBRE **TIANA RAE GUTIERREZ**, DE 24 AÑOS DE EDAD, ORIGINARIA DE ESTADOS UNIDOS DE NORTEAMERICA, DE OCUPACION ESTUDIANTE, CON DOMICILIO EN LAS VEGAS NEVADA. QUIEN EN RELACION A LOS HECHOS MANIFIESTO QUE FUE ENTERADA DE LA MUERTE DE SU PADRE **JORGE RANGEL MONTES**, POR SU ABUELA DE NOMBRE EDELMIRA MONTES, QUIEN VIA TELEFONICA LE INFORMO DE LO SUCEDIDO, SIN SABER LA ENTREVISTADA MAYORES DATOS, POR LO QUE SE TRASALADO A ESTA CIUDAD, PARA LOS TRAMITES CORRESPONDIENTES, SIENDO TODO LO QUE MANIFESTO.

CONTINUANDO CON LAS INVESTIGACIONES, LOS SUSCRITOS NOS TRASLADAMOS AL DOMICILIO UBICADO EN CALLE TULE NUMERO 1314, DE LA COLONIA PRADERAS DE LA MESA, LUGAR DONDE PREVIA IDENTIFICACION COMO CORRESPONDE, FUIMOS ATENDIDOS POR LA SEÑORA **EDELMIRA MONTES HERNANDEZ**, QUIEN EN RELACION A LOS HECHOS QUE SE INVESTIGAN MANIFESTO: SER ORIGINARIA DE MICHOACAN, DE 69 AÑOS DE EDAD, DE ESTADO CIVIL VIUDA, OCUPACION AMA DE CASA, CON DOMICILIO EN EL ANTES MENCIONADO, ARGUMENTANDO QUE EL DIA 07 DE MAYO DEL PRESENTE AÑO, APROXIMADAMENTE A LAS 02:00 HORAS, AL ENCONTRARSE DORMIDA EN EL INTERIOR DE SU DOMICILIO, ESCUCHO LA VOZ DE SU HIJO **JORGE RANGEL MONTES**, PIDIENDOLE AUXILIO, SALIENDO DE INMEDIATO A VER QUE PASABA, FUE ASI QUE SE PERCATO QUE SU HIJO JORGE, SE ENCONTRABA BAÑADO EN SANGRE, SUJETANDOSE DE LA REJA PERIMETRAL DEL DOMICILIO, POR LO QUE EN COMPAÑIA DE SU AMIGA ROSA AMELIA, SALIO A LA BANQUETA PARA AUXILIARLO, MOMENTO EN QUE SU HIJO AHORA OCCISO LE DECIA QUE **ALIAS "GEORGE", ALIAS "EL GÜERO"**, LO HABIA **"FILTREADO"**, COMUNICANDOSE AL NUMERO TEFONICO DE EMERGENCIAS, 066 PARA SOLICITAR UNA AMBULANCIA, MISMA QUE LLEGO MINUTOS DESPUES EN COMPAÑIA DE LA POLICIA MUNICIPAL, INFORMANDOLE LOS PARAMEDICOS QUE SU HIJO HABIA FALLECIDO. AGREGA LA ENTREVISTADA QUE EL AGRESOR DE SU HIJO HOY OCCISO, A QUIEN SE REFIRIO COMO **ALIAS "GEORGE", ALIAS "EL GÜERO"**, SABE QUE SE LLAMA **JORGE PASILLAS JARAMILLO**, A QUIEN CONOCE DESDE SU INFANCIA, DESCONOCIENDO EL DOMICILIO EXACTO DONE HABITA, PERO SABE QUE ES EN LA MISMA COLONIA. SIENDO TODO LO QUE MANIFESTO.

CONTINUANDO CON LAS INVESTIGACIONES, NOS APERSONAMOS EN EL DOMICILIO MARCADO CON EL NUMERO 1325 INTERIOR 7, DE LA CALLE TULE, FRACCIONAMIENTO PRADERAS DE LA MESA, DONDE PREVIA IDENTIFICACION COMO CORRESPONDE NOS ENTREVISTAMOS CON EL DE NOMBRE **OMAR JAVIER FRANCO PEREZ**, DE 36 AÑOS DE EDAD, ORIGINARIO DE CIUDAD JUAREZ, CHIHUAHUA, ESTADO CIVIL SOLTERO, OCUPACION EMPLEADO, CON DOMICILIO EN EL ANTES MENCIONADO, QUIEN EN RELACION A LOS HECHOS QUE SE INVESTIGAN MANIFESTO: QUE TIENE APROXIMADAMENTE UN MES DE HABITAR DICHO DEPARTAMENTO Y SU VECINO DEL DEPARTAMENTO CONTIGUO IDENTIFICADO CON EL NUMERO 8, ERA EL AHORA OCCISO DE NOMBRE **JORGE**, TENIENDO CONOCIMIENTO QUE

2

ERA ADICTO A LAS DROGAS Y LO VISITABA TODOS LOS DIAS UNA PERSONA DE APROXIMADAMENTE 25 AÑOS, DEL SEXO MASCULINO, DE ESTATURA MEDIANA, COMPLEXION DELGADA, CON MULTIPLES TATUAJES, DE TEZ BLANCA, OJOS VERDES Y CABELLO A RAPA, APODADO **"GEORGE"**, ALIAS "EL GÜERO" QUE ERA AMIGO DE LA INFANCIA DE JORGE RANGEL, EL DOMINGO 06 DE MAYO DEL PRESENTE AÑO, AL ESTAR EN SU DOMICILIO OBSERVO QUE SE ENCONTRABAN EN EL INTERIOR DEL DEPARTAMENTO DE JORGE RAGEL, WALTER Y **ALIAS "GEORGE", ALIAS "EL GÜERO"**, MOMENTO EN QUE EL ENTREVISTADO SALIO DE SU DEPARTAMENTO A VISITAR A SU NOVIA, REGRESANDO APROXIMADAMENTE A LAS 22:00 HORAS, ENCONTRANDO EN EL PASILLO DE DICHOS DEPARTAMENTOS, A LA ALTURA DE LAS ESCALERAS A JORGE RANGEL Y A ALIAS "GEORGE", ALIAS "EL GÜERO", AMBOS CON ACTITUD AGRESIVA Y AL PARECER DROGADOS, POR LO QUE DE INMEDIATO INGRESO A SU VIVIENDA, ESCUCHANDO APROXIMADAMENTE A LA 01:30 HORAS DEL DIA LUNES 07 DE MAYO, UNA FUERTE DISCUSION, IDENTIFICANDO LAS VOCES DE ALIAS "GEORGE", ALIAS "EL GÜERO" Y JORGE RANGEL, QUIEN GRITABA ENTRE OTRAS COSAS, "YA DEJAME, YA ESTUVO", EN LOS IDIOMAS ESPAÑOL E INGLES, Y QUE ADEMAS SE OIA EL FORCEJEO Y LOS GOLPES QUE SE PROPINABAN. AGREGA EL ENTREVISTADO QUE APROXIMADAMENTE A LAS 03:00 HORAS LLEGARON A SU DOMICILIO OFICIALES DE LA POLICIA MUNICIPAL, QUIENES LE COMUNICARON QUE A SU VECINO JORGE RANGEL LO HABIAN MATADO Y QUE BUSCABAN AL SUPUESTO AGRESOR DE APODO **"GEORGE". ALIAS EL GÜERO"**, RESPONDIENDOLES EL ENTREVISTADO QUE MINUTOS ANTES ESCUCHO QUE SE HABIAN AGARRADO A GOLPES EL HOY OCCISO Y ALIAS "GEORGE", ALIAS "EL GÜERO", PERO QUE DESCONOCIA EL PARADERO DEL PRESUNTO RESPONSABALE. SIENDO TODO LO QUE MANIFESTO.

LOS SUSCRITOS NOS TRASLADAMOS A LAS INSTALACIONES DEL SERVICIO MEDICO FORENSE, DONDE FUIMOS INFORMADOS QUE LA CASUSA DE MUERTE DE QUIEN EN VIDA LLEVARA EL NOMBRE DE **JORGE RANGEL MONTES**, SE DEBIERON A CHOQUE HIPOVOLEMICO SECUNDARIO A HERIDAS PENETRANTES DE CUELLO, TORAX Y ABDOMEN POR INSTRUMENTO PUNZOCORTANTE. NECROPSIA PRACTICADA POR EL DOCTOR JOSE LUIS ARGUELLO MONTIEL, PERITO MEDICO LEGISTA ADSCRITO A SE.ME.FO.

HACEMOS DE SU CONOCIMIENTO QUE CON LAS INVESTIGACIONES REALIZADAS, LOGRAMOS ESTABLECER QUE EL PRESUNTO RESPONSABLE DE LOS HECHOS QUE SE INVESTIGAN DONDE PERDIERA LA VIDA EL DE NOMBRE JORGE RANGEL MONTES, LLEVA POR NOMBRE **JORGE ANTONIO PASILLAS JARAMILLO, ALIAS JORGE PASILLAS JARAMILLO, ALIAS GEORGE A. PASILLAS, ALIAS GEORGE ANTHONY PASILLAS, ALIAS "GEORGE", ALIAS EL GÜERO, ALIAS "GEORGE EL GÜERO", CON FECHA DE NACIMIENTO 06 DE MARZO DEL AÑO 1986.**

3

NO OMITIMOS MANIFESTARLE QUE CON FECHA 07 DE MARZO DEL AÑO EN CURSO, SE REMITIO A ESA H. REPRESENTACION SOCIAL, PRIMER AVANCE DE INFORME IDENTIFICADO CON EL OFICIO NUMERO 349/HOMDOL/12, EN EL CUAL SE ADJUNTAN DOS FOTOGRAFIAS DEL PRESUNTO RESPONSABLE.

**COMPLEMENTARIAS:** SE PRESENTA ANTE USTED A LA DE NOMBRE **EDELMIRA MONTES HERNANDEZ.**

LO QUE HACEMOS DE SU CONOCIMIENTO PARA LO QUE A BIEN TENGA DETERMINAR.

**A T E N T A M E N T E**
**LOS CC. AGENTES DE LA POLICÍA MINISTERIAL DEL EDO.**


**OSCAR RODRIGUEZ ANDALON**
(1188 PME )


**ADRIANA E. CAMACHO ROCHA**
(0590 PME)

4

# PRUEBA 8

EXT_Pasillas Jaramillo_000255

## 105/12/201/AP

**DECLARACIÓN DE TESTIGO:** En TIJUANA, BAJA CALIFORNIA, siendo las 17:55 Horas del día SIETE DEL MES DE MAYO DEL DOS MIL DOCE, el Ciudadano Licenciado MARTIN GALINDO ORNELAS, Agente del Ministerio Público del Fuero Común de la AGENCIA DEL MINISTERIO PUBLICO INVESTIGADORA DE DELITOS DE HOMICIDIOS DOLOSOS, ante la presencia de su Secretario de Acuerdos Ciudadano Licenciado LORENA CASTILLO SARMIENTO, que autoriza y da fe. HACE CONSTAR que encontrándose presente ante esta oficina el que dijo llamarse WALTER ULISES ROSALES HEREDIA a quien se le exhorta y protesta a conducirse con verdad en los términos del artículo 190 de la Legislación Adjetiva Penal, advirtiéndole de la pena para el delito en que incurren quienes teniendo el deber legal de conducirse con verdad ante una autoridad como esta representación social, lo haga falsamente u ocultando la verdad; a lo que manifestó que: Si protesta conducirse con verdad ante esta autoridad; y por sus generales dijo: Llamarse como ha quedado escrito, ser de 31 años de edad, estado civil SOLTERO, originario de ZACAPU MICHOACAN, de ocupación EMPLEADO DE MAQUILADORA, con domicilio en CALLE TULE NUMERO 1325-8 COLONIA PRADERAS DE LA MESA, identificándose con CREDENCIAL FEDERAL DE ELECTORES NUMERO 2412123700186 e interrogado como corresponde en relación a los hechos que se denuncian, MANIFIESTO: Que desde que tenia 8 años se fue a vivir a Los Angeles California durante 22 años y en el mes de octubre de 2010 lo deportaron por el delito de violencia familiar, y que cuando lo deportaron se fue a vivir a su ciudad natal en Michoacan, y que en el mes de junio de 2011, con la intencion de regresar a Estados Unidos de ilegal, pero las cosas se complicaron y por lo tanto no ha podido regresar a Los Angeles, y se quedo en esta ciudad con un amigo de nombre RAUL, quien le tendio la mano apoyandolo para que se quedara en su casa compartiendo gastos, y conocio en la misma colonia PRADERAS DE LA MESA al de nombre JORGE RANGEL MONTES alias JORGE, y a su hermano OCTAVIO RANGEL MONTES alias EL CONEJO, con quienes compartian el foco con el que fumaban cristal y Marihuana, y en una ocasion el de nombre JORGE RANGEL ahora occiso le dijo que se fuera a su casa, que le iba a regalar unas cosas y cuando llego le dijo que se quedara en su casa y que compartirian gastos, teniendo al rededor de un mes aproximadamente viviendo en el domicilio, manifestando el declarante que en realidad era amigo del apodado CONEJO no de JORGE, ya que el hoy occiso era muy violento cuando se drogaba junto con el de nombre GEORGE apodado el GUERO, ya que se juntaban en la casa del occiso, y consumian droga de la inyectada conocida como CHIVA, y tal es el caso que el dia domingo seis de mayo de 2012 a eso de las 17:00 horas aproximadamente cuando se encontraba en el domicilio en compañia del occiso, llego GEORGE apodado el CONEJO, quien empezo a drogarse junto con JORGE ahora occiso, por lo que el declarante despues de consumir un cigarro de marihuana como a eso de las 23:00 horas decide retirarse a su habitacion, ya que JORGE andaba muy agresivo y para evitarse problemas con el occiso, y que serian como las 2:00 horas del dia 7 de mayo de 2012, que el declarante se desperto de los gritos que se escuchaban, ya que JORGE Y EL GUERO, estaban discutiendo, percatandose de que JORGE aventaba a GEORGE alias EL GUERO, hacia la puerta de acceso del departamento, y cuando el



PROCURADURÍA GENERAL DE JUSTICIA DEL ESTADO
BAJA CALIFORNIA

105/12/201/AP

declarante se acerco para preguntar que era lo que estaba pasando, JORGE le
respondio que se metiera a su cuarto y que se encerrara, y en ese momento
escucha el de la voz que uno de los vecinos le decia que DEJARAN DE
DISCUTIR, QUE SI NO PODIAN CONTROLAR ESA MADRE, QUE DEJARAN EL VICIO, y que
todavia alcanzo a escuchar que el vecino dijo, TOTAL ES MUY SU BRONCA,
escuchando que cerraban una puerta, y sin escuchar mas se fue a su
habitacion y que despues de media hora, llegaron unos policias municipales
quienes lo levantaron diciendole que Jorge estaba muerto, preguntandole que
si sabia algo en relacion a la muerte de JORGE, asi mismo manifiesta el
declarante que GEORGE alias el GUERO tiene la siguiente media filiacion DE
TEZ BLANCA, COMPLEXION ROBUSTA, DE 26 AÑOS APROXIMADAMENTE, CABELLO CORTO
CASTAÑO CASI A RAPA, OJOS AZULES, BIGOTE RECORTADO, DE ESTATURA DE 1.80
METROS, FRENTE AMPLIA, LABIOS MEDIANOS, BOCA MEDIANA, CEJA ARQUEADA POBLADA,
el cual si vuelve a ver podria reconocer sin temor a equivocarse. Siendo
todo lo que tiene que manifestar firmando al margen previa lectura de la
presente declaracion, ante la presencia del ciudadano Agente del Ministerio
Publico del Fuero Comun, asistido por su Secretario de Acuerdos que autoriza
y da fe. DAMOS FE.-
- - - - - - - - - - - SE CIERRA Y AUTORIZA LO ACTUADO - - - - - - - - - - -

SUB-PROCURADURIA DE ZONA
UNIDAD ORGANICA DE
HOMICIDIOS DOLOSOS

31

32





# INSTITUTO FEDERAL ELECTORAL
### REGISTRO FEDERAL DE ELECTORES
## CREDENCIAL PARA VOTAR

NOMBRE
ROSALES
HEREDIA
WALTER ULISES

DOMICILIO
C RIO BRAVO 385
COL OBRERA 56650
ZACAPU ,MICH.

EDAD 29
SEXO H

FOLIO 1016072111209    AÑO DE REGISTRO 2010 00
CLAVE DE ELECTOR RSHRWL801122H6H100
CURP ROHW801122HMNSRL03
ESTADO 16    MUNICIPIO 108
LOCALIDAD 0001    SECCIÓN 2412
EMISIÓN 2010    VIGENCIA HASTA 2020

FIRMA

ESTE DOCUMENTO ES INTRANSFERIBLE...

EL SUSCRITO SECRETARIO DE ACUERDOS ADSCRITO A LA UNIDAD
ORGÁNICA DE HOMICIDIOS DOLOSOS:

## C E R T I F I C A

QUE LA PRESENTE COPIA ES FIEL Y EXACTA DE SUS ORIGINAL(ES) QUE
SE TUVO A LA VISTA EN EL ACTA DE AVERIGUACIÓN PREVIA NUM 05/12/201
Y QUE DEBIDAMENTE COTEJADA SE COMPULSA EN 01 FOJA(S)
UTIL(ES) Y SE EXPIDE A SOLICITUD DEL INTERESADO EN LA CIUDAD DE
TIJUANA, B.C. A LOS 7 DIAS DEL MES DE MARZO DE 2012.

SECRETARIO(A) DE ACUERDOS.

LIC. LORENA CASTILLO SARMENTO

JB-PROCURADURÍA DE 20
UNIDAD ORGANICA
DE HOMICIDIOS DOLOS
TIJUANA, B.C.

# PRUEBA 9

EXT_Pasillas Jaramillo_000259

PGJE
BAJA CALIFORNIA

Dirección de Averiguaciones Previas

105/12/201/AP

DECLARACIÓN DE TESTIGO: En TIJUANA, BAJA CALIFORNIA, siendo las 15:20 Horas del día NUEVE DEL MES DE MAYO DEL DOS MIL DOCE, el Ciudadano Licenciado EMIGDIO GUTIERREZ, Agente del Ministerio Público del Fuero Común de la AGENCIA DEL MINISTERIO PUBLICO INVESTIGADORA DE DELITOS DE HOMICIDIOS DOLOSOS, ante la presencia de su Secretario de Acuerdos Ciudadano Licenciado FRANCISCA PADILLA MEZA, que autoriza y da fe HACE CONSTAR que encontrándose presente ante esta oficina el que dijo llamarse EDELMIRA MONTES HERNANDEZ a quien se le exhorta y protesta a conducirse con verdad en los términos del artículo 190 de la Legislación Adjetiva Penal, advirtiéndole de la pena para el delito en que incurren quienes teniendo el deber legal de conducirse con verdad ante una autoridad como esta representación social, lo haga falsamente u ocultando la verdad; a lo que manifestó que: Si protesta conducirse con verdad ante esta autoridad; y por sus generales dijo: Llamarse como ha quedado escrito, ser de 70 años de edad, Fecha de Nacimiento 18 de Mayo de 1941, estado civil VIUDA, originario de MORELIA, MICHOACAN, de ocupación Jubilada, con domicilio en 650 PALERMO HY LA HABRA, CALIFORNIA, ESTADOS UNIDOS DE NORTEAMERICA , , identificándose con identificacion de California número A3111262, e interrogado como corresponde en relación a los hechos que se denuncian, MANIFESTO: Que comparezco ante esta Representación Social de manera voluntaria para manifestar que es el caso que desde hace treinta y cinco años que me encuentra radicando en el Estado de California, Estados Unidos de Norteamerica, siendo que hace aproximadamente ocho años a la fecha que mi hijo de nombre JORGE RANGEL MONTES se vino a radicar a esta ciudad ya que radicaba en el vecino pais al igual que la de la voz, por lo que cada mes venia a esta ciudad a ver a mi hijo JORGE por lo que la de la voz me quedaba en la casa de mi amiga de nombre ROSA AMELIA OROZCO SANCHEZ misma que se encuentra ubicada en CALLE TULE NUMERO 1314 DE LA COLONIA PRADERAS DE LA MESA, en esta ciudad de Tijuana, Baja California, siendo el caso que mi hijo JORGE vivia en un departamento ubicado por la misma calle y colonia pero con numero 1325, es el caso que el dia Seis del mes y año en curso me encontraba en esta ciudad en casa de mi amiga AMELIA como ya manifeste anteriormente por lo que siendo aproximadamente las 02:00 horas ya del dia lunes SIETE de mayo del año en curso, la de la voz me encontraba acostada y en ese momento escuche unos gritos que venian de la calle y eran de mi hijo JORGE el cual decia: "MAMA, ROCIO (refiriendose a mi amiga Rosa Amelia), CHINO AYUDENMEN ME ESTOY MURIENDO", por lo que de inmediato salimos y veo que mi hijo JORGE RANGEL MONTES se encontraba sentado en la banqueta y me dijo MAMA ABRAZEME LLAMEN A UNA AMBULANCIA, LLEVEMEN, y le pregunte que quien lo habia lesionado y me contesto FUE EL GEORGE EL GUERO, EL GEORGE, EL GEORGE, me filereado (refiriendo a que lo habia filereado con arma blanca) por lo que de inmediato le hablaron al 066 y solicitaron una ambulancia para que le brindaran atencion medica a mi hijo JORGE hoy occiso, llegando la ambulancion a los pocos minutos y le brindaron atencion medica a mi hijo JORGE pero los paramedicos de la Cruz Roja me dijeron que mi hijo JORGE ya habia fallecido, asi mismo llego los policias municipales, a los minutos llego el



PROCURADURIA GENERAL DE JUSTICIA DEL ESTADO
DE BAJA CALIFORNIA
Dirección de Averiguaciones Previas



## 105/12/201/AP

Ministerio Publico, semefo y levantaron el cuerpo sin vida de mi hijo, por lo que deseo manifestar que la persona que le quito la vida a mi hijo JORGE RANGEL MONTES y al cual mi hijo se refirio como GEORGE "EL GUERO", se llama JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO, ALIS GEORGE ANTHONY PASILLAS alias GEORGE A. PASILLAS, ALIAS EL GUERO, al cual la de la voz lo conozco desde que era un niño esto en el Estado de California ya que GEORGE EL GUERO es ciudadano americano, el cual es de la siguiente media filiacion edad aproximada 26 años, tez blanca, ojos de color azul, cabello a rapa, complexion robusta, mismo que casi siempre usa bigote, pero en ocasiones lo trae rasurado; En este acto el personal actuante procede a poner a la vista de la declarante dos fotografias a color de una persona del sexo masculino mismas que nos fueron remitidas mediante Avance de Informe con numero 349/HOM.DOL./12 de fecha 07 de Mayo del 2012, suscrito por los CC. OSCAR RODRIGUEZ ANDALON y ADRIANA E. CAMACHO ROCHA, la declarante las ve fijamente y refiere que el individuo del sexo masculino que aparece en las foto es al que me refiero como el que privo de la vida a mi hijo utilizando al parecer una navaja o un objeto ponzocortante siendo el de nombre JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO, ALIS GEORGE ANTHONY PASILLAS alias GEORGE A. PASILLAS, ALIAS GEORGE ALIAS EL GUERO. El cual actualmente se ve igual que como aparece en las dos fotografias ya que no ha cambiado nada fisicamente. Mismo el cual despues de privar de la vida a mi hijo JORGE RANGEL MONTEL se dio a la fuga con rumbo desconocido, el cual deseo agregar que tengo conocimiento que radicaba en la colonia Praderas de la Mesa, mismo el cual despues de asesinar a mi hijo huyo con rumbo desconocido ya que no se sabe nada de el ni su paradero. Por lo que pido que se lleven a cabo las investigaciones pertinentes y se de con el paradero de GEORGE EL GUERO JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO, ALIS GEORGE ANTHONY PASILLAS alias GEORGE A. PASILLAS, y se le aplique todo el peso de la ley por el Homicidio de mi hijo que en vida llevara por nombre JORGE RANGEL MONTES. Siendo todo lo que tiene que manifestar firmando al margen previa lectura de la presente declaración, ante la presencia del ciudadano Agente del Ministerio Público del Fuero Común, asistido por su Secretario de Acuerdos que autoriza y da fe. DAMOS FE.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - SE CIERRA Y AUTORIZA LO ACTUADO - - - - - - - - - -



# PRUEBA 10

EXT_Pasillas Jaramillo_000263



## PODER JUDICIAL DEL ESTADO DE B.C.
### SERVICIO MÉDICO FORENSE

### CERTIFICADO DE NECROPSIA

EL PERITO MÉDICO LEGISTA DEL PARTIDO JUDICIAL DE TIJUANA, BAJA CALIFORNIA, EN CUMPLIMIENTO DE LO ORDENADO MEDIANTE OFICIO No.- 2063/12/201 DE FECHA SIETE DEL MES DE MAYO DEL DOS MIL DOCE., GIRADO POR EL C. AGTE. INV. DEL M.P. DEL F.C. LIC. EMIGDIO GUTIERREZ ME CONSTITUÍ EN EL ANFITEATRO DEL SERVICIO MÉDICO LEGAL DE ESTA CIUDAD, A EFECTO DE PRACTICAR LA NECROPSIA DE QUIEN EN VIDA LLEVO EL NOMBRE DE JORGE RANGEL MONTES RELACIONADO CON EL ACTA DE AVERIGUACIÓN PREVIA105/12/201/AP /////////////

### (A).- MEDIA FILIACIÓN

| SEXO | MASCULINO | EDAD PROBABLE | 30 A 35 AÑOS |
|---|---|---|---|
| COMPLEXIÓN | ROBUSTA | ESTATURA | 1.63MTS. |
| COLOR | MORENO OSCURO | PELO | NEGRO |
| FRENTE | AMPLIA | CEJAS | RALAS |
| OJOS | CAFE | NARIZ | RECTA |
| BOCA | MEDIANA | LABIOS | MEDIANOS |
| DENTADURA | INCOMPLETA | MENTÓN | OVAL |
| BIGOTE | NEGRO | OREJAS | MEDIANAS |

(B).- SEÑAS PARTICULARES.- EN REGION PECTORAL IZQUIERDA LA LEYENDA"RANGEL",EN LA CARA POSTERIOR DEL ANTEBRAZO IZQUIERDO LA LEYENDA"TANA".///////////////

(C).- RECONOCIMIENTO EXTERIOR.CADAVER QUE PRESENTA CIANOSIS SUBUNGUEAL EN AMBOS DEDOS DE LAS MANOS, ENSANGRETADO EN TODA SU SUPERFICIE CORPORAL DE PREDOMINIO EN LA REGION CEFALICA, ROSTRO, TORAX ANTERIOR Y POSTERIOR. Y PRESENTA LAS SIGUIENTES LESIONES PRODUCIDAS POR INSTRUMENTO PUNZOCORTANTE, COMO A CONTINUACION SE DESCRIBEN:

1.-) UNA HERIDA PUNZOCORTANTE EN LA REGION OCCIPITAL LOCALIZADA A NIVEL MEDIO LONGITUDINAL QUE MIDE 1.5CMS POR 0.2 MM Y A 1.54 MTS DEL PLANO DE SUSTENCION QUE .SOLO INTERESO LA PIEL CABELLUDA CON UN TRAYECTO DE DERECHA A IZQUIERDA, DE ATRÁS HACIA ADELANTE, Y DE ARRIBA HACIA ABAJO.

2.-) UNA HERIDA PUNZOCORTANTE EN LA REGION DEL MENTON DEL LADO DERECHO EN FORMA DE UNA "Z" CON LA COLA DE RATON INFERO-POSTERIOR QUE MIDE 2.5 CMS POR 0.5 MM, LOCALIZADA A 3.0 CMS A LA DERECHA DE LA LINEA MEDIA Y A 1.42 MTS. DEL PLANO DE SUSTENTACION, CON UN TRAYECTO DE DERECHA A IZQUIERDA, DE ARRIBA A ABAJO Y DE ATRÁS HACIA ADELANTE.

3.-) HERIDA PUNZOCORTANTE EN LA REGION DEL CUELLO EN LA CARA LATERAL DERECHA QUE MIDE 4.5 CMS POR 1.0 CMS, Y CON COLA DE RATON POSTERO-SUPERIOR QUE MIDE 0.3MM LOCALIZADA A 1.0 CMS A LA DERECHA DE LA LINEA MEDIA Y A 1.37 MTS DEL PANO DE SUSTENTACION. CON UN TRAYECTO DE ATRÁS HACIA ADELANTE, DE ARRIBA HACIA ABAJO Y DE DERECHA A IZQUIERDA.

4.-) UNA HERIDA PUNZOCORTANTE OBLICUA EN LA REGION INFRAESCAPULAR DERECHA QUE MIDE 4.5 CMS POR 1.0 CMS Y COLA DE RATON POSTERO SUPERIOR QUE MIDE 0.3MM, LOCALIZADA A 3.0 CMS A LA DERECHA DE LA LINEA MEDIA Y A 1.21 MTS DEL PLANO DE SUSTENTACION CON UN TRAYECTO DE DERECHA A IZQUIERDA,DE ATRÁS HACIA ADELANTE Y DE ARRIBA HACIA ABAJO.

5.-) UNA HERIDA PUNZOCORTANTE OBLICUA EN LA REGION DORSAL DERECHA QUE MIDE 2.5 CMS POR 0.5MM Y COLA DE RATON POSTERO SUPERIOR QUE MIDE 0.2MM LOCALIZADA A 8.0 CMS A LA DERECHA DE LA LINEA MEDIA Y A 1.17 MTS DEL PLANO DE SUSTENTACION,CON UN TRAYECTO DE IZQUIERDA A DERECHA ,DE ARRIBA HACIA ABAJO Y DE ADALANTE HACIA ATRÁS.

6.-) UNA HERIDA PUNZOCORTANTE EN LA CARA POPSTERIOR DEL ANTEBRAZO DERECHO EN SU TERCIO INFERIOR QUE MIDE 6.4 CXMS POR 2.5 CMS, CON UN TRAYECTO DE IZQUIERDA A DERECHA, ARRIBA HACIA ABAJO Y DE ADELANTE HACIA ATRAS.////////

(D).- CAVIDAD CRANEANA: SE REALIZA INCISION AURICULO-AURICULAR CON LEVANTAMIENTO DE COLGAJOS ANTERIOR Y POSTERIOR APRECIANDO EN LA SUBGALEA MANCHAS DE TARDIUE Y AL INCIDIR LA CALOTA Y RETIRARLA SE APRECIA EL ENCEFALO CONGESTIVO, HEMORRAGIA LAMINAR DIFUSA, AL RETIRAR EL CEREBRO Y LAS MENINGES NO SE APRECIAN DATOS DE FRACTURA DE LOS HUESOS DE LA BOVEDA Y BASE DEL CRANEO////////////

(E).- CUELLO:.. SE EFECTUA INCISION SUBMENTO PUBICA CON LEVANTAMIENTO DE COLGAJOS LATERALES Y SE PROCEDE A EXAMINAR LOS PLANOS BLANDOS APRECIANDO EN ELLADO DERECHO. SUFUSIONES MUSCULARES,HEMATOMA EN LOS MUSCULOS ESTERNOCLEIDOMASTOIDEO EN SU TERCIO MEDIO E INFERIOR,AL DISECAR EL AREA SE APRECIA LACERACION DE LA VENA YUGULAR DERECHA Y AL INCIDIR LA TRAQUEASE OBSERVA SU LUZ LIBRE.////////////

(F).- CAVIDAD TORÁCICA: AL INCIDIR LA PIEL, LOS PLANOS MUSCULARES Y AL RETIRAR LA PECHERA ESTERNAL APRECIAMOS UN HEMOTORAX DEL LADO DERECHO DE APROXIMADAMENTE 2000 C,C, PULMON DERECHO,CONGESTIVO, ADHERIDO A LA PARRILLA COSTAL Y DOS LACERACIONES EN EL LOBULO INFERIOR DERECHO, LACERACION –PERFORACION DE LA PARRILLA COSTAL DEL 7° Y 9° ESPACIO INTERCOSTAL, DERECHO EN SU PARTE POSTERIOR,LACERACION DEL HEMIDIAFRAGMA DERECHO,EL PULMON IZQUIERDO CONGESTIVO,BULOSO,Y AL INCIDIR LA BOLSA PERICARDICA SE OBSERVA EL CORAZON CONGESTIVO.////////////

(G).- CAVIDAD ABDOMINAL: AL INCIDIR LA PIEL, LOS PLANOS MUSCULARES Y AL RETIRAR EL PERITONEO APRECIAMOS HEMOPERITONEO DE APROXIMADAMENTE 1 000C,C DE PREDOMINIO DERECHO Y AL ACCEDER A ESTA CAVIDAD SE APRECIA EL HIGADO LACERADO EN SU PARTE POSTERIOR DEL LOBULO DERECHO, BAZO AUMENTADO DE TAMAÑO, RIÑON DERECHO PALIDO, EL RIÑON IZQUIERDO CONGESTIVO, PANCREAS CONGESTIVO, AL INCIDIR LA CAMARA GASTRICA SE ENCUENTRA PLETORICA CON CONTENIDO ALIMENTICIO PASTOSO DE COLOR AMARILLO. ////////

(H).- OTROS DATOS: SE TOMAN MUESTRAS DE SANGRE Y ORINA PARA SU ESTUDIO CORRESPONDIENTE. ////////////////

(I).-CAUSA DETERMINANTE DE LA MUERTE: CHOQUE HIPOVOLEMICO SECUNDARIO A HERIDAS PENETRANTES DE CUELLO, TORAX Y ABDOMEN POR HERIDAS POR INSTRUMENTO PUNZOCORTANTE.//////////////////////////

ATENTAMENTE

TIJUANA,B,C, A 07 DE MAYO DEL 2024
EL C. PERITO MÉDICO LEGISTA ADSCRITO



DR. JOSE LUIS ARGUELLO MONT

SERVICIO
MEDICO FORENSE
TIJUANA, B.C

# PRUEBA 11

EXT_Pasillas Jaramillo_000266



**PGJE**
PROCURADURIA GENERAL DE JUSTICIA DEL ESTADO
BAJA CALIFORNIA

# PROCURADURIA GENERAL DE JUSTICIA DEL
## ESTADO DE BAJA CALIFORNIA
### SERVICIOS PERICIALES

Servicios
Periciales

ASUNTO: SE RINDE DICTAMEN EN MATERIA
DE CRIMINALÍSTICA DE CAMPO.
ÁREA: INVESTIGACIÓN CRIMINALÍSTICA.
SECCIÓN: CRIMINALÍSTICA DE CAMPO.

DRA. MARÍA GUADALUPE LICEA CASTELLANOS
DIRECTORA DE SERVICIOS PERICIALES
DE LA PROCURADURÍA DE JUSTICIA DEL
ESTADO DE BAJA CALIFORNIA
PRESENTE.-

Las que suscriben Peritos en Criminalística, **C. D. REBECA MATA HERNANDEZ Y Q.F.B. NORMA ALICIA SÁNCHEZ RODRÍGUEZ**, adscritas a la Jefatura de Servicios Periciales Zona Tijuana dependiente de la Procuraduría General de Justicia del Estado, nos permitimos rendir **DICTAMEN EN MATERIA DE CRIMINALÍSTICA DE CAMPO** a solicitud del **LIC. EMIGDIO GUTIERREZ**, según lo dispuesto en el Artículo 25, fracciones I, II y relativos de la Ley Orgánica de la propia institución, y en el Artículo 82, fracciones IX, X, XI, XXIV y demás relativos del Reglamento de la Ley Orgánica de la Procuraduría General de Justicia del Estado de Baja California, atendiendo a los hechos que se mencionan en el acta de Averiguación Previa **No. 105/12/201**, instruida en la Agencia del Ministerio Público del Orden Común, por la probable comisión del delito de **HOMICIDIO**, en agravio de un individuo desconocido de sexo masculino identificado como **JORGE RANGEL MONTES**, como a continuación se precisa:

## I.- PROBLEMA PLANTEADO:

En base a las actividades Criminalísticas necesarias, auxiliar técnica y científicamente el esclarecimiento de los hechos donde perdieran la vida un individuo desconocido de sexo masculino identificado como **JORGE RANGEL MONTES**, hechos relacionados con el Acta de Averiguación Previa **No. 105/12/201**.

## II.- ANTECEDENTES:

A las 02:00 horas del lunes 07 de mayo de 2012, se recibe aviso vía verbal por parte del Lic. Emigdio Gutiérrez, Agente del Ministerio Público adscrito a la Unidad Orgánica de Homicidios Dolosos, quien solicitaba nos trasladáramos a la calle Tule al número 1314 de la Colonia Praderas de la Mesa, ya que se tenía conocimiento de encontrarse una persona sin vida a consecuencia de hechos violentos, solicitando la intervención pericial pertinente, trasladándonos de inmediato al sitio.

## III.- TÉCNICA UTILIZADA:

1. Minuciosa y exhaustiva observación e inspección del lugar.
2. Minuciosa y exhaustiva observación y descripción de la ubicación, orientación y posición del cuerpo del occiso.
3. Fijaciones fotográficas del lugar, del cuerpo y de los indicios, realizadas con equipo digital SONY DSLR-A100H con flash integrado y resolución de 10.2 mega píxeles, con tarjeta de memoria de 4 gigabytes.
4. Minucioso análisis en las instalaciones del Servicio Medico Forense y en presencia del Representante Social, correspondiente a las vestimentas, signos cadavéricos, así como de las lesiones observadas en el cuerpo del occiso.
5. Análisis e interpretación de las lesiones descritas en los Certificados de Necropsias realizados por los Médicos Legistas Dr. JOSÉ LUIS ARGUELLO MONTIEL.
6. En consideración al análisis de los resultados, se obtienen las conclusiones.

## IV.- RESULTADOS.

## V.- CONCLUSIONES.

2

## DESCRIPCIÓN DEL LUGAR:

Arribamos a las 03:26 horas en condiciones de noche, con cielo parcialmente nublado a una temperatura de 14°Celsius, sitio que corresponde a una zona urbana, con calles de concreto, con señalización gráfica de calles y alumbrado público, sitio donde se encuentran Oficiales de la Secretaría de Seguridad Pública Municipal custodiando el sitio, así mismo se observaron sus respectivas unidades.



En compañía del Representante Social se tiene a la vista del Norte de la calle, sobre la banqueta, un bulto cubierto con un cobertor en color café, verde y negro, el cual al descubrirlo se aprecia el cuerpo sin vida de una persona del sexo masculino quien a simple vista se aprecia ensangrentado y se le observan lesiones punzo cortantes en rostro y cuello, así mismo en el portón de herrería de color blanco correspondiente al domicilio 1314 se observan manchas hemáticas con características de escurrimiento.





Proseguimos con la inspección observando patrones hemáticas sobre la superficie de concreto los cuales siguen una dirección hacia el punto cardinal Noroeste hasta el domicilio marcado con el número



3

1325, el cual se trata de una casa habitación en material de construcción de concreto de dos niveles, al ingresar en compañía del Representante Social observamos diversas manchas hemáticas con características de goteo estático y dinámico,   también se observa una hoja de cuchillo maculada de líquido hemático.



Continuamos con la inspección en éste domicilio y   ascendimos por las escaleras encontrando sobre las mismas manchas hemáticas con características de goteo dinámico hasta el vértice Noroeste en el segundo nivel que corresponde a un balcón.







4



Dictámen en Materia de Criminalística de Campo A. P. 105/12/201



## INDICIOS CERCANOS:

1.- Manchas hemáticas con características de goteo dinámico, que muestran una dirección de norte a sur en una longitud aproximada de 50 metros del domicilio 1325 al 1314.

 

6



**INDICIOS DISTANTES:**

**2.**-Hoja de acero inoxidable de 11 centímetros de longitud, doblada y embebida en líquido hemático, localizado en el interior del domicilio 1325, en el pasillo de entrada al mismo.

PGJE
PGJE
PGJE

**3.**-Manchas hemáticas con características de goteo dinámico y estático, localizados a sobre las escaleras que conducen al segundo nivel.

## POSICIÓN, UBICACIÓN Y ORIENTACIÓN DEL CUERPO:

El cuerpo del occiso se localizó sobre la superficie de concreto correspondiente a la banqueta frente al domicilio 1314, cubierto con un cobertor en decúbito dorsal, con su extremidad cefálica orientada hacia el punto cardinal Sureste, con su extremidad superior izquierda en extensión y abducción y la derecha en flexión y abducción, las extremidades inferiores en flexión y ligera abducción. Ubicando su extremidad cefálica a 1.30 metros al Oeste y a 4.0 metros al Norte del vértice Sureste del domicilio 1314.




## EXAMEN EXTERNO DEL OCCISO:

### MEDIA FILIACIÓN:



Sexo: masculino, Edad: 25 a 30, Estatura: 1.60m. Complexión: delgado, Tez: moreno claro, Cabello: castaño obscuro corto, Cara: oval, Frente: amplia, Cejas: rectas pobladas, Ojos: cafés, Nariz: cóncava, Boca: grande, Labios: gruesos, mentón oval, Orejas: medianas, barba y bigote recortados tipo candado.

8

## SEÑAS PARTICUALERES:

-Tatuaje en tinta indeleble en color negro, de leyenda Rangel, localizada en región pectoral izquierda.



## VESTIMENTA:

-Playera en color gris marca Acces, la cual se encuentra recorrida por arriba de su región pectoral, embebida en líquido hemático con cortes y desgarros en la parte posterior.




9

-Pantalón en color azul, de mezclilla, marca Levis, talla 34 x 30, el cual se encuentra embebido en líquido hemático en un 70% de su superficie aproximadamente.

-Bóxer en color verde a cuadros, marca Jocker.

-Calcetines negros.

## SIGNOS CADAVÉRICOS:

Se palpó frio, no presentó rigidez cadavérica, no presento lividdeces cadavéricas, no presentó opacidad corneal.

 

## LESIONES:

Herida punzo cortante localizada en rama descendente de mandíbula derecha que mide 2.0 x 3.0 centímetros.

 

11

- Herida punzo cortante localizada en cara lateral derecha de cuello que mide 4.5 x 1.0 centímetros.

 

Herida punzo cortante localizada en cara anterior tercio distal de brazo derecho que mide 7.0 x 2.5 centímetros.

 

- Herida punzo cortante localizada en dedo pulgar de mano izquierda que mide 1.0 centímetro de diámetro.

 

12

- Dos heridas punzo cortantes localizadas en región dorsal derecha que miden 5.0 x 2.0 centímetros y 3.0 x 1.0 centímetro.




Herida contusa localizada en región parieto-occipital sobre la línea media de 2.0 centímetros de longitud.




## RESULTADOS:

**DEL LUGAR:**

• El lugar inspeccionado pericialmente el lunes 07 de mayo de 2012 corresponde a un lugar abierto en calle Tule #1314, colonia Praderas de La Mesa, en donde se localizó el cuerpo sin vida de un individuo desconocido de sexo masculino identificado como **JORGE RANGEL MONTES.**

13

- Se observan como indicios cercanos diversas mancha hemáticas con características de goteo estático y dinámico, sobre la superficie de concreto de la calle y banqueta frente al domicilio 1314, de contacto y salpicado en chapa y portón de acceso a la vivienda marcada con el número 1314.

- Como indicios lejanos se tiene a la vista diversas manchas hemáticas con características de goteo dinámico, que conducen en dirección Oeste al domicilio número 1325, y en el interior del mismo se observan también diversas manchas hemáticas con características de goteo dinámico y en el pasillo de la entrada sobre su superficie de concreto se localiza una hoja metálica de un cuchillo embebida de líquido hemático.

## DEL CUERPO:

- El cuerpo del occiso se encontró sobre la superficie de concreto correspondiente a la banqueta frente al domicilio número 1314, en decúbito dorsal, con su extremidad cefálica dirigida hacia el punto cardinal Sureste, cubierto con un cobertor estampado en colores café, verde y negro.

- Vestía playera en color gris la cual se encuentra embebida en líquido hemático, presenta cortes y desgarros y se encuentra recorrida por arriba del pectoral, pantalón de mezclilla en color azul, embebido en líquido hemático, bóxer en color verde a cuadros y calcetines negros.

- Presentó las siguientes lesiones: herida punzo cortante en rama descendente de mandíbula derecha, en cara lateral derecha de cuello, en cara anterior tercio distal de brazo derecho, en dedo pulgar de mano izquierda, dos en región dorsal derecha y región parieto-occipital a nivel de línea media.

- Se palpó frio, no presentó rigidez cadavérica, no presento lividences cadavéricas, no presentó opacidad corneal por lo que se estima un cronotanatodiagnóstico menor a 3 horas al momento de nuestra intervención pericial.

14

DE LABORATORIO ESTATAL:

Los resultados obtenidos de la recolección de la muestra biológica del cuerpo, son los siguientes:

- Examen toxicológico (Determinación de substancias de abuso en orina): **"POSITIVO"** a **opiáceos, metanfetamina y anfetamina.**

- Examen de alcoholemia (Determinación de niveles de alcohol en muestra de sangre): **"NEGATIVO".**

- Examen de alcoholuria (Determinación de niveles de alcohol en muestra de orina): **"NEGATIVO".**

- Tipo sanguíneo del occiso: o+.

- Tipo sanguíneo de las manchas recolectadas sobre la superficie de concreto correspondiente a la banqueta y calle frente al domicilio 1314: Tipo o.

- Tipo sanguíneo de las manchas hemáticas en el domicilio 1325: Tipo o.

- Tipo sanguíneo de manchas hemáticas en hoja metálica de cuchillo: Tipo o.

**DEL CERTIFICADO DE NECROPSIA:**

**C.** RECONOCIMIENTO EXTERIOR: CADÁVER QUE PRESENTA CIANOSIS SUBUNGUEAL EN AMBOS DEDOS DE LAS MANOS, ENSANGRENTADO EN TODA SU SUPERFICIE CORPORAL DE PREDOMINIO EN LA REGIÓN CEFÁLICA, ROSTRO, TÓRAX ANTERIOR Y POSTERIOR. Y PRESENTA LAS SIGUIENTES LESIONES PRODUCIDAS POR INSTRUMENTO PUNZOCORTANTE, COMO A CONTINUACION SE DESCRIBEN:

1.-) UNA HERIDA PUNZOCORTANTE EN LA REGIÓN OCCIPITAL LOCALIZADA A NIVEL MEDIO LONGITUDINAL QUE MIDE 1.5 CMS POR 0.2 MM Y A 1.54 MTS DEL PLANO DE SUSTENTACIÓN QUE SÓLO INTERESÓ LA PIEL CABELLUDA CON UN TRAYECTO DE DERECHA A IZQUIERDA, DE ATRÁS HACIA ADELANTE, Y DE ARRIBA HACIA ABAJO.

2.-) UNA HERIDA PUNZOCORTANTE EN LA REGIÓN DEL MENTÓN DEL LADO DERECHO EN FORMA DE UNA ¨Z¨ CON LA COLA DE RATÓN INFERO- POSTERIOR QUE MIDE 2.5 CMS POR 0.5 MM, LOCALIZADA A 3.0 CMS A LA DERECHA DE LA LÍNEA

15

MEDIA Y A 1.42 MTS. DEL PLANO DE SUSTENTACIÓN, CON TRAYECTO DE DERECHA A IZQUIERDA, DE ARRIBA ABAJO Y DE ATRÁS HACIA ADELANTE.

3.-) HERIDA PUNZO CORTANTE NE LA REGIÓN DEL CUELLO EN LA CARA LATERAL DERECHA QUE MIDE 4.5 CMS POR 1.0 CMS Y CON COLA DE RATÓN POSTERO SUPERIOR QUE MIDE 0.3 MM, LOCALIZADA A 3.0 CMS A LA DERECHA DE LA LÍNEA MEDIA Y A 1.21 MTS DEL PLANO DE SUSTENTACIÓN CON UN TRAYECTO DE DERECHA A IZQUIERDA, DE ATRÁS HACIA ADELANTE Y DE ARRIBA HACIA ABAJO.

4.-) UNA HERIDA PUNZOCORTANTE OBLICUA EN LA REGIÓN INFRAESCAPULAR DERECHA QUE MIDE 4.5 CMS POR 1.0 CMS Y COLA DE RATON POSTERO SUPERIOR QUE MIDE 0.3 MM, LOCALIZADA A 3.0 CMS A LA DERECHA DE LA LÍNEA MEDIA Y A 1.21 MTS DEL PLANO DE SUSTENTACIÓN CON TRAYECTO DE DERECHA A IZQUIERDA, DE ATRÁS HACIA ADELANTE Y DE ARRIBA HACIA ABAJO.

5.-) UNA HERIDA PUNZO CORTANTE OBLICUA EN LA REGIÓN DORAL DERECHA QUE MIDE 2.5 CMS POR 0.5 MM Y COLA DE RATÓN POSTERO SUPERIOR QUE MIDE 0.2 MM LOCALIZADA A 8.0 CMS A LA DERECHA DE LA LÍNEA MEDIA Y A 1.17 MTS DEL PLANO DE SUSTENTACIÓN, CON TRAYECTO DE IZQUIERDA A DERECHA, DE ARRIBA HACIA ABAJO Y DE ADELANTE HACIA ATRÁS.

6.-) UNA HERIDA PUNZO CORTANTE EN LA CARA POSTERIOR DEL ANTEBRAZO DERECHO EN SU TERCIO INFERIOR QUE MIDE 6.4 CMS POR 2.5 CMS, CON UN TRAYECTO DE IZQUIERDA A DERECHA, ARRIBA HACIA ABAJO Y DE ADELANTE HACIA ATRÁS/////////////////////////

**E.- CUELLO:**... HEMATOMA EN LOS MUSCULOS ESTERNOCLEIDOMASTOIDEOS EN SU TERCIO MEDIO E NFERIOR, AL DISECAR EL ÁREA SE APRECIA LASCERACIÓN DE LA VENA YUGULAR DERECHA....////

**F.- CAVIDAD TORÁCICA:** ...PULMÓN DERECHO, CONGESTIVO, ADHERIDO A LA PARRILLA COSTAL Y DOS LACERACIONES EN EL LÓBULO INFERIOR DERECHO, Y LACERACIÓN- PERFORACIÓN LA PARRILLA COSTAL DEL 7° Y 9° ESPACIO INTERCOSTAL DERECHO EN SU PARTE POSTERIOR, LACERACIÓN DEL HEMIDIAFRAGMA DERECHO.....//////////

16

**G.- CAVIDAD ABDOMINAL:** ......SE APRECIA EL HÍGADO LACERADO EN SU PARTE POSTERIOR DEL LÓBULO DERECHO......//////////

**I.- CAUSA DETERMINANTE DE LA MUERTE:** CHOQUE HIPOVOLEMICO SECUNDARIO A HERIDAS PENETRANTES DE CUELLO, TORAX Y ABDOMEN POR HERIDAS POR INSTRUMENTO PUNZOCORTANTE.///////////////////////////////////

## V.- CONCLUSIONES

**PRIMERA.-** De acuerdo al análisis de la ubicación del occiso, siendo este un lugar abierto ubicado en calle Tule #1314, colonia Praderas de La Mesa, se concluye que el lugar inspeccionó pericialmente el lunes 07 de mayo de 2012, y en base a que el occiso se encontró sobre la superficie de concreto correspondiente a la banqueta tomando en cuenta los indicios cercanos consistentes en manchas hemáticas con características de goteo dinámico y estático sobre la superficie de concreto, además de las manchas hemáticas con características de salpicado y de contacto localizadas en el portón de acceso al domicilio número 1314, se concluye que **CORRESPONDE** al lugar donde cesan los signos vitales de el individuo desconocido de sexo masculino identificado como **JORGE RANGEL MONTES.**

**SEGUNDA.-** En base a los indicios distantes, siendo estos manchas hemáticas con características de goteo dinámico las cuales siguen un patrón de dirección hacia el Oeste de la calle hasta el domicilio 1325, donde también se localizan manchas hemáticas con características de goteo dinámico y una hoja metálica de cuchillo, aunado a los resultados de laboratorio estatal los cuales muestran similitud de tipo sanguíneo, entre la muestra recolectada del occiso y las manchas hemáticas recolectadas en ambos domicilios, se concluye que este lugar corresponde al lugar de los hechos donde es lesionado el individuo de sexo masculino identificado como **JORGE RANGEL MONTES** y este una vez lesionado se desplaza hasta el domicilio número 1314.

**TERCERA.-** En base a la conclusión anterior tomando en cuenta las manchas hemáticas observadas en chapa y portón de acceso al domicilio número 1314, se concluye

17

que el hoy occiso se encontraba de pie dejando las manchas en plano vertical, previo a caer y al cese de sus signos vitales.

**CUARTA.-** En base a las lesiones que presenta el occiso en mano izquierda y brazo derecho, se concluye que estas fueron producidas a consecuencia de maniobras de defensa por parte del occiso frente a las agresiones del victimario.

**QUINTA.-** tomando en consideración las lesiones presentes en el cuerpo del hoy occiso, siendo estas heridas punzo cortantes denominadas así por ser causadas por un instrumento con punta y filo siendo estas características compatibles a ser realizadas por una punta de cuchillo como la localizada en el lugar donde es lesionado (domicilio 1325) y presentan también similitud de forma y tamaño, tomando en consideración el resultado del laboratorio estatal respecto a los tipos sanguíneos del occiso y de las manchas recolectadas del cuchillo siendo estas similares, se concluye que es la punta de cuchillo metálica el agente vulnerante con que es lesionado el individuo de sexo masculino identificado como JORGE RANGEL MONTES por su victimario.

**SEXTA.-** En base a la conclusión anterior, a las lesiones presentes en el occiso y de acuerdo a la causa determinante de la muerte establecida por los peritos Médicos legistas se concluye que la muerte del individuo de sexo masculino identificado como **JORGE RANGEL MONTES** fallece a consecuencia de **CHOQUE HIPOVOLEMICO SECUNDARIO A HERIDAS PENETRANTES DE CUELLO, TÓRAX Y ABDOMEN POR HERIDAS POR INSTRUMENTO PUNZOCORTANTE.**

**SEPTIMA.-** En base a que el occiso se encontró cubierto con un cobertor estampado en colores café, verde y negro, además que presentó la playera en color gris que portaba recorrida por arriba de la región pectoral, se concluye que el hoy occiso es manipulado por terceras personas posterior al cese de sus signos vitales.

**OCTAVA.-** Considerando los signos cadavéricos presentes en el occiso, se establece el cese de sus signos vitales posterior a las 01:26 horas y previo a las 2:00 horas del día lunes 07 de mayo de 2012.

18

Una vez establecido todo lo anterior se establece la **PROBABLE MECÁNICA DE LOS HECHOS** de la siguiente manera:

Siendo entre las 01:27 horas y las 01:59 horas del lunes 07 de mayo de 2012, el hoy occiso se encontraba en el pasillo del segundo nivel de una casa habitación ubicada en calle Tulé #1314, colonia Praderas de La Mesa, encontrándose la victima en compañía de su victimario quien portaba una punta de cuchillo (hoja metálica de cuchillo) lesiona al hoy occiso en diversas ocasiones en la espalda y en el rostro, el hoy occiso trata de defenderse, siendo lesionado también en las manos al tratar de defenderse de su victimario, la victima huye en dirección Noreste, hacia el domicilio marcado con el número 1314 de la misma calle, sitio donde cae frente al portón de acceso al domicilio, momento en el que cesan sus signos vitales, posteriormente es removido de la posición en la que cesaron sus signos vitales por terceras personas, probablemente para brindarle primeros auxilios. El victimario huye con rumbo desconocido, quedando el cuerpo y los indicios, en la posición y las condiciones en que fueron localizados por los suscritos al momento de nuestro arribo.

Lo que nos permitimos hacer de su conocimiento para lo que tenga a bien determinar.

A T E N T A M E N T E
LAS PERITOS EN CRIMINALÍSTICA

C.D. REBECA MATA HERNÁNDEZ.     Q.F.B. NORMA ALICIA SÁNCHEZ RODRÍGUEZ.

C.c.p. Área de Investigación Criminalística
C.c.p Archivo.
R. M. H.

19

# PRUEBA 12

EXT_Pasillas Jaramillo_000286



PROCURADURIA GENERAL DE JUSTICIA DEL ESTADO
DE BAJA CALIFORNIA
Dirección de Averiguaciones Previas



**Averiguación previa Número 105/12/201**

**DILIGENCIA DE CONFRONTACIÓN POR FOTOGRAFIA.-** En TIJUANA, BAJA
CALIFORNIA, siendo las 12:26 horas del día CUATRO DEL MES DE NOVIEMBRE
DEL  DOS MIL TRECE, constituido legalmente en estas oficinas el Ciudadano
Agente del Ministerio Público del Fuero Común Licenciado LUIS FERNANDO
GARCIA ZAMORA, asistido por su Secretario de Acuerdos Licenciado JUANA
CABADA PEREYRA, a efecto de llevar a cabo la diligencia de confrontación por
fotografía entre el indiciado GEORGE ANTONY PASILLAS y el ciudadano EDELMIRA
MONTES HERNANDEZ en calidad de testigo toda vez que su declaración se
desprende que pudiera reconocer plenamente y sin temor a equivocarse al indiciado
de merito en fotografía por lo que se procede a realizar una búsqueda en los
archivos de esta Fiscalía Especializada de **cinco fotografías** de personas con
características físicas semejantes a las del ciudadano GEORGE ANTONY PASILLAS
aunada a la de él, haciendo un total de **seis fotografías**, siendo las seis impresiones
fotográficas de personas del sexo masculino numeradas cada una con los números
**1, 2, 3, 4, 5, 6,**  Vista la declaración del de nombre EDELMIRA MONTES
HERNANDEZ en relación a poder reconocer plenamente y sin temor a equivocarse
ya sea en persona o en fotografía a la persona a la que hace referencia en su
declaración como el que **el día siete de Mayo del año 2012, cuando al estar
acostada escuche unos gritos que venían de la calle y eran de mi hijo JORGE el
cuál me decía "MAMA, gritándole también a ROCIO, y al CHINO AYUDENME ME
ESTOY MURIENDO"** por lo que rápidamente salí y vi. a mi hijo JORGE RANGEL
MONTES sentado en la banqueta y me dijo MAMA ABRAZAME LLAMEN A UNA
AMBULANCIA, LLEVENME recuerdo que en ese momento yo le pregunte
¿Quien te lesiono? y mi hijo me contesto FUE EL GEORGE EL GUERO, EL
GEORGE, EL GEORGE  me filereado (refiriendo a que lo había filereado con
arma blanca)  rápido llame a la ambulancia, y al llegar los paramédicos me
dijeron que mi hijo ya había fallecido,  y se que la persona que le quito a mi
hijo la vida se llama GEORGE ANTHONY PASILLAS Alias JORGE ANTONIO
PASILLAS JARAMILLO Alias JORGE PASILLAS JARAMILLO, Alias GEORGE A.
PASILLAS Alias EL GUERO, a quien conozco desde niño ya que vivíamos cerca,
y al que anteriormente ya había identificado cuando rendí mi declaración
inicial ya que también me pusieron unas fotografías y también lo reconocí
plenamente. . A continuación se le muestra al testigo la serie de las **seis**
fotografías de personas del sexo masculino numeradas del 1 al 6 señaladas con
antelación y después que las observa, en este momento bajo la protesta que tiene
otorgada en autos le pregunta el Ciudadano Agente del Ministerio Público del Fuero
Común LUIS FERNANDO GARCIA ZAMORA, si reconoce a alguna de las personas
que aparecen en las fotografías que tiene a la vista como la que intervino en los
hechos y que mencionó en su declaración; indicándosele que en caso afirmativo, lo



PROCURADURIA GENERAL DE JUSTICIA DEL ESTADO
DE BAJA CALIFORNIA
Dirección de Averiguaciones Previas




## Averiguación previa Número 105/12/201

señale en forma clara y precisa, acto seguido el testigo señala la fotografía ubicada en el número **seis** misma que corresponde al de nombre GEORGE ANTONY PASILLAS. Se le pregunta al ofendido que manifieste las diferencias o semejanzas que tuviera al momento de cometer el ilícito con la fotografía identificada **manifestando que cuando fueron los hechos el de nombre GEORGE ANTHONY PASILLAS no traía bigote y traía el pelo casi rapado, a diferencia con la fotografía que tiene en estos momentos a la vista que GEORGE trae bigote y un poco mas de pelo, agregando que desde que sucedieron los hechos donde mato a su hijo, no lo a vuelto a ver** . Con lo anterior, se dio por terminada la presente diligencia, previa lectura de lo anterior y firmando al margen para mayor constancia. - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - CONSTE.- - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - SE CIERRA Y AUTÓRIZA LO ACTUADO - - - - - - -

# CALIFORNIA
**IDENTIFICATION CARD**
A3111262

EXPIRES 05-18-02

This identification card is issued solely for identification
purposes, it does not establish eligibility for employment,
voter registration, or public benefits.
EDELMIRA MONTES
270 E ROSECREST
LA HABRA CA 90631

SEX: F  HAIR: BLK  EYES: BRN
HT: 5-03  WT: 195  DOB: 05-18-41



1

2

3

4

5

6

# PRUEBA 13

EXT_Pasillas Jaramillo_000291

PROCURADURIA GENERAL DE JUSTICIA DEL ESTADO
DE BAJA CALIFORNIA
Dirección de Averiguaciones Previas

**105/12/201/AP**

DILIGENCIA DE IDENTIFICACION POR RUEDA FOTOGRAFICA A CARGO DE EDELMIRA MONTES HERNANDEZ.- En TIJUANA, BAJA CALIFORNIA, siendo las 11:07 horas del día DOS DEL MES DE JUNIO DE DOS MIL CATORCE, constituidos en estas Oficinas de la Unidad Orgánica de Homicidios Dolosos, el Ciudadano Agente del Ministerio Público del Orden común Licenciado ALEJANDRO JIMENEZ RAFAEL, debidamente asistido y ante la fe de su Secretario de Acuerdos Licenciado TALINA CASTILLO ROCHA a efecto de levar a cabo la diligencia de identificación por rueda fotográfica, en los términos señalados por los artículos 200, 201, 202, 203 y 205 del Código de Procedimientos Penales, el cual establece que para reconocer a una persona que no estuviera presente en la diligencia ni pudiera ser presentada, podrá realizarse la confrontación a través de fotografías con otras semejantes a quien debe efectuar el reconocimiento; para tal efecto se hace constar la presencia de quien dijo llamarse **EDELMIRA MONTES HERNANDEZ**, ser de 73 años, originaria de MICHOACAN, estado civil CASADA, ocupación AL HOGAR, con domicilio en 650 WY LA HABRA, ESTADO CALIFORNIA, proporcionando como numero telefónico para ser localizada el 625-91-72 mismo que pertenece al de su amiga ROSAMELIA OROZCO SANCHEZ quien cuenta con domicilio en esta Ciudad, así mismo se le hace saber a la declarante de las penas en las que incurren los falsos declarantes o quienes se nieguen a declarar, a lo que manifiesta conducirse con verdad, por lo que de conformidad con lo dispuesto por el articulo 202 del Código de Procedimientos Penales para el estado de Baja California, acto seguido se procede a interrogar a la compareciente a quien se le cuestiona si reconoce al de nombre JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO alias GEORGE A. PASILLAS alias GEORGE ANTHONY PASILLAS alias GEORGE EL GÜERO alias GEORGE alias EL GUERO contestando el compareciente que SI, por lo que esta fiscalía le pide si le es posible describirlo manifestando: que es de estatura de 5 pies y pulgadas aproximadamente no recordando con exactitud, de tez moreno claro, complexión delgado, de cabello castaño oscuro muy corto, en el momento que cometió los hechos no traía bigote, ni barba, con ojos de color café, boca mediana y labios regulares, orejas medianas, de cara ovalada, ACTO CONTINUO, esta representación Social pone a la vista a la compareciente la rueda consistente en seis impresiones fotográficas de personas del sexo masculino con características y rasgos semejantes, por lo que se procede a cuestionar al compareciente si reconoce alguna de las personas que aparece en la rueda de SEIS fotografías, a lo que MANIFESTO: SI reconozco plenamente al de la fotografía marcada con el numero SEIS señalándola con el dedo índice de mano izquierda dice que esa fotografía corresponde al de nombre JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO alias GEORGE A. PASILLAS alias GEORGE ANTHONY PASILLAS alias GEORGE EL GÜERO alias GEORGE alias EL

31

PROCURADURIA GENERAL DE JUSTICIA DEL ESTADO
DE BAJA CALIFORNIA
Dirección de Averiguaciones Previas

## 105/12/201/AP

persona muy necia, así como también el día de los hechos siete de Mayo del año 2012, cuando al estar acostada en el interior del domicilio donde me encontraba pasando la noche cuando vengo a esta Ciudad, escuche unos gritos que venían de la calle y eran de mi hijo JORGE el cual me decía "MAMA" gritándole también a ROCIO Y al CHINO quienes viven en el domicilio donde fueron los hechos y es donde me hospedo cuando vengo a esta Ciudad, por lo que mi hijo hoy occiso me gritaba "AYUNDENME ME ESTOY MURIENDO", por lo que rápidamente salí y vi a mi hijo JORGE RANGEL MONTEZ, sentado en la banqueta y me dijo "MAMA ABRAZAME LLAMEN A UNA AMBULANCIA LLEVENME", recuerdo que en ese momento yo le pregunte quien te lesiono? Y mi hijo me contesto "FUE EL GOERGE EL GÜERO, EL GEORGE", me fijereo (refiriendo a que lo había lesionado con un arma blanca) rápido llame a la ambulancia y al llegar los paramédicos me dijeron que mi hijo ya había fallecido, por lo que me entere que JORGE ANTONIO PASILLAS JARAMILLO el mismo día de los hechos, se cruzo a los Estados Unidos ya que el es ciudadano americano. Siendo todo lo que tiene que manifestar firmando al margen para su constancia legal. Por lo anterior se da por terminada la presente diligencia para los efectos legales que haya lugar. CONSTE

- - - - - - - - - - SE CIERRA Y AUTORIZA LO ACTUADO - - - - - - - - - -



**CALIFORNIA**

SENIOR CITIZEN IDENTIFICATION CARD
EXPIRES 05-18-14
A3111262

EDELMIRA MONTES
270 E ROSECREST AVE
LA HABRA CA 90631

SEX:F   HAIR:BLK   EYES:BRN
HT:5-09   WT:195   DOB:05-18-41

12/23/2004  607-18  FD/14

Address Change:

This identification card is issued solely as a means of identification. It does not establish eligibility for employment, voter registration, or public benefits.

EL SUSCRITO C. PRIMER SECRETARIO DE ACUERDOS ADSCRITO A LA UNIDAD
ORGÁNICA DE HOMICIDIOS DOLOSOS:

## C E R T I F I C A

QUE LA PRESENTE COPIAS FUES FIEL Y EXACTA LE CUIS ORIGINAL(ES) QUE
SE TUVO A LA VISTA EN RELACIÓN A LA DE INVESTIGACIÓN PREVIA NUM 105/12/201
Y QUE DEBIDAMENTE COTEJADA SE COMPULSA EN ___ ( ___ FOJA(S)
UTIL(ES), Y SE EXPIDE A SOLICITUD DEL INTERESADO EN LA CIUDAD DE
TIJUANA, B.C. A LOS 2 DÍAS DEL MES DE JUNIO DE 20 14 .

EL C. SECRETARIO(A) DE ACUERDOS.

Lic. Tatina Castillo Rocha



1

2

3

4

5

6

EXT_Pasillas Jaramillo_000295



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

## CERTIFICACIÓN

- - - En la Ciudad de México, Distrito Federal, a 21 (veintiuno) de agosto de 2014 (dos mil catorce).- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - La que suscribe, Licenciada en Derecho **ERIKA CABRERA BECERRA**, Agente del Ministerio Público de la Federación adscrita a la Dirección General de Procedimientos Internacionales de la Subprocuraduría Jurídica y de Asuntos Internacionales de la Procuraduría General de la República y, de conformidad con los artículos 21 y 102 apartado A, de la Constitución Política de los Estados Unidos Mexicanos, 206 y 208 del Código Federal de Procedimientos Penales, 2, 4, fracción III, y 10, fracción X, de la Ley Orgánica de la Procuraduría General de la República; 3, inciso H), fracción V), 4, fracción XIII, 6 y 52, fracción I, del Reglamento de la Ley Orgánica de la Procuraduría General de la República, actuando de conformidad con lo dispuesto por el artículo 16 del Código Federal de Procedimientos Penales, en compañía de testigos de asistencia que al final firman y dan fe.- - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - -C E R T I F I C A:- - - - - - - - - - - - - - - - - - - - -
- - - Que las presentes copias fotostáticas constantes de 79 fojas útiles, son copia fiel y exacta de las constancias que obran en el expediente de extradición instruido a **JORGE ANTONIO PASILLAS JARAMILLO**, (a) **"JORGE PASILLAS JARAMILLO"**, (a) **EL GEORGE A. PASILLAS**, (a) **"GEORGE ANTHONY PASILLAS"**, (a) **"GEORGE EL GÜERO"**, (a) **"EL GÜERO"**, ante su presunta responsabilidad penal en la comisión del delito de **HOMICIDIO CALIFICADO**, documentación de la cual se da fe de tener a la vista en los términos antes descritos, previo cotejo y compulsa para que surta los efectos legales a que haya lugar.- - - - - - - - - - - - - - - - - - - - - - - - - - - -D O Y  F E- - - - - - - - - - - - - - - - - - - -


**TESTIGO DE ASISTENCIA**                    **TESTIGO DE ASISTENCIA**


Lic. Gerardo Ruíz Terroba.                    Lic. Noemí Cardiel Navarro.



SECRETARÍA DE GOBERNACIÓN
UNIDAD DE GOBIERNO



14938

EL LIC. EFRAÍN TERMINEL MUÑOZ SUBDIRECTOR DE SEGUIMIENTO DE ACUERDOS, EN AUXILIO DEL TITULAR DE LA UNIDAD DE GOBIERNO, CON FUNDAMENTO EN LOS ARTÍCULOS 10 FRACCIÓN I Y 11 ÚLTIMO PÁRRAFO DEL REGLAMENTO INTERIOR DE LA SECRETARÍA DE GOBERNACIÓN CERTIFICA: QUE LA C. LIC. ERIKA CABRERA BECERRA, ERA AGENTE DEL MINISTERIO PÚBLICO DE LA FEDERACIÓN ADSCRITA A LA DIRECCIÓN GENERAL DE PROCEDIMIENTOS INTERNACIONALES DE LA SUBPROCURADURÍA JURÍDICA Y DE ASUNTOS INTERNACIONALES DE LA PROCURADURÍA GENERAL DE LA REPÚBLICA, EL DIA 21 DE AGOSTO DE 2014 , Y SUYA LA FIRMA QUE APARECE EN EL PRESENTE DOCUMENTO.

MÉXICO, D.F. A 25 DE AGOSTO DE 2014
REGISTRO No. **14500**
DERECHOS PAGADOS $0.00
S/PAGO DE DERECHOS :

Esta Secretaría no se hace responsable del contenido del documento
This Secretariat accepts no responsibility or liability whatsoever for the content of this document



MADE/IAE/ETM

FIRMA

CÓDIGO:**LNS2R3XCU**

La autenticidad de esta Legalización y su firma electrónica puede ser verificada en
la dirección www.dicoppju.gobernacion.gob.mx/registro

---

S E C R E T A R I A
DE
RELACIONES EXTERIORES
DELEGACION CUAUHTEMOC

F8

FOLIO **552861**

## LA SECRETARIA DE RELACIONES EXTERIORES CERTIFICA :

que      EL LIC. EFRAÍN TERMINEL MUÑOZ ERA

SUBDIRECTOR DE SEGUIMIENTO DE ACUERDOS, EN AUXILIO

DEL TITULAR DE LA UNIDAD DE GOBIERNO

DE LA SECRETARIA DE GOBERNACION EL DIA **2 5 AGO 2014**

y que es suya la firma que antecede.

MEXICO, D.F.          a **27** de      AGOSTO          20 **14**

ESTA SECRETARIA NO ASUME
RESPONSABILIDAD ALGUNA
POR EL CONTENIDO DEL
DOCUMENTO QUE SE LEGALIZA

P.O. DEL C. SECRETARIO
LA DELEGADA

MYRNA GRANADOS HERNANDEZ

UNITED MEXICAN STATES        )
FEDERAL DISTRICT             )
CITY OF MEXICO               )        ss:
EMBASSY OF THE UNITED        )
STATES OF AMERICA            )


Amanda Lugo
I, _____ Vice Consul _____ Consul of the United States of
America, duly commissioned and qualified, certify that the signature and official seal of:


_____ **MYRNA GRANADOS HERNANDEZ** _____
(Name of Foreign Official)


an official empowered to act in the capacity designated in the annexed document, to
which faith and credit are due, are true and correct.

For the contents of the annexed document I assume no responsibility.


_____
(Signature of Consular Officer)

Amanda Lugo
Vice Consul
_____
(Type Name of Consular Officer)


OCT  0 8 2014
_____
(Date)

<div align="center">UNOFFICIAL TRANSLATION</div>

03741

The Embassy of Mexico presents its compliments to the Department of State and makes reference to note number 06621, dated November 21st, 2014, containing the **FORMAL EXTRADITON REQUEST** of **JORGE ANTONIO PASILLAS JARAMILLO**, a.k.a **"JORGE PASILLAS JARAMILLO"**, a.k.a **"EL GEORGE A. PASILLAS"**, a.k.a **"GEORGE ANTHONY PASILLAS"**, a.k.a **"GEORGE EL GÜERO"**, alias **"EL GÜERO"**, who is wanted by Mexican authorities for his alleged perpetration of the crime of **AGGRAVATED HOMICIDE** *(HOMICIDIO CALIFICADO)*.

In this regard, the Embassy requests that the Department of State kindly act as the proper channel to convey to the Office of International Affairs at the Criminal Division of the Department of Justice, the following documents which have been duly certified and legalized and are attached herewith along with an English translation:

- Certified copy signed by the court clerk of the competent Court of the arrest warrant issued on June 8th, 2012 by the Fourth Judge for Criminal Matters of Tijuana, Baja California, within the criminal case number 279/2012.

- Legal provisions related to the crime allegedly committed by the accused and identification proceedings with a photo line-up carried out on June 2nd, 2014, by witness Edelmira Montes Hernandez.

The Embassy of Mexico avails itself of the opportunity to reiterate to the Department of State the assurances of its high and distinguished consideration.

Washington, D.C., August 2nd, 2016

To the Department of State
Washington, D.C.

**03741**

La Embajada de México saluda atentamente al Departamento de Estado y se refiere a la **SOLICITUD FORMAL DE EXTRADICIÓN INTERNACIONAL** de **JORGE ANTONIO PASILLAS JARAMILLO**, alias **"JORGE PASILLAS JARAMILLO"**, alias **"EL GEORGE A. PASILLAS"**, alias **"GEORGE ANTHONY PASILLAS"**, alias **"GEORGE EL GÜERO"**, alias **"EL GÜERO"**, contenida en la nota número 06621 del 21 de noviembre de 2014, a quien las autoridades mexicanas reclaman por su probable responsabilidad en la comisión del delito de **HOMICIDIO CALIFICADO.**

Sobre el particular, la Embajada solicita al Departamento de Estado ser el amable conducto para hacer llegar a la Oficina de Asuntos Internacionales de la División Criminal del Departamento de Justicia los siguientes documentos debidamente certificados, legalizados y con su correspondiente traducción al inglés:

- Copia certificada por el Secretario de Acuerdos del Juzgado de Instrucción, de la orden de aprehensión emitida el 8 de junio de 2012 por el Juez Cuarto Penal de Tijuana, Baja California, en los autos de la causa penal número 279/2012.

- Texto de las disposiciones legales relativas al delito que se imputa al reclamado y diligencia de identificación a través de rueda fotográfica del 2 de junio de 2014, a cargo de la testigo Edelmira Montes Hernández.

La Embajada de México aprovecha la oportunidad para reiterar al Departamento de Estado las seguridades de su atenta y distinguida consideración.

EMBAJADA DE MEXICO
WASHINGTON, D.C.
Washington, D.C., a 8 de agosto de 2016

Al Departamento de Estado
Washington, D.C.

U.S. Department of State

**CERTIFICATE TO BE ATTACHED TO DOCUMENTARY**
**EVIDENCE ACCOMPANYING REQUISITIONS IN**
**THE UNITED STATES FOR EXTRADITION**
**AMERICAN FOREIGN SERVICE**

Mexico City, Mexico, July 6th, 2016
Place and Date *(mm-dd-yyyy)*

I, _____Roberta Jacobson_____ , _____Ambassador_____
Name                                Title

of the United States of America at     Mexico City, Mexico

hereby certify that the annexed papers, being     supporting documents

proposed to be used upon an application for the extradition from the United States of America

Jorge Amado Pasillas Jaramillo, aka"Jorge Pasillas Jaramillo", aka "El George A. Pasillas",

aka "George Anthony Pasillas", aka "George El Guero", aka "El Guero"

charged with the crime of     aggravated homicide

alleged to have been committed in     The Mexican United States

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of     The Mexican United States

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

this     6th.     day of     July 2016.
Month and Year

Signature

Roberta Jacobson, Ambassador
Type Name and Title of Certifying Officer
of the United States of America.

DS-003
03-201

UNITED MEXICAN STATES )
FEDERAL DISTRICT )
CITY OF MEXICO ) SS:
EMBASSY OF THE UNITED STATES )
OF AMERICA )

**Leah Allen**
Deputy ACS Chief
Mexico City, Mexico

Before me, _____, Consul of the United States of America at Mexico, D. F., Mexico, duly commissioned and qualified, personally appeared _Patricia Pompa de la Rosa_ who, being duly sworn deposes and says as follows:

1. My name is _Patricia Pompa de la Rosa_ and I reside at _Mexico City_

2. I have been familiar with the English and _spanish_ languages for the past _11_ years, I made the annexed translation from _spanish_ to English. The said translation is to the best of my knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

_____

Subscribed and sworn to before me this day _____ JUL 06 2013 _____.

_____
Consul of the United States
of America

UNITED MEXICAN STATES )
FEDERAL DISTRICT )
CITY OF MEXICO ) SS:
EMBASSY OF THE UNITED STATES )
OF AMERICA )

**Leah Allen**
Deputy ACS Chief
Mexico City, Mexico
Before me, _____, Consul of the United States of America at Mexico, D. F., Mexico, duly commissioned and qualified, personally appeared _Patricia Pompa de la Rosa_ who, being duly sworn deposes and says as follows:

1. My name is _Patricia Pompa de la Rosa_
   and I reside at _Mexico city_

2. I have been familiar with the English and _spanish_ languages for the past ___11___ years, I made the annexed translation from _spanish_ to English. The said translation is to the best of my knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

Subscribed and sworn to before me this day _____ JUL 06 2016 _____

_____
Consul of the United States
of America

PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**NOTICE:** That on June 8, 2012, the Court Clerk for Decisions informed the Judge of the **Request for an Arrest Warrant** made by the **Investigative Agent of the Public Prosecutor, Head of the Organic Unit for Intentional Homicides,** for JORGE ANTONIO PASILLAS JARAMILLO, (AKA) JORGE PASILLAS JARAMILLO, (AKA) EL GEORGE A. PASILLAS, (AKA) GEORGE ANTHONY PASILLAS, (AKA) GEORGE EL GÜERO, (AKA) EL GÜERO, found probably responsible for the commission of the crime of **AGGRAVATED HOMICIDE**.- Be it attested. - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**RECORD:** In Tijuana, Baja California, on June 8, 2012. - - - - - - - - - - - - - - - - - - - -

HAVING SEEN the preceding, the **Investigative Agent of the Public Prosecutor, Head of the Organic Unit for Intentional Homicides,** is exercising criminal action against **JORGE ANTONIO PASILLAS JARAMILLO, (AKA) JORGE PASILLAS JARAMILLO, (AKA) EL GEORGE A. PASILLAS, (AKA) GEORGE ANTHONY PASILLAS, (AKA) GEORGE EL GÜERO, (AKA) EL GÜERO,** upon considering him probably responsible for the commission of the crime of **AGGRAVATED HOMICIDE.** This crime is provided for by articles 123, in relation to 126, 148 sections I and II and 149 of the Criminal Code in force in said entity. The preceding is in regards to the request for an arrest warrant issued by the Investigative Public Prosecutor. Such request is considered fair and legitimate, since in the case being, the requirements stipulated in Constitutional article 16 and articles 109, and 267 section I of the Code of Criminal Procedure have been met. In fact, Constitutional article 16 stipulates that in order to issue an arrest warrant, the following has to be met: a).- It must have been issued by a judicial authority; b).- It must be preceded by an accusation or complaint of an act defined in the law as a crime, penalized with an imprisonment penalty; c).- There must exist facts establishing that the crime was committed and a likelihood that the accused was the actual perpetrator or a participant in its commission. Also, as a requirement for all acts of Authority, the arrest warrant shall be properly grounded in law and fact.- Now that the foregoing has been established, and since there is an accusation with regards to a criminal act punishable by Law with an imprisonment penalty, supported by factual evidence which proves the evidentiary elements making up the *corpus delicti* and making probable the criminal responsibility of the accused, with reference to the commission of the aforesaid crime, there shall be considered the following:

- - - - - - - - - - - - - - - - - - - - **W H E R E A S** - - - - - - - - - - - - - - - - - - - - -

**I.-** The crime of **AGGRAVATED HOMICIDE,** is provided for in articles 123, 126, and 148 section II of the Criminal Code in force in the entity. Article 123 of the Criminal Code defines the crime of **HOMICIDE** in the following manner: *"whoever deprives another person of life";* article 148, in its section II, stipulates: *"When the perpetrator is superior due to the weapons they use, by their grater skill on those weapons or by the number of persons who accompany them";* however, section I of article 248 [sic] of the Criminal Code, cited by the Public Prosecutor in their determination, is not taken into consideration by virtue of the fact that, in keeping with the dynamics of the facts, the predicate is not met. Instead, the unfair advantage that existed between the perpetrator and the victim is precisely the weapon used, being due to this reason superior. There is not found any proof whatsoever determining that the perpetrator was superior to the victim in physical strength. It is well known law that the Public Prosecutor files criminal charges and it is the trier of fact who determines for which

crime the accused person is to be tried, based on the provisions of article 10 of the Code of Criminal Procedure for the State. We shall not analyze the above referred section; instead, the crime of AGGRAVATED HOMICIDE shall be analyzed under the provisions of article 123 in relation to article 126, 148 section II of the Criminal Code. The elements of the *corpus delicti* of **AGGRAVATED HOMICIDE** are: a).- The previous existence of human life; b).- The taking of such life, material element; c).- Superiority due to the weapon used; d).- The fact that the perpetrator of the crime does not run any risk of being killed or injured by the victim, and that the former acts in self-defense. - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The *corpus delicti* of **AGGRAVATED HOMICIDE**, crime provided for in articles 123 and 126 in relation to article 148 section II, all of the Criminal Code, is found to be legally proven in the records in terms of what is set forth in article 255 of the Code of Criminal Procedure with the evidentiary means analyzed as follows: - - - - - - - - - - - - - - - - - - - - - - -

**A).-** With the proceeding of **TRANSPORTATION OF PERSONNEL AND MINISTERIAL ATTESTATION TO THE CORPSE**, carried out by the Investigative Agent of the Public Prosecutor who attested that the **STATE MINISTERIAL POLICE DISPATCH CENTER FOR AGGRAVATED HOMICIDES** was informed by telephone of a dead person inside the domicile located at Calle Tule, Praderas de la Mesa. Therefore, acting personnel of this State Public Prosecutor, physically and legally appeared at the indicated site, arriving at 03:27 hours to the domicile located at **CALLE TULE #1314, COLONIA PRADERAS DE LA MESA, DELEGACION CERRO COLORADO, OF THIS CITY**, along with the Agents of the State Ministerial Police assigned to the Investigative group of Aggravated Homicide whose names are **JUAN CARLOS AARON VAZQUEZ and JORGE OMAR RIOS MONTAÑO**; as well as the Ministerial Agents of the Tijuana Zone Night Shift, CANCINO, VIRRUETA, both under the command of Agent MEZA; the Criminalistics Experts assigned to the Division of Expert Services, Tijuana Zone, NORMA ALICIA SANCHEZ RODRIGUEZ and REBECCA MATA; representing the State Laboratory assigned to Expert Services, Chemist MARIA CHIQUETE; among those serving at the Forensic Medical Service are FRANCISCO RAMIREZ and ALVARO RUIZ. Also found present protecting the area were the members of patrol unit number P-4957 under the command of Officer MARTINEZ, member of the Municipal Public Security Secretariat who showed us the place in which WE ATTESTED to have had at sight a street paved with hydraulic cement. It is in front of the domicile marked with number 1314, on the street, over the sidewalk, where we attest to have at sight the MALE CORPSE OF AN INDIVIDUAL who in lifetime was named **JORGE RANGEL MONTES,** age 43. The person identifying the corpse was named EDELMIRA MONTES HERNANDEZ, who stated to be the mother of the now deceased. She also stated that **JORGE RANGEL MONTES,** now deceased, arrived at her domicile with a sharp instrument injury, and before he died, he said to her that **JORGE "N"** had caused the wound. Continuing with the proceeding, it is attested that there is at sight a male corpse who in lifetime was named **JORGE RANGEL MONTES**. The corpse was found lying in a supine position, with the cephalic region oriented southwards, the lower-extremities were knee-bent southwards, and slightly adducted, with the upper left extremity extended and adducted while the upper-right extremity was slightly bent and adducted. The now deceased is seen dressed in blue jeans, grey sweatshirt, and black socks. Upon continuing with the examination of the corpse, there is observed a total absence of consciousness, eye and medullary reflexes not responding to the stimulus of sight light and opacity. There is a lack of spontaneous respiration, since there is no rhythmic body movement. Upon touching the body, no pulse is

perceived, and the temperature is lower to that of the surrounding environment, and there is seen obvious corpse pallor; all the signs are indicative of a real, true, and recent death. Thereafter, personnel of Expert Services took photographs of the body, the proceeding was then followed by the removal of the corpse carried out by personnel of the Forensic Medical Service. Then, personnel of Expert Services proceeded to take photographs of the inferential evidence when the corpse was removed, finding a red sweatshirt underneath the corpse. Likewise, there were seen blood stains on the vertical plane of the main door of the aforementioned domicile. There were also seen various blood stains on a radio where the body of the deceased was found. Proceeding to the examination of the corpse, the **PHYSICAL CHARACTERISTICS** observed are: 1.60 meters tall, brown-skinned, approximately 43 years old, of THIN build, with SHORT DARK-BROWN hair, OVAL face, BROWN eyes, WIDE forehead, THICK eyebrows, UPTURNED nose, THICK lips, LARGE mouth, OVAL chin, MEDIUM-SIZED ears, SHAVED moustache and GOATEE-TYPE beard. NO distinguishing marks were identified. The following **CLOTHING** was being worn: Blue Levi's jeans, size 34x32; grey and green plaid underpants, brand JOKER; black socks; grey-colored t-shirt with a printed legend that reads ACCESS on the upper front, on the back, there can be seen four holes or cuts in the fabric. There are also present the following **MARKS OF PHYSICAL VIOLENCE:** 1.- A wound seemingly produced by stabbing found in the lower part of the right jaw, approximately 2x3 centimeters long; 2.- A wound seemingly produced by stabbing in the lower right side of the neck, measuring approximately 4.5x1 centimeters; 3.- A wound seemingly produced by stabbing in the front surface of the distal third of the right arm, approximately 7x2.5 centimeters long;  4.- A wound seemingly produced by stabbing on the inside part of the thumb of the left hand one centimeter in diameter; 5.- Two wounds seemingly produced by stabbing in the right side of the back, respectively measuring approximately 5x2 centimeters and 3x1 centimeters; 6.- A wound seemingly produced by stabbing in the mid-line of the posterior parietal region, approximately two centimeters long. In reference to **BELONGINGS**, it is attested that the victim was not carrying any personal objects. Thereafter, Personnel of the Forensic Medical Service were instructed to remove and transport the corpse to the facilities of the Forensic Medical Service at Boulevard Fundadores, Colonia Juarez, in this city, and they proceeded to enter the corpse into the facilities of the same in order to perform the autopsy according to Law. Therefore, in continuation of this proceeding, the Public Security Officers informed us that a few houses ahead, in the house marked with number 1325 on the same street and area, there was found the weapon with which the now deceased was allegedly wounded, an thus it is attested that there is noted constant dripping leading from north to south, which ends at the premises marked with number 1325, this being an approximate distance of 50 meters. The premises is a residential house which front is approximately 10 meters wide, made of material [sic]. It is a two-story building, with a sign in front that reads "FOR RENT 664-503-9747", with a black barred pedestrian gate. Before reaching the domicile, on the dirt path along the sidewalk, there was found a set of keys hanging from a black and silver key ring with a legend that reads "HUSKY". Passing the black barred pedestrian gate, at a distance of approximately 20 cm, there is attested to have at sight an IMPROVISED SPIKE, blood-drenched; there is also a trail of constant dripping on the floor which continues all the way to the second floor by way of the stairs, which lead to some apartments through a hallway. It is this place where the trail of constant dripping ends. Continuing on with the proceeding, the state laboratory personnel took samples from the "improvised spike" and collected samples of the trail of constant dripping to be properly analyzed. The

IMPROVISED SPIKE MEASURED APPROXIMATELY 11 CENTIMETERS, and is the same object which was packaged by personnel of Expert Services for analysis purposes. Such object is held at the facilities of this Office of the Public Prosecutor, to be handed over to whomever it legally corresponds. – With the above, the present proceeding is concluded. –

B).- With the **POLICE REPORT**, number TIN/519/2012, dated May 7, 2012, issued by **Officers of the Municipal Public Security OSCAR MARTINEZ LOPEZ and HECTOR LEON MUÑOZ** to their Superior. In such report, they sated that it being 02:10 hours on this date, we were carrying out security patrolling on board of unit 4957, when radio central instructed us to go to Calle Tule No. 1314, which is lateral [sic] to Calle Camichin in Colonia Praderas de La Mesa to respond to the report of a dead person, and for this reason we went to said location. **PREVENTIVE INTERVENTION:** Once at the site we interviewed the woman named **EDELMIRA MONTES HERNANDEZ**, 71 years old, same person who stated to us that moments before when she was at her domicile, she heard when from outside, on the public throughway, her son named **JORGE RANGEL MONTES**, 43 years old, was calling her out loud, and therefore she approached the site and once she opened the door ,she saw that her son was visibly hurt and his clothes were full of blood. Therefore, she requested a Red Cross ambulance. Unit BC-166 arrived to that place, paramedic Paredes was in charge, and this person told her that said person was dead due to what appeared to be wounds made with a sharp weapon on different parts of his body. Likewise, ministerial agents Meza and Virueta arrived at the site, as well as Emigdio Gutierrez from Intentional Homicides, chemist Norma Rebeca Mata from Expert Services, and Francisco Ramirez from the Forensic Medical Service, so the superior authority was notified thereabout. - - - - - - - -

C).- With the statement rendered by witness **WALTER ULISES ROSALES HEREDIA**, before the Investigative Public Prosecutor, on which he stated the following: That he was 8 years old when he went to live to Los Angeles, California, where he had lived for 22 years and in October 2010 he was deported for the crime of domestic violence. When he was deported he returned to live at his hometown in Michoacan and in June 2011, he intended to return to the United States as an illegal immigrant, but things got complicated so he has not been able to return to Los Angeles, and remained in this city with a friend called RAUL, who offered him to be his roommate at his house so they could share expenses. In that same place called *Praderas de la Mesa*, he met a man named **JORGE RANGEL MONTES aka JORGE** and his brother **OCTAVIO RANGEL MONTES aka EL CONEJO**, with whom they shared the light bulb which they used to smoke crystal and Marihuana. One of those times, **JORGE RANGEL**, now deceased, told him to go to his house because he was going to give him some stuff as gifts and when he got there he told him to stay and live with him so that they could share expenses, they lived together for about a month. The deponent stated that he was in fact a friend of the one nicknamed **CONEJO** and not a friend of **JORGE**, given that the deceased turned extremely violent when he got high on drugs along with the individual named **GEORGE, nicknamed el GÜERO**, when they got together at the place where the deceased lived, they got high on the shoot up drug known as CHIVA. So on Sunday, May 6, 2012 around 17:00 hours when he was at the domicile along with the deceased, **GEORGE, nicknamed el CONEJO** arrived at the place and he started to do drugs along with **JORGE** now deceased, so the deponent, after smoking a marihuana

EXT_Pasillas Jaramillo_000307

cigarette, around 23:00 hours decided to go to his room, given that **JORGE** was getting very violent and he wanted to avoid getting in problems with the deceased. Around 2:00 hours of May 7, 2012, the deponent woke up because of the loud voices because **JORGE** and **GÜERO** were arguing, and he saw **JORGE** pushing **GEORGE nicknamed el GÜERO** towards the main door of the apartment, and when the deponent approached to ask what was going on, **JORGE** told him to get back to his room and to lock himself in, and the deponent heard a neighbor shout STOP ARGUING, IF YOU CAN'T HANDLE THAT SHIT, QUIT THAT VICE, and he also heard the neighbor shout, WELL, IT'S YOUR PROBLEM. He heard a door being slammed close, and since he heard nothing else, he went back to his room. And half an hour later, municipal police officers arrived, they woke him up and told him **JORGE** was dead; they questioned him about the matter and if he knew anything about the death of **JORGE**. The deponent likewise states that **GEORGE, nicknamed el GÜERO**, has the following physical features: he is white skinned, strong built, approximately 26 years old, crew cut brown hair, blue eyed, groomed mustache, 1.80 meters tall, wide forehead, medium-sized lips, medium-sized mouth, bushy arched eyebrows. He stated if he saw him again he would without a doubt recognize him. Being this all he has to state. - - - - - - - - - - - -

D).- With the statement rendered by witness **EDELMIRA MONTES HERNANDEZ**, before the Investigative Agent of the Public Prosecutor, in which she stated the following: I appear in this Office of the Public Prosecutor on my own free will and that I have been living in the State of California, United States of America for about 35 years, and it has been approximately 8 years to date that my son **JORGE RANGEL MONTES** came to live in this city since he had been living in the neighboring country same as the deponent [sic], therefore each month I would come to this city to see my son **JORGE**, so I stayed in the home of my friend **ROSA AMELIA OROZCO SANCHEZ** who lives at **CALLE TULE No. 1314 COLONIA PRADERA DE LA MESA, in this city of Tijuana, Baja California.** And my son **JORGE** lived in an apartment located close to the same street and colonia at number 1325. On the 6th of the current month and year I was in this city at my friend **AMELIA**'s and as I stated before, around 02:00 hours of Monday, May 7 of the current year, I was lying down and at that moment I heard someone crying out loud on the street and it was my son **JORGE,** who cried: **"MAMA, ROCIO (referring to my friend Rosa Amelia), CHINO HELP ME OUT, I AM DYING",** so we immediately came out and I saw my son **JORGE RANGEL MONTES** was seated on the sidewalk and he said to me, **MAMA, HOLD ME TIGHT, CALL AN AMBULANCE, TAKE ME,** and I asked him who had hurt him, and he answered **IT WAS GEORGE EL GÜERO, EL GEORGE, EL GEORGE,** he stabbed me (meaning that he had been stabbed with a sharp weapon), and therefore they dialed 066 for an ambulance so that medical assistance would be provided to my son **JORGE**, now deceased, and the ambulance arrived shortly after to provide him with medical attention. But the Red Cross paramedics told me that my son **JORGE** had passed away; municipal police officers also arrived; minutes later the Public Prosecutor Office Personnel and the Forensic Medical Service arrived and the latter took my son's corpse, so I wish to state that the person who killed my son **JORGE RANGEL MONTES** is **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) GEORGE ANTHONY PASILLAS (AKA) GEORGE A. PASILLAS (AKA) EL GÜERO,** whom my son referred to as **GEORGE EL GÜERO** and I have known since he was a child; I met him in the State of California since **GEORGE EL GÜERO** is a United States citizen, and is physically as follows: approximately

26 years old, white skinned, blue eyed, shaved head, strong build, he regularly wears a mustache, but occasionally he shaves it. In this proceeding, acting personnel continues to place at the sight of the witness two color photographs of a male person, which were in turn remitted **by Preliminary Report with number 349/HOM.DOL./12 dated May 7, 2012, signed by OSCAR RODRIGUEZ ANDALON and ADRIANA E. CAMACHO ROCHA,** the deponent saw them thoroughly and referred that the male person who appears in the photograph is the person I [sic] referred to as the person who deprived my son of life, seemingly using a blade or a sharp instrument, this person was **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) GEORGE ANTHONY PASILLAS (AKA) GEORGE A. PASILLAS (AKA) GEORGE (AKA) EL GÜERO,** who at present looks exactly as he appears in the two photographs, since he has not changed physically. After depriving my son **JORGE RANGEL MONTES** of life, this person fled to an unknown destination. It is my wish to add that I know he lived in Praderas de la Mesa, and after murdering my son he fled to an unknown destination given that there is no information on him or his whereabouts. So I request to carry out the necessary investigations so as to locate **GEORGE EL GÜERO JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) GEORGE ANTHONY PASILLAS (A) GEORGE A. PASILLAS** and justice be served for his perpetration of the Homicide of my son who during lifetime was named **JORGE RANGEL MONTES.** This being all the deponent has to state. - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


**E).–** With the statement rendered by witness **ILDA RANGEL** who, before the Investigative Agent of the Public Prosecutor, stated: That she had come from the facilities of the Forensic Medical Service, where she fully recognized without fear to be mistaken her **BROTHER** who during lifetime was named **JORGE RANGEL MONTES**, age 43, date of birth December 12, 1970, marital status single, born in Guadalajara, Jalisco, unemployed, domiciled at Calle Tule No. 1314, Colonia Praderas de La Mesa, completed middle school, a Catholic, physically as follows: Approximately 1.60 tall, thin build, light olive skin, straight hair, oval shaped face, brown eyes, wide forehead, thick eyebrows, pug nose, thick lips, large mouth, oval chin, medium-sized ears, shaved moustache, goatee, and that he did not have any distinguishing marks; he did not smoke, unknown [sic], unknown [sic], he did not suffer any illness; and in relation to the manner in which her **BROTHER** died, she stated: "That today May 7, 2012 around 02:00 hours, my sister named **CLAUDIA RANGEL MONTES** told me that our mother had telephoned her to tell her that my brother **JORGE RANGEL MONTES** had been killed, and for that reason I travelled to this city of Tijuana, in order to appear before the Forensic Medical Service to identify the corpse of my brother. I would like to add that I do not know who killed my brother or the reason why they did so. Therefore the deponent is present at the premises of this office to request the delivery of the corpse of her **BROTHER** who during lifetime was named **JORGE RANGEL MONTES** so that she can make the corresponding funeral arrangements. And this is all she has to state.


**F).–** With the statement of witness **TIENA RAE** [sic] **GUTIERREZ** who, before the Investigative Agent of the Public Prosecutor, stated: That she was coming from the facilities of the Forensic Medical Service, place at which she fully recognized her **FATHER** who during lifetime was named **JORGE RANGEL MONTES**, age 43, date of birth December 12,

1970, marital status single, born in Guadalajara, Jalisco, unemployed, domiciled at Calle Tule No. 1314, Colonia Praderas de La Mesa, having attained middle school, a Catholic, and physically he was as follows: About 1.60 tall, thin build, light olive skin, straight hair, oval-shaped face, brown eyes, wide forehead, thick eyebrows, pug nose, thick lips, large mouth, oval chin, medium-sized ears, shaved moustache, goatee, and he did not have any distinguishing marks; he did not smoke, unknown [sic], unknown [sic], he did not suffer any illness; and in relation to the manner in which her BROTHER [sic] died, she stated: "That today May 7, 2012, my aunt named ARGELIA informed me that my father **JORGE RANGEL MONTES** had been killed, and for that reason I travelled to this city of Tijuana, so as to appear before the Forensic Medical Service to identify the corpse of my father. I would like to add that I do not know who killed my father or the reason why they did so, and therefore she is present at the premises of this office to request the delivery of the corpse of her **FATHER** who during lifetime was named **JORGE RANGEL MONTES** so that she can make the corresponding funeral arrangements. And this is all she has to state. - - -

G).- With the **AUTOPSY CERTIFICATE and MINISTERIAL ATTESTATION THERETO**, exhibited before the Investigative Agent of the Public Prosecutor issued by the **Forensic Medical Expert JOSE LUIS ARGUELLO MONTIEL** on May 7, 2011, upon the person who during lifetime was named **JORGE RANGEL MONTES**. After the autopsy there was determined that the **IMMEDIATE CAUSE OF DEATH WAS HYPOVOLEMIC SHOCK SECONDARY TO WOUNDS PENETRATING NECK, THORAX AND ABDOMEN DUE TO INJURIES CAUSED WITH A SHARP INSTRUMENT**. The above is the same certificate to which the Investigative Agent of the Public Prosecutor attested. - - - - - - - - - - -

E).- [sic] With the **EXPERT OPINION REPORT ON TOXICOLOGY and MINISTERIAL ATTESTATION THERETO**, recorded under number **LZT/1989/2012**, dated May 7, 2011, rendered by **PABLO GUILLERMO RODRIGUEZ RUIZ**, assigned to the State Laboratory of the Office of the Attorney General for the State. Thereby, there is established the following **CONCLUSION**: "The sample contained in the plastic tube with a capacity of 6 milliliters, containing urine, labeled as 105/12/201 **JORGE RANGEL MONTES**, which was remitted under chain of custody with folio number 107, and received on May 7 of the current year, related to Preliminary Investigation 105/12/201, resulted **POSITIVE** to the presence of metabolites of Methamphetamine, Amphetamine, and Opiate". This expert opinion was attested by the Investigative Agent of the Public Prosecutor. - - - - - - - - - - - - - - - - - - - - -

F).- With the **EXPERT OPINION ON ALCOHOLEMY and MINISTERIAL ATTESTATION THERETO**, recorded under number **LZT/1990/2012**, dated May 7, 2011, rendered by **GUILLERMO RODRIGUEZ RUIZ**, assigned to the State Laboratory of the Office of the Attorney General for the State. Thereby, there is established the following **CONCLUSION**: "The sample contained in the plastic tube with a capacity of 6 milliliters, containing blood, labeled as **105/12/201 JORGE RANGEL MONTES**, which was remitted under chain of custody with folio number 107, and received on May 7 of the current year, related to **Preliminary Investigation AP/105/12/201, showed NO presence of alcohol"**. This expert opinion was attested by the Investigative Agent of the Public Prosecutor. - - - - -

**G).–** With the **EXPERT OPINION ON BLOOD COMPARISON AND MINISTERIAL ATTESTATION THERETO**, recorded under number LZT/2119/2012, dated May 7, 2012, issued by **MARIA DE LOS ANGELES RODRIGUEZ LOPEZ,** assigned to the State Laboratory of the Office of the Attorney General for the State. Thereby, there is established the following **CONCLUSION: FIRST:** "The brownish red stains collected at the domicile of Calle Tule No. 1325, Fraccionamiento Praderas de La Mesa, DO correspond to human blood: **SECOND:** The brownish red stains collected at the domicile of Calle Tule number 1325, Fraccionamiento Praderas de La Mesa correspond to blood type "O"; **THIRD:** The blood type to which the sample remitted to the Forensic Medical Service belongs, identified under Preliminary Investigation number 105/12/201, corresponds to blood type **O Rh POSITIVE**". This expert opinion was attested by the Investigative Agent of the Public Prosecutor. - - - - -

**H).–** With the **DIGITALIZED COPY OF TWO PHOTOGRAPHS AND MINISTERIAL ATTESTATION THERETO**, whereby there is observed the face of a male person with the following physical description: light skinned, strong build, crew cut dark short hair, trimmed mustache, wide forehead, medium-sized lips, medium-sized mouth, thick arched eyebrows, in the first picture the man can be seen wearing a black t-shirt and holding a baby dressed in white in his arms, and in the second picture he is wearing a blue t-shirt; such photographs were attested by the Agent of the Investigative Public Prosecutor. - - - - - - - - - - - - - - - - - - - - -

**I).–**With the **POLICE REPORT number 349/HOM.DOL./12** dated May 7, 2012, rendered to the Investigative Agent of the Public Prosecutor by Agents of the **State Ministerial Police OSCAR RODRIGUEZ ANDALON and ADRIANA E. CAMACHO ROCHA,** which shall be taken as fully reproduced, in keeping with the principle of procedural economy. - - - - - - - - -

The preceding evidentiary elements are given the individual and joint evidentiary weight established for said purpose in articles 211, 215, 218, 221, 222 and 223 of the Code of Criminal Procedure, since they turn out to be appropriate to legally prove that on May 7, 2012, around 02:00 hours the accused, **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (AKA) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** being at the domicile on Calle Tule No. 1325, Colonia Praderas de La Mesa, Delegacion Cerro Colorado, in this city, the aforementioned accused advantageously killed **JORGE RANGEL MONTES,** now deceased, since the former was carrying a knife-like sharp instrument, causing therewith the injuries that led to his death, as described in the autopsy certificate as the immediate cause of death: **hypovolemic shock secondary to wounds penetrating neck, thorax and abdomen caused with a sharp instrument**. Such report was issued by the **Forensic Medical Expert JOSE LUIS ARGUELLO MONTIEL** and attested by the Investigative Agent of the Public Prosecutor. Since the perpetrator did not run any risk of

being killed or injured by the victim, there were materialized the elements defining the *corpus delicti* of **AGGRAVATED HOMICIDE.** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**II.–** **The Probable Responsibility** of the accused **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO** for the commission of the crime of **AGGRAVATED HOMICIDE,** crime provided for in article 123 in relation to 148, section II of the Criminal Code in force for the State, in his capacity as direct perpetrator, in conformity with the stipulations of article **16, section I** of the previously invoked Legal Ordinance, and that in the record of the proceedings it has been made legally evident with all of the evidentiary elements which serve as the basis for proving the *corpus delicti* under review. Amongst these stands out the statement made by witness **EDELMIRA MONTES HERNANDEZ**, before the Investigative Agent of the Public Prosecutor in which she stated that she has been living in the State of California, United States of America for about 35 years, and it has been approximately 8 years to date that her son **JORGE RANGEL MONTES** came to live in this city since he had been living in the neighboring country same as the deponent, therefore each month she would come to this city to see her son **JORGE**, so she used to stay in the home of her friend **ROSA AMELIA OROZCO SANCHEZ** who lives at **CALLE TULE No. 1314 COLONIA PRADERAS DE LA MESA, in this city of Tijuana, Baja California.** And her son **JORGE** lived in an apartment located close to the same street and colonia at number 1325; on the 6th of the current month and year she was in this city at her friend **AMELIA**'s and around 02:00 hours of Monday, May 7 of the current year, she was lying in bed and at that moment she heard someone cry out loud on the street and it was her son **JORGE**, who cried: **"MAMA, ROCIO (referring to my friend Rosa Amelia), CHINO HELP ME OUT, I AM DYING"**, so she immediately came out and she saw her son **JORGE RANGEL MONTES** was sitting on the sidewalk and he said to her, **MAMA, HOLD ME TIGHT, CALL AN AMBULANCE, TAKE ME,** and she asked him who had hurt him, and he answered **IT WAS GEORGE EL GÜERO, EL GEORGE, EL GEORGE,** he stabbed me, and therefore they called for an ambulance so that medical assistance would be provided to the deceased, and the ambulance arrived shortly after to provide him with medical attention. But the Red Cross paramedics told her that her son **JORGE** had passed away; so she stated that the person who killed her son **JORGE RANGEL MONTES**, is **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) GEORGE ANTHONY PASILLAS (AKA) GEORGE A. PASILLAS (AKA) EL GÜERO,** whom he referred to as **GEORGE EL GÜERO** and the witness has known since he was a child; she met him in the State of California because **GEORGE EL GÜERO** is a United States citizen, who physically is as follows: approximately 26 years old, white skinned, blue eyed, shaved head, strong build, he regularly uses a mustache, but occasionally he shaves it. In this proceeding, acting personnel continues to place at the sight of the witness two color photographs of a male person, that were in turn remitted **by means of Preliminary Report with number 349/HOM.DOL./12 dated May 7, 2012, signed by OSCAR RODRIGUEZ ANDALON and ADRIANA E. CAMACHO ROCHA,** the deponent saw them thoroughly and referred that the male person who appears in the photograph is the person I [sic] referred to as the person who deprived her son of life by seemingly using a blade or a sharp instrument, this person was **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) GEORGE ANTHONY PASILLAS (AKA)**

**GEORGE A. PASILLAS (AKA) GEORGE (AKA) EL GÜERO,** who at present looks exactly as he appears in the two photographs, since he has not changed physically. After depriving my son **JORGE RANGEL MONTES** of life, this person fled to an unknown destination. This statement is confirmed by the statement rendered by witness **WALTER ULISES ROSALES HEREDIA,** before the Investigative Public Prosecutor, on which he stated That he was 8 years old when he went to live to Los Angeles, California, where he lived for 22 years and in October 2010 he was deported for the crime of domestic violence. When he was deported he returned to live at his hometown in Michoacan and in June 2011, he intended to return to the United States as an illegal immigrant, but things got complicated so he has not been able to return to Los Angeles and remained in this city with a friend named RAUL, who offered him to be his roommate at his house so they could share expenses. In that same place called *Praderas de la Mesa,* he met a man named **JORGE RANGEL MONTES aka JORGE** and his brother **OCTAVIO RANGEL MONTES aka EL CONEJO,** with whom they shared the light bulb they used to smoke crystal and Marihuana. One of those times, **JORGE RANGEL,** now deceased, told him to go to his house because he was going to give him some stuff as gifts and when he got there he told him to stay and live with him so that they could share expenses. They lived together for about a month. The deponent stated that he was in fact a friend of the one nicknamed **CONEJO** and not a friend of **JORGE,** given that the deceased turned extremely violent when he got high on drugs along with the individual named **GEORGE, nicknamed el GÜERO,** when they got together at the home of the deceased, they got high on the shoot up drug known as *chiva*. So on Sunday, May 6, 2012 around 17:00 hours when he was at the domicile along with the deceased, **GEORGE, nicknamed el CONEJO** arrived at the place and he started to do drugs along with **JORGE** now deceased, so the deponent, after smoking a marihuana cigarette, around 23:00 hours decided to go to his room, given that **JORGE** was getting very violent and he wanted to avoid getting in problems with the deceased. Around 2:00 hours of May 7, 2012, the deponent woke up because of the loud voices. **JORGE** and **GÜERO** were arguing, he saw **JORGE** pushing **GEORGE nicknamed el GÜERO** towards the main door of the apartment, and when the deponent approached to ask what was going on, **JORGE** told him to get back to his room and to lock himself in, and the deponent heard a neighbor telling them out loud to stop arguing and if they were not able to handle that shit, then they should quit the vice and he also heard the neighbor shout, *well, it´s your problem.* He heard a door being slammed close, and since he heard nothing else, he went back to his room, and half an hour later municipal police officers arrived, they woke him up and told him **JORGE** was dead, they questioned him about the matter and if he knew anything about the death of **JORGE.** The deponent likewise states that **GEORGE, nicknamed el GÜERO,** has the following physical features: he is white skinned, strong built, approximately 26 years old, crew cut brown hair, blue eyed, groomed mustache, 1.80 meters tall, wide forehead, medium-sized lips, medium-sized mouth, bushy arched eyebrows. He stated if he saw him again he would without a doubt recognize him. The evidentiary means get inferential weight in conformity with the provisions of article 223 of the Code of Criminal Procedure in force for the State; in turn, it is granted full evidentiary weight upon being corroborated with the proceeding of **TRANSPORTATION OF PERSONNEL AND MINISTERIAL ATTESTATION TO THE CORPSE;** carried out by the Investigative Agent of the Public Prosecutor, who attested to the physical and legal transfer to the domicile located at **CALLE TULE #1314, COLONIA PRADERAS DE LA MESA, DELEGACIÓN CERRO COLORADO, IN THIS CITY,** along with Officers of the State Ministerial Police, assigned to the Investigative group of

Aggravated Homicides, whose names are **JUAN CARLOS AARON VAZQUEZ, and JORGE OMAR RIOS MONTAÑO**; likewise, there were units under the command of Officer Martinez of the Municipal Public Security Secretariat guarding the area and the officers thereon were those that showed us the place in which we attested to have had at sight a street paved with hydraulic cement. It is in front of the domicile marked with number 1314, on the street, over the sidewalk, where we had at sight the male corpse of an individual who in lifetime was named **JORGE RANGEL MONTES**, age 43. The person identifying the corpse was named **EDELMIRA MONTES HERNANDEZ**, who stated to be the mother of the now deceased. She also stated that **JORGE RANGEL MONTES,** now deceased, arrived to her domicile, with a sharp instrument injury, and before he died, he said to her that **JORGE "N"** had caused the wound. Continuing with the proceeding, it is attested that there is at sight a male corpse who in lifetime was named **JORGE RANGEL MONTES**. The corpse was found lying in a supine position, with the cephalic region oriented southwards, the lower extremities were knee-bent southwards, and slightly adducted, with the upper left extremity extended and adducted while the upper-right extremity was slightly bent and adducted. The now deceased is seen dressed in blue jeans, grey sweatshirt, and black socks. Upon continuing with the examination of the corpse, there is observed a total absence of consciousness, eye and medullary reflexes not responding to the stimulus of sight light and opacity. There is a lack of spontaneous respiration, since there is no rhythmic body movement. Upon touching the body, no pulse is perceived, and the temperature is lower to that of the surrounding environment, and there is seen obvious corpse pallor; all the signs are indicative of a real, true, and recent death. Thereafter, personnel of Expert Services took photographs of the body, the proceeding was then followed by the removal of the corpse carried out by personnel of the Forensic Medical Service. Then, personnel of Expert Services proceeded to take photographs of the inferential evidence when the corpse was removed, finding a red sweatshirt underneath the corpse. Likewise, there were seen blood stains on the vertical plane of the main door of the aforementioned domicile. There were also seen various blood stains on a radio where the body of the deceased was found. Proceeding to the examination of the corpse, the **PHYSICAL CHARACTERISTICS** observed are: 1.60 meters tall, brown-skinned, approximately 43 years old, of THIN build, with SHORT DARK-BROWN hair, OVAL face, BROWN eyes, WIDE forehead, THICK eyebrows, UPTURNED nose, THICK lips, LARGE mouth, OVAL chin, MEDIUM-SIZED ears, SHAVED moustache, and GOATEE-TYPE beard. No distinguishing marks were identified. The following **CLOTHING** was being worn: Blue Levi's jeans, size 34x32; grey and green plaid underpants, brand JOKER; black socks; grey-colored t-shirt with a printed legend that reads ACCESS on the upper front; on the back, there can be seen four holes or cuts in the cloth. There are also present the following **MARKS OF PHYSICAL VIOLENCE**: 1.- A wound seemingly produced by  stabbing found in the lower part of the right jaw, approximately 2x3 centimeters long; 2.- A wound seemingly produced by stabbing in the lower right side of the neck, measuring approximately 4.5x1 centimeters; 3.- A wound seemingly produced by stabbing in the front surface of the distal third of the right arm, approximately 7x2.5 centimeters long; 4.- A wound seemingly produced by stabbing on the inside part of the thumb of the left hand one centimeter in diameter; 5.- Two wounds seemingly produced by stabbing in the right side of the back, respectively measuring approximately 5x2 centimeters and 3x1 centimeters; 6.- A wound seemingly produced by stabbing in the mid-line of the posterior parietal region, approximately two centimeters long. In reference to **BELONGINGS**, it is attested that the victim was not carrying any personal

objects. Thereafter, Personnel of the Forensic Medical Service were instructed to remove and transport the corpse to the facilities of the Forensic Medical Service at Boulevard Fundadores, Colonia Juarez, in this city, and they proceeded to enter the corpse into the facilities of the same in order to perform the autopsy according to Law. Therefore, in continuation with this proceeding, Public Security Officers informed us that a few houses ahead, in the house marked with number 1325 on the same street and area, there was found the weapon with which the now deceased was allegedly wounded, an thus it is attested that there is constant dripping leading from north to south, which ends at the premises marked with number 1325, this being an approximate distance of 50 meters. The premises is a residential house which front is approximately 10 meters wide, made of material [sic]. It is a two-story building, with a sign in front that reads "FOR RENT 664-503-9747", with a black barred pedestrian gate. Before reaching the domicile there was found on the dirt path along the sidewalk, a set of keys hanging from a black and silver key ring with a legend that reads "HUSKY". Passing the black barred pedestrian gate, at a distance of approximately 20 cm, there is attested to have at sight an IMPROVISED SPIKE, blood-drenched; there is also a trail of constant dripping on the floor which continues all the way to the second floor by way of the stairs, which lead to some apartments through a hallway. It is this place where the trail of constant dripping ends. Continuing with the proceeding, the state laboratory personnel took samples from the "improvised spike" and collected samples of the trail of constant dripping to be properly analyzed. The IMPROVISED SPIKE MEASURED APPROXIMATELY 11 CENTIMETERS, and is the same object which was packaged by personnel of Expert Services for analysis purposes. Such object is held at the facilities of this Office of the Public Prosecutor, to be handed over to whomever it legally corresponds; such proceeding gets full evidentiary weight according to the provisions of article 218 of the Code of Criminal Procedure currently in force for the State, since it was carried out by the investigative Authority with the powers granted thereto in Constitutional article 21. Reinforcing the above is the **POLICE REPORT** issued by **Municipal Public Security Officers OSCAR MARTINEZ LOPEZ and HECTOR LEON MUÑOZ** to their Superior. Thereby they sated that it being 02:10 hours on the date the events took place, they were carrying out security patrolling, when they were instructed to appear at Calle Tule No. 1314, which is lateral [sic] to Calle Camichin in Colonia Praderas de La Mesa to respond to the report of a dead person, and for such reason they appeared at said location to interview witness **EDELMIRA MONTES HERNANDEZ**, who stated to them that moments before she was at her domicile, she heard when from outside on the public throughway her son named **JORGE RANGEL MONTES**, age 43, was calling her out loud, and therefore she approached the site and once she opened the door she saw that her son was visibly hurt and his clothes were full of blood. So she requested a Red Cross ambulance. Unit BC-166 arrived to that place, paramedic Paredes was in charge, and this person told her that said person was dead due to what appeared to be wounds made with a sharp instrument on different parts of his body. Likewise, ministerial agents Meza and Virueta arrived at the site, as well as Emigdio Gutierrez from Intentional Homicides, chemist Norma Rebeca Mata from Expert Services, and Francisco Ramirez from the Forensic Medical Service. Such piece of evidence is granted evidentiary weight as established by article 223 of the Code of Criminal Procedure, reaching thus full evidentiary weight, upon being confirmed with the remaining evidence already in the file. Added to the preceding, there appears in the file the **AUTOPSY CERTIFICATE and MINISTERIAL ATTESTATION THERETO**, exhibited before the Investigative Agent of the Public Prosecutor and performed by the **Forensic Medical Expert**

**JOSE LUIS ARGUELLO MONTIEL** on May 7, 2011, upon the person who during lifetime was named **JORGE RANGEL MONTES**. After the autopsy, there was determined that the **IMMEDIATE CAUSE OF DEATH WAS HYPOVOLEMIC SHOCK SECONDARY TO WOUNDS PENETRATING NECK, THORAX, AND ABDOMEN DUE TO INJURIES CAUSED WITH A SHARP INSTRUMENT**; as well as the **EXPERT OPINION REPORT ON TOXICOLOGY and MINISTERIAL ATTESTATION THERETO**, recorded under number **LZT/1989/2012**, dated May 7, 2011, rendered by **PABLO GUILLERMO RODRIGUEZ RUIZ**, assigned to the State Laboratory of the Office of the Attorney General for the State. Thereby, there is established the following **CONCLUSION**: "The sample in the plastic tube with a capacity of 6 milliliters, containing urine, labeled as 105/12/201 **JORGE RANGEL MONTES,** which was remitted under chain of custody with folio number 107, and received on May 7 of the current year, related to Preliminary Investigation 105/12/201, resulted **POSITIVE** to the presence of metabolites of Methamphetamine, Amphetamine, and Opiate". Likewise, there is the **EXPERT OPINION ON ALCOHOLEMY and MINISTERIAL ATTESTATION THERETO**, recorded under number LZT/1990/2012, dated May 7, 2011, rendered by **GUILLERMO RODRIGUEZ RUIZ**, assigned to the State Laboratory of the Office of the Attorney General for the State. Thereby, there is established the following **CONCLUSION**: "The sample contained in the plastic tube with a capacity of 6 milliliters, containing blood, labeled as **105/12/201 JORGE RANGEL MONTES,** which was remitted under chain of custody with folio number 107, and received on May 7 of the current year, related to **Preliminary Investigation AP/105/12/201, showed NO presence of alcohol".** Finally, there is the **EXPERT OPINION ON BLOOD COMPARISON AND MINISTERIAL ATTESTATION THERETO**, recorded under number LZT/2119/2012, dated May 7, 2012, issued by **MARIA DE LOS ANGELES RODRIGUEZ LOPEZ**, assigned to the State Laboratory of the Office of the Attorney General for the State. Thereby, there is established the following **CONCLUSION: FIRST:** "The brownish red stains collected at the domicile of Calle Tule No. 1325, Fraccionamiento Praderas de La Mesa, DO correspond to human blood; **SECOND:** The brownish red stains collected at the domicile of Calle Tule number 1325, Fraccionamiento Praderas de La Mesa correspond to blood type "O"; **THIRD:** The blood type to which the sample remitted to the Forensic Medical Service belongs, identified under Preliminary Investigation number 105/12/201, corresponds to blood type **O Rh POSITIVE**". The autopsy certificate and other expert opinion reports were attested by the Investigative Public Prosecutor and then granted evidentiary weight as established by article 222 of the Code of Criminal Procedure, seeing that they meet the requirements stipulated in article 179 of the aforecited Legal Ordinance; they also bear evidentiary weight according to article 218 of the Code of Criminal Procedure, since it was attested by the Investigative authority in the use of the powers granted thereto by Constitutional article 21; evidentiary means strengthened with the statements rendered by witnesses identified as **ILDA RANGEL and TIENA RAE GUTIERREZ** who stated before the Investigative Agent of the Public Prosecutor that they were coming from the premises of the Forensic Medical Service, where they fully recognized and without fear of making a mistake their **BROTHER and FATHER** respectively, who during lifetime was named **JORGE RANGEL MONTES,** who was 43 years old, born on December 12, 1970, marital status single, born in Guadalajara, Jalisco, unemployed, domiciled at Calle Tule number 1314, Colonia Praderas de La Mesa, middle school attained, a Catholic with following physical description: About 1.60 tall, thin build, light olive skin, straight hair, oval-shaped face, brown eyes, wide forehead, thick eyebrows, pug nose, thick lips, large mouth, oval chin, medium-sized ears, shaved

moustache, goatee, and he did not have any distinguishing marks; he did not smoke, unknown [sic], unknown [sic], he did not suffer any illness. In relation to the manner in which their **BROTHER and FATHER** died, they stated: "That today May 7, 2012 around 02:00 hours, **CLAUDIA RANGEL MONTES** had been killed, and for that reason they travelled to this city of Tijuana, so as to go to the Forensic Medical Service to identify the body of the deceased, and adding that they do not know who might have killed the deceased or the reason why they did so. Added to the above, there is the **DIGITALIZED COPY OF TWO PHOTOGRAPHS AND MINISTERIAL ATTESTATION THERETO** whereby there is observed the face of a male person with the following physical description: light skinned, strong build, crew cut dark short hair, trimmed mustache, wide forehead, medium-sized lips, medium-sized mouth, thick arched eyebrows, in the first picture the man can be seen wearing a black t-shirt and holding a baby dressed in white in his arms, and in the second picture he is wearing a blue t-shirt; such photographs were attested by the Agent of the Investigative Public Prosecutor; as well as **POLICE REPORT number 349/HOM.DOL./12** dated May 7, 2012, rendered to the Investigative Agent of the Public Prosecutor by Agents of the **State Ministerial Police OSCAR RODRIGUEZ ANDALON and ADRIANA E. CAMACHO ROCHA,** which shall be taken as fully reproduced, in keeping with the principle of procedural economy; the piece of evidence above is granted inferential weight by the provisions of article 223 of the Code of Criminal Procedure, reaching thus full evidentiary weight upon being corroborated with the evidence appearing in the case file. The evidence initially bears inferential weight but upon being joined with the aforementioned collection of evidence and those pieces that will be mentioned below, according to the provisions of article 223 of the Code of Criminal Procedure in force for the State, the evidentiary weight thereof increases thus becoming full. The evidentiary elements weighed in terms of articles 212, 213, and 214 of the Code of Criminal Procedure and corroborated and joined in compliance with the provisions set forth in article 223 of the aforementioned legal ordinance, linked naturally and logically, turn out to be appropriate and sufficient to prove the direct intervention of the accused in the perpetration of the crime charged given that on May 7, 2012, around 02:00 hours the accused **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (AKA) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** being found at the domicile of Calle Tule No. 1325, Colonia Praderas de La Mesa, Delegacion Cerro Colorado, in this city, by unfair advantage, killed **JORGE RANGEL MONTES,** now deceased, because he was carrying a knife-like sharp instrument, causing with this weapon the injuries leading to his death as described in the autopsy certificate with the determining cause of death: **hypovolemic shock secondary to wounds penetrating neck, thorax and abdomen due to injuries caused with a sharp instrument**; issued by the **Forensic Medical Expert JOSE LUIS ARGUELLO MONTIEL,** in turn attested by the Investigative Agent of the Public Prosecutor. In the event, the perpetrator did not run any risk of being killed or injured by the victim; thus, the requirements stipulated by articles 16 of the Constitution, 109 and 267, section I of the Code of Criminal Procedure are met, leading to conclude that it is fair and legitimate to issue an **ARREST WARRANT** for **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** as the person probably responsible for the commission of the crime of **AGGRAVATED HOMICIDE.** This warrant must be delivered to the Agent of the Public Prosecutor Assigned so that by means thereof,

this be sent to the State Ministerial Police that shall in turn be ordered the execution of the warrant. Said official shall be informed that once the warrant is executed, the accused must be admitted into the Social Rehabilitation Center of this city, to be placed under the custody of this Court.

PROCURADURÍA
DE LA
REPÚBLICA

Due to what has been previously and legally stated, grounded and reasoned, there is to be decided and there is:

<div align="center">

**D E C I D E D**

</div>

**FIRST:** Have **AN ARREST WARRANT** be issued for **JORGE ANTONIO PASILLAS JARAMILLO (AKA) JORGE PASILLAS JARAMILLO (AKA) EL GEORGE A. PASILLAS (AKA) GEORGE ANTHONY PASILLAS (AKA) GEORGE EL GÜERO (AKA) EL GÜERO,** as the person probably responsible for the commission of the crime of **AGGRAVATED HOMICIDE,** crime charged by the Investigative Agent of the Public Prosecutor.

**SECOND:** HAVE THE ABOVE BE SOLELY NOTIFIED TO THE AGENT OF THE PUBLIC PROSECUTOR ASSIGNED.

**AS** decided and signed by **IGNACIA GLORIA FIMBRES MORENO,** Fourth Criminal Court Judge for this Judicial District, before **VICTOR MANUEL FERNANDEZ CORDOVA,** Second Clerk for Decisions with whom she acts and attests.

THE ARREST WARRANT ISSUED WITHIN CRIMINAL CASE 279/2012 IS CONCLUDED.

[A seal that reads:
FOURTH CRIMINAL COURT
On June 11, 2012 the Agent of the Public Prosecutor of the case was notified and after having been informed, he signed in acknowledgement. I attest.
The Clerk]
[A handwritten legend that reads: Official letter 1679-2 was received on June 11, 2012]
[2 illegible signatures]

IN THE CITY OF TIJUANA, BAJA CALIFORNIA, ON NOVEMBER 20, 2015, THE UNDERSIGNED, COURT CLERK FOR DECISIONS, OSCAR MAURICIO PADILLA RUBIO, OF THE FOURTH CRIMINAL COURT, HEREBY:

PROCURADURÍA GENERAL
DE LA
REPÚBLICA

## C E R T I F I E S

THAT THIS IS A TRUE AND ACCURATE COPY COMPARED FROM THE ORIGINAL DOCUMENT MADE UP OF FIFTEEN WRITTEN PAGES RELATED TO THE ARREST WARRANT OF CRIMINAL CASE NUMBER 279/2012, FILED FOR JORGE ANTONIO PASILLAS JARAMILLO, AKA JORGE PASILLAS JARAMILLO, AKA EL GEORGE, AKA GEORGE ANTHONY PASILLAS, AKA EL GÜERO FOR THE COMMISSION OF THE CRIME OF AGGRAVATED HOMICIDE TO BE DELIVERED TO THE AGENT OF THE PUBLIC PROSECUTOR ASSIGNED FOR ALL THE PERTINENT LEGAL EFFECTS.- I ATTEST.-

THE COURT CLERK FOR DECISIONS

[signed]

OSCAR MAURICIO PADILLA RUBIO



**AUTHENTICATION**

PROCURADURÍA GENERAL
DE LA
REPÚBLICA ‒Mexico City, on June 28, 2016.‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒
‒‒‒The undersigned, **GERARDO RUIZ TERROBA**, Agent of the Federal Public Prosecutor in the service of the General Division of International Proceedings, of the Office of the Deputy Attorney General for Legal and International Affairs, of the Office of the Attorney General of the Republic, pursuant to Articles 21 and 102 (A) of the Political Constitution of the United Mexican States; 206 and 208 of the Federal Code of Criminal Procedure; 2, 4 (III) and 10 (X) of the Organic Law of the Office of the Attorney General of the Republic; 3 (H) (V), 4 (XIII), 6 and 52 (I), of the Regulations of the Organic Law of the Attorney General's Office of the Republic, and along with the attesting witnesses who sign and attest at the end,‒‒‒‒‒‒‒‒‒‒
‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒**CERTIFIES**:‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒
‒‒‒‒That these photocopies consisting of 31 (thirty-one) written pages, is faithful reproduction and tally in all their terms with arrest warrant dated June 8, 2012. Such document is kept within the international extradition file of the General Division of International Proceedings **against JORGE ANTONIO PASILLAS JARAMILLO, aka "JORGE PASILLAS JARAMILLO", aka "EL GEORGE A. PASILLAS", aka "GEORGE ANTHONY PASILLAS", aka "GEORGE EL GÜERO", aka "EL GÜERO"**, same which was at sight for the corresponding comparison for the pertinent legal effects.‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒
‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒ **WE ATTEST**‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒
‒‒‒‒‒

[signed]

**Attesting Witness**                    **Attesting Witness**

[Signed]                                  [Signed]
**Erika Cabrera Becerra**              **Miguel A. Rodriguez Robles**

[SEAL THAT READS:
MEXICAN COAT OF
ARMS,
UNITED MEXICAN
STATES,
MEXICAN ATTORNEY
GENERAL'S OFFICE
GENERAL DIVISION OF
INTERNATIONAL
PROCEEDINGS]

[SEAL THAT READS:
MEXICAN COAT OF ARMS,
UNITED MEXICAN STATES
**MINISTRY OF THE INTERIOR,
GOVERNMENT UNIT**]

005779

[HOLOGRAM:
UNITED MEXICAN
STATES.
MEXICAN COAT
OF ARMS]

**EFRAIN TERMINEL MUÑOZ,** ASSISTANT DIRECTOR FOR MONITORING DECISIONS, ASSISTING THE HEAD OF THE GOVERNMENT UNIT OF THE MINISTRY OF THE INTERIOR, PURSUANT TO THE PROVISIONS OF ARTICLE 10 SECTION I, AND 11 FINAL PARAGRAPH OF THE INTERNAL REGULATIONS OF THE MINISTRY OF THE INTERIOR, **CERTIFIES:** THAT GERARDO RUIZ TERROBA, WAS A PUBLIC PROSECUTOR OF THE FEDERATION ASSIGNED TO THE GENERAL DIVISION OF INTERNATIONAL PROCEEDINGS OF THE OFFICE OF THE ASSISTANT ATTORNEY GENERAL FOR LEGAL AND INTERNATIONAL AFFAIRS OF THE OFFICE ATTORNEY GENERAL OF THE REPUBLIC ON JUNE 28, 2016, AND THAT THE SIGNATURE APPEARING ON THE PRESENT DOCUMENT IS HIS OWN.

NAME OF HOLDER: OFFICE OF THE ATTORNEY GENERAL OF THE REPUBLIC
TYPE OF DOCUMENT: CERTIFIED COPIES
MEXICO CITY, ON JUNE 29, 2016.
REGISTRY No. **10754**
This ministry does not assume any liability
as for the contents of this document.
MADE/IAE/ETM

[Signed]

SIGNATURE

CODE **WWSZQT4R8**
The authenticity of this legalization and its electronic signature may be verified at:

[SEAL:
UNITED MEXICAN STATES.
(Mexican Coat of Arms)
MINISTRY OF FOREIGN AFFAIRS,
CUAUHTEMOC DELEGATION]

[SEAL:
UNITED MEXICAN STATES.
(Mexican Coat of Arms)
MINISTRY OF FOREIGN
AFFAIRS
CONSULAR SERVICE
AUTHENTICATIONS]

F8
FOLIO No. 593188

## THE MINISTRY OF FOREIGN AFFAIRS CERTIFIES:

that *EFRAIN TERMINEL MUÑOZ WAS ASSISTANT DIRECTOR*

*FOR MONITORING DECISIONS, ASSISTING THE HEAD OF THE*

*GOVERNMENT UNIT OF THE MINISTRY OF THE INTERIOR, ON*     **JUNE 29, 2016**

and that the preceding signature is his own.

*Mexico, Mexico City*, on *JUNE 30* of 20*16*.

BY RESOLUTION OF THE MINISTER

THE DELEGATE OF THE
MINISTRY OF FOREIGN AFFAIRS

[Signed]

**MYRNA GRANADOS HERNANDEZ**

THIS MINISTRY DOES NOT ASSUME ANY LIABILITY
AS FOR THE CONTENTS OF THE DOCUMENT
BEING AUTHENTICATED

EXT_Pasillas Jaramillo_000322

1

- - - **CUENTA:** En ocho de junio del año del año del dos mil doce, esta Secretaría da cuenta a la C. Juez con el **Pedimento de Orden de Aprehensión,** que solicita el **C. Agente del Ministerio Público Investigador de Delitos, Titular de la Unidad Orgánica de Homicidios Dolosos,** en contra de **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO,** como probable responsable en la comisión del delito de **HOMICIDIO CALIFICADO.** Conste.- - - - - - - - - - - -

- - - **AUTO:** En Tijuana, Baja California, a los ocho días del mes de junio del año del dos mil doce.- - - - - - - - - - - - - - - - -
- - V I S T O lo de cuenta, se tiene al **C. Agente del Ministerio Público Investigador de Delitos, Titular de la Unidad Orgánica de Homicidios Dolosos,** ejercitando acción penal en contra de **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO,** por considerarla probable responsable en la comisión del delito de **HOMICIDIO CALIFICADO,** ilícito previsto por los artículos 123 en relación con el 126, 148 fracciones I y II y 149 del Código Penal vigente en la entidad; con relación al pedimento de orden de aprehensión, formulado por el Fiscal Investigador, se considera procedente, ya que en el caso se encuentran satisfechos los requisitos que para tal efecto exigen los artículos 16 Constitucional, 109 y 267 fracción I del Código de Procedimientos Penales; En efecto el artículo 16 Constitucional exige que para librar una orden de aprehensión debe contener como requisitos esenciales los siguientes: a).- Que sea dictada por autoridad judicial; b).- Que preceda a ésta, una denuncia, o querella de un hecho que la ley señale como delito, sancionado con pena privativa

de libertad; c).- Que existan datos que establezcan que se ha cometido ese hecho y que exista la probabilidad de que el indiciado lo cometió o participo en su comisión. Además, como requisito de todo acto de Autoridad, la Orden de Aprehensión debe estar debidamente fundada y motivada.- Establecido lo anterior y ya que existe una denuncia en relación con un hecho delictivo que la Ley sanciona con Pena Privativa de Libertad, misma que se encuentra apoyada con datos de prueba con los cuales se acreditan los elementos que integran el cuerpo del delito a que nos hemos venido refiriendo y hacen probable la responsabilidad penal del inculpado de referencia en la comisión del citado ilícito; de acuerdo a los razonamientos que se exponen en los considerandos subsecuentes: - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **C O N S I D E R A N D O S** - - - - - - - - - - - -

- - **I.-** El delito de **HOMICIDIO CALIFICADO,** previsto por los artículos 123, 126 y 148 fracciones II del Código Penal vigente en la Entidad, respectivamente; El artículo 123 del Código Penal, define el delito de **HOMICIDIO** de la siguiente manera:..." El que prive de la vida a otro"; el artículo 148 en su fracción en su fracción II, señala: Cuando es superior por las armas que emplea, por su mayor destreza en el manejo de ellas o por el número de los que lo acompañen; no tomando en consideración la fracción I del artículo 248 del Código Penal, que el Ministerio Publico invoca en su determinación, en virtud que de acuerdo a la mecánica de los hechos, no se advierte dicho supuesto, sino que la ventaja que existía entre el sujeto activo y la victima es precisamente el arma empleada, siendo superior por esta razón, no obrando dato de prueba alguno que determinara que el activo fuera superior en fuera física al ofendido, por lo que siendo de explorado derecho que el Ministerio Publico consigna hechos y es el Juzgador quien determina porque delito deba seguirse el proceso, con fundamento en lo establecido por el artículo 10 del Código de Procedimientos Penales en el Estado, no se

3

entrara al estudio de la fracción aludida y se analizara el delito de HOMICIDIO CALIFICADO bajo los preceptos, 123, en relación con el 126, 148 fracción II del Código Punitivo de la materia. Los elementos del cuerpo del delito de **HOMICIDIO CALIFICADO** son: a).- La existencia previa de una vida humana; b).- Supresión de esa vida, elemento material; c).- que sea superior por el arma empleada; d).-que el activo del delito no corra riesgo alguno de ser muerto ni herido por el ofendido y aquel o obre en legítima defensa. - - - - - - - - - - - - - El cuerpo del delito de **HOMICIDIO CALIFICADO**, ilícito previsto por los artículos 123 y 126 en relación con el artículo 148 fracción II todos del Código Penal, en autos se encuentra legalmente evidenciado, en términos de lo dispuesto por el artículo 255 de la Ley Adjetiva Penal, con los elementos de prueba que a continuación se analizan: - - - - - - - - - - - - - - - - - - A).- Con la diligencia de **TRASLADO DE PERSONAL Y FE MINISTERIAL DE CADÁVER;** realizada por el C. Agente del Ministerio Publico Investigador de Delitos, quien hizo constar se informó vía telefónica por parte de la **CENTRAL DE RADIO DE LA POLICÍA MINISTERIAL DEL ESTADO DEL GRUPO DE HOMICIDIOS DOLOSOS** de una persona fallecida en interior de un domicilio ubicado calle Tule, Praderas de La Mesa, por lo que el personal actuante de esta Representación Social Estatal, nos trasladamos y constituimos física y legalmente al lugar indicado, arribando a las 03:27 horas en el domicilio ubicado en **CALLE TULE # 1314 COLONIA PRADERAS DE LA MESA, DELEGACIÓN CERRO COLORADO, DE ESTA CIUDAD,** en compañía de los Agentes de la Policía Ministerial del Estado, adscritos al Grupo Investigador de Homicidios Dolosos el **C. JUAN CARLOS AARÓN VÁZQUEZ** y **JORGE OMAR RÍOS MONTAÑO;** así como los Agentes Ministeriales de Zona Tijuana Guardia Nocturna CANCINO, VIRRUETA a cargo del Agente MEZA; De los Peritos en Criminalística adscritos a la Jefatura de Servicios Periciales Zona Tijuana los Peritos LIC.

NORMA ALICIA SÁNCHEZ RODRÍGUEZ y LIC. REBECA MATA; por parte del Laboratorio Estatal Adscrito a Servicios Periciales la Química MARÍA CHIQUETE; De los empleados del Servicio Médico Forense FRANCISCO RAMÍREZ y ÁLVARO RUIZ; encontrándose presentes Resguardando el área unidades los tripulantes de la Unidad número P-4957 a cargo del Oficial MARTÍNEZ, de la Secretaria de Seguridad Pública Municipal, quienes nos señalaron el lugar en que se DA FE: De tener a la vista una calle con pavimento hidráulico y es frente al domicilio marcado con el numero 1314 en vía publica sobre la banqueta se da fe de tener a la vista el cuerpo sin vida de UN INDIVIDUO DEL SEXO MASCULINO quien en vida llevo por nombre **JORGE RANGEL MONTES** de 43 años de edad, siendo identificado por la de nombre EDELMIRA MONTES HERNÁNDEZ, quien dijo ser madre del occiso, misma que nos informo que el hoy occiso **JORGE RANGEL MONTES** llego a su domicilio lesionado por arma blanca y que antes de perder la vida le dijo que **JORGE "N"** lo había lesionado; continuando con la presente diligencia se procede a dar fe que se tiene a la vista el cuerpo sin vida de una persona del sexo masculino quien en vida llevara por nombre **JORGE RANGEL MONTES,** el cual se encuentra en posición de cubito dorsal con la región cefálica orientada hacia el punto cardinal sur, las extremidades inferiores flexionadas al nivel de la rotula hacia el punto cardinal sur y en ligera aducción, la extremidades superiores la izquierda en extensión y aducción y la derecha en ligera flexión y aducción, occiso el cual se observa que viste un pantalón de mezclilla de color azul, sudadera de color gris, calcetines de color negro, procediendo al examen del cuerpo se aprecia ausencia total de conciencia, reflejos oculares y medulares al no responder las pupilas a los estímulos de luz y opacidad de la vista; falta de respiración espontánea, ante la ausencia del movimiento rítmico corporal; al tacto no se aprecia pulso; su temperatura es inferior a la del medio ambiente, así como marcada palidez

cadavérica; todos los signos indicativos de que se trata de una muerte real y verdadera y reciente por lo que una vez que el personal de Servicios Periciales fijo fotográficamente el cuerpo; acto seguido el personal del Servicio Médico Forense procede al levantamiento del cuerpo, por lo que el personal de Servicios Periciales procede a fijar los indicios localizando al momento del levantamiento del cadáver, localizándose bajo el cuerpo del occiso, una sudadera de color rojo, asimismo se observan manchas hematicas sobre plano vertical de puerta peatonal de dicho domicilio, asimismo se localizaron varias manchas hematicas en un radio en donde se localizo el cuerpo del occiso; procediendo al examen del occiso apreciándose como **MEDIA FILIACIÓN:** 1.60 metros de estatura, de tez moreno, edad aproximada de 43 años, complexión DELGADA, de cabello CORTO CASTAÑO OSCURO, cara OVAL, ojos color CAFÉ, frente AMPLIA, cejas POBLADAS, nariz CÓNCAVA, labios GRUESOS, boca GRANDE, mentón OVAL, orejas MEDIANAS, bigote RASURADO, barba TIPO CANDADO; NO se encontraron señas particulares; presenta la siguiente **VESTIMENTA:** Pantalón levis color azul talla 34x32, calzón color gris y verde a cuadros marca JOKER, calcetines de color negro, camiseta de color gris con leyenda en la parte frontal superior ACCESS misma que en la parte posterior presenta cuatro orificios o cortes; así como se le aprecian las siguientes **HUELLAS DE VIOLENCIA FISICA:** 1.- Una herida al parecer punzo cortante localizada en rama descendente de mandíbula derecha de aproximadamente 2 X 3 centímetros; 2.- Una herida al parecer punzo cortante localizada en cara posterior lateral derecha de cuello de aproximadamente 4.5 X 1 centímetro; 3.- Una herida al parecer punzo cortante localizada en cara anterior de tercio distal de brazo derecho de aproximadamente 7 X 2.5 centímetros; 4.- Una herida al parecer punzo cortante localizada en dedo pulgar de cara palmar de mano izquierda de un centímetro de diámetro; 5.-

Dos heridas al parecer punzo cortantes localizadas en región dorsal derecha siendo una de aproximadamente 5 X 2 centímetros y la otra de aproximadamente 3 X 1 centímetros; 6.- Una herida al parecer punzo cortante localizada en región parietal posterior de línea media de aproximadamente dos centímetros de longitud; se da fe que como **PERTENENCIA:** No portaba ninguna pertenencia; acto seguido se ordena al Personal del Servicio Médico Forense el levantamiento y traslado del cuerpo sin vida a las instalaciones del Servicios Médico Forense ubicadas en Boulevard Fundadores Colonia Juárez de esta ciudad y proceda a ingresar el cuerpo del occiso a las instalaciones del mismo para efecto de que le sea practicada la necropsia de Ley. Por lo que continuando con la presente diligencia los Oficiales de la Secretaria de Seguridad Publica nos informan que en la casa marcada con el numero 1325 de la misma calle y colonia localizada a varias casas de distancia al parecer se encuentra el arma con el cual fue lesionado el occiso, por lo que se da fe da fe que se observa goteo dinámico en dirección norte a sur el cual finaliza con predio 1325 siendo una distancia aproximada de cincuenta metros, siendo este una casa habitación de aproximadamente diez metros parte frontal construida de material, inmueble el cual cuenta de dos pisos y presenta leyenda "SE RENTA 664-503-9747", reja peatonal de color negro y antes de llegar al domicilio se localizaron en banqueta de terracería se localizaron un juego de llaves las cuales prenden de un llavero de metal color negro y plata con leyenda "HUSKY", y en la puerta peatonal de rejas metálicas de color negro a una distancia aproximada de veinte centímetros se da fe que se tiene a la vista UNA PUNTA HECHIZA embebida de liquido hematico, así como en el piso goteo dinámico goteo el cual continua hasta la segundo piso por las escaleras de material, donde se ubica un pasillo que da acceso a los departamentos terminando en este lugar el goteo cinámico, procediendo el personal del laboratorio estatal a muestrear la "punta

7 4

130

hechiza" así como recabar muestras del goteo dinámico para las pruebas periciales pertinentes, **PUNTA HECHIZA QUE MIDE APROXIMADAMENTE ONCE CENTÍMETROS**, misma que fue embalada por el personal de Servicios Periciales para las pruebas pertinentes; objeto que es resguardado en las instalaciones de esta H. Representación para su entrega a quien derecho corresponda.- Con lo anterior se da por terminada la presente diligencia.- - - - - - - - - - - - - - - - - - - - -

- - - **B).-** Con el **PARTE INFORMATIVO**, número TIN/519/2012, de fecha siete de mayo del dos mil doce, rendido a su Superior por los **CC. Oficiales de Seguridad Pública Municipal OSCAR MARTÍNEZ LÓPEZ y HÉCTOR LEÓN MUÑOZ,** en el cual asentaron: Que siendo las 02:10 horas del día de hoy al encontrarnos efectuando nuestro recorrido de vigilancia a bordo de la unidad 4957 la central de radio nos indico trasladarnos a la calle Tule número 1314 lateral con la calle Camichín de la colonia Praderas de La Mesa para atender reporte de una personas sin vida, motivo por el cual nos trasladamos al lugar: **INTERVENCIÓN PREVENTIVA:** Ya una vez en el lugar nos entrevistamos con la de nombre **EDELMIRA MONTES HERNÁNDEZ,** de 71 años de edad. misma que nos manifestó que momentos antes al encontrarse en el interior de su domicilio escucho cuando desde el exterior en la vía pública su hijo de nombre **JORGE RANGEL MONTES**, de 43 años de edad, le gritaba, por lo que se aproximó y al abrir la puerta se percato de que su hijo se encontraba visiblemente herido y con la ropa llena de sangre por lo que procedió a solicitar una ambulancia de la cruz roja llegando al lugar la unidad BC-166 a cargo del paramédico Paredes, mismo que indico que dicha persona se encontraba sin vida al parecer a causa de varias heridas con arma punzo cortante en diferentes partes del cuerpo, asimismo al lugar arribaron los agentes ministeriales, Meza y Virueta, así como el Licenciado Emigdio Gutiérrez de Homicidios Dolosos, de Periciales la Química Norma Rebeca Mata, de SEMEFO,

Francisco Ramírez, por lo que se le hizo del conocimiento a la Superioridad.- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - **C).-** Con la declaración del testigo **WALTER ULISES ROSALES HEREDIA,** rendida ante el C. Agente del Ministerio Público Investigador de Delitos, en la que manifestó: Que desde que tenía 8 años se fue a vivir a Los Ángeles California durante 22 años y en el mes de octubre de 2010, lo deportaron por el delito de violencia familiar, y que cuando lo deportaron se fue a vivir a su ciudad natal en Michoacán, y que en el mes de junio de 2011, con la intención de regresar a Estados Unidos de ilegal, pero las cosas se complicaron y por lo tanto no ha podido regresar a Los Ángeles, y se quedo en esta ciudad con un amigo de nombre RAÚL, quien le tendió la mano apoyándolo para que se quedara en su casa compartiendo gastos, y conoció en la misma colonia Praderas de La Mesa al de nombre **JORGE RANGEL MONTES alias JORGE,** y a su hermano **OCTAVIO RANGEL MONTES alias EL CONEJO,** con quienes compartían el foco con el que fumaban cristal y Marihuana, y en una ocasión el de nombre **JORGE RANGEL** ahora occiso le dijo que se fuera a su casa, que le iba a regalar unas cosas y cuando llego le dijo que se quedara en su casa y que compartirían gastos, teniendo alrededor de un mes aproximadamente viviendo en el domicilio, manifestando el declarante que en realidad era amigo del apodado **CONEJO** no de **JORGE,** ya que el hoy occiso era muy violento cuando se drogaba junto con el de nombre **GEORGE apodado el GÜERO,** ya que se juntaban en la casa del occiso, y consumían droga de la inyectada conocida como CHIVA, y tal es el caso que el día domingo seis de mayo de 2012 a eso de las 17:00 horas aproximadamente cuando se encontraba en el domicilio en compañía del occiso, llego **GEORGE apodado el CONEJO,** quien empezó a drogarse junto con **JORGE** ahora occiso, por lo que el declarante después de consumir un cigarro de marihuana como a eso de las 23:00 horas decide retirarse a su

habitación, ya que **JORGE** andaba muy agresivo y para evitarse problemas con el occiso, y que serian como las 2:00 horas del día siete de mayo de 2012, que el declarante se despertó de los gritos que se escuchaban, ya que **JORGE** y el **GÜERO,** estaban discutiendo, percatándose de que **JORGE** aventaba a **GEORGE alias EL GÜERO,** hacia la puerta de acceso del departamento, y cuando el declarante se acerco para preguntar qué era lo que estaba pasando, **JORGE** le respondió que se metiera a su cuarto y que se encerrara, y en ese momento escucha el de la voz que uno de los vecinos le decía que DEJARAN DE DISCUTIR, QUE SI NO PODÍAN CONTROLAR ESA MADRE, QUE DEJARAN EL VICIO, y que todavía alcanzo a escuchar que el vecino dijo, TOTAL ES MUY SU BRONCA, escuchando que cerraban una puerta, y sin escuchar mas se fue a su habitación y que después de media hora, llegaron unos policías municipales quienes lo levantaron diciéndole que **JORGE** estaba muerto, preguntándole que si sabía algo en relación a la muerte de JORGE, asimismo manifiesta el declarante que **GEORGE alias el GÜERO** tiene la siguiente media filiación de tez blanca, complexión robusta, de 26 años aproximadamente, cabello corto castaño casi a rapa, ojos azules, bigote recortado, de estatura de 1.80 metros, frente amplia, labios medianos, boca mediana, ceja arqueada poblada, el cual si vuelve a ver podría reconocer sin temor a equivocarse. Siendo todo lo que tiene que manifestar.- - - - - - - - - - - - - - - - - - - - - **D).-** Con la declaración de la testigo **EDELMIRA MONTES HERNÁNDEZ,** rendida ante el C. Agente del Ministerio Público Investigador de Delitos, en la que manifestó: Que comparezco ante esta Representación Social de manera voluntaria para manifestar que es el caso que desde hace treinta y cinco años que me encuentra radicando en el Estado de California, Estados Unidos de Norteamérica, siendo que hace aproximadamente ocho años a la fecha que mi hijo de nombre **JORGE RANGEL MONTES** se vino a radicar a esta

ciudad ya que radicaba en el vecino país al igual que la de la voz, por lo que cada mes venía a esta ciudad a ver a mi hijo **JORGE** por lo que la de la voz me quedaba en la casa de mi amiga de nombre **ROSA AMELIA OROZCO SÁNCHEZ** misma que se encuentra ubicada en **CALLE TULE NUMERO 1314 DE LA COLONIA PRADERAS DE LA MESA, en esta ciudad de Tijuana, Baja California,** siendo el caso que mi hijo **JORGE** vivía en un departamento ubicado por la misma calle y colonia pero con numero 1325, es el caso que el día seis del mes y año en curso me encontraba en esta ciudad en casa de mi amiga **AMELIA** como ya manifesté anteriormente por lo que siendo aproximadamente las 02:00 horas ya del día lunes siete de mayo del año en curso, la de la voz me encontraba acostada y en ese momento escuche unos gritos que venían de la calle y eran de mi hijo **JORGE** el cual decía: **"MAMA, CUA ROCÍO (refiriéndose a mi amiga Rosa Amelia), CHINO AYÚDENME ME ESTOY MURIENDO",** por lo que de inmediato salimos y veo que mi hijo **JORGE RANGEL MONTES** se encontraba sentado en la banqueta y me dijo **MAMA ABRÁSEME LLAMEN A UNA AMBULANCIA, LLÉVENME,** y le pregunte que quien lo había lesionado y me contesto **FUE EL GEORGE EL GÜERO, EL GEORGE, EL GEORGE,** me filereado (refiriendo a que lo había filereado con arma blanca) por lo que de inmediato le hablaron al 066 y solicitaron una ambulancia para que le brindaran atención medica a mi hijo **JORGE** hoy occiso, llegando la ambulación a los pocos minutos y le brindaron atención medica a mi hijo pero los paramédicos de la Cruz Roja me dijeron que mi hijo **JORGE** ya había fallecido, asimismo llego los policías municipales, a los minutos llego el Ministerio Publico, SEMEFO y levantaron el cuerpo sin vida de mi hijo, por lo que deseo manifestar que la persona que le quito la vida a mi hijo **JORGE RANGEL MONTES** y al cual mi hijo se refirió como **GEORGE "EL GÜERO",** se llama **JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS**

hijo que en vida llevara por nombre **JORGE RANGEL MONTES.** Siendo todo lo que tiene que manifestar.- - - - - - - - - - - **E).-** Con la declaración del testigo de identidad **ILDA RANGEL,** quien ante el C. Agente del Ministerio Público Investigador de Delitos, manifestó: Que viene de las Instalaciones del Servicio Médico Forense lugar donde identifica plenamente y sin temor a equivocarse a su **HERMANO** como quien en vida llevara el nombre de **JORGE RANGEL MONTES,** quien contaba con la edad de 43 años de edad, fecha de nacimiento doce de diciembre de 1970, estado civil soltero, originario de Guadalajara Jalisco, de ocupación desempleado, con domicilio en calle Tule numero 1314 colonia praderas de la mesa, grado de escolaridad secundaria completa, de religión católico, y era de la siguiente media filiación: estatura de 1.60 aproximadamente, complexión delgado, tez moreno claro, cabello lacio, frente cara oval, ojos color café, frente amplia, cejas pobladas, nariz cóncava, labios gruesos, boca grande, mentón oval, orejas medianas, bigote rasurado, barba tipo candado, no cuenta con señas; no fumaba, no sabe, no sabe, no padecía de enfermedad. y en relación a la manera en que falleció su **HERMANO** manifestó..."Que el día de hoy siete de mayo del 2012, siendo aproximadamente las 02:00 horas mi hermana de nombre **CLAUDIA RANGEL MONTES** para informarme que nuestra madre le había hablado por teléfono para infórmale que a mi hermano **JORGE RANGEL MONTES** lo habían privado de la vida, por lo que el mismo día me traslade a esta ciudad de Tijuana, para acudir al SEMEFO a reconocer el cuerpo de mi hermano, agregando que ignoro quién o quienes pudieron haber privado de la vida a mi hermano o el motivo por el cual lo hicieron, por lo que se encuentra presente en estas oficinas solicitando la entrega del cuerpo de su **HERMANO** que en vida llevara el nombre de **JORGE RANGEL MONTES** para realizar los trámites funerarios correspondientes. Siendo todo lo que tiene que manifestar.- - - - - - - - - - - - - - - - - - - - - -

JARAMILLO, ALAS GEORGE ANTHONY PASILLAS alias
GEORGE A. PASILLAS, ALIAS EL GÜERO, al cual la de la
voz lo conozco desde que era un niño esto en el Estado de
California ya que **GEORGE EL GÜERO** es ciudadano
americano, el cual es de la siguiente media filiación edad
aproximada 26 años, tez blanca, ojos de color azul, cabello a
rapa, complexión robusta, mismo que casi siempre usa
bigote, pero en ocasiones lo trae rasurado; en este acto el
personal actuante procede a poner a la vista de la declarante
dos fotografías a color de una persona del sexo masculino
mismas que nos fueron remitidas mediante **Avance de
Informe con numero 349/HOM.DOL./12 de fecha 07 de
Mayo del 2012, suscrito por los CC. OSCAR RODRÍGUEZ
ANDALÓN y ADRIANA E. CAMACHO ROCHA,** la declarante
las ve fijamente y refiere que el individuo del sexo masculino
que aparece en las foto es al que me refiero como el que privo
de la vida a mi hijo utilizando al parecer una navaja o un
objeto punzocortante siendo el de nombre **JORGE ANTONIO
PASILLAS JARAMILLO alias JORGE PASILLAS
JARAMILLO, alias GEORGE ANTHONY PASILLAS alias
GEORGE A. PASILLAS, ALIAS GEORGE ALIAS EL GÜERO.**
el cual actualmente se ve igual que como aparece en las dos
fotografías ya que no ha cambiado nada físicamente, mismo el
cual después de privar de la vida a mi hijo **JORGE RANGEL
MONTEL** se dio a la fuga con rumbo desconocido, el cual
deseo agregar que tengo conocimiento que radicaba en la
colonia Praderas de la Mesa, mismo el cual después de
asesinar a mi hijo huyo con rumbo desconocida ya que no se
sabe nada de él ni su paradero. Por lo que pido que se lleven a
cabo las investigaciones pertinentes y se dé con el paradero
de **GEORGE EL GÜERO JORGE ANTONIO PASILLAS
JARAMILLO alias JORGE PASILLAS JARAMILLO, alias
GEORGE ANTHONY PASILLAS alias GEORGE A. PASILLAS,**
y se le aplique todo el peso de la ley por el Homicidio de mi

- - - **F).-** Con la declaración del testigo de identidad **TIENA RAE GUTIÉRREZ,** quien ante el C. Agente del Ministerio Público Investigador de Delitos, manifestó: Que viene de las Instalaciones del Servicio Médico Forense lugar donde identifica plenamente y sin temor a equivocarse a su **PAPA** como quien en vida llevara el nombre de **JORGE RANGEL MONTES,** quien contaba con la edad de 43 años de edad, fecha de nacimiento 12 de diciembre de 1970, estado civil soltero, originario de Guadalajara Jalisco, de ocupación desempleado, con domicilio en calle Tule numero 1314 colonia Praderas de La Mesa, grado de escolaridad secundaria completa, de religión católico, y era de la siguiente media filiación: Estatura de 1.60 aproximadamente, complexión delgado, tez moreno claro, cabello lacio, frente cara oval, ojos color café, frente amplia, cejas pobladas, nariz cóncava, labios gruesos, boca grande, mentón oval, orejas medianas, bigote rasurado, barba tipo candado, no cuenta con señas; no fumaba, no sabe, no sabe, no padecía de enfermedad. y en relación a la manera en que falleció su HERMANO manifestó..."Que el día de hoy 7 de mayo del 2012, mi tía de nombre ARGELIA me informo que mi papa **JORGE RANGEL MONTES** lo habían privado de la vida, por lo que este mismo día me traslade a esta ciudad de Tijuana, para acudir al SEMEFO a reconocer el cuerpo de mi padre, agregando que ignoro quién o quienes pudieron haber privado de la vida a mi papa o el motivo por el cual lo hicieron, por lo que se encuentra presente en estas oficinas solicitando la entrega del cuerpo de su **PADRE** que en vida llevara el nombre de **JORGE RANGEL MONTES** para realizar los trámites funerarios correspondientes. Siendo todo lo que tiene que manifestar.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - **G).-** Con el **CERTIFICADO DE NECROPSIA y FE MINISTERIAL DEL MISMO;** exhibida ante el C. Agente del Ministerio Publico Investigador de Delitos realizado por el **C. Perito Médico Legista Doctor JOSÉ LUIS ARGUELLO**

**MONTIEL,** en fecha siete de mayo de dos mil once, a quien llevara por nombre de **JORGE RANGEL MONTES,** a quien después de platicada la necropsia determinaron que la **CAUSA DETERMINANTE DE LA MUERTE: CHOQUE HIPOVOLEMICO SECUNDARIO A HERIDAS PENETRANTES DE CUELLO, TÓRAX y ABDOMEN POR HERIDA CON INSTRUMENTO PUNZOCORTANTE;** mismo certificado del cual diera fe la Representación Social Investigadora de Delitos.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - **E).-** Con el **DICTAMEN QUÍMICO TOXICOLÓGICO y FE MINISTERIAL DEL MISMO;** numero **LZT/1989/2012,** de fecha siete de mayo del dos mil once, elaborado por el **C. QFB. PABLO GUILLERMO RODRÍGUEZ RUIZ,** adscrito al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN:** "La muestra en tubo de plástico con capacidad para 6 mililitros conteniendo orina rotulado como 105/12/201 **JORGE RANGEL MONTES,** la cual fue remitida bajo cadena de custodia con folio 107 recibida el día siete de mayo del año en curso, relacionado con la Averiguación Previa 105/12/201, resulto **POSITIVO** a la presencia de metabolitos de Metanfetaminas, Anfetaminas y Opiáceos"; dictamen del cual diera fe la Representación Social Investigadora de Delitos. - - -

- - - **F).-** Con el **DICTAMEN QUÍMICO de ALCOHOLEMIA Y FE MINISTERIAL DEL MISMO;** numero LZT/1990/2012, de fecha siete de mayo del dos mil doce, elaborado por el **C. QFB. GUILLERMO RODRÍGUEZ RUIZ,** adscrito al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN:** "A las muestras contenidas en tubo de plástico con capacidad para 6 mililitros conteniendo sangre, rotulado como **105/12/201, JORGE RANGEL MONTES,** el cual fue remitida bajo la cadena de custodia con folio 107 recibida el día siete de mayo del año en curso, relacionados con la **Averiguación Previa AP/105/12/201/, NO se identifico la presencia de**

**alcohol";** dictamen del cual diera fe la Representación Social Investigadora de Delitos.- - - - - - - - - - - - - - - - - - - - - - - - -

- - - **G).-** Con el **DICTAMEN DE COMPARATIVA HEMATICA Y FE MINISTERIAL DEL MISMO;** numero LZT/2119/2012, de fecha siete de mayo del dos mil doce, elaborado por el C. **Q.I. MARÍA DE LOS ÁNGELES RODRÍGUEZ LÓPEZ,** adscrita al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN: PRIMERA:** "Las manchas pardo rojizas localizadas en el domicilio ubicado en calle Tule 1325 Fraccionamiento Praderas de la Mesa. SI corresponden a sangre humana. **SEGUNDA:** Las manchas pardo rojizas localizadas en el domicilio ubicado en Calle Tule 1325 Fraccionamiento Praderas de la Mesa, corresponde al tipo sanguíneo "O" **TERCERA:** El tipo sanguíneo al que pertenece la muestra remitida del Servicio Médico Forense, identificada con el número de Averiguación Previa 105/12/201, corresponde al tipo **O Rh POSITIVO";** dictamen del cual diera fe la Representación Social Investigadora de Delitos.- - - - - - - - -

- - - **H).-** Con **COPIA DIGITALIZADA DE DOS IMPRESIONES FOTOGRÁFICAS y FE MINISTERIAL DE LAS MISMAS;** en las que se aprecia el rostro de una persona de sexo masculino con la siguiente media filiación; de tez blanca, complexión robusta, cabello corto oscuro casi a rapa, bigote recortado, frente amplia, labios medianos, boca mediana, ceja arqueada poblada, en la primera de ellas se aprecia vistiendo una camiseta color negro y en brazos un bebe con ropa de color blanco, y en la segunda viste playera de color azul; mismas impresiones fotográficas de las cuales diera fe la Representación Social Investigadora de Delitos.- - - - - - - - -

- - - **I).-** Con el **INFORME número 349/HOM.DOL./12** de fecha siete de mayo del año del dos mil doce, rendido al C. Agente del Ministerio Público Investigador de Delitos, por los **CC. Agentes de la Policía Ministerial del Estado OSCAR RODRÍGUEZ ANDALÓN y ADRIANA E. CAMACHO ROCHA,**

el cual en este apartado se íntegramente por reproducida atendiendo al príncipio de economía procesal.- - - - - - - - - -

- - - A los anteriores elementos de convicción, se les confiere el valor probatorio que en lo individual y en su conjunto establecen para tal efecto los artículos 214, 215, 218, 221, 222 y 223 del Código de Procedimientos Penales, ya que los mismo resultan aptos y eficaces por el momento para evidenciar legalmente que el día siete de mayo del año del dos mil doce, siendo aproximadamente las 02:00 horas el inculpado **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO,** al encontrarse en el domicilio ubicado en calle Tule número 1325 colonia Praderas de La Mesa, delegación Cerro Colorado, de esta ciudad, dicho inculpado ventajosamente lo privo de la vida al ahora occiso **JORGE RANGEL MONTES,** ya que portaba un arma blanca tipo navaja agrediéndolo con la misma, provocándole con esta las lesiones que a la postre le provocaron la muerte, describiéndose en el certificado de necropsia como causa determinante de la muerte: **choque hipovolemico secundario a heridas penetrantes de cuello, tórax y abdomen por herida con instrumento punzocortante;** elaborado por el **C. Perito Médico Legista JOSÉ LUIS ARGUELLO MONTIEL;** del cual diera fe el Fiscal Investigador de Delitos, no corriendo riesgo alguno el sujeto activo de ser muerto o herido por el pasivo; materializándose así los elementos que integran el cuerpo del delito de **HOMICIDIO CALIFICADO.**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**II.- La Probable Responsabilidad** del inculpado **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO,** en la comisión del delito de **HOMICIDIO CALIFICADO,** ilícito previsto por el artículo 123 en relación

con el 148 fracción II, del Código Penal vigente en el Estado, en su carácter de autor directo, de conformidad a lo establecido por el artículo **16 fracción I** del mismo Ordenamiento Legal antes invocado, en autos ha quedado legalmente evidenciada con todos y cada uno de los elementos de prueba que sirvieron de base para tener por comprobado el cuerpo del delito en estudio; destacando de entre ellas la declaración rendida por la testigo **EDELMIRA MONTES HERNÁNDEZ,** ante el C. Agente del Ministerio Público Investigador de Delitos, en la que manifestó que desde hace treinta y cinco años que se encuentra radicando en el Estado de California, Estados Unidos de Norteamérica, siendo que hace aproximadamente ocho años a la fecha que su hijo **JORGE RANGEL MONTES** se vino a radicar a esta ciudad ya que radicaba en el vecino país al igual que ella, por lo que cada mes venia a esta ciudad a ver a su hijo **JORGE** por lo que ésta se quedaba en la casa de su amiga **ROSA AMELIA OROZCO SÁNCHEZ** misma que se encuentra ubicada en **CALLE TULE NUMERO 1314 DE LA COLONIA PRADERAS DE LA MESA, en esta ciudad de Tijuana, Baja California,** y que su mi hijo **JORGE** vivía en un departamento ubicado por la misma calle y colonia en el número 1325, es el caso que el día seis del mes y año en curso se encontraba en esta ciudad en casa de su amiga **AMELIA** y siendo aproximadamente las 02:00 horas ya del día lunes siete de mayo del año en curso, se encontraba acostada y en ese momento escucho unos gritos que venían de la calle y eran de su hijo **JORGE** el cual decía: **"MAMA, ROCÍO, refiriéndose a mi amiga Rosa Amelia), CHINO AYÚDENME ME ESTOY MURIENDO",** por lo que de inmediato salió y vio que su hijo **JORGE RANGEL MONTES** se encontraba sentado en la banqueta y le dijo **MAMA ABRÁSEME LLAMEN A UNA AMBULANCIA, LLÉVENME,** preguntándole que quien lo había lesionado, contestándole **FUE EL GEORGE EL GÜERO, EL GEORGE, EL GEORGE,** me filereado, por lo que de inmediato

solicitaron una ambulancia para que le brindaran atención medica al hoy occiso, llegando la ambulación a los pocos minutos y le brindaron atención medica, pero los paramédicos de la Cruz Roja le dijeron que su hijo **JORGE** ya había fallecido, asimismo manifestó que la persona que le quito la vida a su hijo **JORGE RANGEL MONTES** y al cual su hijo se refirió como **GEORGE "EL GÜERO"**, se llama **JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO, ALAS GEORGE ANTHONY PASILLAS alias GEORGE A. PASILLAS, ALIAS EL GÜERO,** al cual la testigo lo conoce desde que era un niño esto en el Estado de California ya que **GEORGE EL GÜERO** es ciudadano americano, el cual es de la siguiente media filiación edad aproximada 26 años, tez blanca, ojos de color azul, cabello a rapa, complexión robusta, mismo que casi siempre usa bigote, pero en ocasiones lo trae rasurado; en ese acto el personal actuante procede a poner a la vista de la testigo dos fotografías a color de una persona del sexo masculino mismas que les fueron remitidas mediante **Avance de Informe con numero 349/HOM.DOL./12 de fecha 07 de Mayo del 2012, suscrito por los CC. OSCAR RODRÍGUEZ ANDALÓN y ADRIANA E. CAMACHO ROCHA,** la testigo las ve fijamente y refiere que el individuo del sexo masculino que aparece en las foto es al que le refiero como el que privo de la vida a su hijo utilizando al parecer una navaja o un objeto punzocortante siendo **JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO, ALIAS GEORGE ANTHONY PASILLAS alias GEORGE A. PASILLAS, ALIAS GEORGE ALIAS EL GÜERO.** el cual actualmente se ve igual que como aparece en las dos fotografías ya que no ha cambiado nada físicamente, mismo el cual después de privar de la vida a su hijo **JORGE RANGEL MONTEL** se dio a la fuga con rumbo desconocido; declaración que se confirma con lo declarado por el testigo **WALTER ULISES ROSALES HEREDIA,** ante el C. Agente del Ministerio Público Investigador de Delitos, en la

que manifestó que desde que tenía ocho años de edad se fue a vivir a Los Ángeles California durante 22 años y en el mes de octubre de 2010, lo deportaron por el delito de violencia familiar, y que cuando lo deportaron se fue a vivir a su ciudad natal en Michoacán, y que en el mes de junio de 2011, con la intención de regresar a Estados Unidos de ilegal, pero las cosas se complicaron y por lo tanto no ha podido regresar a Los Ángeles, y se quedo en esta ciudad con un amigo de nombre RAÚL, quien le tendió la mano apoyándolo para que se quedara en su casa compartiendo gastos, y conoció en la misma colonia Praderas de La Mesa al de nombre **JORGE RANGEL MONTES alias JORGE**, y a su hermano **OCTAVIO RANGEL MONTES alias EL CONEJO,** con quienes compartían el foco con el que fumaban cristal y Marihuana, y en una ocasión el de nombre **JORGE RANGEL** ahora occiso le dijo que se fuera a su casa, que le iba a regalar unas cosas y cuando llego le dijo que se quedara en su casa y que compartirían gastos, teniendo alrededor de un mes aproximadamente viviendo en el domicilio, manifestando el declarante que en realidad era amigo del apodado **CONEJO** no de **JORGE,** ya que el hoy occiso era muy violento cuando se drogaba ya que se juntaban en la casa del occiso, y consumían droga de la inyectada conocida como chiva, y que el día domingo seis de mayo de 2012 a eso de las 17:00 horas aproximadamente cuando se encontraba en el domicilio en compañía del occiso, llego **GEORGE apodado el CONEJO,** quien empezó a drogarse junto con **JORGE** ahora occiso, por lo que el declarante después de consumir un cigarro de marihuana como a eso de las 23:00 horas decide retirarse a su habitación, ya que **JORGE** andaba muy agresivo y para evitarse problemas con el occiso, y que serian como las 2:00 horas del día siete de mayo de 2012, el testigo se despertó de los gritos que se escuchaban, ya que **JORGE** y el **GÜERO**, estaban discutiendo, percatándose de que **JORGE** aventaba a **GEORGE alias EL GÜERO,** hacia la puerta de acceso del

departamento, y cuando el testigo se acerco para preguntar qué era lo que estaba pasando, **JORGE** le respondió que se metiera a su cuarto y que se encerrara, y en ese momento escucha el de la voz que uno de los vecinos le decía que dejaran de discutir, que si no podían controlar esa madre, que dejaran el vicio, y que todavía alcanzo a escuchar que el vecino dijo, total es muy su bronca, escuchando que cerraban una puerta, y sin escuchar mas se fue a su habitación y que después de media hora, llegaron unos policías municipales quienes lo levantaron diciéndole que **JORGE** estaba muerto, preguntándole que si sabía algo en relación a la muerte de **JORGE,** asimismo manifiesta el testigo que **GEORGE alias el GÜERO** tiene la siguiente media filiación de tez blanca, complexión robusta, de 26 años aproximadamente, cabello corto castaño casi a rapa, ojos azules, bigote recortado, de estatura de 1.80 metros, frente amplia, labios medianos, boca mediana, ceja arqueada poblada, el cual si vuelve a ver podría reconocer sin temor a equivocarse; elementos de prueba que adquiere el valor indiciario de conformidad a lo establecido por el artículo 223 del Código de Procedimientos Penales vigente en el Estado, mismo que alcanza el valor de prueba plena al verse corroborado con la diligencia de **TRASLADO DE PERSONAL Y FE MINISTERIAL DE CADÁVER;** realizada por el C. Agente del Ministerio Publico Investigador de Delitos, quien hizo constar de haber trasladado física y legalmente al domicilio ubicado en **CALLE TULE # 1314 COLONIA PRADERAS DE LA MESA, DELEGACIÓN CERRO COLORADO, DE ESTA CIUDAD,** en compañía de los Agentes de la Policía Ministerial del Estado, adscritos al Grupo Investigador de Homicidios Dolosos el **C. JUAN CARLOS AARÓN VÁZQUEZ y JORGE OMAR RÍOS MONTAÑO;** encontrándose presentes resguardando el área unidades a cargo del Oficial Martínez, de la Secretaria de Seguridad Pública Municipal, quienes les señalaron el lugar y dio fe de tener a la vista una calle con pavimento hidráulico y en frente

al domicilio marcado con el numero 1314 en vía pública sobre la banqueta y da fe de tener a la vista el cuerpo sin vida de un individuo del sexo masculino quien en vida llevo por nombre **JORGE RANGEL MONTES** de 48 años de edad, siendo identificado por la de nombre **EDELMIRA MONTES HERNÁNDEZ,** quien dijo ser madre del occiso, misma que les informo que el hoy occiso **JORGE RANGEL MONTES** llego a su domicilio lesionado por arma blanca y que antes de perder la vida le dijo que **JORGE "N"** lo había lesionado; continuando con la presente diligencia se procedió a dar fe que se tiene a la vista el cuerpo sin vida de una persona del sexo masculino quien en vida llevara por nombre **JORGE RANGEL MONTES,** el cual se encuentro en posición de cubito dorsal con la región cefálica orientada hacia el punto cardinal sur, las extremidades inferiores flexionadas al nivel de la rotula hacia el punto cardinal sur y en ligera aducción, la extremidad superior izquierda en extensión y aducción y la derecha en ligera flexión y aducción, occiso el cual se observa que viste un pantalón de mezclilla de color azul, sudadera de color gris, calcetines de color negro, procediendo al examen del cuerpo se aprecia ausencia total de conciencia, reflejos oculares y medulares al no responder las pupilas a los estímulos de luz y opacidad de la vista, falta de respiración espontánea, ante la ausencia del movimiento rítmico corporal, al tacto no se aprecia pulso, su temperatura es inferior a la del medio ambiente, así como marcada palidez cadavérica; todos los signos indicativos de que se trata de una muerte real, verdadera y reciente; por lo que una vez que el personal de Servicios Periciales fijo fotográficamente el cuerpo, el personal del Servicio Médico Forense procede al levantamiento del cuerpo, por lo que el personal de Servicios Periciales procede a fijar los indicios localizando al momento del levantamiento del cadáver, localizándose bajo el cuerpo del occiso, una sudadera de color rojo, asimismo se observan manchas hematicas sobre plano vertical de puerta peatonal de dicho

domicilio, asimismo se localizaron varias manchas hematicas en un radio en donde se localizo el cuerpo del occiso; procediendo al examen del occiso apreciándose como **MEDIA FILIACIÓN:** 1.60 metros de estatura, de tez moreno, edad aproximada de 43 años, complexión DELGADA, de cabello CORTO CASTAÑO OSCURO, cara OVAL, ojos color CAFÉ, frente AMPLIA, cejas POBLADAS, nariz CÓNCAVA, labios GRUESOS, boca GRANDE, mentón OVAL, orejas MEDIANAS, bigote RASURADO, barba TIPO CANDADO; NO se encontraron señas particulares; presenta la siguiente **VESTIMENTA:** Pantalón levis color azul talla 34 x 32, calzón color gris y verde a cuadros marca JOKER, calcetines de color negro, camiseta de color gris con leyenda en la parte frontal superior ACCESS misma que en la parte posterior presenta cuatro orificios o cortes; así como se le aprecian las siguientes **HUELLAS DE VIOLENCIA FISICA:** 1.- Una herida al parecer punzo cortante localizada en rama descendente de mandíbula derecha de aproximadamente 2 X 3 centímetros; 2.- Una herida al parecer punzo cortante localizada en cara posterior lateral derecha de cuello de aproximadamente 4.5 X 1 centímetro; 3.- Una herida al parecer punzo cortante localizada en cara anterior de tercio distal de brazo derecho de aproximadamente 7 X 2.5 centímetros; 4.- Una herida al parecer punzo cortante localizada en dedo pulgar de cara palmar de mano izquierda de un centímetro de diámetro; 5.- Dos heridas al parecer punzo cortantes localizadas en región dorsal derecha siendo una de aproximadamente 5 X 2 centímetros y la otra de aproximadamente 3 X 1 centímetros; 6.- Una herida al parecer punzo cortante localizada en región parietal posterior de línea media de aproximadamente dos centímetros de longitud; asimismo dieron fe que como **PERTENENCIA:** No portaba ninguna pertenencia, se ordena al Personal del Servicio Médico Forense el levantamiento y traslado del cuerpo sin vida a las instalaciones del Servicios Médico Forense ubicadas en Boulevard Fundadores Colonia

Juárez de esta ciudad y proceda a ingresar el cuerpo del occiso a las instalaciones del mismo para efecto de que le sea practicada la necropsia de Ley. Por lo que continuando con la presente diligencia los Oficiales de la Secretaria de Seguridad Publica les informan que en la casa marcada con el numero 1325 de la misma calle y colonia localizada a varias casas de distancia al parecer se encuentra el arma con el cual fue lesionado el occiso, por lo que se da fe da fe que se observa goteo dinámico en dirección norte a sur el cual finaliza con predio 1325 siendo una distancia aproximada de cincuenta metros, siendo este una casa habitación de aproximadamente diez metros parte frontal construida de material, inmueble el cual cuenta de dos pisos y presenta leyenda "SE RENTA 664-503-9747", reja peatonal de color negro y antes de llegar al domicilio se localizaron en banqueta de terracería se localizaron un juego de llaves las cuales prenden de un llavero de metal color negro y plata con leyenda "HUSKY", y en la puerta peatonal de rejas metálicas de color negro a una distancia aproximada de veinte centímetros se da fe que se tiene a la vista UNA PUNTA HECHIZA embebida de liquido hematico, así como en el piso goteo dinámico goteo el cual continua hasta la segundo piso por las escaleras de material, donde se ubica un pasillo que da acceso a los departamentos terminando en este lugar el goteo dinámico, procediendo el personal del laboratorio estatal a muestrear la "punta hechiza" así como recabar muestras del goteo dinámico para las pruebas periciales pertinentes, PUNTA HECHIZA QUE MIDE APROXIMADAMENTE ONCE CENTÍMETROS, misma que fue embalada por el personal de Servicios Periciales para las pruebas pertinentes; objeto que es resguardado en las instalaciones de esta H. Representación para su entrega a quien derecho corresponda; diligencia que adquiere el valor de prueba plena de conformidad a los establecido por el artículo 218 del Código de Procedimientos Penales vigente en el Estado, ya que fue realizada por la Autoridad Investigadora en

las facultades que le otorga el artículo 21 Constitucional; robusteciendo lo anterior obran el **PARTE INFORMATIVO,** rendido por los **CC. Oficiales de Seguridad Pública Municipal OSCAR MARTÍNEZ LÓPEZ y HÉCTOR LEÓN MUÑOZ,** en el que asentaron que siendo las 02:10 horas del día de los hechos al encontrarse efectuando su recorrido de vigilancia se les indico trasladarse a la calle Tule número 1314 lateral con la calle Camichín de la colonia Praderas de La Mesa para atender reporte de una personas sin vida, motivo por el cual se trasladaron al lugar entrevistándose con la testigo **EDELMIRA MONTES HERNÁNDEZ,** quien les manifestó que momentos antes al encontrarse en el interior de su domicilio escucho cuando desde el exterior en la vía pública su hijo **JORGE RANGEL MONTES,** de 43 años de edad, le gritaba, por lo que se aproximó y al abrir la puerta se percato de que su hijo se encontraba visiblemente herido y con la ropa llena de sangre por lo que procedió a solicitar una ambulancia de la cruz roja llegando al lugar la unidad BC-166 a cargo del paramédico Paredes, mismo que indico que dicha persona se encontraba sin vida al parecer a causa de varias heridas con arma punzo cortante en diferentes partes del cuerpo, asimismo al lugar arribaron los agentes ministeriales, Meza y Virueta, así como el Licenciado Emigdio Gutiérrez de Homicidios Dolosos, de Periciales la Química Norma Rebeca Mata, de SEMEFO, Francisco Ramírez; -prueba a la que se le otorga el valor indiciario que para ello establece el artículo 223 de la ley adjetiva penal, mismo que alcanza el valor de prueba plena al verse confirmado con el restante caudal probatorio obrante en el sumario. Aunado a lo anterior obra en el sumario el **CERTIFICADO DE NECROPSIA y FE MINISTERIAL DEL MISMO;** remitido al C. Agente del Ministerio Publico Investigador de Delitos realizado por el **C. Perito Médico Legista Doctor JOSÉ LUIS ARGUELLO MONTIEL,** en fecha siete de mayo de dos mil once, a quien llevara por nombre de **JORGE RANGEL MONTES,** a quien

después de practicada la necropsia determinaron que la **CAUSA DETERMINANTE DE LA MUERTE: CHOQUE HIPOVOLEMICO SECUNDARIO A HERIDAS PENETRANTES DE CUELLO, TÓRAX y ABDOMEN POR HERIDA CON INSTRUMENTO PUNZOCORTANTE**; así como el **DICTAMEN QUÍMICO TOXICOLÓGICO y FE MINISTERIAL DEL MISMO**; numero **LZT/1989/2012**, de fecha siete de mayo del dos mil once, elaborado por el **C. QFB. PABLO GUILLERMO RODRÍGUEZ RUIZ**, adscrito al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN**: "La muestra en tubo de plástico con capacidad para 6 mililitros conteniendo orina rotulado como 105/12/201 **JORGE RANGEL MONTES,** la cual fue remitida bajo cadena de custodia con folio 107 recibida el día siete de mayo del año en curso, relacionado con la Averiguación Previa 105/12/201, resulto **POSITIVO** a la presencia de metabolitos de Metanfetaminas, Anfetaminas y Opiáceos"; asimismo obra el **DICTAMEN QUÍMICO de ALCOHOLEMIA Y FE MINISTERIAL DEL MISMO**; número LZT/1990/2012, de fecha siete de mayo del dos mil doce, elaborado por el **C. QFB. GUILLERMO RODRÍGUEZ RUIZ,** adscrito al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN**: "A las muestras contenidas en tubo de plástico con capacidad para 6 mililitros conteniendo sangre, rotulado como **105/12/201, JORGE RANGEL MONTES,** el cual fue remitida bajo la cadena de custodia con folio 107 recibida el día siete de mayo del año en curso, relacionados con la **Averiguación Previa AP/105/12/201/, NO se identifico la presencia de alcohol**"; y el **DICTAMEN DE COMPARATIVA HEMATICA Y FE MINISTERIAL DEL MISMO**; numero LZT/2119/2012, de fecha siete de mayo del dos mil doce, elaborado por el **C. Q.I. MARÍA DE LOS ÁNGELES RODRÍGUEZ LÓPEZ**, adscrita al Laboratorio Estatal de la Procuraduría de Justicia del Estado, en el que se establece la siguiente **CONCLUSIÓN: PRIMERA:**

"Las manchas pardo rojizas localizadas en el domicilio ubicado en calle Tule 1325 Fraccionamiento Praderas de la Mesa. SI corresponden a sangre humana; **SEGUNDA:** Las manchas pardo rojizas localizadas en el domicilio ubicado en Calle Tule 1325 Fraccionamiento Praderas de la Mesa, corresponde al tipo sanguíneo "O"; **TERCERA:** El tipo sanguíneo al que pertenece la muestra remitida del Servicio Médico Forense, identificada con el numero de Averiguación Previa 105/12/201, corresponde al tipo **O Rh POSITIVO";** Certificado de Necropsia y Dictámenes de los cuales diera fe la Representación Social Investigadora de Delitos; mismos que se les confiere el valor probatorio que para ello establece el artículo 222 de la Ley Adjetiva Penal, ya que cumple con los requisitos que exige el diverso numeral 179 del mismo Ordenamiento Legal en cita; teniendo además el valor probatorio que señala el artículo 218 de la Ley Adjetiva Penal, ya que fue fedatado por la Autoridad investigadora en pleno ejercicio de las atribuciones que le confiere el artículo 21 Constitucional; elementos de prueba que se robustecen con las declaraciones de los testigos de identidad **ILDA RANGEL y TIENA RAE GUTIÉRREZ,** quienes manifestaron ante el C. Agente del Ministerio Público Investigador de Delitos, manifestó que venían de las Instalaciones del Servicio Médico Forense lugar donde identifica plenamente y sin temor a equivocarse a su **HERMANO y PADRE** respectivamente como quien en vida llevara el nombre de **JORGE RANGEL MONTES,** quien contaba con la edad de 43 años de edad, fecha de nacimiento doce de diciembre de 1970, estado civil soltero, originario de Guadalajara Jalisco, de ocupación desempleado, con domicilio en calle Tule numero 1314 colonia Praderas de La Mesa, grado de escolaridad secundaria completa, de religión católico, y era de la siguiente media filiación: estatura de 1.60 aproximadamente, complexión delgado, tez moreno claro, cabello lacio, frente cara oval, ojos color café, frente amplia, cejas pobladas, nariz cóncava, labios

gruesos, boca grande, mentón oval, orejas medianas, bigote rasurado, barba tipo candado, no cuenta con señas; no fumaba, no sabe, no sabe, no padecía de enfermedad. y en relación a la manera en que falleció el **HERMANO y PADRE** de las respectivas testigos manifestaron..."Que el día de hoy siete de mayo del 2012, siendo aproximadamente las 02:00 horas les llamo **CLAUDIA RANGEL MONTES** informándoles que **JORGE RANGEL MONTES** lo habían privado de la vida, por lo que el mismo día se trasladaron a esta ciudad de Tijuana, para acudir al SEMEFO a reconocer el cuerpo del occiso, agregando que ignoran quién o quienes pudieron haber privado de la vida al occiso o el motivo por el cual lo hicieron; aunado a lo anterior obra **COPIA DIGITALIZADA DE DOS IMPRESIONES FOTOGRÁFICAS y FE MINISTERIAL DE LAS MISMAS;** en las que se aprecia el rostro de una persona de sexo masculino con la siguiente media filiación: de tez blanca, complexión robusta, cabello corto oscuro casi a rapa, bigote recortado, frente amplia, labios medianos, boca mediana, ceja arqueada poblada, en la primera de ellas se aprecia vistiendo una camiseta color negro y en brazos un bebe con ropa de color blanco, y en la segunda viste playera de color azul; mismas impresiones fotográficas de las cuales diera fe la Representación Social Investigadora de Delitos; así como el **INFORME número 349/HOM.DOL./12** de fecha siete de mayo del año del dos mil doce, rendido al C. Agente del Ministerio Público Investigador de Delitos, por los **CC. Agentes de la Policía Ministerial del Estado OSCAR RODRÍGUEZ ANDALÓN y ADRIANA E. CAMACHO ROCHA,** el cual en este apartado se íntegramente por reproducida atendiendo al principio de economía procesal; prueba a la que se le otorga el valor indiciario que para ello establece el artículo 223 de la ley adjetiva penal, mismo que alcanza el valor de prueba plena al verse confirmado con el restante caudal probatorio obrante en el sumario; Estas pruebas tienen en principio valor de indicio pero

adminiculada con las demás pruebas que a se han mencionados y con las que a continuación se citaran, de acuerdo a lo indicado en el artículo 223 del Código de Procedimientos Penales Vigente en la entidad su valor probatorio se incrementa hasta adquirir plenitud; elementos de convicción que valorados en términos de los artículos 212, 213 y 214 de la Ley Adjetiva Penal al ser además adminiculados y relacionados entre sí en términos del artículo 223 del mismo Ordenamiento Legal en cita, por su enlace lógico y natural resulta aptos y eficaces para acreditar la intervención que en forma directa realizó el inculpado de mérito en la comisión de este hecho delictuoso que se les imputa, ya que el día siete de mayo del año del dos mil doce, siendo aproximadamente las 02:00 horas el inculpado **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO,** al encontrarse en el domicilio ubicado en calle Tule número 1325 colonia Praderas de La Mesa, delegación Cerro Colorado, de esta ciudad, dicho inculpado ventajosamente lo privo de la vida al ahora occiso **JORGE RANGEL MONTES,** ya que portaba un arma blanca tipo navaja agrediéndolo con la misma, provocándole con esta las lesiones que a la postre le provocaron la muerte, describiéndose en el certificado de necropsia como causa determinante de la muerte: **choque hipovolemico secundario a heridas penetrantes de cuello, tórax y abdomen por herida con instrumento punzocortante;** elaborado por el **C. Perito Médico Legista JOSÉ LUIS ARGUELLO MONTIEL;** del cual diera fe el Fiscal Investigador de Delitos, no corriendo riesgo alguno el sujeto activo de ser muerto o herido por el pasivo; por lo que encontrándose reunidos los requisitos que establecen los artículos 16 Constitucional, 109 y 267 fracción I del Código de Procedimientos Penales es procedente decretar **ORDEN DE APREHENSIÓN** en contra **JORGE ANTONIO PASILLAS**

29

**JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO**, como probable responsable en la comisión del delito de **HOMICIDIO CALIFICADO**, misma orden que deberá entregarse al Agente del Ministerio Público Adscrito, para que por su conducto la haga llegar a la Policía Ministerial del Estado y ordene su ejecución, haciéndole saber al citado funcionario, que cumplimentada que sea dicha orden, deberá internarse al indiciado de referencia en el Centro de Reinserción Social, de esta ciudad, a disposición de este Juzgado.- - - - - - - - - - - - -

- - - Por lo antes expuesto, fundado y motivado es de resolverse como se:- - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - **R E S U E L V E** - - - - - - - - - - - - - -

- - - **PRIMERO:** Se **LIBRA ORDEN DE APREHENSIÓN** en contra de **JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE A. PASILLAS (A) GEORGE ANTHONY PASILLAS (A) GEORGE EL GÜERO (A) EL GÜERO,** como probable responsable en la comisión del delito de **HOMICIDIO CALIFICADO,** ilícito por el cual lo consignó el Agente del Ministerio Público Investigador de Delitos.- - - - - - - - - - - - - - - - - - - -

- - - **SEGUNDO:** NOTIFÍQUESE ÚNICAMENTE AL C. AGENTE DEL MINISTERIO PUBLICO ADSCRITO.- - - - - - - - - - - - - - -

- - - A S I; lo resolvió y firma la Ciudadana **Licenciada IGNACIA GLORIA FIMBRES MORENO,** Juez Cuarto Penal de este Partido Judicial, ante el Licenciado **VÍCTOR MANUEL FERNÁNDEZ CÓRDOVA,** Segundo Secretario de Acuerdos, con quien actúa y da fe.- - - - - - - - - - - - - - - - - - - - -

CONCLUYE ORDEN DE APREHENSIÓN DICTADA EN LA CAUSA PENAL: 279/2012.- - - - - - - - - - - - - - - - - - - - - - - - -

JUZGADO CUARTO PENAL

En _____ 11 Junio 2012 _____ Fue notificado
el ciudadano Agente del Ministerio Público del año
_____, y de enterado firmo, Doy fe.
La Actuaria

Recibi oficio 1079-2   11-junio-2012.

EN LA CIUDAD DE TIJUANA, BAJA CALIFORNIA, A LOS VEINTE DÍAS DEL MES DE NOVIEMBRE DEL AÑO DEL DOS MIL QUINCE, EL SUSCRITO SECRETARIO DE ACUERDOS LICENCIADO OSCAR MAURICIO PADILLA RUBIO, DEL JUZGADO CUARTO DE LO PENAL:- - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - C E R T I F I C A - - - - - - - - - - - - - - - - - - - -

QUE LAS PRESENTES SON COPIAS FIELES Y EXACTAS COTEJADAS DE SUS ORIGINALES DE DONDE SE COMPULSAS ESTA (QUINCE)  FOJAS ÚTILES RELATIVAS A LA ORDEN DE APREHENSIÓN, OBRANTE  DENTRO DE LA CAUSA PENAL NÚMERO 279/2012, INSTRUIDA EN CONTRA DE JORGE ANTONIO PASILLAS JARAMILLO (A) JORGE PASILLAS JARAMILLO (A) EL GEORGE (A) GEORGE ANTHONY PASILLAS  (A) EL GÜERO, POR EL DELITO DE HOMICIDIO CALIFICADO, PARA SER ENTREGADA AL C. AGENTE DEL MINISTERIO PÚBLICO ADSCRITO, PARA TODOS LOS EFECTOS LEGALES A QUE HAYA LUGAR.- DOY FE.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EL C. SECRETARIO DE ACUERDOS

LIC. OSCAR MAURICIO PADILLA RUBIO.



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

# CERTIFICACIÓN

- - - En la Ciudad de México, a 28 (veintiocho) de junio de 2016 (dos mil dieciséis).-
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - El que suscribe, Licenciado en Derecho **GERARDO RUIZ TERROBA**, Agente del Ministerio Público de la Federación adscrito a la Dirección General de Procedimientos Internacionales de la Subprocuraduría Jurídica y de Asuntos Internacionales de la Procuraduría General de la República y, de conformidad con los artículos 21 y 102 apartado A, de la Constitución Política de los Estados Unidos Mexicanos, 206 y 208 del Código Federal de Procedimientos Penales, 2, 4, fracción III, y 10, fracción X, de la Ley Orgánica de la Procuraduría General de la República; 3, inciso H), fracción V), 4, fracción XIII, 6 y 52, fracción I, del Reglamento de la Ley Orgánica de la Procuraduría General de la República, actuando de conformidad con lo dispuesto por el artículo 16 del Código Federal de Procedimientos Penales, en compañía de testigos de asistencia que al final firman y dan fe.- - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - **C E R T I F I C A** - - - - - - - - - - - - - - - - - - - - - - -

- - - Que las presentes copias fotostáticas son reproducción fiel exacta y concuerdan en todos sus términos con el texto de la orden de aprehensión de fecha 8 de junio del año 2012, documentación constante de 31 (treinta y un) fojas útiles, documentación que obra dentro del expediente de extradición internacional, iniciado en esta Dirección General de Procedimientos Internacionales en contra de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS",(a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, misma que se tuvo a la vista y se hizo la compulsa correspondiente para que surta los efectos legales a que haya lugar. -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - **D A M O S   F E** - - - - - - - - - - - - - - - - - - -


**TESTIGO DE ASISTENCIA**                    **TESTIGO DE ASISTENCIA**


**Lic. Erika Cabrera Becerra.**          **Lic. Miguel A. Rodriguez Robles.**

UNITED MEXICAN STATES )
FEDERAL DISTRICT )
CITY OF MEXICO ) ss:
EMBASSY OF THE UNITED )
STATES OF AMERICA )

**Leah Allen**
Deputy ACS Chief
Mexico City, Mexico
I, _____ Consul of the United States of America, duly commissioned and qualified, certify that the signature and official seal of:

**MYRNA GRANADOS HERNANDEZ**
(Name of Foreign Official)

an official empowered to act in the capacity designated in the annexed document, to which faith and credit are due, are true and correct.

For the contents of the annexed document I assume no responsibility.

_____
(Signature of Consular Officer)

**Leah Allen**
Deputy ACS Chief
Mexico City, Mexico
_____
(Type Name of Consular Officer)

JUL 06 2016
_____
(Date)

U.S. Department of State

**CERTIFICATE TO BE ATTACHED TO DOCUMENTARY
EVIDENCE ACCOMPANYING REQUISITIONS IN
THE UNITED STATES FOR EXTRADITION
AMERICAN FOREIGN SERVICE**

Mexico City, Mexico, July 6th, 2016
Place and Date *(mm-dd-yyyy)*

I, _____ Roberta Jacobson _____ , _____ Ambassador _____
Name                                           Title

of the United States of America at          Mexico City, Mexico

hereby certify the annexed papers, being     supporting documents

proposed to be used upon an application for the extradition from the United States of America

Jorge Antonio Pasillas Jaramillo, aka"Jorge Pasillas Jaramillo", aka "El George A. Pasillas",

aka " George Anthony Pasillas", aka "George El Guero", aka "El Guero"

charged with the crime of      aggravated homicide

alleged to have been committed in          The Mexican United States

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of the Mexican United States

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

this          6th.          day of          July 2016.
Month and Year

Signature _____

Roberta Jacobson, Ambassador
Type Name and Title of Certifying Officer
of the United States of America.

DS-0036
03-2015

UNITED MEXICAN STATES )
FEDERAL DISTRICT )
CITY OF MEXICO ) SS:
EMBASSY OF THE UNITED STATES )
OF AMERICA )

**Leah Allen**
Deputy ACS Chief

Before me, _____Mexico City, Mexico_____, Consul of the United States of America at Mexico, D. F., Mexico, duly commissioned and qualified, personally appeared _Georgina Y. Trujillo Velasco_ who, being duly sworn deposes and says as follows:

1.  My name is _Georgina Yasmin Trujillo Velasco_ and I reside at _Mexico City_

2.  I have been familiar with the English and _Spanish_ languages for the past _19_ years, I made the annexed translation from _Spanish_ to English. The said translation is to the best of my knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

Subscribed and sworn to before me this day _____JUL 06 2016_____.

_Leah Allen_
**Consul of the United States**
**of America**

UNITED MEXICAN STATES ) 
FEDERAL DISTRICT )
CITY OF MEXICO )    SS:
EMBASSY OF THE UNITED STATES )
OF AMERICA )

### Leah Allen
**Deputy ACS Chief**
**Mexico City, Mexico**

Before me, _____, Consul of the United States of America at Mexico, D. F., Mexico, duly commissioned and qualified, personally appeared _Georgina Y Trujillo Velasco_ who, being duly sworn deposes and says as follows:

1. My name is _Georgina Yazmín Trujillo Velasco_ and I reside at _México City_

2. I have been familiar with the English and _Spanish_ languages for the past _17_ years, I made the annexed translation from _Spanish_ to English. The said translation is to the best of my knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

JUN 06 2016

Subscribed and sworn to before me this day _____.

_Leah Allen_
**Consul of the United States of America**



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

FORMA C G - 1 A

## CHAPTER III

## PERPETRATION AND PARTICIPATION

Article 16.- **Perpetrators and Participants** According to the case, perpetrators and participants of the crime committed shall be:

I.     <u>Direct perpetrators</u> those who commit the crime by themselves.

II.    <u>Co-perpetrators</u> those who commit the crime jointly with another perpetrator;

III.   <u>Mediate perpetrators</u> those who commit the crime by means of a third person;

IV.    <u>Instigators</u> those who intentionally persuade another to commit it;

V.     <u>Accomplice</u> those who intentionally assist or help the perpetrator to commit the crime; and

VI.    <u>Aid in performance of a prior promise</u> those who aid the perpetrator after the crime is perpetrated fulfilling a promise made prior to the commission of the crime;



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

THE UNDERSIGNED, **CARLOS ALBERTO LEAL SARIÑANA**, DEPARTMENT CHIEF OF THE GENERAL FILING OFFICE OF THE EXECUTIVE BRANCH OF THE ADMINISTRATIVE CHIEF OFFICE FOR THE GOVERNMENT OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, IN CONFORMITY WITH THE PROVISIONS SET FORTH IN ARTICLE 42 (V) OF THE INTERNAL REGULATIONS OF THE ADMINISTRATIVE CHIEF OFFICE FOR THE GOVERNMENT, ISSUED IN THE STATE OFFICIAL GAZETTE ON NOVEMBER 18, 2011, HEREBY

**C E R T I F Y**

THAT THIS IS A TRUE AND ACCURATE COPY OF THE ORIGINAL DOCUMENT FILED HEREAT, UNDER THE CUSTODY OF THIS OFFICE UNDER MY COMMAND, ISSUED ON A SINGLE PAGE PROPERLY COMPARED.

**MEXICALI, BAJA CALIFORNIA; NOVEMBER TWENTY-FIVE, TWO THOUSAND THIRTEEN.**

[signed]
**CARLOS ALBERTO LEAL SARIÑANA**
**CHIEF OF THE GENERAL FILING OFFICE OF THE**
**EXECUTIVE BRANCH OF THE ADMINISTRATIVE CHIEF OFFICE FOR THE**
**FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA**

[A seal that reads
UNITED MEXICAN STATES
(Mexican Coat of Arms)
GOVERNMENT OF THE STATE OF BAJA CALIFORNIA
ADMINISTRATIVE CHIEF OFFICE
FILING OFFICE OF THE EXECUTIVE BRANCH
MEXICALI B.C.]

FORMA C G - 1 A



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Article 149.- <u>Concept of conditional unfair advantage</u>. Unfair advantage shall only be considered as an aggravating circumstance of the crimes that are mentioned in the chapters preceding this title if the advantage is such that the offender is in no danger of being killed nor bodily injured by the victim, and the offender is not acting in self-defense".



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

THE UNDERSIGNED, **CARLOS ALBERTO LEAL SARIÑANA**, DEPARTMENT CHIEF OF THE GENERAL FILING OFFICE OF THE EXECUTIVE BRANCH OF THE ADMINISTRATIVE CHIEF OFFICE FOR THE GOVERNMENT OF THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA, IN CONFORMITY WITH THE PROVISIONS SET FORTH IN ARTICLE 42 (V) OF THE INTERNAL REGULATIONS OF THE ADMINISTRATIVE CHIEF OFFICE FOR THE GOVERNMENT, ISSUED IN THE STATE OFFICIAL GAZETTE ON NOVEMBER 18, 2011, HEREBY

**C E R T I F Y**

THAT THIS IS A TRUE AND ACCURATE COPY OF THE ORIGINAL DOCUMENT FILED HEREAT, UNDER THE CUSTODY OF THIS OFFICE UNDER MY COMMAND, ISSUED ON TWO PAGES PROPERLY COMPARED.

**MEXICALI, BAJA CALIFORNIA; NOVEMBER TWENTY-FIVE, TWO THOUSAND THIRTEEN.**

[signed]
**CARLOS ALBERTO LEAL SARIÑANA**
**CHIEF OF THE GENERAL FILING OFFICE OF THE**
**EXECUTIVE BRANCH OF THE ADMINISTRATIVE CHIEF OFFICE FOR THE**
**FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA**

[A seal that reads
UNITED MEXICAN STATES
(Mexican Coat of Arms)
GOVERNMENT OF THE STATE OF BAJA CALIFORNIA
ADMINISTRATIVE CHIEF OFFICE
FILING OFFICE OF THE EXECUTIVE BRANCH
MEXICALI B.C.]



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

OFFICE OF THE ATTORNEY GENERAL OF JUSTICE FOR THE STATE OF
BAJA CALIFORNIA
Division of Preliminary Investigations

**105/12/201/AP**

**IDENTIFICATION PROCEEDING BY MEANS OF A PHOTO ARRAY RENDERED BY EDELMIRA MONTES HERNANDEZ.** In TIJUANA, BAJA CALIFORNIA, being the 11:07 hours of JUNE TWO, TWO THOUSAND FOURTEEN, present at the Premises of the Organic Unit for Intentional Homicides, the Agent of the Public Prosecutor for Local Matters, ALEJANDRO JIMENEZ RAFAEL, properly assisted and before the attestation of his Clerk, TALINA CASTILLO ROCHA in order to carry out the identification proceeding by means of a photo array, in terms of the provisions set forth in articles 200, 201, 202, 203 and 205 of the Code of Criminal Procedure, which stipulates that in order to identify a person not present at the proceeding or brought thereto, the confrontation may be carried out by means of photographs that shall be compared to others similar to the person upon whom the identification will be made; for such purpose, there is attested to the presence of the person who stated to be named EDELMIRA MONTES HERNADEZ, age 73 years, born in MICHOACAN, MARRIED, a HOUSEWIFE, domiciled at 650 WY, LA HABRA, CALIFORNIA, telephone number 625-91-72, which belongs to her friend ROSAMELIA OROZCO SANCHEZ, domiciled in this city. Likewise, the deponent is informed of the penalties incurred by whoever renders a false statement or refuses to do so. Therefore, she affirms she is to tell the truth and in conformity with the provisions set forth in article 202 of the Code of Criminal Procedure for the State of Baja California, the person appearing is questioned whether she knows the person whose name is JORGE ANTONIO PASILLAS JARAMILLO, aka JORGE PASILLAS JARAMILLO aka GEORGE A. PASILLAS aka GEORGE ANTHONY PASILLAS aka GEORGE EL GÜERO aka GEORGE aka EL GÜERO. The deponent states SHE DOES; thus this office requests a description from the deponent, and she states he is 5 feet and some inches tall, light olive skinned, thin, with very short dark brown hair, and at the time the events took place he was not using any moustache or beard. His eyes are brown, medium-sized mouth, regular lips, medium-sized ears, oval face. THEREAFTER, this Public Prosecutor places at the sight of the deponent the photo array made up of six photographs of male individuals with similar features. Therefore, we continued to ask the deponent whether she recognizes any of the individuals appearing in the 6-image photo array. Upon seeing them, the deponent STATED: I FULLY recognize the person appearing in the photograph marked with



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

number SIX which I am now pointing at with my left index finger. The person therein is named JORGE ANTONIO PASILLAS JARAMILLO aka JORGE PASILLAS JARAMILLO aka GEORGE A. PASILLAS aka GEORGE ANTHONY PASILLAS aka GEORGE EL GÜERO aka GEORGE aka EL GÜERO. She also stated: I know GEORGE ANTHONY PASILLAS since he was a child because we used to live in the same neighborhood. Likewise, in 2010, he lived at the same place my son, now deceased, did, they were very good friends. Then my son moved to the place where the events took place and JORGE ANTONIO PASILLAS JARAMILLO followed my son to that place, but my son could not put up with him anymore because he was a very stubborn person. Likewise, the day when the events took place, May 7, 2012, when I was lying in bed at the place where I use to spend the night when I come to the city, I heard my son crying out loud from the street, he was calling me "MAMA" and he was also calling ROCIO and CHINO who live at the place where the events took place and where I stay when I come to this City, so my son, now deceased, was yelling "HELP ME OUT, I AM DYING", I came out quickly, I saw my son JORGE RANGEL MONTEZ sitting on the sidewalk as he was telling me "MAMA, HOLD ME TIGHT, CALL AN AMBULANCE, TAKE ME", I remember that in the moment I asked him who had wounded him and my son replied, "IT WAS GEORGE EL GÜERO, EL GEORGE", he stabbed me [sic] (meaning that he had wounded him with a sharp instrument) quickly, I called an ambulance and when the paramedics arrived they told me my son had died, so I found out that the same day the events took place, JORGE ANTONIO PASILLAS JARAMILLO crossed the border to the United States because he is an American citizen. This is all she has to state so she signed at the margin of the document for due legal record. Due to the above, the proceeding is concluded for the pertinent legal effects. SO BE IT.

THE PROCEEDING IS CONCLUDED

[Two illegible signatures]
[The record bears an illegible signature at the right margin and an illegible seal at the end]



PROCURADURÍA GENERAL
DE LA
REPÚBLICA



[A seal that reads:]
THE UNDERSIGNED, CLERK ASSIGNED TO THE ORGANIC UNIT OF INTENTIONAL
HOMICIDES, HEREBY
CERTIFIES:
THAT THIS IS A TRUE AND ACCURATE COPY OF THE ORIGINAL DOCUMENT
PLACED AT OUR SIGHT WITHIN PRELIMINARY INVESTIGATION RECORD
105/12/201, SAME THAT WAS PROPERLY COMPARED AND ISSUED IN ONE
PRINTED PAGE AT THE PETITION OF THE REQUESTING PARTY
THE ABOVE WAS ISSUED IN THE CITY OF TIJUANA, B.C. ON JUNE 2, 2014
THE CLERK
TALINA CASTILLO ROCHA]
[an illegible signature]



PROCURADURÍA GENERAL
DE LA
REPÚBLICA





# AUTHENTICATION

PROCURADURÍA GENERAL
DE LA
REPÚBLICA

-----Mexico City, on June 28, 2016.----------------------------------------------------------------------
-----The undersigned, **GERARDO RUIZ TERROBA**, Agent of the Federal Public Prosecutor in the service of the General Division of International Proceedings, of the Office of the Deputy Attorney General for Legal and International Affairs, of the Office of the Attorney General of the Republic, pursuant to Articles 21 and 102 (A) of the Political Constitution of the United Mexican States; 206 and 208 of the Federal Code of Criminal Procedure; 2, 4 (III) and 10 (X) of the Organic Law of the Office of the Attorney General of the Republic; 3 (H) (V), 4 (XIII), 6 and 52 (I), of the Regulations of the Organic Law of the Attorney General's Office of the Republic, and along with the attesting witnesses who sign and attest at the end,----------
--------------------------------------------------------**CERTIFIES**:--------------------------------------------------
-----That these photocopies consisting of 9 (nine) written pages, is faithful reproduction and tally in all their terms with the legal provisions and the identification proceedings of the photo array carried out by witness Edelmira Montes Hernandez, dated on June 2, 2014. Such document is kept within the international extradition file of the General Division of International Proceedings against **JORGE ANTONIO PASILLAS JARAMILLO, aka "JORGE PASILLAS JARAMILLO", aka "EL GEORGE A. PASILLAS", aka "GEORGE ANTHONY PASILLAS", aka "GEORGE EL GÜERO", aka "EL GÜERO"**, same which was at sight for the corresponding comparison for the pertinent legal effects.---------------------------
-----------------------------------------------------**WE ATTEST**-----------------------------------------

[signed]

**ATTESTING WITNESS**                           **ATTESTING WITNESS**

[Signed]                                              [Signed]
**Erika Cabrera Becerra**                        **Miguel A. Rodriguez Robles**

[SEAL THAT READS:
MEXICAN COAT OF
ARMS, UNITED
MEXICAN STATES,
MEXICAN ATTORNEY
GENERAL'S OFFICE
GENERAL DIVISION OF
INTERNATIONAL
AFFAIRS]

[SEAL THAT READS: MEXICAN COAT OF ARMS, UNITED MEXICAN STATES MINISTRY OF THE INTERIOR GOVERNMENT UNIT]

**005780**

[HOLOGRAM: UNITED MEXICAN STATES, PROCURADURIA GENERAL MEXICAN COAT A OF ARMS REPUBLICA

**EFRAIN TERMINEL MUÑOZ,** ASSISTANT DIRECTOR FOR MONITORING DECISIONS, ASSISTING THE HEAD OF THE GOVERNMENT UNIT OF THE MINISTRY OF THE INTERIOR, PURSUANT TO THE PROVISIONS OF ARTICLE 10 SECTION I, AND 11 FINAL PARAGRAPH OF THE INTERNAL REGULATIONS OF THE MINISTRY OF THE INTERIOR, **CERTIFIES:** THAT GERARDO RUIZ TERROBA, WAS A PUBLIC PROSECUTOR OF THE FEDERATION ASSIGNED TO THE GENERAL DIVISION OF INTERNATIONAL PROCEEDINGS OF THE OFFICE OF THE ASSISTANT ATTORNEY GENERAL FOR LEGAL AND INTERNATIONAL AFFAIRS OF THE OFFICE ATTORNEY GENERAL OF THE REPUBLIC ON JUNE 28, 2016, AND THAT THE SIGNATURE APPEARING ON THE PRESENT DOCUMENT IS HIS OWN.

NAME OF HOLDER: OFFICE OF THE ATTORNEY GENERAL OF THE REPUBLIC
TYPE OF DOCUMENT: CERTIFIED COPIES
MEXICO CITY, ON JUNE 29, 2016.                    [Signed]
REGISTRY No. **10755**
This ministry does not assume any liability
as for the contents of this document
MADE/IAE/ETM

[SEAL:                                          SIGNATURE
UNITED MEXICAN STATES.
(Mexican Coat of Arms)                          CODE **QI55PJ6VZ**
MINISTRY OF FOREIGN AFFAIRS.                    The authenticity of this legalization and its
CUAUHTEMOC DELEGATION]                          electronic signature may be verified at:

[SEAL:                                          F8
UNITED MEXICAN STATES.                          FOLIO No. 593187
(Mexican Coat of Arms)
MINISTRY OF FOREIGN
AFFAIRS
CONSULAR SERVICE
AUTHENTICATIONS]

# THE MINISTRY OF FOREIGN AFFAIRS CERTIFIES:

that *EFRAIN TERMINEL MUÑOZ WAS ASSISTANT DIRECTOR*
*FOR MONITORING DECISIONS, ASSISTING THE HEAD OF THE*
*GOVERNMENT UNIT OF THE MINISTRY OF THE INTERIOR, ON*    **JUNE 29, 2016**

and that the preceding signature is his own.

*Mexico, Mexico City*, on *JUNE 30* of 20*16*.

**BY RESOLUTION OF THE MINISTER**

**THE DELEGATE OF THE**
**MINISTRY OF FOREIGN AFFAIRS**

[Signed]

MYRNA GRANADOS HERNANDEZ

THIS MINISTRY DOES NOT ASSUME ANY LIABILITY
AS FOR THE CONTENTS OF THE DOCUMENT
BEING AUTHENTICATED

MERCANTIL, S.A.
PODER EJECUTIVO
ARCHIVO GRAL. DEL
OFICIALIA MAYOR

P E R I O D I C O   O F I C I A L   20 de Agosto de 1989

acción por omisión.

A nadie se le podrá atribuir un resultado típico si éste no es consecuencia de su acción u omisión. En los delitos de resultado material, también responderá del resultado típico producido quien, omisión el deber jurídico de actuar para evitarlo, no lo impide.

**Artículo 13.- Delitos Instantáneo, Permanente y Continuado.-** Para los efectos de este Código, el delito es:

I.- Instantáneo, cuando se consuma en el mismo momento en que se han realizado todos los elementos de la descripción legal;

II.- Permanente o continuo, cuando la consumación se prolonga en el tiempo; y

III.- Continuado, cuando con unidad de propósito delictivo y pluralidad de conductas se viola el mismo precepto legal.

**Artículo 14.- Dolo, Culpa y Preterintención.-**

Los delitos se pueden realizar dolosa, culposa o preterintencionalmente:

I.- Obra dolosamente el que, conociendo los elementos objetivos de la descripción legal, o previendo como posible el resultado típico, quiere o acepta la realización de la conducta o hecho descrito por la ley;

II.- Obra culposamente el que produce el resultado típico que no previó siendo previsible o previó confiado en que no se produciría, al infringir un deber de cuidado que las circunstancias y condiciones personales le imponen;

III.- Obra preterintencionalmente el que causa un resultado típico más grave al querido, si aquél se produce culposamente.

Sólo es punible el delito doloso y lo será el culposo y el preterintencional, si la Ley lo conmina expresamente con pena.

La punibilidad del delito preterintencional, sólo es admisible en los casos en que se admite la del delito culposo.

## CAPITULO II

### TENTATIVA

**Artículo 15.- Tentativa Punible, Delito Imposible y Desistimiento y Arrepentimiento.-** Existe tentativa punible cuando la resolución de cometer un delito se exterioriza ejecutando la conducta que debería producirlo u omitiendo la que debería evitarlo, si aquél no se consuma por causas ajenas a la voluntad del agente.

También es punible la tentativa cuando el delito no se pudiera consumar, por inidoneidad de los medios o por inexistencia del bien jurídico

tutelado o del objeto material.

Si la tentativa deriva de la notoria incultura, marginación social, o causas similares, a juicio del órgano jurisdiccional, la tentativa no es punible.

Si el sujeto espontáneamente se desistiere de la ejecución o impidiere la consumación del delito, no se impondrá pena o medida de seguridad alguna, a no ser que los actos ejecutados u omisiones constituyan por sí mismos delito, en cuyo caso se le impondrá la pena o medida señalada para éstos.

## CAPITULO III

### AUTORIA Y PARTICIPACION

**Artículo 16.- Autores y Partícipes.-** Son autores o partícipes del delito cometido, según el caso:

I.- **Autores Directos.-** Los que lo realicen por sí;

II.- **Coautores.-** Los que lo realicen conjuntamente;

III.- **Autores mediatos.-** Los que lo lleven a cabo sirviéndose de otro como instrumento;

IV.- **Instigadores.-** Los que determinen dolosamente a otro a cometerlo;

V.- **Cómplice.-** Los que dolosamente presten ayuda o auxilio a otro para su comisión; y

VI.- **Auxilio en cumplimiento de promesa**

**anterior.-** Los que con posterioridad a su ejecución auxilien al autor en cumplimiento de una promesa anterior al delito.

**Artículo 17.- Delito Emergente.-** Si varias personas toman parte en la realización de un delito determinado y alguna de ellas comete un delito distinto, sin previo acuerdo con las otras, todas serán responsables de la comisión del nuevo delito, salvo que concurran los requisitos siguientes:

I.- Que el nuevo delito no sirva de medio adecuado para cometer el principal;

COTEJADO
PROCEDIMIENTO
INTERNA...

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

## C E R T I F I C O:

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO. MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN UNA HOJA UTIL DEBIDAMENTE COTEJADA.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA.**

la comunidad de diez a treinta días según proceda a juicio del juzgador.

Si tarda en sanar más de quince días se le impondrá prisión de cuatro meses a dos años y de veinte a cien días multa.

**Artículo 139.- Punibilidad de las lesiones simples en razón del resultado.-** Las lesiones que no pongan en peligro la vida, cualquiera que sea su tiempo de curación, serán penadas:

I.- De dos a cinco años de prisión y hasta cien días multa, si dejan cicatriz en la cara notable y permanente;

II.- De tres a cinco años de prisión y hasta cien días multa, cuando disminuyan facultades o el normal funcionamiento de órganos o miembros o cuando produzcan incapacidad temporal de hasta un año para trabajar; o

III.- De tres a ocho años de prisión y hasta doscientos días multa si producen la pérdida definitiva de cualquier función orgánica, miembro, órgano o facultad, o causen una enfermedad segura o probablemente incurable o deformidad incorregible, o incapacidad por más de un año o permanente para trabajar.

Si se produjeren varios de los resultados previstos en este artículo solamente se aplicará la pena correspondiente al de mayor gravedad.

**Artículo 140.- Lesiones que ponen en peligro la vida.-** Al que infiera lesiones que pongan en peligro la vida se le impondrán de tres a seis años de prisión y hasta ciento cincuenta días multa, sin perjuicio de las sanciones que le correspondan conforme al artículo anterior.

**Artículo 141.- Lesiones en riña .-** Si las lesiones fueren inferidas en riña , se disminuirán hasta la mitad o hasta la tercera parte de las penas previstas en los tres artículos anteriores, según se trate de

provocador o del provocado, respectivamente.

**Artículo 142.- Lesiones agravadas por razón del parentesco.-** Al que dolosamente lesione a su ascendiente o descendiente consanguíneo en línea recta, a su hermano, cónyuge, concubino, concubina, adoptante o adoptado, con conocimiento de ese parentesco o relación, se le impondrá hasta una mitad más de la pena que corresponda a la lesión inferida.

Si las lesiones son inferidas a un menor de dieciséis años o incapaz, sujeto a la patria potestad, tutela o custodia del autor, además de las penas que le correspondan por la lesión producida se privará al delincuente de esa potestad, tutela o custodia.

**Artículo 143.- Lesiones calificadas.-** Cuando las lesiones sean calificadas, en términos del artículo 147, la pena correspondiente a las lesiones simples se aumentará en dos terceras partes.

**Artículo 144.- Lesiones perseguibles por querella.-** Se persiguen por querella de parte:

I.- Las lesiones previstas en el artículo 138;

II.- Cuando se causen lesiones culposas, cualquiera que sea su naturaleza con motivo de tránsito de vehículos, siempre que el conductor no se hubiese encontrado en estado de ebriedad o bajo el influjo de estupefacientes, psicotrópicos o de cualquier otra substancia que produzca efectos similares, y no se haya dejado abandonada a la víctima; o en los casos en que ésta sea consecuencia de la conducta culposa del personal de empresas de transporte de pasajeros, de carga de servicio público o concedido por autorización, permiso o licencia de las autoridades competentes

**Artículo 145.- Lesiones causadas por animal.-** De las lesiones que a una persona cause, algún animal será responsable el que con esa intención lo azuce, lo suelte o haga esto último por descuido.

## CAPITULO VII

### DISPOSICIONES COMUNES PARA LOS DELITOS DE HOMICIDIO Y LESIONES

**Artículo 146.- Concepto.-** Por riña se entiende para todos los efectos penales, la contienda de obra y no la de palabra entre dos o más personas, con el propósito de dañarse recíprocamente.

**Artículo 147.- Homicidio y lesiones calificados.-** Se entiende que las lesiones y el homicidio son calificados, cuando se cometan con

premeditación, con ventaja, con alevosía o a traición.

**Concepto de premeditación.-** Hay premeditación siempre que el reo cause intencionalmente una lesión, después de haber reflexionado sobre el delito que va a cometer.

Se presumirá que existe premeditación cuando las lesiones o el homicidio se cometan por inundación, incendio, minas, bombas o explosivos;

por medio de venenos o cualquier otra substancia nociva a la salud, contagio venéreo, asfixia o enervantes o por retribución dada o prometida; por alimento, motivos depravados o brutal ferocidad.

**Artículo 148.- Concepto de ventaja.**- Se entiende que hay ventaja:

I.- Cuando el delincuente es superior en fuerza física al ofendido y éste no se halla armado.

II.- Cuando es superior en las armas que emplea, por su mayor destreza en el manejo de ellas o por el número de los que lo acompañen;

III.- Cuando se vale de algún medio que debilita la defensa del ofendido, y

IV.- Cuando éste se halla inerme o caído y aquel armado o de pie.

La ventaja no se tomará en consideración en los tres primeros casos, si el que la tiene obrase en defensa legítima, ni en el cuarto, si el que se halla armado o de pie fuere el agredido, y además hubiere corrido peligro su vida por no aprovechar esa circunstancia.

**Artículo 149.- Concepto de ventaja condicionada.**- Sólo será considerada la ventaja como calificativa de los delitos de que hablan los capítulos anteriores de este título, cuando sea tal que el delincuente no corra riesgo alguno de ser muerto ni herido por el ofendido y aquel no obre en legítima defensa.

**Artículo 150.- Concepto de alevosía.**- La alevosía consiste en sorprender intencionalmente, a alguien de improviso, o empleando acechanza u otro medio que no le dé lugar a defenderse ni evitar el daño que se le quiere hacer.

**Artículo 151.- Concepto de traición.**- Obra a traición el que no solamente emplea la alevosía, sino también la perfidia, violando la fe o seguridad que expresamente había prometido a su víctima, o la tácita que ésta debía prometerse de aquel por sus relaciones de parentesco, gratitud, amistad o cualquier otra que inspire confianza.

**Artículo 152.- Homicidio o lesiones culposos.**- Son punibles el homicidio y las lesiones causados culposamente.

**Artículo 153.- Penas adicionales para los delitos de homicidio y lesiones.**- El juzgador, si lo estima pertinente, además de las penas que se señalan para los delitos de homicidio y lesiones, podrá en su caso:

I.- Declarar a los reos sujetos a vigilancia de la autoridad;

II.- Prohibirles ir a circunscripción territorial determinada o residir en ella.

**Artículo 154.- Homicidio o lesiones por infidelidad conyugal.**- Se impondrán de dos a cinco años de prisión, al que, sorprendiendo a su cónyuge en el acto carnal o próximo a la consumación mate o lesione a cualquiera de los culpables, o ambos, salvo el caso de que el matador haya contribuido a la corrupción de su cónyuge. En este último caso se impondrán al homicida de cinco a diez años de prisión.

**Artículo 155.- Homicidio o lesiones por corrupción de descendiente o adoptado.**- Se impondrán de dos a cinco años de prisión al ascendiente o adoptante que mate o lesione al corruptor del descendiente o adoptado que está bajo su potestad, o a ambos, si lo hiciere en el momento de hallarlos en el acto sexual o en uno próximo a él, si no hubiere procurado la corrupción de su descendiente o adoptado con el varón o mujer con quien lo sorprenda, ni con otra persona.

**Artículo 156.- Tipo y punibilidad.**- Se aplicará sanción de dos a cinco años de prisión y hasta doscientos días multa:

I.- Al que dispare a una persona o un grupo de personas un arma de fuego;

II.- Al que ataque a alguien de tal manera que en razón del medio empleado, el arma, la fuerza o destreza del agresor, o de cualquier otra circunstancia semejante, pueda producir como resultado la muerte.

El artículo anterior sólo tendrá aplicación cuando no pueda sancionarse el hecho conforme al artículo 15 de este Código, para los delitos de homicidio o lesiones.

## CAPITULO VIII

### DELITOS DE PELIGRO PARA LA VIDA Y LA SALUD DE LAS PERSONAS

**Artículo 157.- Omisión de auxilio.**- Al que omita prestar auxilio necesario a quien se encuentre desamparado y en peligro manifiesto en su persona, cuando pudiere hacerlo, según las circunstancias,

EL SUSCRITO **LIC. CARLOS ALBERTO LEAL SARIÑANA**, JEFE DEL DEPARTAMENTO DEL ARCHIVO GENERAL DEL PODER EJECUTIVO DE LA OFICIALIA MAYOR DE GOBIERNO DEL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA, DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTICULO 42 FRACCION V DEL REGLAMENTO INTERNO DE LA OFICIALIA MAYOR DE GOBIERNO, PUBLICADO EN EL PERIODICO OFICIAL DEL ESTADO, DE FECHA 18 DE NOVIEMBRE DEL 2011.

## C E R T I F I C O:

QUE LA PRESENTE COPIA FOTOSTATICA ES COPIA FIEL Y EXACTA DEL ORIGINAL QUE OBRA EN EL ARCHIVO, MISMO QUE SE ENCUENTRA EN CUSTODIA EN ESTA OFICINA A MI CARGO, SE EXPIDE EN DOS HOJAS UTILES DEBIDAMENTE COTEJADAS.

**MEXICALI, BAJA CALIFORNIA, A LOS VEINTICINCO DIAS DEL MES DE NOVIEMBRE DE DOS MIL TRECE.**

-----------------------------------------
**LIC. CARLOS ALBERTO LEAL SARIÑANA**
**JEFE DEL ARCHIVO GENERAL DEL PODER EJECUTIVO**
**DE LA OFICIALIA MAYOR DEL GOBIERNO DEL ESTADO**
**LIBRE Y SOBERANO DE BAJA CALIFORNIA.**

OFICIALIA MAYOR
ARCHIVO GRAL. DEL
PODER EJECUTIVO
MEXICALI, B.C.

PROCURADURIA GENERAL DE JUSTICIA DEL ESTADO
DE BAJA CALIFORNIA
Dirección de Averiguaciones Previas

## 105/12/201/AP

**DILIGENCIA DE IDENTIFICACION POR RUEDA FOTOGRAFICA A CARGO DE EDELMIRA MONTES HERNANDEZ.-** En TIJUANA, BAJA CALIFORNIA, siendo las 11:07 horas del día DOS DEL MES DE JUNIO DE DOS MIL CATORCE, constituidos en estas Oficinas de la Unidad Orgánica de Homicidios Dolosos, el Ciudadano Agente del Ministerio Público del Orden común Licenciado ALEJANDRO JIMENEZ RAFAEL, debidamente asistido y ante la fe de su Secretario de Acuerdos Licenciado TALINA CASTILLO ROCHA a efecto de llevar a cabo la diligencia de identificación por rueda fotográfica, en los términos señalados por los artículos 200, 201, 202, 203 y 205 del Código de Procedimientos Penales, el cual establece que para reconocer a una persona que no estuviera presente en la diligencia ni pudiera ser presentada, podrá realizarse la confrontación a través de fotografías con otras semejantes a quien debe efectuar el reconocimiento; para tal efecto se hace constar la presencia de quien dijo llamarse **EDELMIRA MONTES HERNÁNDEZ**, ser de 73 años, originaria de MICHOACAN, estado civil CASADA, ocupación AL HOGAR, con domicilio en 650 WY LA HABRA, ESTADO CALIFORNIA, proporcionando como numero telefónico para ser localizada el 625-91-72 mismo que pertenece al de su amiga ROSAMELIA OROZCO SANCHEZ quien cuenta con domicilio en esta Ciudad, así mismo se le hace saber a la declarante de las penas en las que incurren los falsos declarantes o quienes se nieguen a declarar, a lo que manifiesta conducirse con verdad, por lo que de conformidad con lo dispuesto por el articulo 202 del Código de Procedimientos Penales para el estado de Baja California, acto seguido se procede a interrogar a la compareciente a quien se le cuestiona si conoce al de nombre JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO alias GEORGE A. PASILLAS alias GEORGE ANTHONY PASILLAS alias GEORGE EL GÜERO alias GEORGE alias EL GUERO contestando el compareciente que SI, por lo que esta fiscalía le pide si le es posible describirlo manifestando: que es de estatura de 5 pies y pulgadas aproximadamente no recordando con exactitud, de tez Moreno claro, complexión delgado, de cabello castaño oscuro muy corto, en el momento que cometió los hechos no traía bigote, ni barba, con ojos de color café, boca mediana y labios regulares, orejas medianas, de cara ovalada, ACTO CONTINUO, esta representación Social pone a la vista a la compareciente la rueda consistente en seis impresiones fotográficas de personas del sexo masculino con características y rasgos semejantes, por lo que se procede a cuestionar al compareciente si reconoce alguna de las personas que aparece en la rueda de SEIS fotografías, a lo que MANIFESTO: SI reconozco plenamente al de la fotografía marcada con el numero SEIS señalándola con el dedo índice de mano izquierda dice que esa fotografía corresponde al de nombre JORGE ANTONIO PASILLAS JARAMILLO alias JORGE PASILLAS JARAMILLO alias GEORGE A. PASILLAS alias GEORGE ANTHONY PASILLAS alias GEORGE EL GÜERO alias GEORGE alias EL GÜERO, también manifiesta que a GEORGE ANTHONY PASILLAS lo conozco desde niño ya que vivíamos en la misma Colonia, así como también en el año 2010 vivió en el mismo domicilio que mi hijo hoy occiso, por lo que eran muy amigos, por lo que mi hijo se cambio de domicilio donde fueron los presentes hechos y JORGE ANTONIO PASILLAS JARAMILLO siguió a mi hijo hasta ese domicilio, pero mi hijo hoy occiso ya no lo soportaba por que era una

PROCURADURIA GENERAL DE JUSTICIA DEL ESTADO
DE BAJA CALIFORNIA
Dirección de Averiguaciones Previas

### 105/12/201/AP

persona muy necia, así como también el día de los hechos siete de Mayo del año 2012, cuando al estar acostada en el interior del domicilio donde me encontraba pasando la noche cuando vengo a esta Ciudad, escuche unos gritos que venían de la calle y eran de mi hijo JORGE el cual me decía "MAMA" gritándole también a ROCIO Y al CHINO quienes viven en el domicilio donde fueron los hechos y es donde me hospedo cuando vengo a esta Ciudad, por lo que mi hijo hoy occiso me gritaba "AYUNDENME ME ESTOY MURIENDO", por lo que rápidamente salí y vi a mi hijo JORGE RANGEL MONTEZ, sentado en la banqueta y me dijo "MAMA ABRAZAME LLAMEN A UNA AMBULANCIA LLEVENME", recuerdo que en ese momento yo le pregunte quien te lesiono? Y mi hijo me contesto "FUE EL GOERGE EL GÜERO, EL GEORGE", me filereo (refiriendo a que lo había lesionado con un arma blanca) rápido llame a la ambulancia y al llegar los paramédicos me dijeron que mi hijo ya había fallecido, por lo que me entere que JORGE ANTONIO PASILLAS JARAMILLO el mismo día de los hechos, se cruzo a los Estados Unidos ya que el es ciudadano americano. Siendo todo lo que tiene que manifestar firmando al margen para su constancia legal. Por lo anterior se da por terminada la presente diligencia para los efectos legales que haya lugar. CONSTE

- - - - - - - - - - - SE CIERRA Y AUTORIZA LO ACTUADO - - - - - - - - - - -



EXT_Pasillas Jaramillo_000378          Pasillas Jaramillo 000270



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

# CERTIFICACIÓN

- - - En la Ciudad de México, a 28 (veintiocho) de junio de 2016 (dos mil dieciséis).-
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - El que suscribe, Licenciado en Derecho **GERARDO RUIZ TERROBA**, Agente del Ministerio Público de la Federación adscrito a la Dirección General de Procedimientos Internacionales de la Subprocuraduría Jurídica y de Asuntos Internacionales de la Procuraduría General de la República y, de conformidad con los artículos 21 y 102 apartado A, de la Constitución Política de los Estados Unidos Mexicanos, 206 y 208 del Código Federal de Procedimientos Penales, 2, 4, fracción III, y 10, fracción X, de la Ley Orgánica de la Procuraduría General de la República; 3, inciso H), fracción V), 4, fracción XIII, 6 y 52, fracción I, del Reglamento de la Ley Orgánica de la Procuraduría General de la República, actuando de conformidad con lo dispuesto por el artículo 16 del Código Federal de Procedimientos Penales, en compañía de testigos de asistencia que al final firman y dan fe.- - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - **C E R T I F I C A** - - - - - - - - - - - - - - - - - - - - - -
- - - Que las presentes copias fotostáticas son reproducción fiel exacta y concuerdan en todos sus términos con el texto de las disposiciones legales y diligencia de identificación por rueda fotográfica a cargo de la testigo Edelmira Montes Hernández de fecha 02 de junio de 2014, documentación constante de 9 (nueve) fojas útiles, documentación que obra dentro del expediente de extradición internacional, iniciado en esta Dirección General de Procedimientos Internacionales en contra de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS",(a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, misma que se tuvo a la vista y se hizo la compulsa correspondiente para que surta los efectos legales a que haya lugar. -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - **D A M O S   F E** - - - - - - - - - - - - - - - - - - - - -

**TESTIGO DE ASISTENCIA**

**TESTIGO DE ASISTENCIA**

**Lic. Erika Cabrera Becerra.**

**Lic. Miguel A. Rodriguez Robles.**

UNITED MEXICAN STATES )
FEDERAL DISTRICT )
CITY OF MEXICO ) ss:
EMBASSY OF THE UNITED )
STATES OF AMERICA )

**Leah Allen**
Deputy ACS Chief
I, _____Mexico City, Mexico_____ Consul of the United States of
America, duly commissioned and qualified, certify that the signature and official seal of:

**MYRNA GRANADOS HERNANDEZ**
(Name of Foreign Official)

an official empowered to act in the capacity designated in the annexed document, to which faith and credit are due, are true and correct.

For the contents of the annexed document I assume no responsibility.

_____
(Signature of Consular Officer)

**Leah Allen**
Deputy ACS Chief
Mexico City, Mexico
_____
(Type Name of Consular Officer)

JUL 0 6 2015
_____
(Date)

**UNOFFICIAL TRANSLATION**

The Embassy of Mexico presents its compliments to the Department of State and refers to the **FORMAL EXTRADITION REQUEST** of **JORGE ANTONIO PASILLAS JARAMILLO** a.k.a. **"JORGE PASILLAS JARAMILLO"** a.k.a. **"EL GEORGE A. PASILLAS"** a.k.a. **"GEORGE ANTHONY PASILLAS"** a.k.a. **"GEORGE EL GÜERO"** a.k.a. **"EL GÜERO"**, who is wanted by Mexican authorities for his alleged perpetration of the crime of **AGGRAVATED HOMICIDE**, conveyed by means of Diplomatic Note No. 06621, dated November 21, 2014.

In this regard, the Embassy kindly requests the Department of State to transmit to the Office of International Affairs at the Criminal Division of the Department of Justice the attached information provided by the Office of the Attorney General in addition to that provided by means of Diplomatic Note No. 02316, dated May 21, 2019, consisting of the certified and legalized copies, along with their English translation, of the following documents:

- Sworn Affidavit by the Executive Assistant Prosecutor assigned to the General Division of International Proceedings of the Office of the Attorney General, dated December 11, 2023.

- Color photographs of the defendant.

The Embassy of Mexico avails itself of the opportunity to reiterate to the Department of State the assurances of its kind and distinguished consideration.

Washington, D.C., January 10, 2024.

To the Department of State
Washington, D.C.

EMBAJADA DE MÉXICO

L/LEI

2024 JAN 11 P 12: 22

DEPARTMENT OF STATE  00095

La Embajada de México saluda atentamente al Departamento de Estado y se refiere a la **SOLICITUD FORMAL DE EXTRADICIÓN INTERNACIONAL** de **JORGE ANTONIO PASILLAS JARAMILLO (a) "JORGE PASILLAS JARAMILLO" (a) "EL GEORGE A. PASILLAS" (a) "GEORGE ANTHONY PASILLAS" (a) "GEORGE EL GÜERO" (a) "EL GÜERO"** contenida en la Nota Diplomática No. 06621 del 21 de noviembre de 2014, a quien las autoridades mexicanas reclaman por su probable responsabilidad en la comisión del delito de **HOMICIDIO CALIFICADO**.

Sobre el particular, la Embajada solicita al Departamento de Estado ser el amable conducto para hacer llegar a la Oficina de Asuntos Internacionales de la División Criminal del Departamento de Justicia la información adjunta proporcionada por la Fiscalía General de la República en adición a la transmitida mediante Nota Diplomática No. 02316 del 21 de mayo de 2019, consistente en los siguientes documentos debidamente certificados, legalizados y con su correspondiente traducción al idioma inglés:

- Declaración Jurada emitida el 11 de diciembre de 2023 por el Fiscal Ejecutivo Asistente adscrito a la Dirección de Extradiciones de la Dirección General de Procedimientos Internacionales de la Fiscalía General de la República, dando respuesta a los cuestionamientos formulados por autoridades estadounidenses en el caso.

- Fotografías a color del reclamado.

La Embajada de México aprovecha la oportunidad para reiterar al Departamento de Estado las seguridades de su atenta y distinguida consideración.

Washington, D.C., a 10 de enero de 2024

Al Departamento de Estado
Washington, D.C.

c.c.p. Dirección General de Asuntos Jurídicos, S.R.E. En atención a su ASJ-0003 (03/01/2024)

U.S. Department of State
**CERTIFICATE TO BE ATTACHED TO DOCUMENTARY**
**EVIDENCE ACCOMPANYING REQUISITIONS IN**
**THE UNITED STATES FOR EXTRADITION**
**AMERICAN FOREIGN SERVICE**

| Mexico City, Mexico | 12-20-2023 |
|---|---|
| Place | Date (mm-dd-yyyy) |

| Daria L Darnell | , | Minister Counselor for Consular Affairs |
|---|---|---|
| Name | | Title |

the United States of America at

Mexico City, Mexico

hereby certify that the annexed papers, being

supporting documents

proposed to be used upon an application for the extradition from the United States of America

Jorge Antonio Pasillas Jaramillo

charged with the crime of

Agravated Homicide

alleged to have been committed in

The Mexican United States

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes

by the tribunals of

The Mexican United States ,

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

the _____ 20 _____ day of

December,2023

Month and Year

*[signature: Daria L Darnell]*

Signature

Daria L Darnell,  M.C.C.A.

Type Name and Title of Certifying Officer

of the United States of America.

DS-0036
05-2017

UNITED MEXICAN STATES        )
MEXICO CITY               )   SS:
EMBASSY OF THE UNITED STATES )
OF AMERICA

John Aldworth
Vice Consul
Mexico City
Mexico

Before me, _____. Consul of the United States of America at Mexico. D. F., Mexico, duly commissioned and qualified, personally appeared _Ricardo Neyib Cachoón Garza_ who, being duly sworn deposes and says as follows:

1. My name is _Ricardo Neyib Cachoón Garza_
   and I reside at_____ _Mexico City_

2. I have been familiar with the English and _Spanish_ languages for the past _30_ years. I made the annexed translation from _Spanish_ to English. The said translation is to the best of my knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

Subscribed and sworn to before me this day ____ DEC 2 0 2023 _____

_____
Consul of the United States
of America

THE UNITED MEXICAN STATES

VS

JORGE ANTONIO PASILLAS JARAMILLO, (aka) "JORGE PASILLAS JARAMILLO", (aka) "EL GEORGE A. PASILLAS", (aka) "GEORGE ANTHONY PASILLAS", (aka) "GEORGE EL GÜERO", (aka) "EL GÜERO".

CRIMINAL CASE 279/2012, FOURTH CRIMINAL COURT TIJUANA, BAJA CALIFORNIA

ADDITIONAL AFFIDAVIT SUPPORTING THE FORMAL EXTRADITION REQUEST.

The undersigned, **Irving Pérez Bello**, under oath to tell the truth, hereby state the following:

I am a citizen of the United Mexican States and work in Mexico City, with a Law Degree by *Universidad Azteca*; I hold a professional license to practice the Law Degree registered in the archives of the General Division of Professions under the Ministry of Public Education. My labor domicile is located at Avenida Insurgentes, No. 20, Glorieta de Insurgentes, Col. Roma Norte, Alcaldía Cuauhtémoc, C.P. 06700, Mexico City.

I act as an Executive Assistant Prosecutor, assigned since 2021, to the General Division of International Procedures under the Office of the Prosecutor General of the Republic. Therefore, among my current duties I process and follow up the international extradition procedures brought by the Mexican government before other countries. Thus, I have wide knowledge on international law, criminal law, and criminal procedural law matters and in compliance with my duty of loyalty, objectivity and under oath, I state that in this General Division there is record of the international extradition file of **JORGE ANTONIO PASILLAS JARAMILLO, (aka) "JORGE PASILLAS JARAMILLO", (aka) "EL GEORGE A. PASILLAS", (aka) "GEORGE ANTHONY PASILLAS", (aka) "GEORGE EL GÜERO", (aka) "EL GÜERO"**; and to answer

the diplomatic note dated June 21, 2018, through which the Department of State (DoS) of the Government of the United States of America requested additional information related to the extradition of the person sought, in this regard, once the study of the records of the criminal case against that person has been carried out, we proceed to answer under the following terms:

1. **From the ministerial statement of Walter Ulises Rosales Heredia given on May 7, 2012, answer if the witness provided the names "Jorge Rangel Montes", "Octavio Rangel Montes", and "El Güero/el Conejo", if not, how did he call those persons?**

   The witness Walter Ulises Rosales Heredia in his ministerial statement given on May 7, 2012, revealed the names "Jorge Rangel Montes", "Octavio Rangel Montes", and "el Güero/ El Conejo", when he stated the following: ***"...met in the same Praderas de la Mesa neighborhood the one named "Jorge Rangel Montes", aka Jorge and his brother Octavio Rangel Montes aka El Conejo, with whom he shared the  lightbulb with which they smoked crystal and marihuana..."*** likewise he stated that ***"...that Jorge and el Güero were arguing, seeing that  Jorge threw George aka el Güero towards the apartment's entrance door and when the witness approached to see what was happening Jorge told him to go to his room and lock himself in...".***

2. **In the same statement, the witness Walter Ulises Rosales Heredia said that George is nicknamed "El Güero" as well as "El Conejo", to clear up any misunderstandings.**

   In the statement of Walter Ulises Rosales Heredia, given on May 7, 2012, it is evident that "GEORGE" is a nickname, and that the individual is also known under the alias "El Güero".

   Then, the following was stated on that date: ***"...on Sunday, May 6, 2012, around 17:00 hours when he was at the domicile with the person who was killed, George, nicknamed el conejo, arrived and started to get high with drugs together with Jorge, who is now deceased".***

   From the transcript, it could be deduced that George is a nicknamed "El Conejo", nonetheless, upon reading the complete statement of Walter Ulises Rosales Heredia it can be deduced that the one that is nicknamed "El Conejo" was Octavio Rangel Montes and "George" aka is "El Güero", being a mistake at the moment of listing the akas, given the witness stated that  ***"...met in the same Praderas de la Mesa neighborhood the one named <u>"Jorge Rangel Montes",  aka Jorge</u> and his brother <u>Octavio Rangel Montes aka El Conejo</u>, with whom he shared the  lightbulb with which they smoked crystal and marihuana...".***

3.  **Likewise, in the statement given by Walter Ulises Rosales Heredia, what names did he provide about the persons that he saw with the victim? And about the person shown in the two photographs he provided to the Agents of the State Ministerial Police?**

Walter Ulises Rosales Heredia in his statement given on May 7, 2012, provided the name of "George" aka "El Güero", as can be deduced from said statement: ***"...that the witness was woken up by shouts he heard, given that Jorge and <u>el Güero</u> were arguing, seeing that  Jorge threw <u>George aka el Güero</u> towards the apartment's entrance door and when the witness approached to see what was happening Jorge told him to go to his room and lock himself in...".***

On the matter of the two photographs that were attached as Exhibit 4 of the formal extradition request, they were provided by Walter Ulises Rosales Heredia to the agents of the Baja California State Ministerial Police as recorded in official letter number 349/HOM.DOL./12, likewise, it records that both photographs are of the person named Jorge aka "George", aka "El Güero", being the person sought **JORGE ANTONIO PASILLAS JARAMILLO, (aka) "JORGE PASILLAS JARAMILLO", (aka) "EL GEORGE A. PASILLAS", (aka) "GEORGE ANTHONY PASILLAS", (aka) "GEORGE EL GÜERO", (aka) "EL GÜERO".**

4.  **On the matter of the report with official letter number 349/HOM.DOL./12, undersigned by the agents of the State Ministerial Police, provide best quality color copies of both photographs given by Walter Ulises Rosales Heredia to the above-mentioned  agents.**

Attached are color copies of the corresponding photographs of Jorge, aka "George", aka "El Güero", provided by Walter Ulises Rosales Heredia.

5.  **Likewise, specify which of the two photographs provided by Walter Ulises Rosales Heredia of JORGE ANTONIO PASILLAS JARAMILLO, (aka) "JORGE PASILLAS JARAMILLO", (aka) "EL GEORGE A. PASILLAS", (aka) "GEORGE ANTHONY PASILLAS", (aka) "GEORGE EL GÜERO", (aka) "EL GÜERO", feature the blue shirt mentioned in Exhibit 1, paragraph H of the arrest warrant.**

As shown in the attached photographs, in the second photograph the person sought is wearing the blue shirt.

Likewise, item H of the arrest warrant, in the section entitled digital copies of two photographs and ministerial certification thereof, in which it is described that in the first photograph the person sought is seen wearing a black shirt and in his arms a baby, for this reason it can be deduced that the second photograph is the one in which the person sought is wearing

the blue shirt.

In addition to this, the color photographs provided by Walter Ulises Rosales Heredia, on which it can be seen that the second photograph is where the person sought is wearing a blue shirt.

6. **Likewise, notify the source of the photographs and if said photographs were at any time shown to witnesses Walter Ulises Rosales Heredia or Omar Javier Franco Pérez.**

On the matter of the source of the photographs, these were provided by the witness Walter Ulises Rosales Heredia as can be seen from the section titled additional, related to report number 349/HOM.DOL./12, carried out by the Ministerial Police Agents of the State of Baja California. Oscar Rodríguez Andalón and Adriana E. Camacho Rocha dated May 7, 2012, as to whether said photographs were shown to Walter Ulises Rosales Heredia, the answer is yes, since he was the one who provided them to the Agents of the State Ministerial Police, in regard to whether said photographs were shown to Omar Javier Franco Pérez, the records do not show that the photographs were shown to that witness.

7. **Notify with which name(s) Edelmira Montes Hernández knew the person sought and which names were provided to the witness by the victim.**

Edelmira Montes Hernández, mother of the person killed, stated before the Office of the Public Prosecutor on May 9, 2012, that the person who took her son´s life, Jorge Rangel Montes, is named Jorge Antonio Pasillas Jaramillo, she knows him since he was a child, this in the State of California.

Likewise, she states that her son named Jorge Rangel Montes, before he died, told her that the person who had "stabbed" him ***"... was EL GEORGE EL GÜERO, EL GEORGE, EL GEORGE..."***, who now is known to answer to the name Jorge Antonio Pasillas Jaramillo, aka "Jorge Pasillas Jaramillo, aka "George Anthony Pasillas", aka "George A. Pasillas", aka "El Güero".

8. **Regarding the identification procedures carried out by the witness Edelmira Montes Hernández, clarify why two identification procedures were carried out, the first one on November 4, 2013, and then on June 2, 2014, using the same photo array.**

Since in the identification procedure dated November 4, 2013, the physical description of the person sought was not established, therefore, later on June 2, 2014, the identification procedure was carried out again in a more precise and detailed manner, regarding data about the physical description of the person sought provided by Edelmira Montes Hernández, when describing him, she states that he is approximately 5

feet and one inch tall, not remembering exactly, with light brown skin, a slim build, and very short dark brown hair, at the time the person who committed the crimes did not have a mustache or beard, with brown eyes, a medium-sized mouth and regular lips, medium-sized ears, and an oval face.

9. **Mention the names that Jorge Rangel Montes (deceased) provides to his mother, Mrs. Edelmira Montes Hernández, as the person responsible for causing him the injuries, since the arrest warrant indicates that the deceased told his mother, Edelmira Montes Hernandez, that** *"George El Güero, El George, El George stabbed me"*, **later in the arrest warrant when referring to the procedures for the transfer of personnel and ministerial attestation of the corpse, declares that the deceased told him that "Jorge N" had injured him.**

Edelmira Montes Hernández stated before the Agent of the Investigating Public Prosecutor on May 9, 2012, that the name, her son told her before dying, of the person who had injured him was "George el Güero, El George, El George".

In the ministerial attestation of the corpse, carried out on May 7, 2012, at 4:25 hours by the agent of the Investigating Public Prosecutor, accompanied by State Ministerial Police officers Juan Carlos Aarón Vázquez and Jorge Omar Rios Montaño, Mrs. Edelmira Montes Hernández reported that the deceased Jorge Rangel Montes arrived at her home injured by a knife and that before losing his life he told her that Jorge " N" had injured him.

It must be pointed out that, in Criminal Investigations carried out in Mexico, to safeguard the identity of the persons under investigation, in strict adherence to the presumption of innocence principle granted by our Constitution, in the proceedings carried out by police personnel, who act under the orders of the Public Prosecutor, the initial "N" is used and not the last names of the accused, this to safeguard their human rights in compliance with the provisions of article 1° of the Political Constitution of the United Mexican States.

So, we notify that "El George" and Jorge "N" refer to the same person who is named **JORGE ANTONIO PASILLAS JARAMILLO, (aka) "JORGE PASILLAS JARAMILLO", (aka) "EL GEORGE A. PASILLAS", (aka) "GEORGE ANTHONY PASILLAS", (aka) "GEORGE EL GÜERO, (a) "EL GÜERO"**, given that the name Jorge "N" was used to protect the fundamental rights of the person sought, added to the fact that the identification proceedings and several witness statements that are part of the records of this criminal case, identify the person sought.

10. **Notify when was the last time that Edelmira Montes Hernández saw JORGE ANTONIO PASILLAS JARAMILLO, (aka) "JORGE PASILLAS JARAMILLO", (aka) "EL GEORGE A. PASILLAS", (aka) "GEORGE ANTHONY PASILLAS", (aka) "GEORGE EL GÜERO", (a) "EL GÜERO".**

In her statement Edelmira Montes Hernández states that **JORGE ANTONIO PASILLAS JARAMILLO, (aka) "JORGE PASILLAS JARAMILLO", (aka) "EL GEORGE A. PASILLAS", (aka) "GEORGE ANTHONY PASILLAS", (aka) "GEORGE EL GÜERO", (aka) "EL GÜERO"**, after depriving her son Jorge Rangel Montes of his life, fled to an unknown destination, and she knows nothing about him or his whereabouts.

Likewise, in the identification proceedings Edelmira Montes Hernández stated that since the events occurred where **JORGE ANTONIO PASILLAS JARAMILLO, (aka) "JORGE PASILLAS JARAMILLO", (aka) "EL GEORGE A. PASILLAS", (aka) "GEORGE ANTHONY PASILLAS", (aka) "GEORGE EL GÜERO", (aka) "EL GÜERO"** killed her son, she has not seen him again, from the above it is clear that she saw the person sought before the murder.

The additional information request asks to notify why in the arrest warrant an investigation agent reported that the mother stated, to this same agent, that her son, before he died, told her it was "Jorge N" who had injured him, so the following questions were included in the request:

- Where does the name "Jorge N" come from, as stated by the agent?

In Criminal Investigations carried out in Mexico, to safeguard the identity of the persons under investigation, in strict adherence to the presumption of innocence principle granted by our Constitution, in the proceedings carried out by police personnel, who act under the orders of the Public Prosecutor, the initial "N" is used and not the last names of the accused, this to safeguard their human rights in compliance with the provisions of article 1° of the Political Constitution of the United Mexican States, in this particular case, the name Jorge "N" was recorded to safeguard the fundamental rights of the person sought.

- What names of the attacker were provided by the victim to his mother, according to the mother?

Edelmira Montes Hernández statement rendered before the agent of the investigating Public Prosecutor on May 9, 2012, that the name her son provided before dying, of the person who had injured him was "George el Güero, El George, El George".

- How do current Mexican authorities know that "El George" and "Jorge N" are the same person?

The investigating authorities confirm that "El George" and Jorge "N" are the same person named **JORGE ANTONIO PASILLAS JARAMILLO, (aka) "JORGE PASILLAS JARAMILLO", (aka) "EL GEORGE A. PASILLAS", (aka) "GEORGE ANTHONY PASILLAS", (aka) "GEORGE EL GÜERO", (aka) "EL GÜERO"**, given that the name Jorge "N" was recorded to protect the fundamental rights of the person sought, in addition to this the identification proceedings and several witness statements that are part of the records of the criminal case, verified the identity of the person sought.

Likewise, it is noted that all the documentation from which the information described above is derived was attached to the formal extradition request which was sent through diplomatic channels.

The above for the corresponding legal effects.

Mexico city on December 11th, 2023.

NAME AND SIGNATURE

IRVING PÉREZ BELLO.
EXECUTIVE ASSISTANT PROSECUTOR OF THE DIVISION OF EXTRADITIONS UNDER THE GENERAL DIVISION OF INTERNATIONAL PROCEDURES.





**AUTHENTICATION**

----- In Mexico City, on December 11, 2023, the undersigned, **Irving Pérez Bello,** Assistant Prosecutor of the General Division of International Procedures of the Office of the Prosecutor General of the Republic, based on the provisions of articles 21 and 102 (A) of the Political Constitution of the United Mexican States; 71, and 131 (XXIV) of the National Code of Criminal Procedure; 40 (XXXII) of the Law of the Office of the Prosecutor General of the Republic; 3 (H), (V); 4 (XIII) and 52 (I) of the Regulations of the Organic Law of the former Office of the Attorney General of the Republic which were the ruling provisions when the proceeding was opened, in relation to articles 4 and 6 of the Law of the Office of the Prosecutor General of the Republic, hereby certifies that this document consisting of 8 written pages is authentic and faithfully coincides in all its terms with the documents contained in the records of the archives of this General Division of International Procedures against **JORGE ANTONIO PASILLAS JARAMILLO, AKA "JORGE PASILLAS JARAMILLO", AKA "EL GEORGE A. PASILLAS", AKA "GEORGE ANTHONY PASILLAS", AKA "GEORGE EL GÜERO", AKA "EL GÜERO"**. The foregoing is recorded for the legal effects that may be applicable.

[Signed]

**Irving Pérez Bello**
**Assistant Prosecutor of the Division of Extraditions**
**of the General Division of International Procedures**

[A SEAL THAT READS: MEXICAN COAT OF
ARMS,
UNITED MEXICAN STATES,
MINISTRY OF THE INTERIOR,
GOVERNMENT UNIT]

| 28895 |
|---|

**ALEJANDRO LÓPEZ GONZÁLEZ**, ADJUNCT GENERAL DIRECTOR OF THE OFFICIAL GAZETTE OF THE FEDERATION, ASSISTING THE HEAD OF THE GOVERNMENT UNIT, GROUNDED ON ARTICLES 9, 11 SECTIONS (I) AND (II) AND 12 LAST PARAGRAPH OF THE INTERNAL REGULATIONS OF THE MINISTRY OF THE INTERIOR, HEREBY **CERTIFIES:** THAT IRVING PÉREZ BELLO WAS AN ASSISTING PROSECUTOR OF THE GENERAL DIVISION OF INTERNATIONAL PROCEDURES OF THE OFFICE OF THE PROSECUTOR GENERAL OF THE REPUBLIC ON DECEMBER 11, 2023, AND THE SIGNATURE APPEARING IN THE PRESENT DOCUMENT IS HIS OWN.

NAME OF THE RESPONSIBLE ENTITY: OFFICE OF THE PROSECUTOR GENERAL OF THE REPUBLIC
TYPE OF DOCUMENT: AUTHENTICATION
MEXICO CITY ON DECEMBER 12, 2023
REGISTRATION No.: **6720**
This Secretariat accepts no responsibility or liability whatsoever for the contents of this document.

[A HOLOGRAM THAT
READS: MINISTRY OF
THE INTERIOR]

MRC/YAG/ALG

[SIGNED]
CODE: **AHSTSBX5C**
Authenticity of this Legalization and its electronic signature may be verified at:
**www.dicoppu.gobernacion.gob.mx/registro**

---

[A SEAL THAT READS:
MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
MINISTRY OF FOREIGN AFFAIRS
CUAUHTÉMOC DELEGATION]

[A SEAL THAT READS:
MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
CONSULAR SERVICE OF
LEGALIZATIONS]

F8
**FOLIO 657420**

**THE MINISTRY OF FOREIGN AFFAIRS HEREBY CERTIFIES:**
That ALEJANDRO LÓPEZ GONZÁLEZ WAS THE ADJUNCT GENERAL DIRECTOR OF THE OFFICIAL GAZETTE OF THE FEDERATION ASSISTING THE HEAD OF THE GOVERNMENT UNIT UNDER THE MINISTRY OF THE INTERIOR ON DECEMBER 12, 2023 and that the preceding signature is his own.
MEXICO CITY, DECEMBER 15, 2023.

BY ORDER OF THE CLERK
DIRECTOR

[SIGNED]
**ERIKA LISZETH DE LA ROSA ARGUETA**

THIS MINISTRY ACCEPTS NO RESPONSIBILITY OR LIABILITY
WHATSOEVER FOR THE CONTENTS OF THIS DOCUMENT

EXT_Pasillas Jaramillo_000396

ESTADOS UNIDOS MEXICANOS

VS

JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO".

CAUSA PENAL 279/2012, JUEZ CUARTO PENAL DE TIJUANA, BAJA CALIFORNIA

.

DECLARACIÓN JURADA COMPLEMENTARIA, EN APOYO DE LA PETICIÓN FORMAL DE EXTRADICIÓN.

El que suscribe, **Irving Pérez Bello**, bajo protesta de decir verdad, declaro en los siguientes términos:

Que soy ciudadano de los Estados Unidos Mexicanos, trabajando en la Ciudad de México, con título de licenciado en Derecho, egresado de la Universidad Azteca y cuento con cédula profesional para ejercer la profesión de Licenciado en Derecho registrada en los archivos de la Dirección General de Profesiones de la Secretaría de Educación Pública; y que tengo como domicilio el ubicado en Avenida Insurgentes número 20, Colonia Roma Norte, Alcaldía Cuauhtémoc, Código Postal 06700, Ciudad de México.

Me desempeño como Fiscal Ejecutivo Asistente, adscrito desde el año 2021, a la Dirección General de Procedimientos Internacionales de la Fiscalía General de la República, por lo que, actualmente entre mis funciones tengo a cargo diligenciar y dar seguimiento a los procedimientos de extradición internacional promovidos por el Gobierno de México ante otros países, por lo que poseo amplio conocimiento en las materias de derecho internacional, derecho penal, así como, derecho procesal penal y en cumplimiento de mi deber de lealtad y bajo protesta de decir verdad, manifiesto que en esta Dirección General se encuentra radicado el expediente de extradición internacional de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**; y que en atención a la nota diplomática de fecha 21 de junio de 2018, mediante la cual el Departamento de Estado (DoS) del Gobierno de los Estados Unidos de América solicitó diversa información complementaria relacionada con la extradición del reclamado, al

respecto, una vez realizado el estudio de las constancias de la causa penal que se instruye en contra de esa persona, se procede a contestar en los siguientes términos:

1. **De la declaración ministerial de Walter Ulises Rosales Heredia rendida el 7 de mayo del 2012, señalar si el testigo proporcionó los nombres "Jorge Rangel Montes", "Octavio Rangel Montes", y "El Güero/el Conejo", en caso contrario, ¿cómo se refirió a esas personas?**

   El testigo Walter Ulises Rosales Heredia en su declaración ministerial rendida el día 7 de mayo del 2012, mencionó los nombres de "Jorge Rangel Montes", "Octavio Rangel Montes", y "el Güero/El Conejo", toda vez que manifestó lo siguiente: *"... conoció en la misma colonia Praderas de la Mesa al de nombre "Jorge Rangel Montes", alias Jorge y a su hermano Octavio Rangel Montes alias El Conejo, con quien compartía el foco con el que fumaban cristal y marihuana..."* de igual forma se advierte que *"...que Jorge y el Güero estaban discutiendo, percatándose de que Jorge aventaba a George alias el Güero hacia la puerta del acceso del departamento y cuando el declarante se acercó para ver que era lo que estaba pasando Jorge le respondió que se metiera a su cuarto y que se encerrara...".*

2. **En la misma declaración, el testigo Walter Ulises Rosales Heredia indica que George es apodado tanto "El Güero" como "El Conejo", aclarar dicha situación.**

   En la declaración de Walter Ulises Rosales Heredia, rendida el día 7 de mayo del 2012, se advierte que "GEORGE" es un apodo, y que esa persona también es conocida bajo el alias "El Güero".

   Ahora bien, de esa declaración se señala lo siguiente: *"... el día domingo seis de mayo de 2012, a eso de las 17:00 horas aproximadamente cuando se encontraba en el domicilio en compañía del occiso, llegó George apodado el conejo quien empezó a drogarse junto con Jorge ahora occiso".*

   De la transcripción anterior, se puede inferir que "George" es apodado "El Conejo"; sin embargo, de la lectura completa de la declaración de Walter Ulises Rosales Heredia se deduce que quien era apodado "El Conejo" era Octavio Rangel Montes y "George" alias "El Güero" era una diversa persona, que en el caso concreto es el reclamado", lo que significa un error al momento de señalar los alias, pues en ese mismo deposado manifestó que *"... conoció en la misma Colonia Praderas de la Mesa al de nombre "Jorge Rangel Montes", alias Jorge, y a su hermano Octavio Rangel Montes alias El Conejo, con quien compartía el foco con el que fumaba cristal y marihuana...".*

3. **De igual forma, en la manifestación vertida por Walter Ulises Rosales Heredia, ¿qué nombres proporcionó respecto de la persona que vio con el occiso y la persona mostrada en las dos fotografías que el proporcionó a los agentes de Policía Ministerial del Estado?**

Walter Ulises Rosales Heredia en su declaración rendida el 7 de mayo del 2012, proporcionó el nombre de "George" alias "El Güero", como se desprende de dicha manifestación al señalar: *"... que el declarante se despertó de los gritos que escuchaba, ya que Jorge y <u>el Güero</u> estaban discutiendo, percatándose de que Jorge aventaba a <u>George alias el Güero</u> hacia la puerta del acceso del departamento y cuando el declarante se acercó para ver que era lo que estaba pasando Jorge le respondió que se metiera a su cuarto y que se encerrara...".*

En lo que respecta a las dos fotografías que se acompañaron como prueba 4 de la petición formal, fueron proporcionadas por Walter Ulises Rosales Heredia a los agentes de la Policía Ministerial del Estado de Baja California como se encuentra establecido en el oficio 349/HOM.DOL./12, asimismo, se señala que ambas fotografías son de quien se llama Jorge alias "George", alias "El Güero", siendo el reclamado **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO".**

4. **Respecto al informe con número de oficio 349/HOM.DOL./12, signado por los agentes de Policía Ministerial del Estado, proporcionar copias visibles y a color de las dos fotografías que aportó Walter Ulises Rosales Heredia a los citados agentes.**

Se anexan a la presente copias a color de las fotografías correspondientes a Jorge, alias "George", alias "El Güero", proporcionadas por Walter Ulises Rosales Heredia.

5. **Asimismo, especificar cuál de las dos fotografías que proporcionó Walter Ulises Rosales Heredia de JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO", muestra la camiseta azul referida en la prueba 1, párrafo H de la orden de aprehensión.**

Como se muestra en las fotografías que se anexan, en la segunda fotografía es donde viste camiseta azul el reclamado.

Asimismo, se desprende del punto H de la orden de aprehensión, en el apartado intitulado copias digitalizadas de dos impresiones fotográficas y fe ministerial de las mismas, en la cual se describe que en la fotografía primera se aprecia al reclamado vistiendo una camisa de color negro y en brazos un bebé, por tal razón se deduce que la segunda fotografía es en

la que el reclamado viste la playera azul.

Aunado a ello se anexan las fotografías a color proporcionadas por Walter Ulises Rosales Heredia, en las cuales se aprecia que la segunda fotografía es donde viste camiseta azul el reclamado.

6. **De la misma forma, indique cuál es la fuente de las fotografías y si dichas fotos fueron mostradas alguna vez a los testigos Walter Ulises Rosales Heredia o a Omar Javier Franco Pérez.**

En lo que respecta a la fuente de las fotografías, estas fueron proporcionadas por el testigo Walter Ulises Rosales Heredia como se desprende del apartado denominado complementarias relativo al informe número 349/HOM.DOL./12, realizado por los Agentes de Policía Ministerial del Estado de Baja California los C.C. Oscar Rodríguez Andalón y Adriana E. Camacho Rocha de 7 de mayo del 2012, en lo que concierne si se le mostraron dichas fotografías a Walter Ulises Rosales Heredia. En ese sentido, la respuesta es sí, toda vez que él fue el que se las proporcionó a los Agentes de la Policía Ministerial del Estado, en lo que atañe si dichas fotografías fueron mostradas a Omar Javier Franco Pérez, de las constancias que obran no se desprende que se las hayan mostrado.

7. **Precisar con qué nombre o nombres conoció Edelmira Montes Hernández al reclamado y qué nombres le proporcionó la víctima a la testigo.**

Edelmira Montes Hernández, madre del occiso, manifestó en su declaración realizada ante la Representación social el 9 de mayo del 2012, que la persona que le quitó la vida a su hijo Jorge Rangel Montes, se llama Jorge Antonio Pasillas Jaramillo, a quien conoce desde que era un niño, esto en el Estado de California.

Asimismo, refiere que su hijo de nombre Jorge Rangel Montes, previo a perder la vida, le dijo que la persona que lo había "filereado" era *"... fue EL GEORGE EL GÜERO, EL GEORGE, EL GEORGE..."*, quien ahora se conoce responde al nombre de Jorge Antonio Pasillas Jaramillo, alias "Jorge Pasillas Jaramillo, alias "George Anthony Pasillas", alias "George A. Pasillas", alias "El Güero".

8. **Respecto a las diligencias de identificación a cargo del testigo Edelmira Montes Hernández, aclare por qué se llevaron a cabo dos diligencias de identificación realizadas la primera el 4 de noviembre del 2013 y 2 de junio del 2014, usando la misma rueda fotográfica.**

Toda vez que en la diligencia de identificación de fecha 4 de noviembre de 2013, no se estableció la media filiación del reclamado, por lo que posteriormente en fecha 2 de junio del 2014 se realizó de nuevo la

diligencia de identificación de manera precisa y más detallada acerca de datos de media filiación del reclamado proporcionados por Edelmira Montes Hernández, al describirlo manifiesta que es de estatura de 5 pies y pulgada aproximadamente no recordando con exactitud, de tes moreno claro, complexión delgado, de cabello castaño obscuro muy corto, en el momento que cometió los hechos no traía bigote, ni barba, con ojos de color café, boca mediana y labios regulares, orejas medianas, de cara ovalada.

9. **Mencione que nombres le proporciona Jorge Rangel Montes (occiso) a su madre la señora Edelmira Montes Hernández, como la persona responsable de causarle las lesiones, toda vez que en la orden de aprehensión señala que el occiso le dijo a su madre, Edelmira Montes Hernandez, que** *"George El Güero, El George, El George me filereado"*,**más tarde en la orden de aprehensión al hacer referencia en las diligencias de traslado de personal y fe ministerial de cadáver, declara que el occiso le dijo que "Jorge N" lo había lesionado.**

Edelmira Montes Hernández manifestó en su declaración realizada ante el agente del Ministerio Público investigador el 9 de mayo del 2012, que el nombre que le proporcionó su hijo antes de fallecer de la persona que lo lesionó fue el de "George el Güero, El George, El George".

En las diligencias de fe ministerial de cadáver, realizada el día 7 de mayo del 2012, siendo las 4:25horas por el agente del Ministerio Público investigador, en compañía de los Policías Ministeriales del Estado Juan Carlos Aarón Vázquez y Jorge Omar Ríos Montaño, la señora Edelmira Montes Hernández informó que el occiso Jorge Rangel Montes llegó a su domicilio lesionado por arma blanca y que antes de perder la vida le dijo que Jorge "N" lo había lesionado.

Cabe precisar que en las investigaciones criminales que se realizan en nuestro país, a fin de salvaguardar la identidad personas investigadas, en estricto apego al principio de presunción de inocencia garantizado en nuestra Carta Magna, en las diligencias que realiza el personal policial, quien actúa bajo las órdenes del Ministerio Público, se asienta la inicial "N" y no los apellidos de las personas imputadas, ello con la finalidad de salvaguardar sus derechos humanos de conformidad con lo prescrito en el artículo 1° de la Constitución Política de los Estados Unidos Mexicanos.

Sentado lo anterior, se afirma que "El George" y Jorge "N" se tratan de la misma persona de nombre **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, pues al nombre de Jorge "N" se asentó con la finalidad de proteger los derechos fundamentales del extraditable, aunado a que de las diligencias de identificación y diversas testimoniales que obran en la causa penal, se advierte la identidad de la persona reclamada.

**10. Señalar cuándo fue la última vez que Edelmira Montes Hernández vio a JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO".**

En su declaración Edelmira Montes Hernández refiere que **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, después de privar de la vida a su hijo Jorge Rangel Montes se dio a la fuga y huyó con rumbo desconocido ya que no sabe nada de él ni de su paradero.

Asimismo, en las diligencias de identificación Edelmira Montes Hernández manifestó que desde de que sucedieron los hechos donde **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, mató a su hijo, no lo ha vuelto a ver, por lo anterior se desprende que vio al reclamado antes del homicidio.

En la solicitud de información, adicionalmente se requiere se aclare el por qué en la orden de arresto un agente investigador reportó que la madre declaró al agente que antes de morir le dijo que fue "Jorge N" quien le causó la herida, por lo que se solicita se de respuesta a lo siguiente:

- ¿De dónde salió el nombre de "Jorge N", tal como lo declaró el agente?

    En las investigaciones criminales que se realizan en nuestro país, a fin de salvaguardar la identidad personas investigadas, en estricto apego al principio de presunción de inocencia garantizado en nuestra Carta Magna, en las diligencias que realiza el personal policial, quien actúa bajo las órdenes del Ministerio Público, se asienta la inicial "N" y no los apellidos de las personas imputadas, ello con la finalidad de salvaguardar sus derechos humanos de conformidad con lo prescrito en el artículo 1° de la Constitución Política de los Estados Unidos Mexicanos; en ese sentido, pues el nombre de Jorge "N" se asentó con la finalidad de proteger los derechos fundamentales del extraditable.

- ¿Qué nombres proporcionó la víctima a su madre del agresor, según la madre?

    Edelmira Montes Hernández manifestó en su declaración realizada ante el agente del Ministerio Público investigador el 9 de mayo del 2012, que el nombre que le proporcionó su hijo antes de fallecer de la persona que lo lesionó fue el de "George el Güero, El George, El George".

- ¿Cómo saben las actuales autoridades mexicanas que "El George" y "Jorge N" son las mismas personas?

Las autoridades investigadoras afirman que "El George" y Jorge "N" se tratan de la misma persona de nombre **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**, pues el nombre de Jorge "N" se asentó con la finalidad de proteger los derechos fundamentales del extraditable, aunado a que de las diligencias de identificación y diversas testimoniales que obran en la causa penal, se advierte la identidad de la persona reclamada.

De igual forma, se hace referencia que toda la documentación de donde se desprende la información antes descrita fue acompañada en la solicitud de la petición formal con fines de extradición y la cual fue cursada por los conductos diplomáticos.

Lo anterior para los efectos legales a que haya lugar.

Ciudad de México, a 11 de diciembre de 2023.

NOMBRE Y FIRMA

LIC. IRVING PÉREZ BELLO.
FISCAL EJECUTIVO ASISTENTE, ADSCRITO A LA DIRECCIÓN DE EXTRADICIONES DE LA DIRECCIÓN GENERAL DE PROCEDIMIENTOS INTERNACIONALES.



EXT_Pasillas Jaramillo_000404



**FGR**
FISCALÍA GENERAL
DE LA REPÚBLICA

## AUTENTICACIÓN DE DOCUMENTO

-----En la Ciudad de México, a los 11 (once) días del mes de diciembre de 2023 (dos mil veintitrés)----- El que suscribe Licenciado en Derecho **Irving Pérez Bello**, Fiscal Asistente de la Dirección General de Procedimientos Internacionales de la Fiscalía General de la República, con fundamento en los artículos 21 y 102 apartado A, de la Constitución Política de los Estados Unidos Mexicanos, 71 y 131, fracción XXIV, del Código Nacional de Procedimientos Penales; 40, fracción XXXII de la Ley de la Fiscalía General de la República; 3, inciso H), fracción V), 4, fracción XIII, y 52, fracción I, del Reglamento de la Ley Orgánica de la Procuraduría General de la República, por ser las disposiciones generales que regían al inicio del presente procedimiento, en relación con los artículos transitorios Cuarto y Sexto de la Ley de la Fiscalía General de la República; hace constar que el presente documento, constante de  8   fojas útiles, es auténtica y concuerda fielmente en todos sus términos con la documentación que obra dentro de los registros de los archivos de esta Dirección General de Procedimientos Internacionales en contra de **JORGE ANTONIO PASILLAS JARAMILLO, (a) "JORGE PASILLAS JARAMILLO", (a) "EL GEORGE A. PASILLAS", (a) "GEORGE ANTHONY PASILLAS", (a) "GEORGE EL GÜERO", (a) "EL GÜERO"**; lo anterior se asienta para los efectos legales a que haya lugar.

**Mtro. Irving Pérez Bello**
**Fiscal Asistente de la Dirección de Extradiciones**
**de la Dirección General de Procedimientos Internacionales**



**SECRETARÍA DE GOBERNACIÓN**
**UNIDAD DE GOBIERNO**



28895

**ALEJANDRO LÓPEZ GONZÁLEZ**, DIRECTOR GENERAL ADJUNTO DEL DIARIO OFICIAL DE LA FEDERACIÓN, EN AUXILIO DEL TITULAR DE LA UNIDAD DE GOBIERNO, CON FUNDAMENTO EN LOS ARTÍCULOS 9, 11 FRACCIÓN I Y II, Y 12 ÚLTIMO PÁRRAFO DEL REGLAMENTO INTERIOR DE LA SECRETARÍA DE GOBERNACIÓN **CERTIFICA:** QUE EL C. MTRO. IRVING PÉREZ BELLO, ERA FISCAL ASISTENTE DE LA DIRECCIÓN DE EXTRADICIONES DE LA DIRECCIÓN GENERAL DE PROCEDIMIENTOS INTERNACIONALES DE LA FISCALÍA GENERAL DE LA REPÚBLICA, EL DIA 11 DE DICIEMBRE DE 2023 , Y SUYA LA FIRMA QUE APARECE EN EL PRESENTE DOCUMENTO.

NOMBRE DEL TITULAR : FISCALIA GENERAL DE LA REPUBLICA
TIPO DE DOCUMENTO : AUTENTICACION
CIUDAD DE MÉXICO A 12 DE DICIEMBRE DE 2023
REGISTRO No. 6720

Esta Secretaría no se hace responsable del contenido del documento
This Secretaría does not responsibility or liability whatsoever for the contents of this document
ce Secrétariat ne déviant pas responsable du contenu du document

MRC/YAG/ALG



**FIRMA**
**CÓDIGO:AHSTSBX5C**

ésta Legalización y su firma electrónica puede ser verificada en:
this Legalization and its electronic signature may be verified at:
galización et de sa signature électronique peut être vérifiée sur:
www.dicoppu.gobernacion.gob.mx/registro



**SECRETARÍA DE RELACIONES EXTERIORES**
Dirección General de Oficinas de Pasaportes      F8
Oficina de Pasaportes Miguel Hidalgo II      FOLIO **657420**

## LA SECRETARIA DE RELACIONES EXTERIORES CERTIFICA :

ALEJANDRO LÓPEZ GONZÁLEZ  ERA DIRECTOR

que .......................................................................................................

GENERAL ADJUNTO DEL DIARIO OFICIAL DE LA FEDERACIÓN

.......................................................................................................

EN AUXILIO DEL TITULAR DE LA UNIDAD DE GOBIERNO  DE LA

.......................................................................................................

SECRETARÍA DE GOBERNACIÓN  EL DÍA  12 DE DICIEMBRE DE 2023

.......................................................................................................

y que es suya la firma que antecede.

CIUDAD DE MÉXICO  a 15 de      DICIEMBRE      20 23

RO. DEL C. SECRETARIO
LA DIRECTORA

ERIKA LISZETH DE LA ROSA ARGUETA

ESTA SECRETARIA NO ASUME
RESPONSABILIDAD ALGUNA
POR EL CONTENIDO DEL
DOCUMENTO QUE SE LEGALIZA

UNITED MEXICAN STATES )
MEXICO CITY )  ss:
EMBASSY OF THE UNITED )
STATES OF AMERICA )

John Aldworth
Vice Consul
Mexico City
I, _____ Mexico _____ Consul of the United States of
America, duly commissioned and qualified, certify that the signature and official seal of:

**Erika Liszeth de la Rosa Arqueta**
(Name of Foreign Official)

an official empowered to act in the capacity designated in the annexed document, to which faith and credit are due, are true and correct.

For the contents of the annexed document I assume no responsibility.

_____
(Signature of Consular Officer)

John Aldworth
Vice Consul
Mexico City
Mexico
_____
(Type Name of Consular Officer)

DEC 2 0 2023
_____
(Date)